```
                                          SOUTHERN DISTRICT OF MISSISSIPPI
                                                    FILED
                                                 OCT 21 2013
                                                J T NOBLIN CLERK
                                          BY_____ DEPUTY
```

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI, HATTIESBURG DIVISION

**PORTIA B. ISHEE**                                                                               **PLAINTIFF**

**VS.**                                                 **CIVIL ACTION NO.** 2:13cv234 KS-MTP

**FEDERAL NATIONAL MORTGAGE**                            **DEFENDANTS**
**ASSOCIATION (A/K/A/ "FANNIE MAE"); and**
**GREEN TREE SERVICING LLC**

---

### COMPLAINT
### JURY TRIAL DEMANDED

---

COMES NOW Plaintiff, Portia B. Ishee, by and through undersigned counsel, and files this Complaint against Defendants Federal National Mortgage Association (a/k/a "Fannie Mae"), and Green Tree Servicing LLC and in support thereof would show unto this Honorable Court the following:

### I. JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court because it is a matter of contract and tort and because diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. The parties have diversity of citizenship and the amount in controversy exceeds $75,000.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because substantial events and omissions giving rise to this action occurred in Perry County, MS, which is in the Southern District of Mississippi, Hattiesburg Division.

### II. PARTIES

3. Venue Plaintiff Portia B. Ishee ("Portia") is an adult resident of Perry County, Mississippi, and whose current home address is 36 Muscio Road, McLain, MS 39456.

4. Defendant Federal National Mortgage Association ("Fannie Mae") is a private, chartered, shareholder-owned corporation, with its primary business address at 3900 Wisconsin Avenue, N. W., Washington, D. C., 20016.

5. Defendant Green Tree Servicing LLC ("Green Tree") is a Delaware limited liability company with its primary office address at 300 Landmark Towers, 345 St. Peter Street, St. Paul, MN 55102, registered to do business in the State of Mississippi, and which may be served via its registered agent, CT Corporation System, 645 Lakeland East Drive, Ste. 101, Flowood, MS 39232.

### III.  FACTS

6. On November 12, 2006 Portia B. Ishee and her husband, Kenneth Dyrel Ishee borrowed money, executed a Note ("Note"), and executed a Deed of Trust in the amount of $100,000 to GMAC Mortgage, LLC dba ditech.com.  The Deed of Trust was secured by the Ishee's homestead property located at 36 Muscio Road, McLain, MS 39456. Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary under the Deed of Trust.  **(Exhibit 1-DOT-ISHEE000098-113)**

7. On February 9, 2009, Kenneth Dyrell Ishee passed away.  At that time Portia was a sixty-seven year-old widow.

8. On September 23, 2010 Portia's home at 36 Musico Road, McLain, MS was completely destroyed by fire.  Even her sole companion, her dog Mimi, was killed in the inferno.  At this time the home was covered for fire loss by a policy of insurance issued by Alfa Insurance Corporation.

9. On or about September 30, 2010, Kevin Holbrook, an adjuster for Portia's home insurer, Alfa Insurance, contacted GMAC to provide notice of the fire which destroyed the home which provided security for the Note, and request a payoff amount for Portia's Note and

Deed of Trust held by GMAC. **(Exhibit 2-ISHEE 000117-119)** The charge by GMAC for this payoff request is reflected as a charge to Portia's escrow account. **(Exhibit 3-ISHEE 000054)**

10. GMAC sent inspectors to Portia's property on October 8, 2010 and again on October 26, 2010. The charges for these property inspections are charged to Portia's escrow account. **(Exhibit 3-ISHEE 000054)**

11. On October 9, 2010, Alfa Insurance requested an updated payoff for Portia's loan. **(Exhibit 4-ISHEE 000120-122)**

12. On November 4, 2010, in accordance with the "payoff amount" provided by GMAC, Kevin Holbrook mailed an Alfa Insurance Corporation check in the amount of $99,623.48 to GMAC Mortgage, LLC Payoff in full payment of Portia's Note and extinguishment of her Deed of Trust. **(Exhibit 5--ISHEE000089)**

13. On November 16, 2010 the check was negotiated by GMAC. Instead of applying the $99,623.48 "payoff" check to Portia's outstanding note, GMAC merely deposited the entire proceeds into its escrow account and labeled the money "unapplied funds." (See **Exhibit 6-ISHEE 000123)**

14. GMAC continued inspection of the burned rubble of Portia's home on December 30, 2010 and on January 13, 2011. The charges for these property inspections are debited to Portia's escrow account. **(Exhibit 3-ISHEE000054)**

15. On January 29, 2011, GMAC Mortgage, Coraopolis, PA sent Portia a threatening letter **(Exhibit 7-ISHEE 000088)** demanding that she secure fire insurance on her vacant property within thirty (30) days.

16. Desperate for a place to live, in February, 2011, Portia moved a mobile home to her homestead.

17. On February 23, 2011, Portia requested GMAC to provide a payoff statement for her loan be faxed to her at Trustmark Bank in Richton, MS. **(Exhibit 8-ISHEE 000086)** Portia then called the GMAC Customer Service Department referenced in the January 29, 2011 letter and requested the $99,623.48 currently held by GMAC as "unapplied funds" be applied to her loan.

18. In a letter dated February 26, 2011 GMAC Mortgage, Phoenix, AZ, acknowledged Portia's request to apply the funds to pay off her loan balance. **(Exhibit 9 -ISHEE 000085)** However, at that time, GMAC also requested that Portia send a written request for payoff, all drafts pertaining to the fire loss, and a certified check for any balance due.

19. GMAC Mortgage, Coraopolis, PA sent a letter dated February 26, 2011 to Portia, **(Exhibit 10-ISHEE 000084)** recinding GMAC's January 29, 2011 letter, and requesting Portia to "notify us immediately if this policy has been canceled."

20. On March 11, 2011, Portia sent again notified GMAC, this time by fax, requesting the insurance funds received from Alfa Insurance Corporation be used to payoff her loan. **(Exhibit 11-ISHEE 000083)**

21. On March 18, 2011 GMAC again inspected Portia's property, charging her escrow for same. **(Exhibit 3-ISHEE 000054)**

22. Emotionally distraught by GMAC's threats and by the lack of response and cooperation from GMAC, Portia hired Lee Turner as legal counsel. On April 11, 2011 Turner wrote to GMAC in Corapolis, PA putting GMAC on notice that legal action would ensue if the

payoff funds from Alfa Insurance were not applied to payoff the note and if the matter was not resolved. **(Exhibit 12-ISHEE 000082)**

23. On April 19, 2011, GMAC again sent inspectors Portia's property and charged her escrow account. **(Exhibit 3-ISHEE000054)**

24. Although Portia had paid her loan in full on November 4, 2010, by means of the Alfa Insurance Corporation check for the payoff amount, GMAC, Phoenix, AZ sent a letter to Portia's counsel, Turner, on May 2, 2011 requesting a payoff statement for Portia's loan and a cashier's check for the remaining balance of Portia's note. **(Exhibit 13 -ISHEE 000081)**

25. Continuing with the monthly inspection of Portia's property, on May 17, 2011, GMAC sent inspectors Portia's property and charged her escrow account. **(Exhibit 3-ISHEE 000054)**

26. GMAC, Waterloo, IA sent Portia a letter on July 8, 2011 notifying her she was qualified for a Trial Workout Plan for a Permanent Modification of her loan. **(Exhibit 14 -ISHEE 000079)**

27. One month later on August 9, 2011 Lee Turner received a fax from Lindsey Saline, GMAC, Phoenix, AZ requesting the "documents required for an exception to be submitted to payoff loan with current funds in RE: letter from or signed by the borrower requesting an exception, and a current payoff statement." **(Exhibit 15-ISHEE 000078)**

28. Between August 9, 2011 and September 12, 2011 Lee Turner contacted Lindsay Saline, GMAC, Phoenix, AZ, who confirmed that GMAC was holding in escrow the $99,623.48 in insurance proceeds. However, Saline further stated that because monthly payments had not been made after August 2010, the current payoff amount would include a

deficiency balance of $11,240.06 for late fees, interest, and inspection fees, after application of the Alfa Insurance check funds, which were in escrow.

29. Yet another inspection of Portia's property was done September 13, 2011, with GMAC charging Portia's escrow. **(Exhibit 3-ISHEE 000054)**

30. On September 14, 2011, GMAC, Waterloo, IA wrote to Portia "We were not able to continue with the modification review because the first trial payment was not received within the first month it was due. You have 30 days to discuss your denial. Your loan may be referred to or remain in foreclosure during this time." **(Exhibit 16-ISHEE 000055-56)**

31. One day later, on September 15, 2011, GMAC, Waterloo, IA advised Portia "The loan did not qualify for modification. Escrow has been waived. Tell your tax collector and insurance agent to send bills directly to you. Attached is your payment history." **(Exhibit 17-ISHEE 000049-54)**

32. Lee Turner and Portia Ishee sent a letter to Lindsay Saline, GMAC, Phoenix, AZ on October 25, 2011 requesting an exception for any remaining monies owed. **(Exhibit 18-ISHEE 000046)**

33. On November 3, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS"), as beneficiary of the Ishee Deed of Trust assigned the November 12, 2006 Deed of Trust to GMAC Mortgage, LLC, Fort Washington, PA. **(Exhibit 19-ISHEE 000114-116)**

34. GMAC's (Phoenix, AZ) January 17, 2012 letter to Portia stated ". . . we realize that dealing with damage to your home can be very stressful, we will work hard to process your claim as quickly and efficiently as possible. To assist in expediting the release of insurance funds for the repair of your home," please fill out and return the enclosed

      Homeowner's Statement, Affidavit of Bill Paid and Release of Liens by Contractor, and W-9 Form." **(Exhibit 20-ISHEE 000039-44)**

35. On May 14, 2012, Residential Capital, LLC, filed for Chapter 11 Bankruptcy in the Southern District of New York. GMAC Mortgage, LLC is an affiliate of Residential Capital, LLC.

36. Portia was advised by GMAC, Waterloo, IA on January 23, 2013 that the servicing of her loan had been assigned to Green Tree Servicing LLC, effective February 1, 2013. The letter stated that as of January 15, 2013, the current principal balance is $94,247.73. the current escrow balance is -$1,288.00, and the next due date is August 1, 2010. **(Exhibit 21 - ISHEE 000037-38)**

37. On February 1, 2013, Green Tree Servicing, LLC, St. Paul, MN force placed insurance on Portia's homestead and named itself as the insured on an American Security Insurance Company Residential Property policy with an annual premium of $1,470.00 and coverage limits of $94,201.00. **(Exhibit 22-ISHEE 000013-29)**

38. On February 15, 2013, Green Tree Servicing, LLC. Rapid City, SD confirmed the transfer of the servicing of Portia's loan in a letter addressed to "Kenneth Ishee." **(Exhibit 23-ISHEE 000030-31)**

39. On April 30, 2013, Green Tree Insurance Agency, Rapid City, SD, sent Portia a Notice of Placement of Insurance from Green Tree Insurance Center, Miami, FL, advising Green Tree had exercised their rights to protect their interest in the collateral and secured policy coverage of $94,201. Portia was also notified that she would be billed for the annual $1,470.00 premium and related interest in 9 equal installments. Green Tree further

         advised that Portia could obtain her own insurance and name Green Tree Servicing, LLC, Miami, FL as the lienholder/loss payee. **(Exhibit 24 - ISHEE 000011-12)**

40. On July 24, 2013, despite no recordation assignment in Perry County, MS land records, Fannie Mae Mortgage Help-Center, Dallas, TX sent Portia a letter advising her that Fannie Mae was the owner of the mortgage loan on her homestead (i.e. the November 12, 2006 Deed of Trust) and that Portia's loan was in default, and she may be facing foreclosure. **(Exhibit 25 - ISHEE 000007)**

41. Portia called "Antoinette" of Green Tree Customer Service on August 27, 2013, and explained the problems she had experienced for two years in getting the Alfa Insurance payoff check proceeds applied to payoff the note and stop the harassment. Antoinette advised Portia to fax a handwritten authorization letter to Green Tree to instruct Green Tree to apply the Alfa insurance proceeds to payoff her loan, and to instruct Green Tree that she did not intend to rebuild her house. Portia faxed her authorization on August 28, 2013. **(Exhibit 26 - ISHEE 000002-5)**

42. On September 9, 2013, Green Tree Customer Service, Rapid City, SD, confirmed receipt of Portia's letter, and Green Tree represented that it would fully investigate her complaints. **(Exhibit 27 - ISHEE 000006)**

43. Despite repeated calls and letters from Portia to Fannie Mae's predecessor, GMAC, and Green Tree, Defendants refuse to correct internal errors and refuse to acknowledge that no default occurred and no payments are owed after receipt of the payoff of November 4, 2010. To the contrary, Green Tree and Fannie Mae have inflicted misery and mental anguish upon Portia by asserting escrow delinquencies and late charges and fees and by force placing additional property insurance on Portia's homestead, and have demanded

unjust additional payment from Portia and threatened acceleration of balances allegedly owed and threatened foreclosure.

44. Defendants have thus wrongfully converted Portia's money, wrongfully charged additional interest, penalties, late fees and force placed insurance charges and have severely damaged Portia's credit and proximately caused emotional distress. This misconduct is willful and intentional and justifies imposition of punitive damages against Defendants. Portia has suffered humiliation, embarrassment, fear, sleeplessness, and mental anguish as a proximate result of Defendant's actions and loss of credit.

45. Upon information and belief, Portia alleges that this scheme perpetrated by Defendants is part of a pattern and practice of misconduct perpetrated on similar citizens throughout the State of Mississippi by Defendants.

46. Defendants have charged additional interest, penalties, late fees, have force placed hazard insurance, and have threatened Portia with acceleration and foreclosure on the loan.

47. Upon information and belief, Defendants, with full knowledge that Portia was not behind on her mortgage payments, made false and defamatory statements, either in writing or verbally, to credit reporting agencies and other individuals and/or organizations. These statements were made commencing in November, 2010 and were unprivileged. The wrongful, false and defamatory statements caused Portia to suffer humiliation and embarrassment, and caused her reputation among the community to be degraded. In addition to the embarrassment and humiliation suffered by Portia, Defendants' false and misleading statements resulted in damage to Portia's credit.

### IV. COUNT ONE - BREACH OF CONTRACT and WILLFUL BREACH OF CONTRACT

48. Portia reiterates and incorporates the allegations and averments contained within the hereinabove paragraphs.

49. The Ishee Deed of Trust provided as Uniform Covenant No. 2 that all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 (Escrow Items).

50. Defendants have breached the contractual obligations undertaken with Portia in the Note and Deed of Trust and said breaches of Defendants' contractual obligations rises to the level of an independent tort justifying punitive damages.

51. Defendant Green Tree breached the terms of its Servicing Contract.

52. Defendant Green Tree's breach of the terms of its Servicing Contract were intentional and/or so grossly negligent so as to constitute an independent tort, making an award of punitive damages appropriate.

53. As a direct and proximate consequence of Defendants' breach, Portia has suffered severe emotional and financial distress, has suffered destruction of her credit, and incurred attorneys fees and costs.

### V. COUNT TWO - CONVERSION

54. Portia reiterates and incorporates the allegations and averments contained within the hereinabove paragraphs.

55. Defendants were paid sums of monies on behalf Portia through Alfa Insurance for payoff of her Note and Deed of Trust. Defendants have converted these designated funds for purposes other than those which were authorized.

### VI. COUNT THREE – FRAUD

56. Portia reiterates and incorporates the allegations and averments contained within the hereinabove paragraphs.

57. Defendants have had knowledge regarding the conversion/misappropriation of the insurance proceeds since November, 2010, yet have continued to improperly and fraudulently charge an elderly widow, who lost her home and worldly possessions, with interest, late fees, inspection fees, and forced placed insurance and threats of foreclosure.

58. Defendants misrepresented their actual knowledge, of

   (a) Payoff of the balance of the Note by Alfa Insurance on November 4, 2010;

   (b) Inspection on October 8, 2010 of Portia's homestead demonstrating complete destruction with no economically feasible repair of the home;

   (c) Misapplication of the payoff proceeds contrary to the express terms of the Deed of Trust;

   (d) Improper assessment of interest and late fees after November 4, 2010.

   (e) Fraudulent force placement of insurance at excessive rates on knowingly non-existent property and, upon information and belief, received kickbacks from the excess insurer;

   (f) Intentional threats of foreclosure on a deed of trust which should have been extinguished and cancelled by payoff nearly three years earlier.

59. Defendants' conduct constitutes fraud, for which Defendants are liable for compensatory and punitive damages.

60. Portia respectfully demands judgment from and against Defendants, jointly and severally, for compensatory and punitive damages for their fraudulent, willful and intentional concealment, conversion, and/or misrepresentation aforesaid.

### VII. COUNT FOUR - BREACH OF DUTY AND GOOD FAITH AND FAIR DEALING

61. Portia reiterates and incorporates the allegations and averments contained within the hereinabove numbered paragraphs.

62. The Defendants, by and through their actions and inactions have breached their duty of fair dealing and good faith owed to Portia.

63. As a direct and proximate result of the aforementioned bad faith and unfair dealing by the Defendants, Portia has suffered the expense of hiring an attorney, anxiety, worry, mental and emotional distress, and should be awarded damages which would include, but be not limited to, attorney's fees, compensatory damages, and punitive damages.

### VIII. COUNT FIVE – INFLICTION OF FINANCIAL AND EMOTIONAL DISTRESS

64. Portia reiterates and incorporates the allegations and averments contained within the hereinabove numbered paragraphs.

65. Defendants' combined course of misconduct, as aforesaid, is outrageous and exceeds the bounds of acceptable civilized conduct and should be punished to prevent repeated misconduct in the future.

66. Defendants knew that their conduct would cause undue financial hardship and emotional distress on Portia. Despite this knowledge, Defendants actively and fraudulently continued to wrongfully charge and threaten a seventy-one year-old widow.

67. Defendants knew or should have known that the constant threat of foreclosure on her homestead would cause Portia severe emotional distress, and destruction of credit, for which Defendants are liable for compensatory and punitive damages as a direct and proximate result of their conduct.

68. Portia respectfully demands judgment from and against Defendants, jointly and severally, for compensatory and punitive damages for their intentional and willful infliction on Portia of financial and emotional distress.

### IX. COUNT SIX– RECISSION

69. Portia reiterates and incorporates the allegations and averments contained within the hereinabove numbered paragraphs.

70. Portia is entitled to and requests recission of all instruments of indebtedness secured by a deed of trust and such other instruments and documents as equity would require related to these transactions.

71. Portia is entitled to a declaration from this Court that all instruments of indebtedness secured by a deed of trust and such other instruments and/or documents as equity would require related to these transactions be declared null, void and of no effect.

### X. COUNT SEVEN - INJUNCTIVE RELIEF

72. Portia reiterates and incorporates the allegations and averments contained within the hereinabove numbered paragraphs.

73. Portia is entitled to and requests the issuance of an injunction prohibiting the Defendants from assigning any interest they may have in Portia's property, prohibiting Defendants from accelerating the debt and instituting any foreclosure or collection proceedings against the Portia and further suspending Portia's obligation to make any further payments to Defendants.

74. Portia is justifiably fearful of current threats of acceleration and fears foreclosure from Defendants and does not rightfully owe any past due amounts.

75. Portia is entitled to a temporary, preliminary and permanent injunction preventing Defendants from executing on the Note and Deed of Trust which Portia executed as described herein and to prevent Defendants from selling Portia's homestead or from requiring any arbitration regarding these disputes.

76. Given the facts set forth in this Complaint, there is substantial likelihood that Portia will succeed on the merits as to the relief requested in the Complaint.

77. The issuance of an injunction will not disserve the public interest, and in fact promotes the general welfare of the community. Issuance of an injunction will discourage similarly situated lenders from engaging in the predatory lending abuses described herein.

78. Portia will suffer irreparable injury if Defendants are allowed to execute on the Deed of Trust obtained from the Portia and sell her homestead.

## XI. COUNT EIGHT - DEFAMATION

79. Portia reiterates and incorporates the allegations and averments contained within the hereinabove numbered paragraphs.

80. Defendants made certain unprivileged, wrongful, tortious, and defamatory statements to third persons regarding Portia and her purported inability to pay her debts. The tortious conduct of the Defendants has caused the esteem, respect, goodwill, and/or confidence that others have or have had for Portia to be diminished.

81. Additionally, due to the defamation caused by Defendants, Portia was forced to seek the help of relatives.

## XII. COUNT EIGHT - ACCOUNTING

82. Portia reiterates and incorporates the allegations and averments contained within the hereinabove numbered paragraphs.

83. Portia demands and is entitled to an accounting of all financial transactions related to her home mortgage loan and Deed of Trust.

## XIII. COUNT NINE-VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

84. Portia reiterates and incorporates the allegations and averments contained within the hereinabove numbered paragraphs.\

85. As a servicer of the mortgage owned by Defendant Fannie Mae, Defendant Green Tree is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the Fair Debt Collection Practices Act.

86. Defendant Green Tree violated 15 U.S.C. § 1692c(a)(2), 1692c(b), 1692e(2)(A)(B), 1692e(5), 1692e(8), and 1692f(1).

87. Pursuant to 15 U.S.C. § 1692k, Defendant Green Tree is liable to Portia in an amount equal to the sum of any actual damages sustained by Portia as a result of the Defendant Green Tree's violations of the Fair Debt Collection Practices Act as well as such additional damages not exceeding $1,000.00 as the Court may allow. The Defendant is also liable to Portia for the costs of the action as well as a reasonable attorney's fees.

88. Because of the acts and omissions of the Defendants, Portia has suffered financial loss, loss of the ownership of her home, mental anxiety, emotional suffering, physical pain, worry, embarrassment, humiliation, and mental distress. In addition, Portia has incurred and will continue to incur litigation expenses and post litigation attorneys' fees which, but for the acts and omissions of the Defendants alleged herein, would not have been necessary. Further, the Defendants' acts and omissions were willful, malicious, grossly negligent and demonstrative of a reckless disregard for Portia's rights and well being.

## IX. PRAYER FOR RELIEF

WHEREFORE, Portia prays for the following:

a. That this Court declare that any and all instruments of indebtedness, deeds of trust or documents arising from these transactions be rescinded, cancelled or reformed;

b. That this Court declare that any and all instruments of indebtedness, deeds of trust or documents arising from these transactions are null, void and of no effect, or otherwise grant reformation thereof as equity may allow;

c. That this Court issue a preliminary injunction against the Defendants enjoining them and those in privity, active concert or participation with them from assigning any interest they may have in Portia's property, prohibiting Defendants form instituting any foreclosure proceedings against and further suspending Plaintiff's obligation to make any further payments on any notes to Defendants until this case can be set for trial and findings of fact and conclusions of law entered which permanently enjoin Defendants as set forth above;

d. That Defendants provide an accounting of all monies paid to the various Defendants arising from these transactions;

e. That Portia have judgment against the Defendants, jointly and severally, for such damages, compensatory and punitive, as may be allowable;

f. That Portia have such other further relief as this Court deems just and appropriate in the premises, including but not limited to, interest, prejudgment and post-judgment interest from the date of judicial demand, attorneys fees and such legal expenses reasonably and necessarily incurred;

g. That Defendants correct all wrongful information that Defendants reported to all third parties concerning Portia's payment history on the mortgage loan.

Respectfully submitted by Portia B. Ishee this the 21st day of October, 2013.

PORTIA B. ISHEE, PLAINTIFF
By and through undersigned counsel

_____
ATTORNEY FOR PLAINTIFF

SAMUEL S. McHARD, MSB #100295
P. MANION ANDERSON, MSB #104250
McHARD & ASSOCIATES, PLLC
15 MILBRANCH ROAD
HATTIESBURG, MS 39402
T: 601-450-1715; F: 601-450-1719
smchard@mchardlaw.com
manderson@mchardlaw.com

-17-