

# Full Disclosure, LLC

## Jay Patterson, CFE

Forensic Accountant | Examiner | Analyst
646 Quapaw Ave.  Hot Springs,  AR  71901
501-276-1108    email – jay@fulldisclosurellc.com

# EXPERT WITNESS REPORT

# OF

# BERNARD JAY PATTERSON, CFE

**for**

**Samuel S. McHard, Esq.**

**IN THE MATTER OF:**

**PORTIA ISHEE**
**VERSUS**
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, ET AL**

**Case No. 13-234**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**SOUTHERN DISTRICT OF MISSISSIPPI**

**June 1, 2014**

Page 1 of 16



Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 2

# REPORT CONTENTS

| SECTION | DESCRIPTION |
|---------|-------------|
| I | Introduction and Qualifications of Forensic Accountant and Certified Fraud Examiner |
| II | Document Key and Documents Examined List |
| III | Forensic Accounting Analysis |
| IV | Summary of Findings and Conclusions |
| Appendix "A" | Analysis of Uniform Covenant 2 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# SECTION I

# INTRODUCTION

I, Bernard Jay Patterson, CFE, owner of Full Disclosure, LLC prepared this report. I have compiled the information, examined the data and formulated the conclusions contained in this report at the request of Sam McHard and Daniel Wade. in connection with the above styled case. I have extensive experience in the forensic investigation, examination and analyses of mortgage loans in both the servicing and securitization areas. My Curriculum Vitae is attached. *(Attachment #1)*

Specifically, I was asked by counsel to review documents, accounting records, computer records and pleadings in the case at hand and offer my findings on the following items:

1. Provide a forensic accounting investigation, examination, and analysis of the mortgage loan transactions during the life of the subject mortgage loan and report and offer my findings and conclusions.

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 4

# SECTION II
## Documents Examined and Attachment Key

### Documents Examined and Relied Upon

| Description |
| --- |
| Fannie Mae Document Production – (FANNIE MAE/Ishee 000001-000064) |
| Green Tree Document Production - (GREEN TREE/Ishee 000001-000606) |
| Alfa Insurance Document Production – (ALFA SDT 000001-000216) |
| Documents from previous attorney's file-Les Turner. |
| Fannie Mae Single Family Selling and Servicing Guides **https://www.fanniemae.com/singlefamily/servicing** |
| |
| |
| |
| |
| |
| |
| |

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 5

## Attachment Key:

| Attachment No. | Description of Attachment |
|:---:|---|
| 1 | Curriculum Vitae of Bernard Jay Patterson, CFE. |
| 2 | Master Mortgage Loan Analysis Spreadsheet and supporting calculations worksheets. |
| 3 | GMAC Payment History |
| 4 | Fannie Mae Payment History |
| 5 | Greentree Payment History |
| 6 | Homeowners Declaration Page |
| 7 | Fire Investigation Report |
| 8 | Insurance Adjustor's Notes |
| 9 | Payoff Statement – 10-08-2010 |
| 10 | ALFA Insurance Draft |
| 11 | GMAC Transaction Codes excerpt |
| 12 | Fannie Mae SIR Screen excerpt |
| 13 | Deed of Trust |
| 14 | Fannie Mae Single Family Servicing Guide excerpts |
| 15 | Payoff Statements-All |
| 16 | GMAC letter – 01/29/2011 |
| 17 | Letter to GMAC-02/26/2011 |
| 18 | Letter to GMAC-03/11/2011 |
| 19 | Letter to GMAC-04/11/2011 |
| 20 | Letter to GMAC-09/12/2011 |
| 21 | Letter to GMAC-10/25/2011 |
| 22 | GMAC Trial Plan Letter 07/08/2011 |
| 23 | Letter to GMAC-08/09/2011 |
| 24 | GMAC Letter-09/14/2011 |
| 25 | GMAC Letter-01/17/2012 |
| 26 | Greentree Letter-04/30/2013 |
| 27 | Greentree Letter-05/28/2013 |
| 28 | Fannie Mae correspondence |

# SECTION III

# Forensic Accounting Analyses

## Reconstruction of Servicing Data

In order to provide a forensic accounting examination and analysis of the data, the first step is to reconstruct and translate the financial transactions, which occurred and are presented in the servicer's computer generated output. I refer to this output as a transaction and/or payment history. The attached Master Mortgage Loan Analysis Spreadsheet[1] includes the transaction history data and related application accounts normally found in residential mortgage loans. This spreadsheet includes each transaction from the transaction history and provides in detail each transaction, each application account and running balances for those accounts. This spreadsheet is an important collection that serves as the benchmark for subsequent analyses and examination of the financial transactions which allow me to interpret and communicate my findings.

The Master Mortgage Loan Analysis Spreadsheet is attached.  *(attachment #2).*

The following source documents containing the transactions, which were reconstructed and are shown in the Master Mortgage Loan Analysis Spreadsheet:

Transaction History – GMAC Mortgage. GMAC Mortgage used the Mortgageserve/Loanserve servicing system from FISERV. The transactions dates contained in this history are from 09/05/2008 to 09/13/2011.  *(attachment #3)*

Display/History-Fannie Mae. This document is a data capture from GMAC's servicing system apparently into Fannie Mae's possession. It contains the exact transaction codes from Mortgageserve. The transaction dates contained in this history are from 12/28/2007 to 02/04/2013. (FANNIE MAE/Ishee-000049-000064) *(attachment #4)*

Transaction History-Greentree. This history is produced from Greentree's GTA servicing system.[2] The transaction dates contained in this history are from 01/31/2013 to 11/06/2013. (GREEN TREE/Ishee-000001-000004) *(attachment #5)*

---

[1] Hereinafter referred to as "MLA".
[2] GTA is Greentree's proprietary servicing system of record.

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 7

## Timeline of material transactions and/or events

| Date | Description |
|------|-------------|
| 11/12/2006 | Loan Origination-GMAC Mortgage LLC (Note and Deed of Trust) |
| 09/28/2009 | Homeowners Policy-Alfa Insurance in force. |
| 03/01/2010 | GMAC force placed insurance – 2,595.00 *(see MLA-Line 41)* |
| 03/29/2010 | Homeowners Policy-Alfa Insurance in force. |
| 07/01/2010 | GMAC force placed insurance-2,626.00 *(see MLA-Line 55)* |
| 09/23/2010 | Plaintiff's home destroyed by fire. |
| 09/30/2010 | Payoff Statement #1 to Alfa Insurance-$99,275.53 |
| 10/08/2010 | Payoff Statement #2 to Alfa Insurance-$99,361.48 |
| 10/08/2010 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire. *(see MLA-59)* |
| 10/26/2010 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire. (see MLA-Line 61) |
| 11/04/2010 | Alfa Insurance paid GMAC $99,623.48 to payoff loan. |
| 11/08/2010 | Fannie Mae referred the loan for foreclosure. |
| 11/16/2010 | GMAC posted Alfa Insurance check for $99,623.48.  Placed in unapplied funds. (See MLA-Line 64) |
| 12/30/2010 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire.  (see MLA-Line 67) |
| 01/29/2011 | GMAC letter to Plaintiff that a report was received that the property is vacant. (attachment #14) |
| 01/31/2011 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire.  (see MLA-Line 68) |
| 02-16-2011 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire.  (see MLA-Line 69) |
| 02/22/2011 | Payoff Statement #3 to Plaintiff-$102,196.04. |
| 03/04/2011 | Payoff Statement #4 to Plaintiff-$102,672.94 |
| 03/18/2011 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire.  (see MLA-Line 70) |
| 03-30-2011 | Force Placed Insurance assessed to Plaintiff's escrow - $3,907.00.  Total escrow shortage-$6,533.00.  (see MLA-Line 71) |
| 04/01/2011 | Payoff Statement #5 to Plaintiff - $107,769.97. |
| 04-18-2011 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire.  (see MLA-Line 73) |
| 04-19-2011 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire.  (see MLA-Line 74) |
| 08/11/2011 | Payoff Statement #6 to Plaintiff-$110,813.42. |
| 09/13/2011 | Inspection fee assessed to Plaintiff's loan indicating GMAC inspectors present at home that was destroyed by fire.  (see MLA-Line 77) |
| 09/29/2011 | GMAC letter to Plaintiff that property is vacant. |
| 10/28/2011 | Payoff Statement #7 to Plaintiff-$114,040.65. |

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 8

| | |
|---|---|
| **08/06/2012** | Payoff Statement #8 to Balboa Insurance-$122,189.90. |
| **08/08/2012** | Fannie Mae denies request to payoff loan with existing insurance funds and to proceed with foreclosure. |
| **09/13/2012** | Payoff Statement #9 -$22,076.34.  This payoff includes the amount held from insurance claim but not shown. |
| **02/01/2013** | Servicing transferred to Greentree. |
| **04/30/2013** | Greentree notice of force placed insurance. |
| | |

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 9

## Analysis of Property Insurance at time of loss

Alfa General Insurance Corporation provided a copy of a homeowners declarations page with an effective date of 03/29/2010 and an expiration date of 09/29/2010. *(attachment #6)*

According to GMAC's payment history, forced placed insurance premium was assessed to Plaintiff's escrow account on 7/29/2010 for $2,626.00. *(MLA-Line 55)*

According to my investigation, examination and analyses, the Plaintiff had in force homeowners insurance in force from 3/29/2010 to 9/29/2010 however GMAC force placed hazard insurance and assessed the escrow account for $2,626.00 during this time period.

## Insurance Claim Funds

The Plaintiff's home was destroyed by fire on 09/23/2010[3]. A claim was filed with Plaintiff's homeowners insurance carrier-Alfa General Insurance Corporation. In preparation to pay the dwelling portion of the claim, Alfa requested a payoff from GMAC[4] on 09/30/2010.

A payoff statement was generated by GMAC on 09/30/2010 and again on 10/08/2010. *(attachment #9)* The itemization of the payoff is shown below

### Itemization of 108/08/2010 Payoff Statement

| Description | Amount |
|---|---|
| Principal | 94,247.73 |
| Interest through 10/28/2010 | 2,232.40 |
| Escrow | 2,626.00 |
| Late Charges | 136.40 |
| Unapplied funds | 0 |
| Recording Fee | 13.00 |
| Other fees and costs | 31.25 |
| Optional products | 74.70 |
| **Total Due** | **99,361.48** |
| Per diem interest @ $18.7204 | |

Alfa Insurance Corporation issued and sent a draft to GMAC Mortgage on 11/04/2010 for $99,623.48. *(attachment #10)* This included the payoff total from the 10/08/2010 GMAC payoff statement plus 14 days of additional interest.

---

[3] See Fire Investigation Report *(attachment #7)*
[4] See adjuster's notes at ALFA SDT 000006-000007 *(attachment #8)*

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 10

**Calculation of Insurance Claim Proceeds Amount**

| Description | Amount |
|---|---|
| Payoff total from 10/08/2010 GMAC payoff statement. This included interest through 10/28/2010. | 99,361.48 |
| 14 days additional interest @ 18.7204 | 262.00 |
| **Total amount of insurance draft** | **99,623.48** |

According to my analyses, since the 10/08/2010 payoff statement included interest through 10/28/2010 then the additional 14 days of interest added and included in the insurance draft would pay the interest through 11/11/2010.

According to my investigation, examination and analyses of the 10/08/2010 payoff statement included $2,626.00 in force placed hazard insurance which as shown above was assessed even though the Plaintiff had her own homeowners insurance in force.

---

## GMAC's Receipt and Application of Insurance Claim Funds

GMAC's payment history shows the Alfa insurance payment was posted to their servicing system on 11/16/2010[5]. These funds were placed in unapplied funds bucket[6] 5. These funds were not used to pay the loan to zero.

According to my investigation, examination, and analyses, it is unclear what date GMAC actually received these funds. The actual draft from Regions Bank shows the check was paid/cleared on 11/16/2010 indicating that it was probably deposited before that date which would mean that it was in GMAC's possession before 11/16/2010. The fact that the check does not show posted until 11/16/2010 would make the payoff short by 5 days. ($93.60)[7]

The worst case scenario was that GMAC received the insurance draft on 11/16/2010 and the payoff was short by $93.60. These funds remained in unapplied funds plus GMAC initiated foreclosure proceedings shortly thereafter[8].

In my opinion, with all but $93.60 in GMAC's possession in order to pay this loan off, there were options as to how to resolve this matter instead of proceeding with foreclosure.

---

[5] See **MLA-Line64**

[6] Unapplied funds is a holding account for funds that are not applied to other areas of the loan such as principal, interest, escrow, fees, late charges. Unapplied funds is also referred to as "suspense" although GMAC's servicing system uses the term "Unapplied". GMAC's system also has five separate unapplied funds "buckets" to segregate according to the type of remittance. Unapplied bucket 5 is designated for loss drafts. See excerpt of GMAC's transaction codes. **(Attachment #11)**

[7] $18.7204 per diem interest x 5 days=$93.60.

[8] See Fannie Mae SIR Screen re: foreclosure referral date. **(attachment #12)**

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 11

1.  A simple phone call or correspondence to the Plaintiff or Alfa Insurance indicating the payoff was not sufficient and that an additional $93.60 or whatever the amount may be needs to be remitted in order to pay the loan to zero.  I cannot find any evidence of any communication regarding insufficient payoff funds from GMAC–Alfa-Plaintiff.

2.  The funds could have been used to bring the loan contractually current and pay the escrow, late charges, and fees.  The Deed of Trust[9] contains a section dedicated to the application of payments Uniform Covenant 2 of this instruments describes the "waterfall" of the application of payments. (See Appendix A-Analysis of Application of Payments) .  Furthermore, Fannie Mae's Servicing Guide provides the processes and procedures its servicers are to follow with regards to short payments, disposition of insurance proceeds and report of hazard insurance loss.[10]

**The table below describes the application of the insurance claim proceeds according to the application of payments waterfall as directed in the Deed of Trust:**

| Description | Amount | Balance |
|---|---|---|
| Insurance claim payment | 99,623.48 | $99,623.48 |
| 08/01/2010 Payment | ($707.08) | $98,916.40 |
| 09/01/2010 Payment | ($707.08) | $98,209.32 |
| 10/01/2010 Payment | (707.08) | $97,502.24 |
| 11/01/2010 Payment | ($707.08) | $96,795.16 |
| Accrued Interest (11/1/10 to 11/16/10) | ($299.53) | $96,495.63 |
| Escrow | (2,626.00) | $93,869.63 |
| Late Charges | ($136.40) | $93,733.23 |
| Recording Fee | ($13.00) | $93,720.23 |
| Other Fees and Costs[11] | ($44.25) | $93,675.99 |
| Optional Products | ($74.70) | $93,601.28 |
| Applied to Principal | ($93,601.28) | -0- |

**Calculation of the resulting principal balance after application of the remaining insurance claim proceeds:**

| Description | Amount |
|---|---|
| Principal Balance as of 11/16/2010 | $94,247.73 |
| Balance of insurance claim funds applied to principal per above | ($93,601.28) |
| Principal Balance | $646.45 |
| Status of Loan | CURRENT |

[9] See **attachment #13**

[10] Fannie Mae servicing guide, Section III,101.03(01/31/03)-states "If the servicer decides to accept the [short] payment, any portion of it that equals one or more full installments should be applied.  Any remaining portion should be held as unapplied funds until enough money to make a full installment is received.  Also attached is Section II,501.02: Report of Hazard Insurance Loss and Section II, 501.01: Disposition of Insurance Proceeds Other Than for Natural Disasters. (**Attachment #14)**

[11] $13.00 property inspection was assessed to loan on 10/26/2010 that was not included on the 10/08/2010 Payoff Statement.  This balance reflects that amount.

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 12

**If the application of payments waterfall had been followed, the loan would have been brought current and the principal balance reduced to $646.45.   If No. 1 and/or No. 2 above had been followed, the loan would have been paid current and/or paid to zero and foreclosure and resulting litigation avoided.**

---

## Analyses of Subsequent Events

The following are the results of my investigation, examination, and analyses of material events which occurred subsequent to GMAC receiving the insurance claim funds.

1. These funds remained in unapplied funds from 11/16/2010 to 11/06/2013 (appx 3 years).

2. Foreclosure proceedings continued.

3. GMAC inspected the property monthly from the time of the fire loss until servicing was released to Greentree. Greentree also inspected the property frequently.[12]

4. Numerous payoff statements were generated by GMAC subsequent to the fire loss. All of these payoff statements were for amounts to pay off the loan that did NOT include any reference to the fact that $99,623.48 was being held by GMAC in their unapplied funds account. *(attachment #15)*

5. Several months after the fire loss, GMAC sent a letter to the Plaintiff (01/29/2011) that it had received information the property is vacant. Thereafter, GMAC sent a letter to Plaintiff on 2/26/2011 that rescinds the previous letter that the property is vacant. This letter states that the property is occupied. Both of these letters were sent even though the house was completely burned to the ground on 09/23/2010. *(attachment #16)*

6. The following documented requests were made by the Plaintiff to apply the insurance claim proceeds to the loan balance:

   a. 02/26/2011- Plaintiff requested that the insurance claim funds be used to pay off the existing loan balance. *(attachment #17)*

   b. 03/11/2011- Plaintiff requested again that the insurance claim funds be used to pay off the existing loan balance. *(attachment #18)*

   c. 04/11/2011-Plaintiff's attorney requested to GMAC that the insurance claim funds be used to pay off the existing loan balance. *(attachment #19)*

---

[12] See Detail-Property Inspections. *(Attachment #2)*

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 13

d.  09/12/2011-Plaintiff attorney requested to GMAC that the insurance claim funds be used to pay off the existing loan balance.  *(attachment #20)*

e.  10/25/2011-Plaintiff attorney requested again to GMAC that the insurance claim funds be used to pay off the existing loan balance. *(attachment #21)*

7.  As shown in 6 above, there were 5 requests to GMAC to apply the insurance claim proceeds to the loan balance.  Despite these requests, the following events took place:

a.  d.  07/08/2011-GMAC sent a letter to Plaintiff that she had qualified for a Trial Workout Plan that will possibly qualify them for a Permanent Modification. *(attachment #22)*

b.  08/09/2011-GMAC sends letter to Plaintiff's attorney that a letter from borrower requesting an exception to payoff loan with current funds be submitted along with a current payoff statement.  It must be noted that Plaintiff had previously sent at least three previous letters to GMAC making this request plus GMAC had already generated    6 payoff statements. *(attachment #23)*

c.  09/14/2011-GMAC sends a letter to the Plaintiff that it recently received a request for a loan modification and that they were not able to fulfill that request.  *Note-I cannot find any evidence where the Plaintiff requested a loan modification. (attachment #24)*

d.  01/17/2012-GMAC letter to Plaintiff that they will need additional documents in order to release insurance funds including homeowner statement, affidavit of bills paid and a W-9 form. *(attachment #25)*

e.  04/30/2013-Greentree letter to Plaintiff that they have purchased force place insurance for $94,201.00 coverage resulting in an insurance premium of $1,470.00 that will be charged to the loan account.  *(attachment #26)*

f.  05/28/2013-Greentree sends a Report of Hazard Insurance Loss to Fannie Mae.  Per Fannie Mae's guidelines, this should have been submitted shortly after the fire loss in 2010. *(attachment #27)*

g.  09/09/2013-Greentree letter to Plaintiff that inquiry is under review and expect a written response within 60 business days.  *(attachment #28)*

8.  The following documented actions were taken by Fannie Mae: *(attachment #29)*

a.  12/15/2011-Request to Fannie Mae to accept short payoff with proceeds.

b.  12/19/2011-Fannie Mae instructions to proceed with foreclosure and reduce the foreclosure bid by the amount of the insurance proceeds.

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 14

    c. 08/08/2012-Fannie Mae denies request for short payoff with proceeds and to proceed with foreclosure.

    d. 05/29/2013-Fannie Mae instructs Greentree to proceed with foreclosure and reduce the foreclosure bid by the amount of the insurance proceeds.

    e. 07/24/2013-Fannie Mae letter to Plaintiff that loan is in default and may be soon be facing foreclosure. Alternatives available and to contact the Fannie Mae Mortgage Help Center.

The result of these events was that the insurance claim proceeds were held in unapplied funds and the property remained in foreclosure. The current litigation was filed on 10/21/2013. Ten days later, the unapplied funds were used to pay the loan and fees to zero as well as a refund of $1,474.56 to the Plaintiff.

## Analysis of Final Payoff and Refund to Plaintiff

After the current litigation was filed, Greentree and Fannie Mae executed transactions to pay the loan to zero and to pay all fees and costs to zero. *(MLA-Line 180)* The table below shows the transaction:

| Description | Amount |
|---|---|
| Amount of Insurance Claim Proceeds | 99,623.48 |
| Less:Applied to Principal | -94,247.73 |
| Less:Applied to Interest | -2,558.63 |
| Less:Applied to Escrow | -1,288.00 |
| Less: Applied to Late Charges | -54.56 |
| **Balance refunded to borrower** | **-1,474.56** |

According to my investigation, examination, and analyses, the funds refunded to the borrower should have been $2,626.00. This amount is the force placed insurance that was assessed to the account when the evidence is clear the Plaintiff maintained her own homeowners insurance through Alfa Insurance Corporation. Therefore, the amount of the refund should have been $2,626.00 instead of $1,474.56, which represents a difference of $1,151.44 due the Plaintiff.

## Additional documentation requested

Servicing notes during the time GMAC serviced this loan are not found in any of the documents provided to me. In order to assist with my analyses of when GMAC actually received the insurance claim proceeds, these items are needed and requested.

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 15

---

# SECTION IV

## Summary of Preliminary Findings and Conclusions:

After the Plaintiff's home was destroyed by fire, the homeowners insurance company requested a payoff statement and remitted a draft to GMAC which included an additional 14 days interest to pay off the mortgage loan.  These funds were posted to the Plaintiff's mortgage loan account 12 days later and placed in an unapplied funds account.  The mortgage loan was NOT paid off.  The mortgage loan was referred to foreclosure a few days later.  The insurance claim proceeds remained in unapplied funds and the loan remained in foreclosure status for the next three years until after the current litigation was filed.

It is my opinion that due to the conduct of GMAC, Greentree and Fannie Mae, this loan should have been paid off shortly after the insurance company disbursed claim funds therefore avoiding three years of foreclosure and current litigation.

Expert Report – Servicing – Ishee v. Fannie Mae, et al.
Page | 16

## Additional Analysis:

I reserve the right to amend this report based on information received after the issuance of the same. I expect to testify and to use certain exhibits at trial, and understand that I may be asked to express opinions in rebuttal of matters that are raised at trial.

## Compensation:

I am billing Samuel S. McHard, Esq. in this matter at my usual and customary rate of $200.00 per hour plus costs incurred.

## Signature:

I certify that the above is a true and correct copy of my expert witness report required Rule 26 of the Federal Rules of Civil Procedure to be presented to the United States District Court and for the Southern District of Mississippi. Signed and dated this 1st day of June, 2014.

_/s/ Bernard Jay Patterson, CFE_

Bernard Jay Patterson, CFE

# Appendix "A"

Uniform Covenant 2 of the standard Fannie Mae/Freddie Mac security instrument contains provisions as to how payments are to be applied. More specifically, the "waterfall" of payment applications are as follows:

1   Periodic Payments (Principal, Interest, Escrow)

2. Late Charges

3. Other amounts due (fees, etc)

4. Principal reduction

The flowchart on the next page illustrates this waterfall.

The instrument language is shown below:

> 2. *Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of pirority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the pirncipal balance of the Note.*
>
> *If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more thna one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Peirodic Payments if, and to the extent that, each payment can be paid in fuil. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.*
>
> *Any application of payments, insurnace proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.*

# PAYMENT APPLICATION WATERFALL



**\*If the lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.**
 **(Source - Uniform Covenant 2 - Borrower's Deed of Trust)**

# ATTACHMENT #1

# Bernard Jay Patterson, CFE

# Full Disclosure, LLC

646 Quapaw Ave., Hot Springs, Ar. 71901    501-276-1108      jay@fulldisclosurellc.com

# Curriculum Vitae

Bernard Jay Patterson, owner of Full Disclosure, LLC provides forensic and investigative accounting, examination, and analyses related to the areas of mortgage loan servicing and securitization.

- Expert witness appearances in several court jurisdictions
- Development of methodologies used in the examination and analysis of mortgage loan servicing and securitization transactions.
- Nationally recognized in the area of forensic and investigative accounting involving the servicing transactions of mortgage loans as well as forensic analysis of mortgage securitization finance issues.
- Previous experience:  Civil and criminal cases including expert witness testimony, deposition testimony, consulting engagements and mediation presentations.
- Clients – Attorneys, Attorneys General, Bankruptcy Trustees, County Recording Offices, MBS Investors, other governmental entities.
- Co-Author – "Foreclosure in California, A Crisis of Compliance" – Results of a study completed for the Office of the Assessor-Recorder, San Francisco County, California.

## Expert Witness Appearances:

- United States Bankruptcy Court, Eastern District of Arkansas
- United States Bankruptcy Court, Western District of Arkansas
- United States Bankruptcy Court, Northern District of Florida.
- United States Bankruptcy Court, Eastern District of Kentucky, Lexington Division.
- Superior Court, State of California, County of Orange
- Supreme Court, County of Kings, State of New York
- United States District Court, Southern District of Mississippi

## Credentials:

- Certified Fraud Examiner – November, 2009

**Education:**

University of Arkansas Fayetteville – 1978 – 1981 – Accounting
(Completed 115 out of 120 hours to obtain degree)

University of Arkansas Little Rock – September 2011 – Present
Scholastic Honors – Lifetime member – Beta Gamma Sigma Honor Society

**Previous Business Experience:**

Owner/Partner in a multi-million dollar insurance firm – 19 Years. Specialized in the underwriting of bonds for various companies which included extensive experience in the analysis of corporate financial statements and accounting transactions. Also specialized in the underwriting and servicing of force-placed property insurance for Savings Banks and National Banks.

**Current Business:**

Full Disclosure, LLC – Owner since October, 2007.

**Instructor/Speaking Engagements:**

- Instructor/Speaker – Securitization and Servicing Seminar – Shelby, NC – September 2010.
- Instructor/Speaker – Securitization and Servicing Seminar – Las Vegas, NV – February 2011.
- Instructor/Speaker – UCC and Securitization Seminar – Ontario, CA. – September 2011.
- Speaker – Debtor/Creditor Fall Legal Institute-Arkansas Bar Association – Fayetteville, AR. – November 2011.
- Instructor/Speaker – UCC and Securitization Seminar – New York, NY – November 2011.
- Instructor/Speaker – UCC and Securitization Seminar – Orlando, FL – March 2012.
- Instructor/Speaker – Advanced Bankruptcy Seminar, Max Gardner – Shelby, NC – April 2012.
- Instructor/Speaker – Bankruptcy Seminar, Max Gardner – Shelby, NC. – August 2012
- Instructor/Speaker – Foreclosure Securitization and Servicing Seminar – Max Gardner – Charlotte, NC. – October 2012.
- Instructor/Speaker – Bankruptcy Seminar, Max Gardner – Shelby, NC. – January 2013
- Instructor/Speaker – Bankruptcy Seminar, Max Gardner – Shelby, NC. – September 2013
- Instructor/Speaker – Regulation X and Z Seminar, Max Gardner-Shelby, NC. – February 2014
- Instructor/Speaker – Bankruptcy Seminar, Max Gardner – Shelby, NC. – March 2014

**<u>Publications:</u>**

"Foreclosure in California, A Crisis of Compliance" – Results of a study completed for the Office of the Assessor-Recorder, San Francisco County, California.  Co-author

**<u>Organizations:</u>**

- Association of Certified Fraud Examiners

**<u>Qualifications and Methodologies:</u>**

Please see attached.

**<u>Testimony and Case List:</u>**

Please see attached.

# <u>Bernard Jay Patterson, CFE</u>
# STATEMENT OF QUALIFICATIONS
# STATEMENT OF METHODOLOGIES

## <u>Statement of Qualifications-General</u>

I have practiced in the forensic accounting field since 2007 and became a credentialed Certified Fraud Examiner in November 2009. Forensic accounting is the specialty practice area of accountancy that describes engagements that result from actual or anticipated disputes or litigation. "Forensic" means "suitable for use in a court of law", and it is to that standard and potential outcome that I generally prepare my work. Forensic accountants, also referred to as forensic auditors or investigative auditors, often have to give expert evidence at the eventual trial.

The Certified Fraud Examiner credential denotes proven expertise in fraud prevention, detection and deterrence. Certified Fraud Examiners are trained to identify the warning signs and red flags that indicate evidence of fraud and fraud risk. Certified Fraud Examiners possess a unique set of skills that are not found in any other career field or discipline in that it combines the knowledge of complex financial transactions with an understanding of methods, law, and how to resolve allegations of fraud. To qualify to become a Certified Fraud Examiner you must have a minimum of a Bachelor's degree (or equivalent) plus a minimum of two years of fraud related professional experience. Candidates must pass a four part exam which includes Fraud Prevention and Deterrence, Financial Transactions, Fraud Investigation and Legal Elements of Fraud. The CFE credential is a preferred hiring qualification for The US Marshals Service, FBI, Secret Service, USPS, GAO, IRS, DOD, SEC and HUD. The continuing education for Certified Fraud Examiners is also recognized as acceptable continuing education by the National Association of State Boards of Accountancy.

My practice specializes in forensic and investigative accounting, examination, and analyses related to the areas of mortgage loan servicing and securitization. My clients include attorneys and governmental entities nationwide. I have served or am currently serving as an expert witness and/or consultant in both civil and criminal cases that involve false, fabricated and fraudulent documents, financial transactions and securitization issues in the mortgage loan environment.

My education and training in the area of forensic accounting and fraud examination include related college credits in Accounting Principles, Intermediate Accounting, Advanced Accounting, Cost Accounting, Public Finance, Auditing, Federal Income Tax, Statistical Analysis, and Advanced Statistical Analysis. I have also received education and training from the Association of Certified Fraud Examiners which includes the study of Fraud Prevention and Deterrence, Financial Transactions, Fraud Investigation and The Legal Elements of Fraud. I have extensive experience in the examination and analysis of corporate financial statements and

transactions as a bond underwriter for several national insurance companies. I also have extensive experience in the underwriting and servicing of force placed property insurance for savings banks and national banks. I am a frequent instructor and speaker at seminars and conferences involving mortgage servicing and securitization.

I have specialized knowledge in the area of the servicing and securitization of mortgage loans and mortgage backed securities. Forensic examination and analyses of mortgage loan servicing and securitization issues is a complex area that requires the use of effective fraud, investigative and accounting skills. These skills must be used in order to identify, analyze and appropriately report important evidence to resolve legal issues. In order to provide forensic examinations and analyses in these areas there must be an application of accounting, financial, quantitative methods and investigative skills in order to gather, analyze and evaluate the evidence then prepare to interpret and communicate my findings in a format that can be understood and used in courtroom testimony.

### Statement of Qualifications - Servicing.

The skills and knowledge I have in the area of mortgage loan servicing requires the application of fraud investigation and examination techniques along with my skills in forensic accounting. The accounting, investigation and analyses of mortgage servicing transactions require unique skills. Mortgage servicing data output provided by various mortgage servicing companies is usually in a raw or at best very difficult to interpret format. There are generally five or six different mortgage servicing computer systems used by the major servicers nationwide. I have extensive experience and knowledge of most of the major mortgage servicing systems which include, Mortgage Servicing Platform (MSP), Mortgageserv, Citilink/Maestro, RADAR, LSAMS, and Bank of America's AS400 system. These systems all contain different output, codes and accounts. I have designed systems and processes that compile and reconstruct this data into a collection that is both readable and understandable and serves as the benchmark for subsequent analysis and examination. Analysis of the data includes determining compliance in the application of payments according to the governing loan documents, Bankruptcy rules including pre and post-petition payment applications, Bankruptcy fees and costs approvals and applications, general auditing functions of debtor payments, Trustee payments, and all other evidence produced to be analyzed against this benchmark compilation.

**Statement of Qualifications – Securitization**

My specialized skills and knowledge in the area of mortgage loan securitizations require the application of fraud investigation and examination techniques along with my skills in forensic accounting. I am familiar with the industry standards and practices in mortgage securitizations as well as being very familiar with the methods by which mortgage notes and mortgages are transferred through the various entities in the securitization process. I am also familiar with the limitations and restrictions relating to these transfers as well as the federal tax requirements and penalties for not complying with these rules. I have examined thousands of mortgage notes, mortgages, deeds of trust, assignments, trustee deeds, bankruptcy filings and foreclosure documents in the past four and one half years. I have also researched and examined hundreds of governing documents of securitized trusts. I use these skills to examine mortgage loan documents for possible fraudulent activities. Having specialized knowledge of the securitization process, bankruptcy procedures and foreclosure procedures is essential in providing forensic analyses of these documents.

**Mortgage Loan Servicing Examination protocols and methodology**

The Master Mortgage Loan Analysis spreadsheet is a document I have developed that serves as the benchmark for forensic examination and analysis of a loan servicing case. Each financial transaction of a mortgage loan is extracted from the data output of the specific mortgage loan servicing software system. This data is translated then reconstructed into the Master Mortgage Loan Analysis Spreadsheet. Corresponding data fields are used that mirror the output from the servicing system. These fields vary from system to system. The transaction codes also vary, some being numeric, some alpha and some alpha-numeric. The most common fields used are transaction date, contractual due date, transaction amount, transaction code or description. I refer to this as the left side of the transaction. All transactions with either incoming funds or outgoing funds must have a corresponding account in order to balance. I refer to the corresponding accounts in a mortgage loan account as "application accounts". I also refer to these "application accounts" as the right side of the transaction. Application accounts normally are principal, interest, escrow, late charges, fees, suspense/unapplied and corporate advance. Some of the servicing systems combine application accounts. Some of the servicing systems carry running balances of the application accounts and some do not. The Master Mortgage Loan Analysis Spreadsheet I have developed includes running balance columns for every application account as well as a reference field, comments field and data check fields.

1. Organize the evidence received and establish a chain of custody.
2. Establish working papers to document each step of the examination with notations of timelines and material items.

3. Touch and read each document, read all pleadings and depositions.
4. Determine loan origination date, loan amount, interest rate, interest rate change dates, libor rates, late charge rate, application of payments order.
5. Determine transaction history dates to comply with origination date through the life of the loan.
6. Determine servicing system output type.
7. Extract transaction data from servicing system output, translate and reconstruct into Master Mortgage Loan Analysis Spreadsheet. Assure that all balances reconcile with any benchmark document that provides totals.
8. Insert timelines of key events.
9. General audit function of borrower's cleared payments to mortgage company transactions notating discrepancies.
10. General audit function of Chapter 13 Trustee's cleared disbursements ledger to mortgage company transactions noting discrepancies. (if in bankruptcy)
11. Analysis to determine if payments have been applied in the order required in the governing loan documents.
12. Analysis to determine if Bankruptcy Trustee payments have been applied in the order required in the governing loan documents and/or as outlined in the Bankruptcy Plan.
13. Analyses to determine if contractual due dates, principal balance, escrow balance, late charge balance, fees balance, corporate advance balance and suspense balance reconcile to Proof of Claim, payoff statements, reinstatement quotes, foreclosure documents, motions for relief or any other compilation provided.
14. Analysis to determine if fees and charges assessed to the loan reconcile to Proof of Claim amounts, invoices for inspections, invoices for attorney fees and costs, payoff statements, reinstatement quotes, foreclosure dates, foreclosure documents, motions for relief or any other compilation provided.
15. Analysis of the conduct and use of suspense accounts.
16. Conduct breakout analyses of the application of pre-petition and post-petition payments along with breakouts of pre-petition and post-petition suspense accounts.
17. Conduct examination and analysis of servicing notes/communication logs comparing to financial transactions.
18. Prepare summaries of each analysis and audit performed notating type of analysis, methods used and findings.
19. Prepare report showing evidence examined, timelines, summary of each analysis performed and conclusions.

## Securitization Examination protocols and methodology

Forensic examination and analysis of mortgage loan securitization issues usually revolves around loans that are in foreclosure and/or bankruptcy.

1. Organize the evidence received and establish a chain of custody.
2. Establish working papers to document each step of the examination with notations of timelines and material items.
3. Touch and read each document, read all pleadings and depositions
4. If the owner of the loan is unknown, apply forensic analyses to determine which entity or entities are claiming ownership of the subject loan. This testing is conducted using a combination of subscription based analytics software and publically available search engines.
5. If the owner of the loan is known from the beginning or as a result of forensic testing a series of confirmatory tests are conducted to determine a "path" the loan has travelled. This involves again the use of subscription based analytics software and publically available search engines in order to determine who originally owned the loan, what entity or entities have owned the loan, when the entity or entities owned the loan and where the loan is presently owned. Some examples of this testing are the use of analytics software to determine if a loan is owned by a securitized trust. These analytics usually return confirmation of the loan, status of the loan, financial data as reported by the servicer to the trust and modification data. Other forms of testing sometimes involve the examination and analysis of mortgage loan schedules and remittance reports.
6. If a securitization is identified to be an entity tracking the subject loan as an asset the governing documents for that securitization are obtained normally from the Securities and Exchange Commission's EDGAR database.
7. The governing documents of the securitization are then analyzed most notably to outline the parties to the deal, the loan transfer requirements, the Trustee responsibilities and the Custodial responsibilities.
8. The evidence is then analyzed to determine if the loan documents comply with the governing documents of the securitization.
9. Forensic examination and analysis is then conducted to determine if the documents presented are fraudulent, fabricated or false.
10. A summary analysis of each piece of material evidence is completed outlining a description of the evidence, methods used in the analysis and conclusions reached as a result of the analyses.
11. Report issued showing evidence examined, timelines, ownership analysis, securitization background, summary analyses of the evidence and conclusions.

# Bernard Jay Patterson, CFE
## Case Listing

| Date | Case No. | Case Name | Court | Type |
|---|---|---|---|---|
| 2/2008 | 05-76651 | Rudisill v. Ocwen | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 6/2008 | CV-2007-1362 | Poe v. Wells Fargo Bank | Circuit Court, Garland County Arkansas | Consultant Report - Servicing |
| 7/2008 | 08-10204 | Wilson v. Deutsche Bank National Trust | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 8/2008 | 07-15945 | Brown v. Everhome Mortgage | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 10/2008 | 06-10042 | McFerrin v. Novastar Mortgage | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 11/2008 | 08-15647 | Noble v. First Franklin Loan Services | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 11/2008 | 06-15712 | Packard v. Franklin Credit Mgmt Corp | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 1/2009 | 06-10021 | Winbury v. PHH Mortgage Corp | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 2/2009 | 06-10926 | Parnell v. Homeq Servicing Corp. | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 6/2009 | 04-21774 | Bocksnick v. Dale Wood | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 9/2009 | 02-72983 | Fowler v. First State Bank | US Bankruptcy Court, Arkansas Western | Consultant Report - Servicing |
| 9/2009 | 05-10657 | Hubanks v. Bank of America | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 9/2009 | 04-17186 | Parrish v. Nationstar Mortgage | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 10/2009 | 09-03045 | Kirkley v. GMAC Mortgage, et al | US Bankruptcy Court, Texas Northern | Expert Report - Servicing |
| | | | | Mediation Testimony |
| | | | | Deposition - Servicing |
| 11/2009 | 05-75240 | Elder v. U.S. Bank | US Bankruptcy Court, Arkansas Eastern | Expert Report - Servicing |
| 12/2009 | 03-70592 | Bullard v. GMAC | US Bankruptcy Court, Arkansas Eastern | Expert Report - Servicing |
| 1/2010 | 09-74566 | Wallace v. Saxon Mortgage Services | US Bankruptcy Court, Arkansas Western | Consultant Report - Servicing |
| 2/2010 | Confidential | Confidential | Confidential | Expert Report - Servicing |
| 2/2010 | 06-34868 | Bowens v. GMAC | US Bankruptcy Court, Texas Northern | Consultant Report - Servicing |
| 2/2010 | 07-16048 | Montgomery v. Homecomings Financial | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 2/2010 | 03-21098 | Lee v. Fairbanks Capital | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 4/2010 | 05-14711 | Cummings v. EMC Mortgage Corp | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| | | | | Consultant Report - Securitization |
| 5/2010 | 07-01054 | Moffitt v. America's Servicing Company | US Bankruptcy Court, Arkansas Eastern | Expert Report - Servicing |
| | | | | Mediation Testimony - Servicing |
| 5/2010 | 09-70429 | Russell v. First Franklin | US Bankruptcy Court, Arkansas Western | Consultant Report - Servicing |
| 6/2010 | 09-01244 | Bateman v. Southern Development | US Bankruptcy Court, Arkansas Eastern | Expert Report - Servicing |
| | | | | Trial Testimony - Servicing |
| 7/2010 | 09-75096 | Hardister v. OneWest Bank, FSB | US Bankruptcy Court, Arkansas Western | Consultant Report - Securitization |
| 9/2010 | 09-C-I00116 | Bank of NY Mellon v. Thomas Sexton | Circuit Court, Bourbon County Kentucky | Consultant Report - Securitization |
| | | | | Affidavit of Opinion - Securitization |
| 9/2010 | 09-75455 | Ford v. US Bank, as Trustee | US Bankruptcy Court, Arkansas Western | Consultant Report - Servicing |
| | | | | Affidavit of Testimony - Servicing |
| 10/2010 | 09-12663 | Jackson v. Citimortgage | US Bankruptcy Court, Arkansas Eastern | Expert Report - Servicing |
| 10/2010 | 10-30318 | McCoy v. BAC Home Loans Servicing LP | US Bankruptcy Court, Tennessee Eastern | Consultant Report - Servicing |
| 11/2010 | CV-2010-6972 | Rosberry v. Aurora Loan Services, LLC | Circuit Court, Jefferson County Arkansas | Affidavit of Testimony - Servicing |
| 11/2010 | CV09-5025272 | BAC Home Loans Servicing v. Spinelli | Circuit Court, State of Connecticut | Consultant Report - Servicing |
| 12/2010 | 10-73345 | Creel v. Chase Home Finance, et al | US Bankruptcy Court, Arkansas Western | Consultant Report - Servicing |
| | | | | Consultant Report - Securitization |

# Bernard Jay Patterson, CFE
## Case Listing

| Date | Case No. | Case Name | Court | Type |
|---|---|---|---|---|
| 1/2011 | 07-51925 | Mattox v. Wells Fargo Bank | US Bankruptcy Court, Kentucky Eastern | Expert Report - Servicing |
| | | | | Expert Report - Securitization |
| 1/2011 | 10-37569 | Mausbach v. Aurora Loan Services | US Bankruptcy Court, California Central | Consultant Report - Securitization |
| | | | | Affidavit of Testimony - Securitization |
| 1/2011 | 09-23161 | Pangle v. GMAC Mortgage/Deutsche Bank | US Bankruptcy Court, New York Southern | Consultant Report - Servicing |
| | | | | Consultant Report - Securitization |
| 1/2011 | 10-14600 | In Re: Landmark Utilities, Inc. | US Bankruptcy Court, Arkansas Eastern | Expert-Named |
| 1/2011 | 09-01320 | Cleveland v. Wilshire Credit | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Servicing |
| 2/2011 | 08-11442 | Aurora Loan Svcs v. Rick Phillips, et al | US Bankruptcy Court, Alabama Southern | Expert Report - Securitization |
| 2/2011 | 08-11442 | Aurora Loan Svcs v. Rick Phillips, et al | US Bankruptcy Court, Alabama Southern | Expert Report - Securitization |
| 2/2011 | 10-19328 | In Re: Amal S. Tadros | US Bankruptcy Court, California Southern | Consultant Report - Securitization |
| | | | | Affidavit of Testimony - Securitization |
| 2/2011 | 10-52208 | Suedkamp v. BAC Home Loans Servicing LP | US Bankruptcy Court, Kentucky Eastern | Affidavit of Testimony - Securitization |
| 3/2011 | 09-17351 | Dorothy Dean | US Bankruptcy Court, Arkansas Eastern | Consultant Report - Securitization |
| 4/2011 | 07-51925 | Mattox v. Wells Fargo Bank | US Bankruptcy Court, Kentucky Eastern | Deposition Testimony - Servicing |
| | | | | Deposition Testimony - Securitization |
| 4/2011 | 08-68896 | HSBC Bank USA as Trustee v. Blanco | Circuit Court, 11th Dist, Florida | Affidavit of Testimony - Securitization |
| 4/2011 | 10-22652 | Taylor v. HSBC Bank USA as Trustee | US Bankruptcy Court, New York Southern | Consultant Report - Servicing |
| | | | | Consultant Report - Securitization |
| 5/2011 | 11-00466 | Lopez v. GMAC Mortgage | US Bankruptcy Court, California Southern | Affidavit of Testimony - Securitization |
| 5/2011 | 11-00466 | Lopez v. GMAC Mortgage | US Bankruptcy Court, California Southern | Consultant Report - Securitization |
| 5/2011 | 08-03017 | Fitzpatrick v. Countrywide Home Loans | US Bankruptcy Court, Florida Northern | Expert Report - Servicing |
| 5/2011 | CV2009-902747 | Wells Fargo Bank v. Wendell Nichols et al | Circuit Court, Jefferson County Alabama | Affidavit of Testimony - Securitization |
| 5/2011 | 86043505 | Deutsche Bank et al v. Chia Ling Chow Watson | Circuit Court, 17th Dist, Broward Cty, Florida | Affidavit of Testimony - Securitization |
| 6/2011 | 10-30660 | Kohler v. Astoria FSB, et al | US Bankruptcy Court, Pennsylvania Eastern | Consultant Report - Servicing |
| 6/2011 | 08-952CA | BONY et al v. Alfred D. Hooker | Circuit Court, Clay County Florida | Consultant Report - Securitization |
| | | | | Affidavit of Testimony - Securitization |
| 6/2011 | CV-08-90056 | Scott v Ocwen Loan Servicing, et al | Circuit Court, Clarke County Alabama | Affidavit of Testimony - Servicing |
| 6/2011 | 01-01249 | Walter Lacey v. BAC Home Loans Servicing, et al | US Bankruptcy Court, Massachusetts, Eastern | Expert Report - Securitization |
| 7/2011 | CV-09-600339-S | Aurora Loan Services v. Basak-Smith | Superior Court, J.D. of Fairfield, CT | Consultant Report - Servicing |
| | | | | Affidavit of Testimony - Securitization |
| 7/2011 | 10-22652 | Taylor v. HSBC Bank USA as Trustee | US Bankruptcy Court, New York Southern | Affidavit of Testimony - Securitization |
| 7/2011 | | Lancaster v. JP Morgan Chase | | Consultant Report - Securitization |
| 8/2011 | 08-03017 | Fitzpatrick v. Countrywide Home Loans | US Bankruptcy Court, Florida Northern | Deposition Testimony - Servicing |
| 8/2011 | 10-22971 | In Re: Robert F. Russell, et al | US Bankruptcy Court, Connecticut | Consultant Report - Securitization |
| | | | | Affidavit of Testimony - Securitization |
| 8/2011 | 06-17053 | In Re: Roselle Tyson | US Bankruptcy Court, New Jersey | Expert Report - Servicing |
| 8/2011 | 10-30668 | JPM Chase, et al v. Stephen A. Vasbinder, et al | US Bankruptcy Court, Maryland | Consultant Report - Securitization |
| | | | | Consultant Report - Servicing |
| 8/2011 | | Leanna Berger | | Consultant Report - Securitization |
| | | | | Consultant Report - Servicing |
| 8/2011 | CV507589 | Lancaster v. JP Morgan Chase | Superior Court, California, San Mateo | Affidavit of Testimony - Securitization |

# Bernard Jay Patterson, CFE
## Case Listing

| Date | Case No. | Case Name | Court | Type |
|------|----------|-----------|-------|------|
| 8/2011 | 10-73345 | Creel v. Chase Home Finance, et al | US Bankruptcy Court, Arkansas Western | Expert Report - Securitization |
| | | | | Expert Report - Servicing |
| 9/2011 | 08-12339 | AHMSI v. Michelle Dorset | US Bankruptcy Court, Delaware | Consultant Report - Securitization |
| 9/2011 | YC060960 | Panitz v. Central Mortgage, et al | Superior Court, Los Angeles County | Expert Report - Securitization |
| | | | | Deposition Testimony - Securitization |
| 9/2011 | 09-10570 | Deutsche Bank et al v. Herman Silberstein, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization |
| 9/2011 | 08-03017 | Fitzpatrick v. Countrywide Home Loans | US Bankruptcy Court, Florida Northern | Expert Witness Designation Order |
| 10/2011 | 11-21150 | In Re: Dorothy Lee Johnson, et al | US Bankruptcy Court, Maryland | Consultant Report - Securitization |
| 10/2011 | 10-CH-54918 | Deutsche Bank et al v. John Hughes, et al | Circuit Court, Cook County, Illinois | Consultant Report - Securitization |
| 10/2011 | 11-20844 | In Re: Wilton | US Bankruptcy Court, California Central | Consultant Report - Securitization |
| 10/2011 | 09-41034 | In Re: L. Bliss | US Bankruptcy Court, North Carolina | Consultant Report - Servicing |
| 11/2011 | 0904S276CA2 | BONY et al v. Efren Garcia, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization |
| 11/2011 | 10-01158 | Cummings v. EMC Mortgage Corp | US Bankruptcy Court, Arkansas Eastern | Expert Report - Servicing |
| 11/2011 | 10-15738 | In Re: E. Kercado | US Bankruptcy Court, Souther District, New York | Consultant Report - Securitization |
| 12/2011 | 11-15765 | In Re: Richard Lee Stanley | US Bankruptcy Court, California Southern | Consultant Report - Securitization |
| 12/2011 | 08-33567 | US Bank as Trustee, et al v. David Auerbach, et al | Circuit Court, Dade County, Florida | Consultant Report - Securitization |
| 12/2011 | 8023811 | Bank of New York v. James A. Jaroscak, et al | Circuit Court, Broward County, Florida | Consultant Report - Securitization |
| 12/2011 | 10CV00982 | Norman Ziccardi, et al v. BAC Home Loan Svc LP | US District Court, Ohio Northern | Expert Report - Servicing |
| 12/2011 | 11AP00027 | Rick A Phillips v. Aurora Loan Services LLC, et al | US Bankruptcy Court, Alabama Southern | Affidavit of Testimony - Securitization |
| 1/2012 | 11CV0392 | Clitmortgage v. William Gibbs, et al | District Court, Sedgwick County, Kansas | Expert Report - Securitization |
| | | | | Expert Report - Securitization |
| 2/2012 | 08-08863CWF | BONY et al v. Antonio J. Martinez, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization |
| 2/2012 | 10-12856 | In re: George S. Bevins, Debtor | US Bankruptcy Court, Northern Dist., New York | Expert Report - Securitization |
| 3/2012 | 08-17010 | IndyMac Bank fsb v. Mohammed Rishid, et al | Supreme Court, Queens County, New York | Consultant Report - Securitization |
| 3/2012 | None | In re: Debra Asher | | Consultant Report - Securitization |
| 3/2012 | 11-00415 | Oberg v. Bank of America, et al | US District Court, Mississippi, Southern | Expert Report - Securitization |
| 3/2012 | 11-00419 | Hopkins v. Bank of America, et al | US District Court, Mississippi, Southern | Expert Report - Securitization |
| 3/2012 | 30-2011-00497899 | Aurora Loan Services v. Daryoush M. Jahromi | Superior Court, Orange County, California | Affidavit of Testimony - Securitization |
| 4/2012 | 11-25240CA27 | Deutsche Bank as trustee, et al v. Maria De Brito, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization |
| 4/2012 | 52681/2012 | Deutsche Bank as trustee, et al v. Anne Auld, et al | Supreme Court, Westchester County, New York | Consultant Report - Securitization |
| 4/2012 | 12SP0413 | In re: Andrew Ksajla, et al | General Court, Union County, North Carolina | Consultant Report - Securitization |
| 4/2012 | 09-83157CA32 | Bank of New York, et al v. Robert I. Granoff, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization |
| 4/2012 | SACV111877 | Daniel Tarver v. OneWest Bank fsb, et al | US District Court, Central District, California | Affidavit of Testimony - Servicing |
| 5/2012 | BC452571 | Alla Furman v. Bank of America, et al | Superior Court, Los Angeles County, California | Affidavit of Testimony - Securitization |
| 5/2012 | 10-17143 | WVMFL v. Raja G. Ogirala, et al | Supreme Court, Westchester County, New York | Consultant Report - Securitization |
| 5/2012 | N11103097 | Deutsche Bank, et al v. Eugene Moss | Superior Court, Castle County, Delaware | Consultant Report - Securitization |
| 5/2012 | 13-2009-CA-031153 | Deutsche Bank as trustee, et al v. Rebecca Brossett, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization |

Bernard Jay Patterson, CFE

Case Listing

| Date | Case No. | Case Name | Court | Type |
|------|----------|-----------|-------|------|
| 5/2012 | 10-73345 | Jackie Creel, et al v. Chase Home Finance, et al | US Bankruptcy Court, Western Dist, Arkansas | Trial Testimony - Servicing |
| | | | | Trial Testimony - Securitization |
| 6/2012 | 2010-CA-011682 | Citimortgage v. O'Neill Cattnell, et al | Circuit Court, Duval County, Florida | Consultant Report - Servicing |
| 6/2012 | 2011CA015437 | Regions Bank, et al v. Alvin and Saundra Karp | Circuit Court, Miami Dade County, Florida | Expert Report - Securitzation |
| 6/2012 | 2011CA015437 | Regions Bank, et al v. Alvin and Saundra Karp | Circuit Court, Miami Dade County, Florida | Deposition Testimony - Securitization |
| 6/2012 | 2011100CV11 | Carolyn Sims v. Wells Fargo Bank as Trustee, et al | Circuit Court, Jones County, Mississippi | Expert Report - Securitization |
| 6/2012 | 1188SU20 | Bank of America NA v. Policarpo Dacruz, et al | Trial Court, Commonwealth of Mass. | Affidavit of Testimony - Securitization |
| 6/2012 | 11CV2540 | Mark Sanders, et al v. CitiMortgage Inc. | US District Court, Kansas | Expert Report - Servicing |
| 7/2012 | S02010CA004187 | Deutsche Bank National Trust Co as Trustee v. Adam Bram | Circuit Court, Palm Beach County, Florida | Consultant Report - Securitization |
| 7/2012 | 11CV395SB | James P. Scheider Jr. et al v. Deutsche Bank NTC as Trustee | US District Court, South Carolina | Consultant Report - Securitization |
| | | | | Affidavit of Testimony - Securitization |
| 7/2012 | 11-03011 | Barrett L Alexander v. Chase Home Finance, et al | US Bankruptcy Court, Alabama, Middle | Consultant Report - Servicing |
| 8/2012 | 10-28392-ca-24 | Bank of New York as Trustee v. Bishan Seneviratne, et al | Circuit Court, Miami Dade County, Florida | Consultant report - Securitization |
| | | | | Affidavit of Testimony - Securitization |
| 8/2012 | 104580 | Bethany Moura v. OneWest Bank, FSB | Superior Court, State of Rhode Island | Consultant Report - Securitization |
| | | | | Affidavit of Testimony - Securitization |
| 9/2012 | 30-2011-00451386 | Donald Distefano v. HSBC Bank USA as Trustee, et al | Superior Court, Orange County, California | Trial Testimony - Securitization |
| 9/2012 | 11-cv-00420 | Gloria Patton v. American Home Mtg Servicing, et al | US District Court, Mississippi, Southern | Expert Report - Securitization |
| 10/2012 | 111826 | William Bernardino, et al v. OneWest Bank FSB, et al | Superior Court, State of Rhode Island | Consultant Report - Securitization |
| | | | | Affidavit of Testimony - Securitization |
| 10/2012 | 10-06518CA22 | Deutsche Bank as Trustee, et al v. Jorge Rodriguez, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization |
| 10/2012 | 884307 | Bank of New York as Trustee v. Jose Espejo, et al | Supreme Court, State of New York, Queens | Consultant Report - Securitization |
| 10/2012 | 09-67991 | Central Mortgage Co v. Vyacheslav Shmidov, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization |
| 11/2012 | CV 2008-691 | Daniel W Castle, et al v. American Home Mtg Servicing, etal | Circuit Court, Crittenden County, State of Arkansas | Consultant Report - Servicing |
| | | | | Consultant Report - Securitization |
| 11/2012 | 29887 | Bank of New York as Trustee et al v. Carlos Ramirez, et al | Supreme Court, State of New York, Queens | Consultant Report - Securitization |
| 11/2012 | 09-8807-CA | Bank of New York as Trustee et al v. Scott L. Sorenson et al | Circuit Court, Collier County, State of Florida | Consultant Report - Securitization |
| 11/2012 | 10-3052-CA | Citibank as Trustee, et al v. Scott L. Sorenson et al | Circuit Court, Collier County, State of Florida | Consultant Report - Securitization |
| 11/2012 | CV-2009-902322 | GMAC Mtg LLC, et al v. Derrius E. Silmon, et al | Circuit Court, Jefferson County, State of Alabama | Affidavit of Testimony - Securitization |
| 11/2012 | 09045276CA | BONY et al v. Efren Garcia, et al | Circuit Court, Miami Dade County, Florida | Expert Report - Securitization |
| 12/2012 | 12-656686J | Jeffrey LaPour et al v. OneWest Bank FSB, et al | District Court, Clark County Nevada | Expert Report - Securitization |
| 1/2013 | 10-6935CA | US Bank as Trustee, et al v. Dana H Giles and David Giles | Circuit Court, Collier County, State of Florida | Consultant Report - Securitization |
| 1/2013 | 10-CP07-1255 | Detusche Bank NTC as Trustee et al v. Thomas Viljac, et al | Court of Common Please, South Carolina | Consultant Report - Securitization |
| 1/2013 | CV2010-732 | David Corey v. BAC Home Loans Servicing LP | Circuit Court, Jefferson County, State of Alabama | Affidavit of Testimony - Securitization |
| 1/2013 | CV2010-901266 | BONY Mellon as Trustee, et al v. John M. Ziegler III, et al | Circuit Court, Mobile County, State of Alabama | Affidavit of Testimony - Servicing |
| 1/2013 | 30-2012-00584366 | Paul Hoffman v. JPMorgan Chase Bank, NA, et al | Superior Court, Orange County, California | Affidavit of Testimony - Securitization |
| 1/2013 | CV2012-00480 | Edwin Justin v USBank NA as Trustee for LXS 2006-14N | Superior Court, Coconino County, Arizona | Expert Report - Securitization |

# Bernard Jay Patterson, CFE
## Case Listing

| Date | Case No. | Case Name | Court | Type | |
|------|----------|-----------|-------|------|---|
| 2/2013 | 11-CV-2540 | Mark Sanders, et al v. CitiMortgage Inc. | US District Court, District of Kansas | Expert Report - Servicing-Supplemental | |
| 2/2013 | 10-CP01-5907 | HSBC Bank USA as Trustee et al v. S Russell Fielden, et al | Court of Common Please, South Carolina | Deposition Testimony - Servicing | |
| 3/2013 | 09-44280-CA-10 | Deutsche Bank NTC as Trustee et al v. E Caballeriro, et al | Circuit Court, Miami Dade County, Florida | Consultant Report - Securitization | |
| 3/2013 | 09-74910-CA-10 | Deutsche Bank Trust Co et al v. Jason Savitz, et al | Circuit Court, Miami Dade County, Florida | Expert Report - Securitization | |
| 4/2013 | 11-CV-0392 | CitiMortgage v Williams Gibbs, et al | District Court, Sedgwick County, Kansas | Expert Report - Securitization | |
| 4/2013 | 2011-CA-13862 | Bank of America, et al v. Hender R. Bermudez, et al | Circuit Court, Orange County, Florida | Deposition Testimony - Servicing | |
| 4/2013 | PC 2010-5902 | Rafael Genao v. Litton Loan Services, et al | Superior Court, State of Rhode Island | Expert Report - Securitization | |
| 5/2013 | 12-656686-J | Lapour, et al v. Onewest Bank, FSB, et al | District Court, Clark County Nevada | Expert Report - Securitization | |
| 5/2013 | 2011-CP-10-1060 | Deutsche Bank et al v. Scott Heinrich, et al | Court of Common Please, South Carolina | Trial Testimony - Securitization | |
| 5/2013 | 25756-07 | HSBC Bank USA NA et al v. Carlos Ramirez, et al | Supreme Court, County of Queens, New York | Consultant Report - Securitization | Deposition |
| 5/2013 | CACE1121448 | Bank of NY Mellon et al v. Vicki Lee Grusby, et al | Circuit Court, Broward County, Florida | Expert Report - Securitization | |
| 6/2013 | 12-30614-RAG | Jeffrey Y Howes v. Wells Fargo Bank NA | US Bankruptcy Court, Maryland | Expert Report - Servicing | |
| 6/2013 | 12-CV-311-HSO | Charles Neel et al v. Fannie Mae, et al | US District Court, Mississippi, Southern | Expert Report - Servicing | |
| 6/2013 | 10-11643-SMB | In Re: Marcelino Kassiano, et al | US Bankruptcy Court, New York Southern | Affidavit of Testimony - Securitization | |
| 7/2013 | 41386/2009 | US Bank NA et al v. Edward A Christensen, et al | Supreme Court, County of Suffolk, New York | Expert Report - Securitization | |
| 7/2013 | N11L-03-097 | Deutsche Bank et al, v. Eugene Moss, et al | Superior Court, County of New Castle, Maryland | Expert Report - Securitization | |
| 7/2013 | F-013537-12 | Wells Fargo Bank v. Cory Friedman, et al | Superior Court, Monmouth County, New Jersey | Affidavit of Testimony - Securitization | |
| 7/2013 | RE-09-00056 | BONY as Trustee, et al v. Robert J. McKenna, et al | District Court, State of Maine | Affidavit of Testimony - Securitization | |
| 8/2013 | 10-32353-CA23 | BONYM as Trustee et al v. Melissa M. Fung, et al | Circuit Court, Miami Dade County, Florida | Expert Report - Securitization | Deposition Testimony - Securitization |
| 8/2013 | 08-31733 | BONY as Trustee, et al v. Richard Von Houtman, et al | Circuit Court, Broward County, Florida | Expert Report - Securitization | |
| 9/2013 | 12-CV-311-HSO | Charles Neel et al v. Fannie Mae, et al | US District Court, Mississippi, Southern | Deposition Testimony - Servicing | |
| 10/2013 | 2009-CA-10636 | Deutsche Bank et al, v. Lori A. Pheasant, et al | Circuit Court, Collier County, State of Florida | Expert Report - Securitization | |
| 10/2013 | 12-03313 | Bank of America NA v. Fulcrum Enterprises LLC | US District Court, Texas, Southern | Expert Report - Securitization | |
| 10/2013 | 12054-08 | HSBC Bank USA NA et al v. Anibal Nieves, et al | Supreme Court, County of Nassau, New York | Expert Report - Securitization | |
| 10/2013 | SPRDC-RE-12-79 | US Bank NA v. Angie and Daniel Axelsen | District Court, State of Maine | Affidavit of Testimony - Securitization | |
| 10/2013 | 08-31733 | BONY as Trustee, et al v. Richard Von Houtman, et al | Circuit Court, Broward County, Florida | Deposition Testimony - Securitization | |
| 11/2013 | 131881/09 | Deutsche Bank, et al v. Lale Karakus, et al | Supreme Court, County of Richmond, New York | Expert Report - Securitization | |
| 12/2013 | 12H77SP003422 | Fannie Mae v. Debra Brown | Housing Court, Commonwealth of Massachusetts | Affidavit of Testimony - Securitization | |
| 1/2014 | 001686/2006 | JPMorgan Chase Bank et al v. Frederick W Butler, et al | Supreme Court, County of Kings, New York | Trial Testimony - Securitization | |
| 1/2014 | 9054350 | Wells Fargo Bank NA et al v. Robert A Kusher, et al | Circuit Court, Broward County, Florida | Expert Report - Securitization | |
| 2/2014 | | CitiMortgage et al v. Gary R Parker, et al | Circuit Court, County of Kane, Illinois | Affidavit of Testimony - Securitization | |
| 3/2014 | 32528/2012 | US Bank NA v. Luc A Fednard, et al | Supreme Court, County of Suffolk, New York | Expert Report - Securitization | |
| 3/2014 | 13-20436 | In re: Thomas Chennadu, Debtor | US District Court, Connecticut, Southern | Affidavit of Testimony - Securitization | |
| 4/2014 | 12-CV-311-HSO | Charles Neel et al v. Fannie Mae, et al | US District Court, Mississippi, Southern | Trial Testimony - Servicing | |
| 4/2014 | CV2012-903199 | Wells Fargo Bank na v. Geraldine W Smith | Circuit Court, County of Jefferson, Alabama | Affidavit of Testimony - Securitization | |
| 5/2014 | 12CV012528 | RBS Citizens NA v. Peter J Kondos, et al | Circuit Court, County of Milwaukee, Wisconsin | Expert Report - Servicing | |

## Bernard Jay Patterson, CFE
### Case Listing

| Date | Case No. | Case Name | Court | Type |
|------|----------|-----------|-------|------|
| 5/2014 | 2012CV01230 | Deutsche Bank et al v. Melanie Fresch, et al | Court of Common Pleas, County of Portage, Ohio | Affidavit of Testimony - Securitization |

# ATTACHMENT #2

# Analysis of Mortgage Loan

Name-Ishee
Description
Mortgage Company

**Current Case Info**

| Case Number: | |
| Filing Date: | |
| Dismiss Date: | |
| Discharge Date: | |

**Prior Case Info**

| Case Number: | |
| Filing Date: | |
| Dismiss Date: | |
| Discharge Date: | |

**Key Dates**

**Code Legend**

| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |

## Transaction Data / Payment Application Accounts and Balances

| LINE | Code | Transaction Description | Date Pmt Rec'd / Trans Date | Date Due | Amount Received | To/From Principal | Principal Balance | To/From Interest | Interest Balance | To/From Escrow | Escrow Balance | Late Charge | To/From Late Charge | To/From Fees | Fees Balance | To/From Unapplied Funds | Unapplied Funds Balance | To/From Suspense | Suspense Balance | To/From Corporate Advance | Corporate Advance Balance | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | Beginning Balance | | | $0.00 | $0.00 | $97,599.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 2 | | Single Receipt | 9/5/2008 | | $353.54 | $0.00 | $97,599.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 3 | | Payment | 9/19/2008 | 10/1/2008 | $353.54 | ($92.51) | $97,507.39 | ($589.67) | $0.00 | ($24.90) | ($24.90) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 4 | | Single Receipt | 10/3/2008 | | $353.54 | $0.00 | $97,507.39 | $0.00 | $0.00 | $0.00 | ($24.90) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 5 | | Payment | 10/17/2008 | 11/1/2008 | $353.54 | ($93.07) | $97,414.32 | ($589.11) | $0.00 | ($24.90) | ($49.80) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 6 | | Curtailment | 10/31/2008 | | $353.54 | ($353.54) | $97,060.78 | $0.00 | $0.00 | $0.00 | ($49.80) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | All to principal |
| 7 | | Single Receipt | 11/24/2008 | | $353.54 | $0.00 | $97,060.78 | $0.00 | $0.00 | $0.00 | ($49.80) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 8 | | Payment | 11/28/2008 | 12/1/2008 | $353.54 | ($95.77) | $96,965.01 | ($586.41) | $0.00 | ($24.90) | ($74.70) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 9 | | Single Receipt | 12/12/2008 | | $353.54 | $0.00 | $96,965.01 | $0.00 | $0.00 | $0.00 | ($74.70) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 10 | | Payment | 12/29/2008 | 1/1/2009 | $353.54 | ($96.35) | $96,868.66 | ($585.83) | $0.00 | ($24.90) | ($99.60) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 11 | | Single Receipt | 1/9/2009 | | $353.54 | $0.00 | $96,868.66 | $0.00 | $0.00 | $0.00 | ($99.60) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 12 | | Payment | 1/23/2009 | 2/1/2009 | $353.54 | ($96.93) | $96,771.73 | ($585.25) | $0.00 | ($24.90) | ($124.50) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 13 | | Single Receipt | 2/6/2009 | | $353.54 | $0.00 | $96,771.73 | $0.00 | $0.00 | $0.00 | ($124.50) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 14 | | Payment | 2/20/2009 | 3/1/2009 | $353.54 | ($97.52) | $96,674.21 | ($584.66) | $0.00 | ($24.90) | ($149.40) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 15 | | Single Receipt | 3/6/2009 | | $353.54 | $0.00 | $96,674.21 | $0.00 | $0.00 | $0.00 | ($149.40) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 16 | | Single Receipt | 3/20/2009 | | $353.54 | $0.00 | $96,674.21 | $0.00 | $0.00 | $0.00 | ($149.40) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($353.54) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 17 | | Payment | 4/3/2009 | 4/1/2009 | $366.51 | ($98.11) | $96,576.10 | ($584.07) | $0.00 | ($24.90) | ($174.30) | $0.00 | $0.00 | $0.00 | $0.00 | ($12.97) | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 18 | | Payment | 4/17/2009 | 5/1/2009 | $366.51 | ($98.70) | $96,477.40 | ($583.48) | $0.00 | ($24.90) | ($199.20) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | Opt premiums charged - Why? |
| 19 | | Curtailment | 5/1/2009 | | $366.51 | ($366.51) | $96,110.89 | $0.00 | $0.00 | $0.00 | ($199.20) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 20 | | Single Receipt | 5/15/2009 | | $366.51 | $0.00 | $96,110.89 | $0.00 | $0.00 | $0.00 | ($199.20) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 21 | | Payment | 5/29/2009 | 6/1/2009 | $366.51 | ($101.51) | $96,009.38 | ($580.67) | $0.00 | ($24.90) | ($224.10) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 22 | | Single Receipt | 6/12/2009 | | $366.51 | $0.00 | $96,009.38 | $0.00 | $0.00 | $0.00 | ($224.10) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 23 | | Payment | 6/26/2009 | 7/1/2009 | $366.51 | ($102.12) | $95,907.26 | ($580.06) | $0.00 | ($24.90) | ($249.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 24 | | Single Receipt | 7/10/2009 | | $366.51 | $0.00 | $95,907.26 | $0.00 | $0.00 | $0.00 | ($249.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 25 | | Payment | 7/24/2009 | 8/1/2009 | $366.51 | ($102.74) | $95,804.52 | ($579.44) | $0.00 | ($24.90) | ($273.90) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($366.51) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 26 | | Curtailment | 7/24/2009 | | $12.97 | ($12.97) | $95,791.55 | $0.00 | $0.00 | $0.00 | ($273.90) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |

## Transaction Data

## Payment Application, Accounts and Balances

| Unit | Code | Transaction Description | Date Pmt Rec'd / Trans Date | Data Due | Amount Received | To Prin Principal | Principal | To Prin Interest | To Prin Escrow | Escrow Balance | To Prin Late Charge | Late Charge Balance | To Prin Fee | Fee Balance | To Prin Unapplied Funds #1 | Unapplied Funds #1 Balance | To Prin Corporate Advance | Corporate Advance Balance | Comment/FC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 27 | | Single Receipt | 8/7/2009 | | $353.54 | $0.00 | $95,791.55 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($351.72) | $353.54 | ($353.54) | $0.00 | $0.00 | |
| 28 | | Payment | 8/21/2009 | 9/1/2009 | $353.54 | ($103.44) | $95,688.11 | ($78.74) | $0.00 | $0.00 | $0.00 | $0.00 | ($24.90) | ($376.62) | ($353.54) | $0.00 | $0.00 | $0.00 | |
| 29 | | Single Receipt | 9/4/2009 | | $353.54 | $0.00 | $95,688.11 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($376.62) | $353.54 | ($353.54) | $0.00 | $0.00 | |
| 30 | | Payment | 9/18/2009 | 10/1/2009 | $353.54 | ($104.06) | $95,584.05 | ($78.12) | $0.00 | $0.00 | $0.00 | $0.00 | ($24.90) | ($401.52) | ($353.54) | $0.00 | $0.00 | $0.00 | |
| 31 | | Single Receipt | 10/2/2009 | | $353.54 | $0.00 | $95,584.05 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($401.52) | $353.54 | ($353.54) | $0.00 | $0.00 | |
| 32 | | Payment | 10/16/2009 | 11/1/2009 | $353.54 | ($104.69) | $95,479.36 | ($77.49) | $0.00 | $0.00 | $0.00 | $0.00 | ($24.90) | ($426.42) | ($353.54) | $0.00 | $0.00 | $0.00 | |
| 33 | | Curtailment | 10/30/2009 | | $353.54 | ($353.54) | $95,125.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($426.42) | ($353.54) | $0.00 | $0.00 | $0.00 | |
| 34 | | Single Receipt | 11/13/2009 | | $353.54 | $0.00 | $95,125.82 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($426.42) | $353.54 | ($353.54) | $0.00 | $0.00 | |
| 35 | | Payment | 11/27/2009 | 12/1/2009 | $353.54 | ($107.46) | $95,018.36 | ($74.72) | $0.00 | $0.00 | $0.00 | $0.00 | ($24.90) | ($451.32) | ($353.54) | $0.00 | $0.00 | $0.00 | |
| 36 | | Single Receipt | 12/11/2009 | | $353.54 | $0.00 | $95,018.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($451.32) | $353.54 | ($353.54) | $0.00 | $0.00 | |
| 37 | | Payment | 12/28/2009 | 1/1/2010 | $353.54 | ($108.11) | $94,910.25 | ($74.07) | $0.00 | $0.00 | $0.00 | $0.00 | ($24.90) | ($476.22) | $353.54 | $0.00 | $0.00 | $0.00 | Payoff Statement |
| 38 | | Fee Billed | 1/8/2010 | | $0.00 | $0.00 | $94,910.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($476.22) | $0.00 | $0.00 | $20.00 | $20.00 | |
| 39 | | Single Receipt | 1/8/2010 | | $353.54 | $0.00 | $94,910.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($476.22) | $353.54 | ($353.54) | $0.00 | $20.00 | |
| 40 | | Payment | 1/22/2010 | 2/1/2010 | $353.54 | ($108.76) | $94,801.49 | ($73.42) | $0.00 | $0.00 | $0.00 | $0.00 | ($24.90) | ($501.12) | $353.54 | $0.00 | $0.00 | $20.00 | Corp Adv to Escrow |
| 41 | | Fee Billed | 1/22/2010 | | $0.00 | $0.00 | $94,801.49 | $0.00 | $0.00 | $2,595.00 | $0.00 | $0.00 | $0.00 | ($501.12) | $0.00 | $0.00 | $0.00 | $20.00 | |
| 42 | | Fee Collected | 1/25/2010 | | $0.00 | $0.00 | $94,801.49 | $0.00 | $0.00 | $2,595.00 | $0.00 | $0.00 | $0.00 | ($501.12) | $0.00 | $0.00 | $0.00 | $20.00 | |
| 43 | | Single Receipt | 2/5/2010 | | $353.54 | $0.00 | $94,801.49 | $0.00 | $0.00 | $2,595.00 | $0.00 | $0.00 | $0.00 | ($501.12) | $353.54 | ($353.54) | $0.00 | $20.00 | |
| 44 | | Payment | 2/19/2010 | 3/1/2010 | $0.00 | ($109.42) | $94,692.07 | ($72.76) | $0.00 | $2,595.00 | $0.00 | $0.00 | ($24.90) | ($526.02) | $353.54 | $0.00 | $0.00 | $20.00 | |
| 45 | | Receipt for Escrow | 3/4/2010 | | $0.00 | $0.00 | $94,692.07 | $0.00 | ($2,595.00) | $2,595.00 | $0.00 | $0.00 | $0.00 | ($526.02) | $0.00 | $0.00 | $0.00 | $20.00 | |
| 46 | | Single Receipt | 4/12/2010 | 4/1/2010 | $353.54 | $0.00 | $94,692.07 | $0.00 | $0.00 | $2,595.00 | $0.00 | $0.00 | $0.00 | ($526.02) | ($354.54) | $0.00 | $0.00 | $20.00 | |
| 47 | | UF1 to UF2 | 5/5/2010 | | $0.00 | $0.00 | $94,692.07 | $0.00 | $0.00 | $2,595.00 | $0.00 | $0.00 | $0.00 | ($526.02) | $0.00 | $0.00 | $0.00 | $20.00 | 354.54 from UF1 to UF2 |
| 48 | | Payment | 5/5/2010 | 5/1/2010 | $0.00 | ($110.08) | $94,581.99 | ($72.10) | $0.00 | $2,595.00 | $0.00 | $0.00 | ($24.90) | ($550.92) | $0.00 | $0.00 | $0.00 | $20.00 | |
| 49 | | Payment | 5/5/2010 | | $707.08 | $0.00 | $94,581.99 | $0.00 | $0.00 | $2,595.00 | $0.00 | $0.00 | $0.00 | ($550.92) | $354.54 | $0.00 | $0.00 | $20.00 | |
| 50 | | Late Charge | 5/25/2010 | | $399.82 | ($110.75) | $94,471.24 | ($71.43) | $0.00 | $2,595.00 | $27.28 | $27.28 | $0.00 | ($575.82) | $0.00 | $0.00 | $0.00 | $20.00 | |
| 51 | | Late Charge | 5/25/2010 | | $0.00 | $0.00 | $94,471.24 | $0.00 | $0.00 | $2,595.00 | $0.00 | $27.28 | $0.00 | ($575.82) | $0.00 | ($20.00) | $0.00 | $20.00 | |
| 52 | | Payment | 6/25/2010 | 6/1/2010 | $707.08 | ($111.42) | $94,359.82 | ($70.76) | $0.00 | $2,595.00 | $0.00 | $27.28 | ($24.90) | ($600.72) | $0.00 | $0.00 | $0.00 | $20.00 | |
| 53 | | Payment | 7/13/2010 | 7/1/2010 | $352.54 | $0.00 | $94,359.82 | $0.00 | $0.00 | $2,595.00 | $0.00 | $27.28 | $0.00 | ($600.72) | ($352.54) | $0.00 | $0.00 | $20.00 | |
| 54 | | Payment | 7/16/2010 | | $354.54 | ($112.09) | $94,247.73 | ($70.09) | $0.00 | $2,595.00 | $0.00 | $27.28 | ($24.90) | ($625.62) | $352.54 | $0.00 | $0.00 | $20.00 | |
| 55 | | Fee Billed | 7/19/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | $0.00 | ($20.00) | $0.00 | Force Placed Hazard Insurance |
| 56 | | Fee Collected | 7/20/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | $0.00 | $0.00 | $0.00 | |
| 58 | | Fee Billed | 9/30/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | $0.00 | $20.00 | $20.00 | Payoff Statement |
| 59 | | Fee Billed | 10/8/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | $0.00 | $11.25 | $31.25 | Property Inspection |
| 60 | | Payoff Statement #2 | 10/8/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | $0.00 | $0.00 | $31.25 | |
| 61 | | Fee Billed | 10/26/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | $13.00 | $13.00 | $44.25 | Property Inspection |

Copyright (c) 2011-2012 Full Disclosure, LLC

## Transaction Data — Payment Application Accounts and Balances

| LINE | Code | Transaction Description | Date Post Rec'd / Trans Date | Date Due | Amount Received | To/From Principal | Principal Balance | To/From Escrow | Rec To Escrow | Escrow Balance | To/From Late Charge | Late Charge Balance | To/From Susp | Susp Balance | To/From Unapplied | Unapplied Funds To Balance | To/From Corp/Esc Advance | Corporate Advance Balance | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 65 | Fee Billed | | 11/26/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $55.50 | Property Inspection |
| 66 | Fee Billed | INVESTOR TRANSFER | 12/22/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $55.50 | Fannie Reclass/repurchase mis |
| 67 | Fee Billed | | 12/30/2010 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $66.75 | Property Inspection |
| 68 | Fee Billed | | 1/31/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $78.00 | Property Inspection |
| 69 | Fee Billed | | 2/16/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $89.25 | Property Inspection |
| 70 | Fee Billed | | 3/18/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $2,626.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $100.50 | Property Inspection |
| 71 | Fee Billed | | 3/30/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $3,907.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $100.50 | Corp Adv to Escrow |
| 72 | Fee Collected | | 3/31/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $35.00 | $135.50 | Property Inspection |
| 73 | Fee Billed | | 4/18/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $146.75 | Expense Advances |
| 74 | Fee Billed | | 4/19/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $158.00 | Property Inspection |
| 75 | Fee Billed | | 5/17/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $169.25 | Property Inspection |
| 76 | Administrative Adjustment | | 9/5/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $169.25 | Unknown Adjustment |
| 77 | Fee Billed | | 9/13/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $11.25 | $180.50 | Property Inspection |
| 78 | END-GMAC PMT HISTORY | | 9/13/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $180.50 | |
| 79 | BEGIN-FANNIE MAE HISTORY | | 9/13/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $180.50 | |
| 80 | Fee Billed | | 10/12/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $16.50 | $197.00 | Property Inspection |
| 81 | Fee Billed | | 10/13/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $35.00 | $232.00 | Expense Advances |
| 82 | Fee Billed | | 10/27/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $35.00 | $267.00 | Expense Advances |
| 83 | Fee Billed | | 11/14/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $14.75 | $281.75 | Property Inspection |
| 84 | Fee Billed | | 12/14/2011 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $16.50 | $298.25 | Property Inspection |
| 85 | Fee Billed | | 1/31/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $20.00 | $318.25 | Property Inspection |
| 86 | Fee Billed | | 2/13/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $20.00 | $338.25 | Property Inspection |
| 87 | Fee Billed | | 3/16/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $6,533.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $16.50 | $354.75 | Property Inspection |
| 88 | Escrow Disbursement | | 3/30/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $3,907.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $354.75 | Force Placed Hazard Insurance |
| 89 | Fee Billed | | 4/11/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $18.25 | $373.00 | Property Inspection |
| 90 | Fee Billed | | 5/17/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $18.25 | $391.25 | Property Inspection |
| 91 | Fee Billed | | 5/21/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $83.00 | $474.25 | Corp Adv 2 DRM |
| 92 | Fee Billed | | 6/25/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $520.00 | $994.25 | Expense Advances |
| 93 | Fee Billed | | 6/25/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $10.50 | $1,004.75 | Expense Advances |
| 94 | Fee Billed | | 6/25/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $225.00 | $1,229.75 | Expense Advances |
| 95 | Fee Billed | | 6/25/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $12.00 | $1,241.25 | Expense Advances |
| 96 | Fee Billed | | 7/23/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $18.25 | $1,260.00 | Property Inspection |

Copyright (c) 2011-2012 Full Disclosure, LLC

## Transaction Data — Payment Application Accounts and Balances

| UNIT | Transaction Description | Code | Date Print Rec'd / Trans Date | Date Due | Amount Received | Partial Received | Scheduled Principal | Partial Principal | Interest / Partial Received | Ending Principal Balance | Pre Pmt Late Charge | Late Charge Due | Pmt Fees | Area Balance | Unapplied Funds Received | Unapplied Funds At Balance | To/From Corporate Advance | Corporate Advance Balance | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 97 | Fee Billed | | 8/22/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $23.50 | $1,283.50 | Property Inspection |
| 98 | Fee Billed | | 9/12/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $25.25 | $1,308.75 | Property Inspection |
| 99 | Fee Billed | | 10/17/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $10,440.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $25.25 | $1,334.00 | Property Inspection |
| 100 | Receipt for Escrow | | 10/26/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | ($1,338.00) | $9,102.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $0.00 | $1,334.00 | Refund-FP Insurance |
| 101 | Receipt for Escrow | | 10/26/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | ($3,907.00) | $5,195.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $0.00 | $1,334.00 | Refund-FP Insurance |
| 102 | Receipt for Escrow | | 10/26/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | ($3,907.00) | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $0.00 | $1,334.00 | Refund-FP Insurance |
| 103 | Fee Billed | | 11/16/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $23.50 | $1,357.50 | Property Inspection |
| 104 | Fee Billed | | 12/19/2012 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $25.25 | $1,382.75 | Property Inspection |
| 105 | Fee Billed | | 1/17/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $28.75 | $1,411.50 | Property Inspection |
| 106 | Servicing Transfer | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $0.00 | $1,411.50 | New Servicer-Greentree |
| 107 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $0.00 | $1,411.50 | |
| 108 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | $0.00 | $1,400.25 | |
| 109 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,387.25 | |
| 110 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.00) | $1,376.00 | |
| 111 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,364.75 | |
| 112 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,353.50 | |
| 113 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,342.25 | |
| 114 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,331.00 | |
| 115 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,319.75 | |
| 116 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,308.50 | |
| 117 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,297.25 | |
| 118 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($11.25) | $1,280.75 | |
| 119 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($16.50) | $1,266.00 | |
| 120 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($14.75) | $1,249.50 | |
| 121 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($16.50) | $1,229.50 | |
| 122 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($20.00) | $1,209.50 | |
| 123 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($16.50) | $1,193.00 | |
| 124 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($18.25) | $1,174.75 | |
| 125 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($18.25) | $1,156.50 | |
| 126 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($18.25) | $1,138.25 | |
| 127 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($23.50) | $1,114.75 | |
| 128 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($25.25) | $1,089.50 | |
| 129 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($25.25) | $1,064.25 | |
| 130 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($23.50) | $1,040.75 | |
| 131 | Fee Waived | | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $0.00 | $27.28 | ($625.62) | $0.00 | ($599,623.48) | ($25.25) | $1,015.50 | |

Copyright (c) 2011-2012 Full Disclosure, LLC

## Transaction Data / Payment Application Accounts and Balances

| LINE | Code | Transaction Description | Date Pmt Rec'd / Trans Date | Date Due | Amount Received | To/From Principal | Principal Balance | To/From Interest | To/From Escrow | Escrow Balance | To/From Late Charge | Late Charge Balance | To/From Fees | Fees Balance | To/From Unapplied Funds | Unapplied Funds Balance | To/From Corporate Advance | Corporate Advance Balance | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 132 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($28.75) | $986.75 | |
| 133 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($20.00) | $966.75 | |
| 134 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($35.00) | $931.75 | |
| 135 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($35.00) | $896.75 | |
| 136 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($45.00) | $851.75 | |
| 137 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($510.00) | $341.75 | |
| 138 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($10.50) | $331.25 | |
| 139 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($225.00) | $106.25 | |
| 140 | | Fee Waived | 2/1/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($12.00) | $94.25 | |
| 141 | | Fee Waived | 2/4/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | ($83.00) | $11.25 | |
| 142 | | END FANNIE/BEGIN GREEN Tree | 2/4/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $11.25 | Fannie History ends |
| 143 | | Corp Advance | 1/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $35.00 | $46.25 | |
| 144 | | Corp Advance | 1/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $35.00 | $81.25 | |
| 145 | | Corp Advance | 1/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $35.00 | $116.25 | |
| 146 | | Corp Advance | 1/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $520.00 | $636.25 | |
| 147 | | Corp Advance | 1/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $10.50 | $646.75 | |
| 148 | | Corp Advance | 1/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $225.00 | $871.75 | |
| 149 | | Corp Advance | 1/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $12.00 | $883.75 | |
| 150 | | Payment | 4/3/2013 | | $46.40 | ($46.40) | $94,201.33 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 151 | | Payment | 5/3/2013 | | $40.94 | ($40.94) | $94,160.39 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 152 | | Payment | 6/3/2013 | | $42.31 | ($42.31) | $94,118.08 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 153 | | Ins 308 | 7/2/2013 | | $0.00 | $0.00 | $94,118.08 | $0.00 | $163.33 | $1,451.33 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 154 | | Ins 10 | 7/2/2013 | | $40.94 | ($40.94) | $94,118.08 | $0.00 | ($163.33) | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 155 | | Ins 309 | 7/9/2013 | | $0.00 | $0.00 | $94,077.14 | $0.00 | $163.33 | $1,451.33 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 156 | | Ins 10 | 8/2/2013 | | $40.94 | ($40.94) | $94,077.14 | $0.00 | ($163.33) | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 157 | | Ins 309 | 8/2/2013 | | $0.00 | $0.00 | $94,077.14 | $0.00 | $163.33 | $1,451.33 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 158 | | Ins 10 | 8/3/2013 | | $42.31 | ($42.31) | $94,034.83 | $0.00 | ($163.33) | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 159 | | Ins 310 | 9/2/2013 | | $0.00 | $0.00 | $94,034.83 | $0.00 | $163.33 | $1,451.33 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 160 | | Ins 10 | 9/2/2013 | | $40.94 | ($40.94) | $93,993.52 | $0.00 | ($163.33) | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 161 | | Payment | 9/3/2013 | | $42.31 | ($42.31) | $93,993.52 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 162 | | Ins 311 | 10/2/2013 | | $0.00 | $0.00 | $93,951.58 | $0.00 | $163.33 | $1,451.33 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 163 | | Ins 10 | 10/2/2013 | | $40.94 | ($40.94) | $93,951.58 | $0.00 | ($163.33) | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 164 | | Payment | 10/3/2013 | | $0.00 | $0.00 | $93,951.58 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 165 | | CURRENT LITIGATION FILED | 10/21/2013 | | $0.00 | $0.00 | $93,951.58 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |
| 166 | | Reversal | 10/30/2013 | | ($46.40) | $46.40 | $93,997.98 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | $0.00 | ($99,623.48) | $0.00 | $883.75 | |

Copyright (c) 2011-2012 Full Disclosure, LLC

## Transaction Data / Payment Application Accounts and Balances

| LINE | Code | Transaction Description | Date Pmt Rec'd/Trans Date | Date Due | Amount Received | To/From Principal | Principal Balance | To/From Escrow | To/From Interest | Escrow Balance | Reserve Balance | To/From Late Charge | Late Charge Balance | Pmt Release Fees | To/From Unapplied Funds #1 | Unapplied Funds #1 Balance | To/From Suspense/Unapplied | Suspense/Unapplied Balance | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 167 | | Reversal | 10/30/2013 | | ($40.94) | $40.94 | $94,038.92 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | $0.00 | $883.75 | |
| 168 | | Reversal | 10/30/2013 | | ($42.31) | $42.31 | $94,081.23 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | $0.00 | $883.75 | |
| 169 | | Reversal | 10/30/2013 | | ($40.94) | $40.94 | $94,122.17 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | $0.00 | $883.75 | |
| 170 | | Reversal | 10/30/2013 | | ($42.31) | $42.31 | $94,164.48 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | $0.00 | $883.75 | |
| 171 | | Reversal | 10/30/2013 | | ($42.31) | $42.31 | $94,206.79 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | $0.00 | $883.75 | |
| 172 | | Reversal | 10/30/2013 | | ($40.94) | $40.94 | $94,247.73 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | $0.00 | $883.75 | |
| 173 | | Reversal | 10/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | ($35.00) | $848.75 | |
| 174 | | Reversal | 10/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | ($35.00) | $813.75 | |
| 175 | | Reversal | 10/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | ($35.00) | $778.75 | |
| 176 | | Reversal | 10/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | ($520.00) | $258.75 | |
| 177 | | Reversal | 10/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | ($10.50) | $248.25 | |
| 178 | | Reversal | 10/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | ($225.00) | $23.25 | |
| 179 | | Reversal | 10/31/2013 | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $1,288.00 | $0.00 | $27.28 | $0.00 | ($625.62) | ($599,623.48) | ($12.00) | $11.25 | |
| 181 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 182 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 183 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 184 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 185 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 186 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 187 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 188 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 189 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 190 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 191 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 192 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 193 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 194 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 195 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 196 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 197 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 198 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 199 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 200 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |
| 201 | | | | | $0.00 | $0.00 | $94,247.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($27.28) | ($625.62) | $0.00 | ($1,474.56) | $0.00 | $11.25 | |

Copyright (c) 2011-2012 Full Disclosure, LLC

## Corporate Advance Detail
### Property Inspections

| Line | Transaction Date | Description | Comments | To/From Corporate Advance | Corporate Advance Balance |
|---|---|---|---|---|---|
| 38 | 1/8/2010 Fee Billed | | Payoff Statement | $20.00 | $20.00 |
| 58 | 9/30/2010 Fee Billed | | Payoff Statement | $20.00 | $20.00 |
| 59 | 10/8/2010 Fee Billed | | Property Inspection | $11.25 | $31.25 |
| 61 | 10/26/2010 Fee Billed | | Property Inspection | $13.00 | $44.25 |
| 65 | 11/26/2010 Fee Billed | | Property Inspection | $11.25 | $55.50 |
| 67 | 12/30/2010 Fee Billed | | Property Inspection | $11.25 | $66.75 |
| 68 | 1/31/2011 Fee Billed | | Property Inspection | $11.25 | $78.00 |
| 69 | 2/16/2011 Fee Billed | | Property Inspection | $11.25 | $89.25 |
| 70 | 3/18/2011 Fee Billed | | Property Inspection | $11.25 | $100.50 |
| 72 | 3/31/2011 Fee Collected | | | $0.00 | $35.00 | $135.50 |
| 73 | 4/18/2011 Fee Billed | | Expense Advances | $11.25 | $146.75 |
| 74 | 4/19/2011 Fee Billed | | Property Inspection | $11.25 | $158.00 |
| 75 | 5/17/2011 Fee Billed | | Property Inspection | $11.25 | $169.25 |
| 77 | 9/13/2011 Fee Billed | | Property Inspection | $11.25 | $180.50 |
| 80 | 10/12/2011 Fee Billed | | Property Inspection | $16.50 | $197.00 |
| 81 | 10/13/2011 Fee Billed | | Expense Advances | $35.00 | $232.00 |
| 82 | 10/27/2011 Fee Billed | | Expense Advances | $35.00 | $267.00 |
| 83 | 11/14/2011 Fee Billed | | Property Inspection | $14.75 | $281.75 |
| 84 | 12/14/2011 Fee Billed | | Property Inspection | $16.50 | $298.25 |
| 85 | 1/31/2012 Fee Billed | | Property Inspection | $20.00 | $318.25 |
| 86 | 2/13/2012 Fee Billed | | Property Inspection | $20.00 | $338.25 |
| 87 | 3/16/2012 Fee Billed | | Property Inspection | $16.50 | $354.75 |
| 89 | 4/11/2012 Fee Billed | | Property Inspection | $18.25 | $373.00 |
| 90 | 5/17/2012 Fee Billed | | Property Inspection | $18.25 | $391.25 |
| 91 | 5/21/2012 Fee Billed | | Corp Adv 3 DRM | $83.00 | $474.25 |
| 93 | 6/25/2012 Fee Billed | | Expense Advances | $10.50 | $1,004.75 |
| 95 | 6/25/2012 Fee Billed | | Expense Advances | $12.00 | $1,241.75 |
| 96 | 7/23/2012 Fee Billed | | Property Inspection | $18.25 | $1,260.00 |
| 97 | 8/22/2012 Fee Billed | | Property Inspection | $23.50 | $1,283.50 |
| 98 | 9/12/2012 Fee Billed | | Property Inspection | $25.25 | $1,308.75 |
| 99 | 10/17/2012 Fee Billed | | Property Inspection | $25.25 | $1,334.00 |
| 103 | 11/16/2012 Fee Billed | | Property Inspection | $23.50 | $1,357.50 |
| 104 | 12/19/2012 Fee Billed | | Property Inspection | $25.25 | $1,382.75 |
| 105 | 1/17/2013 Fee Billed | | Property Inspection | $28.75 | $1,411.50 |
| 106 | 2/1/2013 Servicing Transfer | | New Servicer-Greentree | $0.00 | $1,411.50 |
| 143 | 1/31/2013 Corp Advance | | | $0.00 | $35.00 | $46.25 |
| 144 | 1/31/2013 Corp Advance | | | $0.00 | $35.00 | $81.25 |
| 145 | 1/31/2013 Corp Advance | | | $0.00 | $35.00 | $116.25 |
| 147 | 1/31/2013 Corp Advance | | | $0.00 | $10.50 | $646.75 |
| 149 | 1/31/2013 Corp Advance | | | $0.00 | $12.00 | $883.75 |
| 165 | 10/21/2013 CURRENT LITIGATION FILED | | | $0.00 | $0.00 | $883.75 |

# ATTACHMENT #3

```
GMAC Mortgage, LLC                          PAGE      1
PO Box 780                                  DATE 09/15/11
3451 Hammond Avenue
Waterloo          IA 50704-0780
                                 HISTORY FOR ACCOUNT  656318013


    --------- MAIL -------------------- -------- PROPERTY ----------------


    PORTIA B ISHEE
    KENNETH DYREL ISHEE
    PO BOX 162                         36 MUSCIO ROAD


    MC LAIN            MS 39456    MC LAIN          MS 39456


    ------ DATES ------   ---- CURRENT BALANCES -----   ------- UNCOLLECTED -------
PAID TO    07/01/10   PRINCIPAL     94247.73   LATE CHARGES        -54.56
NEXT DUE   08/01/10   ESCROW        -6533.00   OPTIONAL INS          0.00
LAST PMT   07/16/10   UNAPPLIED FUND 99623.48   INTEREST             0.00
AUDIT DT   11/17/06   UNAPPLIED CODES      L   FEES               -169.25
                      BUYDOWN  FUND     0.00   ------ YEAR TO DATE -------
    LAST ACTIVITY     BUYDOWN  CODE       .   INTEREST             0.00
       09/13/11                              TAXES                0.00
    -------------------------------------------------------------------------
```

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|-----------|---------|----------|--------------------|----------------|---------------|-------------|
| 090508 | UFU | 090108 | UNAPPLIED FUNDS (1) |        | 353.54 BALANCE | 353.54 |
| 090508 | SRA | 090108 | 353.54 | .00 | .00 | .00 |
| 091908 | UFU | 100108 | UNAPPLIED FUNDS (1) |        | -353.54 BALANCE | 0.00 |
| 091908 | AP  | 100108 | 353.54 | 92.51 | 589.67 | .00 |
|        |     |        | OPT PREMIUMS | 24.90 | LATE CHARGE PYMT | .00 |
| 100308 | UFU | 100108 | UNAPPLIED FUNDS (1) |        | 353.54 BALANCE | 353.54 |
| 100308 | SRA | 100108 | 353.54 | .00 | .00 | .00 |
| 101708 | UFU | 110108 | UNAPPLIED FUNDS (1) |        | -353.54 BALANCE | 0.00 |
| 101708 | AP  | 110108 | 353.54 | 93.07 | 589.11 | .00 |
|        |     |        | OPT PREMIUMS | 24.90 | LATE CHARGE PYMT | .00 |
| 103108 | CTA | 110108 | 353.54 | 353.54 | .00 | .00 |
| 111408 | UFU | 110108 | UNAPPLIED FUNDS (1) |        | 353.54 BALANCE | 353.54 |
| 111408 | SRA | 110108 | 353.54 | .00 | .00 | .00 |
| 112808 | UFU | 120108 | UNAPPLIED FUNDS (1) |        | -353.54 BALANCE | 0.00 |
| 112808 | AP  | 120108 | 353.54 | 95.77 | 586.41 | .00 |
|        |     |        | OPT PREMIUMS | 24.90 | LATE CHARGE PYMT | .00 |
| 121208 | UFU | 120108 | UNAPPLIED FUNDS (1) |        | 353.54 BALANCE | 353.54 |
| 121208 | SRA | 120108 | 353.54 | .00 | .00 | .00 |
| 122908 | UFU | 010109 | UNAPPLIED FUNDS (1) |        | -353.54 BALANCE | 0.00 |
| 122908 | AP  | 010109 | 353.54 | 96.35 | 585.83 | .00 |
|        |     |        | OPT PREMIUMS | 24.90 | LATE CHARGE PYMT | .00 |
| 010909 | UFU | 010109 | UNAPPLIED FUNDS (1) |        | 353.54 BALANCE | 353.54 |
| 010909 | SRA | 010109 | 353.54 | .00 | .00 | .00 |
| 012309 | UFU | 020109 | UNAPPLIED FUNDS (1) |        | -353.54 BALANCE | 0.00 |
| 012309 | AP  | 020109 | 353.54 | 96.93 | 585.25 | .00 |
|        |     |        | OPT PREMIUMS | 24.90 | LATE CHARGE PYMT | .00 |
| 020609 | UFU | 020109 | UNAPPLIED FUNDS (1) |        | 353.54 BALANCE | 353.54 |
| 020609 | SRA | 020109 | 353.54 | .00 | .00 | .00 |

MIP 1568

```
HISTORY FOR ACCOUNT   656318013                      PAGE      2
                                                     DATE 09/15/11


        --------- MAIL -------------------- --------- PROPERTY ----------------

        PORTIA B ISHEE
        KENNETH DYREL ISHEE   .
        PO BOX 162                      36 MUSCIO ROAD

        MC LAIN              MS 39456   MC LAIN           MS 39456


------------------------------------------------------------------------------
POST   TRN DUE    TRANSACTION    PRINCIPAL      INTEREST        ESCROW
DATE   CDE DATE       AMOUNT        PAID          PAID           PAID
------ --- ------ -------------- ------------- -------------- --------------
022009 UFU 030109  UNAPPLIED FUNDS (1)          -353.54 BALANCE        0.00
022009 AP  030109      353.54        97.52       584.66          .00
        OPT PREMIUMS            24.90 LATE CHARGE PYMT           .00
030609 UFU 030109  UNAPPLIED FUNDS (1)           353.54 BALANCE      353.54
030609 SRA 030109      353.54         .00          .00           .00
032009 UFU 040109  UNAPPLIED FUNDS (1)          -353.54 BALANCE        0.00
032009 AP  040109      353.54        98.11       584.07          .00
        OPT PREMIUMS            24.90 LATE CHARGE PYMT           .00
040309 UFU 040109  UNAPPLIED FUNDS (1)           366.51 BALANCE      366.51
040309 SRA 040109      366.51         .00          .00           .00
041709 UFU 050109  UNAPPLIED FUNDS (1)          -366.51 BALANCE        0.00
041709 AP  050109      366.51        98.70       583.48          .00
        OPT PREMIUMS            50.84 LATE CHARGE PYMT           .00
050109 CTA 050109      366.51       366.51         .00           .00
051509 UFU 050109  UNAPPLIED FUNDS (1)           366.51 BALANCE      366.51
051509 SRA 050109      366.51         .00          .00           .00
052909 UFU 060109  UNAPPLIED FUNDS (1)          -366.51 BALANCE        0.00
052909 AP  060109      366.51       101.51       580.67          .00
        OPT PREMIUMS            50.84 LATE CHARGE PYMT           .00
061209 UFU 060109  UNAPPLIED FUNDS (1)           366.51 BALANCE      366.51
061209 SRA 060109      366.51         .00          .00           .00
062609 UFU 070109  UNAPPLIED FUNDS (1)          -366.51 BALANCE        0.00
062609 AP  070109      366.51       102.12       580.06          .00
        OPT PREMIUMS            50.84 LATE CHARGE PYMT           .00
071009 UFU 070109  UNAPPLIED FUNDS (1)           366.51 BALANCE      366.51
071009 SRA 070109      366.51         .00          .00           .00
072409 UFU 080109  UNAPPLIED FUNDS (1)          -366.51 BALANCE        0.00
072409 AP  080109      340.57       102.74       579.44          .00
        OPT PREMIUMS            24.90 LATE CHARGE PYMT           .00
072409 CWA 080109       12.97        12.97         .00           .00
080709 UFU 080109  UNAPPLIED FUNDS (1)           353.54 BALANCE      353.54
080709 SRA 080109      353.54         .00          .00           .00
082109 UFU 090109  UNAPPLIED FUNDS (1)          -353.54 BALANCE        0.00
082109 AP  090109      353.54       103.44       578.74          .00
        OPT PREMIUMS            24.90 LATE CHARGE PYMT           .00
090409 UFU 090109  UNAPPLIED FUNDS (1)           353.54 BALANCE      353.54
090409 SRA 090109      353.54         .00          .00           .00
091809 UFU 100109  UNAPPLIED FUNDS (1)          -353.54 BALANCE        0.00


    MIP 1568
```

```
HISTORY FOR ACCOUNT  656318013                        PAGE      3
                                                      DATE 09/15/11


         --------- MAIL -------------------- -------- PROPERTY ----------------

         PORTIA B ISHEE
         KENNETH DYREL ISHEE
         PO BOX 162                          36 MUSCIO ROAD

         MC LAIN          MS 39456      MC LAIN          MS 39456

    ------------------------------------------------------------------------
    POST  TRN  DUE   TRANSACTION    PRINCIPAL    INTEREST      ESCROW
    DATE  CDE  DATE    AMOUNT         PAID         PAID         PAID
    ----- ---  ------ ------------  -----------  ------------- -------------
    091809 AP  100109       353.54       104.06       578.12         .00
                    OPT PREMIUMS          24.90  LATE CHARGE PYMT     .00
    100209 UFU 100109   UNAPPLIED FUNDS (1)          353.54  BALANCE    353.54
    100209 SRA 100109       353.54          .00          .00          .00
    101609 UFU 110109   UNAPPLIED FUNDS (1)         -353.54  BALANCE      0.00
    101609 AP  110109       353.54       104.69       577.49          .00
                    OPT PREMIUMS          24.90  LATE CHARGE PYMT      .00
    103009 CTA 110109       353.54       353.54          .00          .00
    111309 UFU 110109   UNAPPLIED FUNDS (1)          353.54  BALANCE    353.54
    111309 SRA 110109       353.54          .00          .00          .00
    112709 UFU 120109   UNAPPLIED FUNDS (1)         -353.54  BALANCE      0.00
    112709 AP  120109       353.54       107.46       574.72          .00
                    OPT PREMIUMS          24.90  LATE CHARGE PYMT      .00
    121109 UFU 120109   UNAPPLIED FUNDS (1)          353.54  BALANCE    353.54
    121109 SRA 120109       353.54          .00          .00          .00
    122809 UFU 010110   UNAPPLIED FUNDS (1)         -353.54  BALANCE      0.00
    122809 AP  010110       353.54       108.11       574.07          .00
                    OPT PREMIUMS          24.90  LATE CHARGE PYMT      .00
    010810 FB  010110        20.00  28 PAYOFF STATEMENT
    010810 UFU 010110   UNAPPLIED FUNDS (1)          353.54  BALANCE    353.54
    010810 SRA 010110       353.54          .00          .00          .00
    012210 UFU 020110   UNAPPLIED FUNDS (1)         -353.54  BALANCE      0.00
    012210 AP  020110       353.54       108.76       573.42          .00
                    OPT PREMIUMS          24.90  LATE CHARGE PYMT      .00
    012210 FB  020110      2595.00  163 CORP ADV 2 ESCROW
    012510 SR0 020110     -2595.00          .00          .00     -2595.00
    012510 FE  020110      2595.00  163 CORP ADV 2 ESCROW
    020510 UFU 020110   UNAPPLIED FUNDS (1)          353.54  BALANCE    353.54
    020510 SRA 020110       353.54          .00          .00          .00
    021910 UFU 030110   UNAPPLIED FUNDS (1)         -353.54  BALANCE      0.00
    021910 AP  030110       353.54       109.42       572.76          .00
                    OPT PREMIUMS          24.90  LATE CHARGE PYMT      .00
    030410 R20 030110      2595.00          .00          .00      2595.00
    041210 UFU 030110   UNAPPLIED FUNDS (1)          354.54  BALANCE    354.54
    041210 SRA 030110       354.54          .00          .00          .00
    050510 UFU 030110   UNAPPLIED FUNDS (1)         -354.54  BALANCE      0.00


    MIP 1568
```

```
HISTORY FOR ACCOUNT   656318013                      PAGE      4
                                                     DATE 09/15/11


           --------- MAIL -------------------- --------- PROPERTY ----------------

           PORTIA B ISHEE
           KENNETH DYREL ISHEE
           PO BOX 162                      36 MUSCIO ROAD

           MC LAIN          MS 39456    MC LAIN            MS 39456

------------------------------------------------------------------------
 POST  TRN  DUE     TRANSACTION      PRINCIPAL      INTEREST       ESCROW
 DATE  CDE  DATE      AMOUNT           PAID           PAID          PAID
------ --- ----- --------------- -------------- -------------- --------------
050510 UFF 030110   UNAPPLIED FUNDS (2)             354.54  BALANCE    354.54
050510 AA  030110        .00          .00            .00             .00
050510 RPD 051010    PAID  707.08 DUE  707.08 SHORT     .00 TELLER   606
050510 RPD 051010   NO. OF PLAN PMTS=01
050510 UI  040110        .00          .00            .00             .00
              OPT PREMIUMS           .00 LATE CHARGE PYMT      -27.28*
050510 AP  040110      707.08       110.08         572.10           .00
              OPT PREMIUMS         24.90 LATE CHARGE PYMT         .00
050510 FB  040110        7.50 171 SPEEDPAY FEE
050510 FEA 040110        7.50 171 SPEEDPAY FEE
052510 RPD 052110    PAID  399.82 DUE  399.82 SHORT     .00 TELLER   330
052510 RPD 052110   NO. OF PLAN PMTS=01
052510 UI  050110        .00          .00            .00             .00
              OPT PREMIUMS           .00 LATE CHARGE PYMT      -27.28*
052510 AP  050110      707.08       110.75         571.43           .00
              OPT PREMIUMS         24.90 LATE CHARGE PYMT         .00
052510 FEA 050110       20.00  28 PAYOFF STATEMENT
052510 UI  050110        .00          .00            .00             .00
              OPT PREMIUMS           .00 LATE CHARGE PYMT       27.28*
052510 SRA 050110       27.28          .00            .00             .00
              OPT PREMIUMS           .00 LATE CHARGE PYMT       27.28
052510 UFF 050110   UNAPPLIED FUNDS (2)            -354.54  BALANCE      0.00
052510 SRA 050110     -354.54          .00            .00             .00
052510 SRA 050110        .00          .00            .00             .00
062510 UI  060110        .00          .00            .00             .00
              OPT PREMIUMS           .00 LATE CHARGE PYMT      -27.28*
062510 AP  060110      707.08       111.42         570.76           .00
              OPT PREMIUMS         24.90 LATE CHARGE PYMT         .00
062510 FB  060110       12.50 171 SPEEDPAY FEE
062510 FEA 060110       12.50 171 SPEEDPAY FEE
071310 UFU 060110   UNAPPLIED FUNDS (1)             352.54  BALANCE    352.54
071310 SRA 060110      352.54          .00            .00             .00
071610 UFU 070110   UNAPPLIED FUNDS (1)            -352.54  BALANCE      0.00
071610 AP  070110      354.54       112.09         570.09           .00
              OPT PREMIUMS         24.90 LATE CHARGE PYMT         .00
071910 FB  070110     2626.00 163 CORP ADV 2 ESCROW
072010 SR0 070110    -2626.00          .00            .00        -2626.00


     MIP 1568
```

```
HISTORY FOR ACCOUNT   656318013                           PAGE       5
                                                          DATE 09/15/11


         --------- MAIL -------------------- --------- PROPERTY ----------------

         PORTIA B ISHEE
         KENNETH DYREL ISHEE
         PO BOX 162                          36 MUSCIO ROAD

         MC LAIN            MS 39456    MC LAIN            MS 39456

    --------------------------------------------------------------------------
    POST  TRN  DUE      TRANSACTION      PRINCIPAL      INTEREST       ESCROW
    DATE  CDE  DATE       AMOUNT           PAID           PAID          PAID
    ------ --- ------  -------------   -------------  -------------  -------------
    072010 FE  070110     2626.00 163 CORP ADV 2 ESCROW
    093010 FB  070110       20.00  28 PAYOFF STATEMENT
    100810 FB  070110       11.25  11 PROP INSPECTION FEE
    102610 FB  070110       13.00  11 PROP INSPECTION FEE
    111610 UFL 070110   UNAPPLIED FUNDS (5)         99623.48 BALANCE    99623.48
    111610 SR  070110    99623.48         .00            .00           .00
    112610 FB  070110       11.25  11 PROP INSPECTION FEE
    122210 UFL 070110   UNAPPLIED FUNDS (5)        -99623.48 BALANCE        0.00
    122210 RT  070110   -96997.48         .00            .00       2626.00
    122210 ITR 070110   OLD INV 10025 27503 P-BAL    94247.73 INT           .00
                        NEW INV 10023   291  PERCENT OWNED    .0000 ACTION CD 000
    122210 UFL 070110   UNAPPLIED FUNDS (5)         99623.48 BALANCE    99623.48
    122210 PT  070110    96997.48         .00            .00      -2626.00
    123010 FB  070110       11.25  11 PROP INSPECTION FEE
    013111 FB  070110       11.25  11 PROP INSPECTION FEE
    021611 FB  070110       11.25  11 PROP INSPECTION FEE
    031811 FB  070110       11.25  11 PROP INSPECTION FEE
    033011 FB  070110     3907.00 163 CORP ADV 2 ESCROW
    033111 SR0 070110    -3907.00         .00            .00      -3907.00
    033111 FE  070110     3907.00 163 CORP ADV 2 ESCROW
    041811 FB  070110       35.00  40 EXPENSE ADVANCES
    041911 FB  070110       11.25  11 PROP INSPECTION FEE
    051711 FB  070110       11.25  11 PROP INSPECTION FEE
    090511 AA  070110         .00         .00            .00           .00
    090511 AA  070110         .00         .00            .00           .00
    091311 FB  070110       11.25  11 PROP INSPECTION FEE


    END OF HISTORY

       MIP 1568
```

# ATTACHMENT #4

DISPLAY/HISTORY

- Attorney -

Page:   1

| Acct: | | Name: | PORTIA B ISHEE | Type:  1 | | Sub:  0 | Investor:  10023 | Warn:  5 | Lock: 1 | Stop:  0 |
|---|---|---|---|---|---|---|---|---|---|---|
| - Dates - | | Paid To: | 7/1/2010 | Next Due: | 8/1/2010 | Last Pmt: | 7/16/2010 | | Refresh Date: | 2/20/2014 |
| - Bal - | | Prin: | $0.00 | Esc: | $0.00 | FCL Refer: | 11/9/2010 | | | |
| - Uncol - | | LC: | $0.00 | P&I Adv: | $0.00 | Esc Sht: | $0.00 | | | |

FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Date Interest Paid Current | Add Teller | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 2/4/2013 | FP | 7/1/2010 | | 88.00 | 096 INV RECOV FEE | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -12.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -225.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -10.50 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -520.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -35.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -35.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -35.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -20.00 | 028 PAYOFF STATEMEN | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -28.75 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -25.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -23.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -25.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -25.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -23.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -18.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -18.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -18.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -16.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |

FANNIE MAE/Ishee - 000049

# DISPLAY/HISTORY

Page: 2

| Acct: | Name: PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |

- Dates -  Paid To: 7/1/2010   Next Due: 8/1/2010   Last Pmt: 7/16/2010
- Bal -    Prin: $0.00          Esc: $0.00            FCL Refer: 11/9/2010   Refresh Date: 2/20/2014
- Uncol -  LC: $0.00            P&I Adv: $0.00         Esc Sht: $0.00

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Date Interest Paid Current | Add Teller | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 2/1/2013 | FWV | 7/1/2010 | | -20.00 | 011 PROP INSPECTION I | | 0.00 | 0.00 | 0.00 |
| 2/1/2013 | FWV | 7/1/2010 | | -20.00 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -16.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -14.75 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -16.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -13.00 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | FWV | 7/1/2010 | | -11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/1/2013 | UF | 7/1/2010 | | -99,623.48 | | | 0.00 | 0.00 | |
| 2/1/2013 | SV | 7/1/2010 | | 0.00 | | | 94,247.73 | 0.00 | 0.00 |
| 2/1/2013 | UI | 7/1/2010 | | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 2/1/2013 | SVT | 7/1/2010 | | -98,335.48 | | PAYEE # 000000000  BAL AFTER  94247.73 | 0.00 | 0.00 | 1,286.00 |
| 1/17/2013 | FB | 7/1/2010 | | 28.75 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 1/17/2013 | SLC | 7/1/2010 | | 0.00 | | | 0.00 | 0.00 | |

# DISPLAY/HISTORY

Page: 3

| Acct: | Name: PORTIA B ISHEE | Type: 1 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |
|---|---|---|---|---|---|---|
| - Dates - | Paid To: 7/1/2010 | Next Due: 8/1/2010 | Sub: 0 | Last Pmt: 7/16/2010 | | |
| - Bal - | Prin: $0.00 | Esc: $0.00 | FCL Refer: 11/9/2010 | Refresh Date: 2/20/2014 | | |
| - Uncol - | LC: $0.00 | P&I Adv: $0.00 | Esc Sht: $0.00 | | | |

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 12/19/2012 | FB | | 7/1/2010 | 25.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 12/18/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 11/17/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 11/16/2012 | FB | | 7/1/2010 | 23.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 11/1/2012 | UFT | | 7/1/2010 | 99,623.48 | | | 0.00 | 0.00 | |
| 11/1/2012 | UFL | | 7/1/2010 | -99,623.48 | | | 0.00 | 0.00 | |
| 11/1/2012 | SR | | 7/1/2010 | 99,623.48 | | PAYEE # 000000000   BAL AFTER   94247.73 | 0.00 | 0.00 | 0.00 |
| 11/1/2012 | SR0 | | 7/1/2010 | -99,623.48 | | PAYEE # 000000000   BAL AFTER   94247.73 | 0.00 | 0.00 | 0.00 |
| 10/26/2012 | R20 | | 7/1/2010 | 3,907.00 | | PAYEE # 000000000   BAL AFTER   94247.73 | 0.00 | 0.00 | 3,907.00 |
| 10/26/2012 | R20 | | 7/1/2010 | 3,907.00 | | PAYEE # 000000000   BAL AFTER   94247.73 | 0.00 | 0.00 | 3,907.00 |
| 10/26/2012 | R20 | | 7/1/2010 | 1,338.00 | | PAYEE # 000000000   BAL AFTER   94247.73 | 0.00 | 0.00 | 1,338.00 |
| 10/17/2012 | FB | | 7/1/2010 | 25.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 10/17/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 9/18/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 9/12/2012 | FB | | 7/1/2010 | 25.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 8/22/2012 | FB | | 7/1/2010 | 23.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 8/17/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 7/23/2012 | FB | | 7/1/2010 | 18.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 7/17/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 7/16/2012 | FP | | 7/1/2010 | -5.00 | 096 INV RECOV FEE | | 0.00 | 0.00 | |
| 7/6/2012 | AA | | 7/1/2010 | 0.00 | | PAYEE # 000000000   BAL AFTER   94247.73 | 0.00 | 0.00 | 0.00 |

FANNIE MAE/Ishee - 000051

DISPLAY/HISTORY

Page: 4

| Acct: | Name: | PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |
|---|---|---|---|---|---|---|---|---|
| - Dates - | Paid To: 7/1/2010 | | Next Due: 8/1/2010 | Last Pmt: 7/16/2010 | | | | |
| - Bal - | Prin: $0.00 | | Esc: $0.00 | FCL Refer: 11/9/2010 | | Refresh Date: 2/20/2014 | | |
| - Uncol - | LC: $0.00 | | P&I Adv: $0.00 | Esc Sht: $0.00 | | | | |

FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 7/6/2012 | AA | | 7/1/2010 | 0.00 | | PAYEE # 000000000   BAL AFTER 94247.73 | 0.00 | 0.00 | 0.00 |
| 6/25/2012 | FB | | 7/1/2010 | 12.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 6/25/2012 | FB | | 7/1/2010 | 225.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 6/25/2012 | FB | | 7/1/2010 | 10.50 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 6/25/2012 | FB | | 7/1/2010 | 520.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 6/19/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 5/22/2012 | FE | | 7/1/2010 | 83.00 | 164 CORP ADV 3 DRM | | 0.00 | 0.00 | |
| 5/22/2012 | FP | | 7/1/2010 | -83.00 | 096 INV RECOV FEE | | 0.00 | 0.00 | |
| 5/21/2012 | FB | | 7/1/2010 | 83.00 | 164 CORP ADV 3 DRM | | 0.00 | 0.00 | |
| 5/17/2012 | FB | | 7/1/2010 | 18.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 5/17/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 4/17/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 4/11/2012 | FB | | 7/1/2010 | 18.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 3/30/2012 | E20 | | 7/1/2010 | -3,907.00 | | PAYEE # 160000347   BAL AFTER 94247.73 | 0.00 | 0.00 | -3,907.00 |
| 3/17/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 3/16/2012 | FB | | 7/1/2010 | 16.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 2/17/2012 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 2/13/2012 | FB | | 7/1/2010 | 20.00 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 1/31/2012 | FB | | 7/1/2010 | 20.00 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 1/18/2012 | FB | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 12/17/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |

FANNIE MAE/Ishee - 000052

# DISPLAY/HISTORY

| Acct: | Name: PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Page: 5 | Stop: 0 |

| - Dates - | Paid To: 7/1/2010 | Next Due: 8/1/2010 | Last Pmt: 7/16/2010 | |
| - Bal - | Prin: $0.00 | Esc: $0.00 | FCL Refer: 11/9/2010 | Refresh Date: 2/20/2014 |
| - Uncol - | LC: $0.00 | P&I Adv: $0.00 | Esc Sht: $0.00 | |

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 12/14/2011 | FB | | 7/1/2010 | 16.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 11/17/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 11/14/2011 | FB | | 7/1/2010 | 14.75 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 10/27/2011 | FB | | 7/1/2010 | 35.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 10/18/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 10/13/2011 | FB | | 7/1/2010 | 35.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 10/12/2011 | FB | | 7/1/2010 | 16.50 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 9/17/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 9/13/2011 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 9/5/2011 | AA | | 7/1/2010 | 0.00 | | PAYEE # 000000000   BAL AFTER 94247.73 | 0.00 | 0.00 | 0.00 |
| 9/5/2011 | AA | | 7/1/2010 | 0.00 | | PAYEE # 000000000   BAL AFTER 94247.73 | 0.00 | 0.00 | 0.00 |
| 8/17/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 7/19/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 6/17/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 5/17/2011 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 5/17/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 4/19/2011 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 4/19/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 4/18/2011 | FB | | 7/1/2010 | 35.00 | 040 EXPENSE ADVANCE | | 0.00 | 0.00 | |
| 3/31/2011 | FE | | 7/1/2010 | 3,907.00 | 163 CORP ADV 2 ESCRC | | 0.00 | 0.00 | |
| 3/31/2011 | SR0 | | 7/1/2010 | -3,907.00 | | PAYEE # 000000000   BAL AFTER 94247.73 | 0.00 | 0.00 | -3,907.00 |

FANNIE MAE/Ishee - 000053

# DISPLAY/HISTORY

Page: 6

| Acct: | Name: PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |
|---|---|---|---|---|---|---|---|
| - Dates - | Paid To: 7/1/2010 | Next Due: 8/1/2010 | Last Pmt: 7/16/2010 | | | Refresh Date: 2/20/2014 | |
| - Bal - | Prin: $0.00 | Esc: $0.00 | FCL Refer: 11/9/2010 | | | | |
| - Uncol - | LC: $0.00 | P&I Adv: $0.00 | Esc Sht: $0.00 | | | | |

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 3/30/2011 | FB | | 7/1/2010 | 3,907.00 | 163 CORP ADV 2 ESCRC | | 0.00 | 0.00 | |
| 3/18/2011 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 3/17/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 2/17/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 2/16/2011 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 1/31/2011 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 1/19/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 1/18/2011 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 12/30/2010 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 12/22/2010 | UFL | | 7/1/2010 | 99,623.48 | | | 0.00 | 0.00 | |
| 12/22/2010 | UFL | | 7/1/2010 | -99,623.48 | | | 0.00 | 0.00 | |
| 12/22/2010 | PT | | 7/1/2010 | 96,997.48 | | PAYEE # 000000000   BAL AFTER  94247.73 | 0.00 | 0.00 | -2,626.00 |
| 12/22/2010 | RT | | 7/1/2010 | -96,997.48 | | PAYEE # 000000000   BAL AFTER  94247.73 | 0.00 | 0.00 | 2,626.00 |
| 12/17/2010 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 11/26/2010 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 11/17/2010 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 11/16/2010 | UFL | | 7/1/2010 | 99,623.48 | | | 0.00 | 0.00 | |
| 11/16/2010 | SR | | 7/1/2010 | 99,623.48 | | PAYEE # 000000000   BAL AFTER  94247.73 | 0.00 | 0.00 | 0.00 |
| 10/26/2010 | FB | | 7/1/2010 | 13.00 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |
| 10/19/2010 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 10/8/2010 | FB | | 7/1/2010 | 11.25 | 011 PROP INSPECTION I | | 0.00 | 0.00 | |

FANNIE MAE/Ishee - 000054

# DISPLAY/HISTORY

Page: 7

| Acct: | Name: PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |
|---|---|---|---|---|---|---|---|
| - Dates - | Paid To: 7/1/2010 | Next Due: 8/1/2010 | Last Pmt: 7/16/2010 | | | Refresh Date: 2/20/2014 | |
| - Bal - | Prin: $0.00 | Esc: $0.00 | | FCL Refer: 11/9/2010 | | | |
| - Uncol - | LC: $0.00 | P&I Adv: $0.00 | | Esc Sht: $0.00 | | | |

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | Transaction Description | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 9/30/2010 | FB | | 7/1/2010 | 20.00 | 028 PAYOFF STATEMEN | | 0.00 | 0.00 | |
| 9/17/2010 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 8/17/2010 | SLC | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 7/20/2010 | FE | | 7/1/2010 | 2,626.00 | 163 CORP ADV 2 ESCRC | | 0.00 | 0.00 | |
| 7/20/2010 | SRO | | 7/1/2010 | -2,626.00 | | PAYEE # 000000000   BAL AFTER   94247.73 | 0.00 | 0.00 | -2,626.00 |
| 7/19/2010 | FB | | 7/1/2010 | 2,626.00 | 163 CORP ADV 2 ESCRC | | 0.00 | 0.00 | |
| 7/16/2010 | UFU | | 7/1/2010 | -352.54 | | | 0.00 | 0.00 | |
| 7/16/2010 | AP | | 7/1/2010 | 354.54 | | PAYEE # 000000000   BAL AFTER   94247.73 | 112.09 | 570.09 | 0.00 |
| 7/16/2010 | O33 | | 7/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 7/13/2010 | UFU | | 6/1/2010 | 352.54 | | | 0.00 | 0.00 | |
| 7/13/2010 | SRA | | 6/1/2010 | 352.54 | | PAYEE # 000000000   BAL AFTER   94359.82 | 0.00 | 0.00 | 0.00 |
| 6/25/2010 | FEA | | 6/1/2010 | 12.50 | 171 SPEEDPAY FEE | | 0.00 | 0.00 | |
| 6/25/2010 | FB | | 6/1/2010 | 12.50 | 171 SPEEDPAY FEE | | 0.00 | 0.00 | |
| 6/25/2010 | AP | | 6/1/2010 | 707.08 | | PAYEE # 000000000   BAL AFTER   94359.82 | 111.42 | 570.76 | 0.00 |
| 6/25/2010 | UI | | 6/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 6/25/2010 | O33 | | 6/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 6/17/2010 | SLC | | 5/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 5/25/2010 | RPD | | 5/21/2010 | 0.00 | | | 0.00 | 0.00 | |
| 5/25/2010 | RPD | | 5/21/2010 | 399.82 | | | 0.00 | 0.00 | |
| 5/25/2010 | FEA | | 5/1/2010 | 20.00 | 028 PAYOFF STATEMEN | | 0.00 | 0.00 | |
| 5/25/2010 | UFF | | 5/1/2010 | -354.54 | | | 0.00 | 0.00 | |

FANNIE MAE/Ishee - 000055

DISPLAY/HISTORY

Page: 8

| Acct: | | Name: | PORTIA B ISHEE | | Type: 1 | | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | | Stop: 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| - Dates - | | Paid To: | 7/1/2010 | | Next Due: | 8/1/2010 | Last Pmt: | 7/16/2010 | | | | |
| - Bal - | | Prin: | $0.00 | | Esc: | $0.00 | FCL Refer: | 11/9/2010 | Refresh Date: | 2/20/2014 | | |
| - Uncol - | | LC: | $0.00 | | P&I Adv: | $0.00 | Esc Sht: | $0.00 | | | | |

FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 5/25/2010 | SRA | | 5/1/2010 | 0.00 | | PAYEE #   000000000   BAL AFTER   94471.24 | 0.00 | 0.00 | 0.00 |
| 5/25/2010 | SRA | | 5/1/2010 | -354.54 | | PAYEE #   000000000   BAL AFTER   94471.24 | 0.00 | 0.00 | 0.00 |
| 5/25/2010 | SRA | | 5/1/2010 | 27.28 | | PAYEE #   000000000   BAL AFTER   94471.24 | 0.00 | 0.00 | 0.00 |
| 5/25/2010 | UI | | 5/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 5/25/2010 | AP | | 5/1/2010 | 707.08 | | PAYEE #   000000000   BAL AFTER   94471.24 | 110.75 | 571.43 | 0.00 |
| 5/25/2010 | UI | | 5/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 5/25/2010 | O33 | | 5/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 5/18/2010 | SLC | | 4/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 5/5/2010 | RPD | | 5/10/2010 | 0.00 | | | 0.00 | 0.00 | |
| 5/5/2010 | RPD | | 5/10/2010 | 707.08 | | | 0.00 | 0.00 | |
| 5/5/2010 | FEA | | 4/1/2010 | 7.50 | 171 SPEEDPAY FEE | | 0.00 | 0.00 | |
| 5/5/2010 | FB | | 4/1/2010 | 7.50 | 171 SPEEDPAY FEE | | 0.00 | 0.00 | |
| 5/5/2010 | AP | | 4/1/2010 | 707.08 | | PAYEE #   000000000   BAL AFTER   94581.99 | 110.08 | 572.10 | 0.00 |
| 5/5/2010 | UI | | 4/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 5/5/2010 | O33 | | 4/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 5/5/2010 | UFF | | 3/1/2010 | 354.54 | | | 0.00 | 0.00 | |
| 5/5/2010 | UFU | | 3/1/2010 | -354.54 | | | 0.00 | 0.00 | |
| 5/5/2010 | AA | | 3/1/2010 | 0.00 | | PAYEE #   000000000   BAL AFTER   94692.07 | 0.00 | 0.00 | 0.00 |
| 4/17/2010 | SLC | | 3/1/2010 | 0.00 | | | 0.00 | 0.00 | |
| 4/12/2010 | UFU | | 3/1/2010 | 354.54 | | | 0.00 | 0.00 | |
| 4/12/2010 | SRA | | 3/1/2010 | 354.54 | | PAYEE #   000000000   BAL AFTER   94692.07 | 0.00 | 0.00 | 0.00 |

FANNIE MAE/Ishee – 000056

# DISPLAY/HISTORY

Page: 9

| Acct: | Name: PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |
|---|---|---|---|---|---|---|---|
| - Dates - | Paid To: 7/1/2010 | Next Due: 8/1/2010 | | Last Pmt: 7/16/2010 | | Refresh Date: 2/20/2014 | |
| - Bal - | Prin: $0.00 | Esc: $0.00 | | FCL Refer: 11/9/2010 | | | |
| - Uncol - | LC: $0.00 | P&I Adv: $0.00 | | Esc Sht: $0.00 | | | |

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | Transaction Description | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 3/4/2010 | R20 | | 3/1/2010 | 2,595.00 | | PAYEE # 000000000   BAL AFTER   94692.07 | 0.00 | 0.00 | 2,595.00 |
| 2/19/2010 | UFU | | 3/1/2010 | -353.54 | | | 0.00 | 0.00 | 0.00 |
| 2/19/2010 | AP | | 3/1/2010 | 353.54 | | PAYEE # 000000000   BAL AFTER   94692.07 | 109.42 | 572.76 | 0.00 |
| 2/19/2010 | O33 | | 3/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 2/5/2010 | UFU | | 2/1/2010 | 353.54 | | | 0.00 | 0.00 | 0.00 |
| 2/5/2010 | SRA | | 2/1/2010 | 353.54 | | PAYEE # 000000000   BAL AFTER   94801.49 | 0.00 | 0.00 | 0.00 |
| 1/25/2010 | FE | | 2/1/2010 | 2,595.00 | 163 CORP ADV 2 ESCRO | | 0.00 | 0.00 | 0.00 |
| 1/25/2010 | SRO | | 2/1/2010 | -2,595.00 | | PAYEE # 000000000   BAL AFTER   94801.49 | 0.00 | 0.00 | -2,595.00 |
| 1/22/2010 | FB | | 2/1/2010 | 2,595.00 | 163 CORP ADV 2 ESCRO | | 0.00 | 0.00 | |
| 1/22/2010 | UFU | | 2/1/2010 | -353.54 | | | 0.00 | 0.00 | |
| 1/22/2010 | AP | | 2/1/2010 | 353.54 | | PAYEE # 000000000   BAL AFTER   94801.49 | 108.76 | 573.42 | 0.00 |
| 1/22/2010 | O33 | | 2/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 1/8/2010 | UFU | | 1/1/2010 | 353.54 | | | 0.00 | 0.00 | |
| 1/8/2010 | SRA | | 1/1/2010 | 353.54 | | PAYEE # 000000000   BAL AFTER   94910.25 | 0.00 | 0.00 | 0.00 |
| 1/8/2010 | FB | | 1/1/2010 | 20.00 | 028 PAYOFF STATEMEN | | 0.00 | 0.00 | |
| 12/28/2009 | UFU | | 1/1/2010 | -353.54 | | | 0.00 | 0.00 | |
| 12/28/2009 | AP | | 1/1/2010 | 353.54 | | PAYEE # 000000000   BAL AFTER   94910.25 | 108.11 | 574.07 | 0.00 |
| 12/28/2009 | O33 | | 1/1/2010 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 12/11/2009 | UFU | | 12/1/2009 | 353.54 | | | 0.00 | 0.00 | |
| 12/11/2009 | SRA | | 12/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95018.36 | 0.00 | 0.00 | 0.00 |
| 11/27/2009 | UFU | | 12/1/2009 | -353.54 | | | 0.00 | 0.00 | 0.00 |

FANNIE MAE/Ishee - 000057

DISPLAY/HISTORY

Page: 10

| Acct: | Name: | PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |

- Dates -  Paid To: 7/1/2010   Next Due: 8/1/2010   Last Pmt: 7/16/2010
- Bal -    Prin: $0.00   Esc: $0.00   FCL Refer: 11/9/2010   Refresh Date: 2/20/2014
- Uncol -  LC: $0.00   P&I Adv: $0.00   Esc Sht: $0.00

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 11/27/2009 | AP | | 12/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95018.36 | 107.46 | 574.72 | 0.00 |
| 11/27/2009 | O33 | | 12/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 11/13/2009 | UFU | | 11/1/2009 | 353.54 | | | 0.00 | 0.00 | |
| 11/13/2009 | SRA | | 11/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95125.82 | 0.00 | 0.00 | 0.00 |
| 10/30/2009 | CTA | | 11/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95125.82 | 353.54 | 0.00 | 0.00 |
| 10/16/2009 | UFU | | 11/1/2009 | -353.54 | | | 0.00 | 0.00 | |
| 10/16/2009 | AP | | 11/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95479.36 | 104.69 | 577.49 | 0.00 |
| 10/16/2009 | O33 | | 11/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 10/2/2009 | UFU | | 10/1/2009 | 353.54 | | | 0.00 | 0.00 | |
| 10/2/2009 | SRA | | 10/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95584.05 | 0.00 | 0.00 | 0.00 |
| 9/18/2009 | UFU | | 10/1/2009 | -353.54 | | | 0.00 | 0.00 | |
| 9/18/2009 | AP | | 10/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95584.05 | 104.06 | 578.12 | 0.00 |
| 9/18/2009 | O33 | | 10/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 9/4/2009 | UFU | | 9/1/2009 | 353.54 | | | 0.00 | 0.00 | |
| 9/4/2009 | SRA | | 9/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95688.11 | 0.00 | 0.00 | 0.00 |
| 8/21/2009 | UFU | | 9/1/2009 | -353.54 | | | 0.00 | 0.00 | |
| 8/21/2009 | AP | | 9/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95688.11 | 103.44 | 578.74 | 0.00 |
| 8/21/2009 | O33 | | 9/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 8/7/2009 | UFU | | 8/1/2009 | 353.54 | | | 0.00 | 0.00 | |
| 8/7/2009 | SRA | | 8/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   95791.55 | 0.00 | 0.00 | 0.00 |
| 7/24/2009 | UFU | | 8/1/2009 | -366.51 | | | 0.00 | | |

DISPLAY/HISTORY

| | | | | | | | | Page:  11 |
|---|---|---|---|---|---|---|---|---|

Acct:    Name:   PORTIA B ISHEE    Type: 1    Sub: 0    Investor: 10023    Warn: 5    Lock: 1    Stop: 0

- Dates -    Paid To: 7/1/2010    Next Due: 8/1/2010    Last Pmt: 7/16/2010

- Bal -    Prin: $0.00    Esc: $0.00    FCL Refer: 11/9/2010    Refresh Date: 2/20/2014

- Uncol -    LC: $0.00    P&I Adv: $0.00    Esc Sht: $0.00

**FINANCIAL TRANSACTIONS:**

| Trans Added Date | Trans Type | Date Interest Paid Current | Add Teller | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 7/24/2009 | CWA | 8/1/2009 | | 12.97 | | PAYEE # 000000000   BAL AFTER   95791.55 | 12.97 | 0.00 | 0.00 |
| 7/24/2009 | AP | 8/1/2009 | | 340.57 | | PAYEE # 000000000   BAL AFTER   95804.52 | 102.74 | 579.44 | 0.00 |
| 7/24/2009 | O33 | 8/1/2009 | | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 7/22/2009 | B63 | 7/1/2009 | | -12.95 | | | 0.00 | 0.00 | 0.00 |
| 7/10/2009 | UFU | 7/1/2009 | | 366.51 | | | 0.00 | 0.00 | |
| 7/10/2009 | SRA | 7/1/2009 | | 366.51 | | PAYEE # 000000000   BAL AFTER   95907.26 | 0.00 | 0.00 | 0.00 |
| 6/26/2009 | UFU | 7/1/2009 | | -366.51 | | | 0.00 | 0.00 | |
| 6/26/2009 | AP | 7/1/2009 | | 366.51 | | PAYEE # 000000000   BAL AFTER   95907.26 | 102.12 | 580.06 | 0.00 |
| 6/26/2009 | O63 | 7/1/2009 | | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 6/26/2009 | O63 | 7/1/2009 | | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 6/26/2009 | O33 | 7/1/2009 | | 0.00 | | | 0.00 | 0.00 | |
| 6/12/2009 | UFU | 6/1/2009 | | 366.51 | | | 0.00 | 0.00 | |
| 6/12/2009 | SRA | 6/1/2009 | | 366.51 | | PAYEE # 000000000   BAL AFTER   96009.38 | 0.00 | 0.00 | 0.00 |
| 5/29/2009 | UFU | 6/1/2009 | | -366.51 | | | 0.00 | 0.00 | |
| 5/29/2009 | AP | 6/1/2009 | | 366.51 | | PAYEE # 000000000   BAL AFTER   96009.38 | 101.51 | 580.67 | 0.00 |
| 5/29/2009 | O63 | 6/1/2009 | | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 5/29/2009 | O63 | 6/1/2009 | | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 5/29/2009 | O33 | 6/1/2009 | | 0.00 | | | 0.00 | 0.00 | |
| 5/15/2009 | UFU | 5/1/2009 | | 366.51 | | | 0.00 | 0.00 | |
| 5/15/2009 | SRA | 5/1/2009 | | 366.51 | | PAYEE # 000000000   BAL AFTER   96110.89 | 0.00 | 0.00 | 0.00 |
| 5/1/2009 | CTA | 5/1/2009 | | 366.51 | | PAYEE # 000000000   BAL AFTER   96110.89 | 366.51 | 0.00 | 0.00 |

FANNIE MAE/Ishee - 000059

# DISPLAY/HISTORY

| | | | | | | | Page: | 12 | |
|---|---|---|---|---|---|---|---|---|---|
| Acct: | Name: | PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 | |
| - Dates - | Paid To: 7/1/2010 | | Next Due: 8/1/2010 | Last Pmt: 7/16/2010 | | Refresh Date: 2/20/2014 | | | |
| - Bal - | Prin: $0.00 | | Esc: $0.00 | FCL Refer: 11/9/2010 | | | | | |
| - Uncol - | LC: $0.00 | | P&I Adv: $0.00 | Esc Sht: $0.00 | | | | | |

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 4/17/2009 | UFU | | 5/1/2009 | -366.51 | | | 0.00 | 0.00 | |
| 4/17/2009 | AP | | 5/1/2009 | 366.51 | | PAYEE # 000000000   BAL AFTER   96477.4 | 98.70 | 583.48 | 0.00 |
| 4/17/2009 | O63 | | 5/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 4/17/2009 | O63 | | 5/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 4/17/2009 | O33 | | 5/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 4/3/2009 | UFU | | 4/1/2009 | 366.51 | | | 0.00 | 0.00 | |
| 4/3/2009 | SRA | | 4/1/2009 | -353.54 | | PAYEE # 000000000   BAL AFTER   96576.1 | 0.00 | 0.00 | 0.00 |
| 3/20/2009 | UFU | | 4/1/2009 | -353.54 | | | 0.00 | 0.00 | |
| 3/20/2009 | AP | | 4/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   96576.1 | 98.11 | 584.07 | 0.00 |
| 3/20/2009 | O33 | | 4/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 3/6/2009 | UFU | | 3/1/2009 | 353.54 | | | 0.00 | 0.00 | |
| 3/6/2009 | SRA | | 3/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   96674.21 | 0.00 | 0.00 | 0.00 |
| 2/20/2009 | UFU | | 3/1/2009 | -353.54 | | | 0.00 | 0.00 | |
| 2/20/2009 | AP | | 3/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   96674.21 | 97.52 | 584.66 | 0.00 |
| 2/20/2009 | O33 | | 3/1/2009 | 0.00 | | | 0.00 | 0.00 | |
| 2/6/2009 | UFU | | 2/1/2009 | 353.54 | | | 0.00 | 0.00 | |
| 2/6/2009 | SRA | | 2/1/2009 | -353.54 | | PAYEE # 000000000   BAL AFTER   96771.73 | 0.00 | 0.00 | 0.00 |
| 1/23/2009 | UFU | | 2/1/2009 | -353.54 | | | 0.00 | 0.00 | |
| 1/23/2009 | AP | | 2/1/2009 | 353.54 | | PAYEE # 000000000   BAL AFTER   96771.73 | 96.93 | 585.25 | 0.00 |
| 1/23/2009 | O33 | | 2/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 1/9/2009 | UFU | | 1/1/2009 | 353.54 | | | 0.00 | 0.00 | |

DISPLAY/HISTORY

| Acct: | | Name: | PORTIA B ISHEE | | Type: 1 | | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | | Stop: 0 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| - Dates - | | Paid To: | 7/1/2010 | | Next Due: | 8/1/2010 | | Last Pmt: 7/16/2010 | | | | Page: 13 |
| - Bal - | | Prin: | $0.00 | | Esc: | $0.00 | | FCL Refer: 11/9/2010 | | Refresh Date: 2/20/2014 | | |
| - Uncol - | | LC: | $0.00 | | P&I Adv: | $0.00 | | Esc Sht: $0.00 | | | | |

FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1/9/2009 | SRA | | 1/1/2009 | 353.54 | | PAYEE # 000000000 BAL AFTER 96868.66 | 0.00 | 0.00 | 0.00 |
| 12/29/2008 | UFU | | 1/1/2009 | -353.54 | | | 0.00 | 0.00 | 0.00 |
| 12/29/2008 | AP | | 1/1/2009 | 353.54 | | PAYEE # 000000000 BAL AFTER 96868.66 | 96.35 | 585.83 | 0.00 |
| 12/29/2008 | O33 | | 1/1/2009 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 12/12/2008 | UFU | | 12/1/2008 | 353.54 | | | 0.00 | 0.00 | 0.00 |
| 12/12/2008 | SRA | | 12/1/2008 | 353.54 | | PAYEE # 000000000 BAL AFTER 96965.01 | 0.00 | 0.00 | 0.00 |
| 11/28/2008 | UFU | | 12/1/2008 | -353.54 | | | 0.00 | 0.00 | |
| 11/28/2008 | AP | | 12/1/2008 | 353.54 | | PAYEE # 000000000 BAL AFTER 96965.01 | 95.77 | 586.41 | 0.00 |
| 11/28/2008 | O33 | | 12/12/2008 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 11/14/2008 | UFU | | 11/1/2008 | 353.54 | | | 0.00 | 0.00 | |
| 11/14/2008 | SRA | | 11/1/2008 | 353.54 | | PAYEE # 000000000 BAL AFTER 97060.78 | 0.00 | 0.00 | 0.00 |
| 10/31/2008 | CTA | | 11/1/2008 | 353.54 | | PAYEE # 000000000 BAL AFTER 97060.78 | 353.54 | 0.00 | 0.00 |
| 10/17/2008 | UFU | | 11/1/2008 | -353.54 | | | 0.00 | 0.00 | |
| 10/17/2008 | AP | | 11/1/2008 | 353.54 | | PAYEE # 000000000 BAL AFTER 97414.32 | 93.07 | 589.11 | 0.00 |
| 10/17/2008 | O33 | | 10/1/2008 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 10/3/2008 | UFU | | 10/1/2008 | 353.54 | | | 0.00 | 0.00 | |
| 10/3/2008 | SRA | | 10/1/2008 | 353.54 | | PAYEE # 000000000 BAL AFTER 97507.39 | 0.00 | 0.00 | 0.00 |
| 9/19/2008 | UFU | | 10/1/2008 | -353.54 | | | 0.00 | 0.00 | |
| 9/19/2008 | AP | | 10/1/2008 | 353.54 | | PAYEE # 000000000 BAL AFTER 97507.39 | 92.51 | 589.67 | 0.00 |
| 9/19/2008 | O33 | | 10/1/2008 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 9/5/2008 | UFU | | 9/1/2008 | 353.54 | | | 0.00 | 0.00 | 0.00 |

FANNIE MAE/Ishee - 000061

# DISPLAY/HISTORY

Page:   14

| Acct: | | Name:  PORTIA B ISHEE | | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |
|---|---|---|---|---|---|---|---|---|---|
| - Dates - | Paid To: 7/1/2010 | | | Next Due: 8/1/2010 | Last Pmt: 7/16/2010 | | | | |
| - Bal - | Prin: $0.00 | | | Esc: $0.00 | FCL Refer: 11/9/2010 | | Refresh Date: 2/20/2014 | | |
| - Uncol - | LC: $0.00 | | | P&I Adv: $0.00 | Esc Sht: $0.00 | | | | |

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Trans Amount | Transaction Reason | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 9/5/2008 | SRA | | 9/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  97599.9 | 0.00 | 0.00 | 0.00 |
| 8/22/2008 | UFU | | 9/1/2008 | -353.54 | | | 0.00 | 0.00 | |
| 8/22/2008 | AP | | 9/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  97599.9 | 91.96 | 590.22 | 0.00 |
| 8/22/2008 | O33 | | 9/1/2008 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 8/8/2008 | UFU | | 8/1/2008 | 353.54 | | | 0.00 | 0.00 | |
| 8/8/2008 | SRA | | 8/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  97691.86 | 0.00 | 0.00 | 0.00 |
| 7/25/2008 | UFU | | 8/1/2008 | -353.54 | | | 0.00 | 0.00 | |
| 7/25/2008 | AP | | 8/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  97691.86 | 91.41 | 590.77 | 0.00 |
| 7/25/2008 | O33 | | 8/1/2008 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 7/11/2008 | UFU | | 7/1/2008 | 353.54 | | | 0.00 | 0.00 | |
| 7/11/2008 | SRA | | 7/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  97783.27 | 0.00 | 0.00 | 0.00 |
| 6/27/2008 | UFU | | 7/1/2008 | -353.54 | | | 0.00 | 0.00 | |
| 6/27/2008 | AP | | 7/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  97783.27 | 90.86 | 591.32 | 0.00 |
| 6/27/2008 | O33 | | 7/1/2008 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 6/13/2008 | UFU | | 6/1/2008 | 353.54 | | | 0.00 | 0.00 | |
| 6/13/2008 | SRA | | 6/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  97874.13 | 0.00 | 0.00 | 0.00 |
| 5/30/2008 | CTA | | 6/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  97874.13 | 353.54 | 0.00 | 0.00 |
| 5/16/2008 | UFU | | 6/1/2008 | -353.54 | | | 0.00 | 0.00 | |
| 5/16/2008 | AP | | 6/1/2008 | 353.54 | | PAYEE #  000000000   BAL AFTER  98227.67 | 88.19 | 593.99 | 0.00 |
| 5/16/2008 | O33 | | 6/1/2008 | 0.00 | | | 0.00 | 0.00 | 0.00 |
| 5/2/2008 | UFU | | 5/1/2008 | 353.54 | | | 0.00 | 0.00 | |

FANNIE MAE/Ishee - 000062

FANNIE MAE/Ishee - 000063

# DISPLAY/HISTORY

Page:  15

| Acct: | Name: PORTIA B ISHEE | Type: 1 | Sub: 0 | Investor: 10023 | Warn: 5 | Lock: 1 | Stop: 0 |

- Dates -  Paid To: 7/1/2010   Next Due: 8/1/2010   Last Pmt: 7/16/2010
- Bal -  Prin: $0.00   Esc: $0.00   FCL Refer: 11/9/2010   Refresh Date: 2/20/2014
- Uncol -  LC: $0.00   P&I Adv: $0.00   Esc Sht: $0.00

## FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Transaction Reason | Trans Amount | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 5/2/2008 | SRA | | 5/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98315.86 | 0.00 | 0.00 | 0.00 |
| 4/18/2008 | UFU | | 5/1/2008 | | -353.54 | | 0.00 | 0.00 | |
| 4/18/2008 | AP | | 5/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98315.86 | 87.66 | 594.52 | 0.00 |
| 4/18/2008 | O33 | | 5/1/2008 | | 0.00 | | 0.00 | 0.00 | 0.00 |
| 4/4/2008 | UFU | | 4/1/2008 | | 353.54 | | 0.00 | 0.00 | |
| 4/4/2008 | SRA | | 4/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98403.52 | 0.00 | 0.00 | 0.00 |
| 3/21/2008 | UFU | | 4/1/2008 | | -353.54 | | 0.00 | 0.00 | |
| 3/21/2008 | AP | | 4/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98403.52 | 87.13 | 595.05 | 0.00 |
| 3/21/2008 | O33 | | 4/1/2008 | | 0.00 | | 0.00 | 0.00 | 0.00 |
| 3/7/2008 | UFU | | 3/1/2008 | | 353.54 | | 0.00 | 0.00 | |
| 3/7/2008 | SRA | | 3/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98490.65 | 0.00 | 0.00 | 0.00 |
| 2/22/2008 | UFU | | 3/1/2008 | | -353.54 | | 0.00 | 0.00 | |
| 2/22/2008 | AP | | 3/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98490.65 | 86.61 | 595.57 | 0.00 |
| 2/22/2008 | O33 | | 3/1/2008 | | 0.00 | | 0.00 | 0.00 | 0.00 |
| 2/8/2008 | UFU | | 2/1/2008 | | 353.54 | | 0.00 | 0.00 | |
| 2/8/2008 | SRA | | 2/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98577.26 | 0.00 | 0.00 | 0.00 |
| 1/25/2008 | UFU | | 2/1/2008 | | -353.54 | | 0.00 | 0.00 | |
| 1/25/2008 | AP | | 2/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98577.26 | 86.09 | 596.09 | 0.00 |
| 1/25/2008 | O33 | | 2/1/2008 | | 0.00 | | 0.00 | 0.00 | 0.00 |
| 1/11/2008 | UFU | | 1/1/2008 | | 353.54 | | 0.00 | 0.00 | |
| 1/11/2008 | SRA | | 1/1/2008 | | 353.54 | PAYEE # 000000000   BAL AFTER  98663.35 | 0.00 | 0.00 | 0.00 |

DISPLAY/HISTORY

| Acct: | | Name: | PORTIA B ISHEE | | Type: 1 | Sub: 0 | Investor: 10023 | Lock: 1 | Stop: 0 |
|---|---|---|---|---|---|---|---|---|---|

- Dates -  Paid To: 7/1/2010   Next Due: 8/1/2010   Last Pmt: 7/16/2010
- Bal -  Prin: $0.00   Esc: $0.00   FCL Refer: 11/9/2010   Refresh Date: 2/20/2014   Warn: 5
- Uncol -  LC: $0.00   P&I Adv: $0.00   Esc Sht: $0.00

FINANCIAL TRANSACTIONS:

| Trans Added Date | Trans Type | Add Teller | Date Interest Paid Current | Transaction Reason | Trans Amount | TransactionDescription | To Principal | To Int Amt | To Escrow Amt |
|---|---|---|---|---|---|---|---|---|---|
| 12/28/2007 | UFU | | 1/1/2008 | | -341.09 | | 0.00 | 0.00 | 0.00 |
| 12/28/2007 | AP | | 1/1/2008 | | 341.09 | PAYEE # 000000000 BAL AFTER 98663.35 | 85.57 | 596.61 | 0.00 |
| 12/14/2007 | UFU | | 12/1/2007 | | 341.09 | | 0.00 | 0.00 | 0.00 |
| 12/14/2007 | SRA | | 12/1/2007 | | 341.09 | PAYEE # 000000000 BAL AFTER 98748.92 | 0.00 | 0.00 | 0.00 |
| 12/8/2007 | CTA | | 12/1/2007 | | 283.18 | PAYEE # 000000000 BAL AFTER 98748.92 | 283.18 | 0.00 | 0.00 |
| 12/7/2007 | AP | | 12/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99032.1 | 83.36 | 598.82 | 0.00 |
| 11/16/2007 | AP | | 11/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99115.46 | 82.86 | 599.32 | 0.00 |
| 10/5/2007 | AP | | 10/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99198.32 | 82.36 | 599.82 | 0.00 |
| 9/6/2007 | AP | | 9/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99280.68 | 81.86 | 600.32 | 0.00 |
| 8/6/2007 | AP | | 8/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99362.54 | 81.37 | 600.81 | 0.00 |
| 7/5/2007 | AP | | 7/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99443.91 | 80.88 | 601.30 | 0.00 |
| 6/8/2007 | AP | | 6/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99524.79 | 80.40 | 601.78 | 0.00 |
| 5/7/2007 | AP | | 5/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99605.19 | 79.92 | 602.26 | 0.00 |
| 4/6/2007 | AP | | 4/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99685.11 | 79.44 | 602.74 | 0.00 |
| 3/6/2007 | AP | | 3/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99764.55 | 78.96 | 603.22 | 0.00 |
| 2/5/2007 | AP | | 2/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99843.51 | 78.48 | 603.70 | 0.00 |
| 1/3/2007 | AP | | 1/1/2007 | | 682.18 | PAYEE # 000000000 BAL AFTER 99921.99 | 78.01 | 604.17 | 0.00 |

# ATTACHMENT #5

Green Tree Account: 62319296    History Time Period: All History

| | Tran Dt | Back Dt | Tran Amt | Trn Cd | Tran Description | Trans Cat | Due Pd | Prin Paid | Int Pd | Esc Pd | Late Pd | Ins Pd | Other Pd | Prin Bal** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 01/31/13 | | -35.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | 94,247.73 |
| GTA | 01/31/13 | | | 211 | Ins 300 | 77 | | .00 | .00 | | | -35.00 | | 94,247.73 |
| GTA | 01/31/13 | | -35.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | 94,247.73 |
| GTA | 01/31/13 | | | 211 | Ins 301 | 77 | | .00 | .00 | | | -35.00 | | 94,247.73 |
| GTA | 01/31/13 | | -35.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | 94,247.73 |
| GTA | 01/31/13 | | | 211 | Ins 302 | 77 | | .00 | .00 | | | -35.00 | | 94,247.73 |
| GTA | 01/31/13 | | -520.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | 94,247.73 |
| GTA | 01/31/13 | | | 211 | Ins 303 | 77 | | .00 | .00 | | | -520.00 | | 94,247.73 |
| GTA | 01/31/13 | | -10.50 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | 94,247.73 |
| GTA | 01/31/13 | | | 211 | Ins 304 | 77 | | .00 | .00 | | | -10.50 | | 94,247.73 |
| GTA | 01/31/13 | | -225.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | 94,247.73 |
| GTA | 01/31/13 | | | 211 | Ins 305 | 77 | | .00 | .00 | | | -225.00 | | 94,247.73 |
| GTA | 01/31/13 | | -12.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | 94,247.73 |
| GTA | 01/31/13 | | | 211 | Ins 306 | 77 | | .00 | .00 | | | -12.00 | | 94,247.73 |
| GTA | 01/31/13 | | -1,288.00 | 211 | Disbursement:Insurance Only | 77 | | | | | | | | 94,247.73 |
| GTA | 01/31/13 | | | 211 | Ins 307 | 77 | | .00 | .00 | | | -1,288.00 | | 94,247.73 |
| GTA | 02/26/13 | | 99,623.48 | 140 | Payment:Escrow Only-Cash | 25 | | | | 99,623.48 | | | | 94,247.73 |
| GTA | 02/26/13 | | | 140 REV | Esc 10 | 25 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 04/03/13 | 03/31/13 | 46.40 | 120 REV | Payment:Prin Only-Cash | 15 | | | | | | | | 94,201.33 |
| GTA | 04/03/13 | 03/31/13 | | 120 REV | P&I | 15 | 03/31/13 | 46.40 | .00 | | | | | 94,201.33 |
| GTA | 04/30/13 | | -1,523.82 | 211 | Disbursement:Insurance Only | 25 | | | | | | -1,523.82 | | 94,201.33 |
| GTA | 04/30/13 | | | 211 | Ins 10 | 25 | | .00 | .00 | | | | | 94,201.33 |
| GTA | 05/03/13 | 04/30/13 | 40.94 | 120 REV | Payment:Prin Only-Cash | 15 | | | | | | | | 94,160.39 |
| GTA | 05/03/13 | 04/30/13 | | 120 REV | P&I | 15 | 04/30/13 | 40.94 | .00 | | | | | 94,160.39 |
| GTA | 06/03/13 | 05/31/13 | 42.31 | 120 REV | Payment:Prin Only-Cash | 15 | | | | | | | | 94,118.08 |
| GTA | 06/03/13 | 05/31/13 | | 120 REV | P&I | 15 | 05/31/13 | 42.31 | .00 | | | | | 94,118.08 |
| GTA | 07/02/13 | | -163.33 | 211 | Disbursement:Insurance Only | R1 | | | | | | -163.33 | | 94,118.08 |
| GTA | 07/02/13 | | | 211 | Ins 308 | R1 | | .00 | .00 | | | | | 94,118.08 |
| GTA | 07/02/13 | | 163.33 | 150 | Payment:Insurance Only-Cash | R1 | | | | | | 163.33 | | 94,118.08 |
| GTA | 07/02/13 | | | 150 REV | Ins 10 | R1 | | .00 | .00 | | | | | 94,118.08 |
| GTA | 07/03/13 | 06/30/13 | 40.94 | 120 REV | Payment:Prin Only-Cash | 15 | | | | | | | | 94,077.14 |

**The Displayed Prin Bal is an estimate based on history trans.    Account: 62319296

"Source: G=History on the Green Tree servicing system, C=Acquired History from other servicer, N=Note."

| | Tran. Dt | Back. Dt | Tran. Amt | Trn Cd | Tran Description | Tran Cat | Due Pd | Prin Paid | Int Pd | Esc Pd | Late Pd | Ins Pd | Other Pd | Prin Bal** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 07/03/13 | 06/30/13 | | 120 REV | P&I | 15 | 06/30/13 | 40.94 | .00 | | | | | 94,077.14 |
| GTA | 08/02/13 | | -163.33 | 211 | Disbursement:Insurance Only | R1 | | | | | | | | |
| GTA | 08/02/13 | | | 211 | Ins 309 | R1 | | .00 | .00 | | | -163.33 | | 94,077.14 |
| GTA | 08/02/13 | | 163.33 | 150 | Payment:Insurance Only-Cash | R1 | | | | | | | | |
| GTA | 08/02/13 | | | 150 | Ins 10 | R1 | | .00 | .00 | | | 163.33 | | |
| GTA | 08/03/13 | 07/31/13 | 42.31 | 120 REV | Payment:Prin Only-Cash | 15 | | | | | | | | 94,034.83 |
| GTA | 08/03/13 | 07/31/13 | | 120 REV | P&I | 15 | 07/31/13 | 42.31 | .00 | | | | | 94,034.83 |
| GTA | 09/02/13 | | -163.33 | 211 | Disbursement:Insurance Only | R1 | | | | | | | | |
| GTA | 09/02/13 | | | 211 | Ins 310 | R1 | | .00 | .00 | | | -163.33 | | 94,034.83 |
| GTA | 09/02/13 | | 163.33 | 150 | Payment:Insurance Only-Cash | R1 | | | | | | | | |
| GTA | 09/02/13 | | | 150 | Ins 10 | R1 | | .00 | .00 | | | 163.33 | | |
| GTA | 09/03/13 | 08/31/13 | 42.31 | 120 REV | Payment:Prin Only-Cash | 15 | | | | | | | | 93,992.52 |
| GTA | 09/03/13 | 08/31/13 | | 120 REV | P&I | 15 | 08/31/13 | 42.31 | .00 | | | | | 93,992.52 |
| GTA | 10/02/13 | | -163.33 | 211 | Disbursement:Insurance Only | R1 | | | | | | | | |
| GTA | 10/02/13 | | | 211 | Ins 311 | R1 | | .00 | .00 | | | -163.33 | | 93,992.52 |
| GTA | 10/02/13 | | 163.33 | 150 | Payment:Insurance Only-Cash | R1 | | | | | | | | |
| GTA | 10/02/13 | | | 150 | Ins 10 | R1 | | .00 | .00 | | | 163.33 | | |
| GTA | 10/03/13 | 09/30/13 | 40.94 | 120 REV | Payment:Prin Only-Cash | 15 | | | | | | | | 93,951.58 |
| GTA | 10/03/13 | 09/30/13 | | 120 REV | P&I | 15 | 09/30/13 | 40.94 | .00 | | | | | 93,951.58 |
| GTA | 10/30/13 | 06/01/13 | .00 | 209 | Cancellation:Insurance | 25 | | | | | | | | 93,951.58 |
| GTA | 10/30/13 | 06/01/13 | .00 | 209 | Cancellation:Insurance | 25 | | | | | | | | 93,951.58 |
| GTA | 10/30/13 | 07/01/13 | .00 | 209 | Cancellation:Insurance | 25 | | | | | | | | 93,951.58 |
| GTA | 10/30/13 | 08/01/13 | .00 | 209 | Cancellation:Insurance | 25 | | | | | | | | 93,951.58 |
| GTA | 10/30/13 | 09/01/13 | .00 | 209 | Cancellation:Insurance | 25 | | | | | | | | 93,951.58 |
| GTA | 10/30/13 | 03/31/13 | -46.40 | 520 | Reversal:Pymt Prin Only-Cash | 15 | | | | | | | | 93,997.98 |
| GTA | 10/30/13 | 03/31/13 | | 520 | P&I | 15 | 03/31/13 | -46.40 | .00 | | | | | 93,997.98 |
| GTA | 10/30/13 | 04/30/13 | -40.94 | 520 | Reversal:Pymt Prin Only-Cash | 15 | | | | | | | | 94,038.92 |
| GTA | 10/30/13 | 04/30/13 | | 520 | P&I | 15 | 04/30/13 | -40.94 | .00 | | | | | 94,038.92 |
| GTA | 10/30/13 | 05/31/13 | -42.31 | 520 | Reversal:Pymt Prin Only-Cash | 15 | | | | | | | | 94,081.23 |
| GTA | 10/30/13 | 05/31/13 | | 520 | P&I | 15 | 05/31/13 | -42.31 | .00 | | | | | 94,081.23 |
| GTA | 10/30/13 | 06/30/13 | -40.94 | 520 | Reversal:Pymt Prin Only-Cash | 15 | | | | | | | | 94,122.17 |
| GTA | 10/30/13 | 06/30/13 | | 520 | P&I | 15 | 06/30/13 | -40.94 | .00 | | | | | 94,122.17 |

*Source: G=History on the Green Tree servicing System, C=Acquired History from other servicer, N=Note.

**The Displayed Prin Bal is an estimate based on history trans.    Account: 62319296

GREEN TREE/Ishee - 000002

GREEN TREE/Ishee - 000003

3 of 4

| * | Tran Dt | Back Dt | Tran Amt | Trn Cd | Tran Description | Tran Cat | Due Pd | Prin Paid | Int Pd | Esc Pd | Late Pd | Ins Pd | Other Pd | Prin Bal** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 10/30/13 | 07/31/13 | -42.31 | 520 | Reversal:Pymt Prin Only-Cash | 15 | 07/31/13 | -42.31 | .00 | | | | | 94,164.48 |
| GTA | 10/30/13 | 07/31/13 | | 520 | P&I | 15 | | -42.31 | | | | | | |
| GTA | 10/30/13 | 08/31/13 | -42.31 | 520 | Reversal:Pymt Prin Only-Cash | 15 | 08/31/13 | -42.31 | .00 | | | | | 94,206.79 |
| GTA | 10/30/13 | 08/31/13 | | 520 | P&I | 15 | | -42.31 | | | | | | |
| GTA | 10/30/13 | 09/30/13 | -40.94 | 520 | Reversal:Pymt Prin Only-Cash | 15 | 09/30/13 | -40.94 | .00 | | | | | 94,247.73 |
| GTA | 10/30/13 | 09/30/13 | | 520 | P&I | 15 | | -40.94 | | | | | | |
| GTA | 10/30/13 | | 816.68 | 150 | Payment:Insurance Only-Cash | 25 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/30/13 | | | 150 | Ins 10 | 25 | | | | | | 816.68 | | |
| GTA | 10/30/13 | | 53.82 | 151 | Payment:Insurance Only-JE | 25 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/30/13 | | | 151 | Ins 10 | 25 | | | | | | 53.82 | | |
| GTA | 10/30/13 | | 163.33 | 150 | Payment:Insurance Only-Cash | 25 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/30/13 | | | 150 | Ins 308 | 25 | | | | | | 163.33 | | |
| GTA | 10/30/13 | | 163.33 | 150 | Payment:Insurance Only-Cash | 25 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/30/13 | | | 150 | Ins 309 | 25 | | | | | | 163.33 | | |
| GTA | 10/30/13 | | 163.33 | 150 | Payment:Insurance Only-Cash | 25 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/30/13 | | | 150 | Ins 310 | 25 | | | | | | 163.33 | | |
| GTA | 10/30/13 | | 163.33 | 150 | Payment:Insurance Only-Cash | 25 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/30/13 | | | 150 | Ins 311 | 25 | | | | | | 163.33 | | |
| GTA | 10/31/13 | | -99,623.48 | 210 | Disbursement:Escrow Only | 25 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/31/13 | | | 210 | Esc 10 | 25 | | | | -99,623.48 | | | | |
| GTA | 10/31/13 | | 35.00 | 150 | Payment:Insurance Only-Cash | 31 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/31/13 | | | 150 | Ins 300 | 31 | | | | | | 35.00 | | |
| GTA | 10/31/13 | | 35.00 | 150 | Payment:Insurance Only-Cash | 31 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/31/13 | | | 150 | Ins 301 | 31 | | | | | | 35.00 | | |
| GTA | 10/31/13 | | 35.00 | 150 | Payment:Insurance Only-Cash | 31 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/31/13 | | | 150 | Ins 302 | 31 | | | | | | 35.00 | | |
| GTA | 10/31/13 | | 520.00 | 150 | Payment:Insurance Only-Cash | 31 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/31/13 | | | 150 | Ins 303 | 31 | | | | | | 520.00 | | |
| GTA | 10/31/13 | | 10.50 | 150 | Payment:Insurance Only-Cash | 31 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/31/13 | | | 150 | Ins 304 | 31 | | | | | | 10.50 | | |
| GTA | 10/31/13 | | 225.00 | 150 | Payment:Insurance Only-Cash | 31 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/31/13 | | | 150 | Ins 305 | 31 | | | | | | 225.00 | | |
| GTA | 10/31/13 | | 12.00 | 150 | Payment:Insurance Only-Cash | 31 | | .00 | .00 | | | | | 94,247.73 |
| GTA | 10/31/13 | | | 150 | Ins 306 | 31 | | | | | | 12.00 | | |
| GTA | 11/04/13 | 10/31/13 | 40.94 | 120 REV | Payment:Prin Only-Cash | 15 | | | | | | | | 94,206.79 |

*Source: "G"=History on the Green Tree servicing System, "C"=Acquired History from other servicer. "N"=Note."

**The Displayed Prin Bal is an estimate based on history trans.    Account: 62319296

GREEN TREE/Ishee - 000003

| * | Trans Dt | Back Dt | Tran Amt | Trn Cd | Tran Description | Trans Cat | Due Pd | Prin Paid | Int Pd | Esc Pd | Late Pd | Ins Pd | Other Pd | Prin Bal** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GTA | 11/04/13 | 10/31/13 | | 120 REV | P&I | 15 | 10/31/13 | 40.94 | .00 | | | | | |
| GTA | 11/05/13 | 10/31/13 | -40.94 | 520 | Reversal/Pymt Prin Only-Cash | 15 | | | | | | | | 94,247.73 |
| GTA | 11/05/13 | 10/31/13 | | 520 | P&I | 15 | 10/31/13 | -40.94 | .00 | | | | | |
| GTA | 11/06/13 | 11/16/10 | 98,148.92 | 184 | Payoff:I.E or Cash-Determined by CAT | 17 | | | | | | | | .00 |
| GTA | 11/06/13 | 11/16/10 | | 184 | P&I | 17 | | 94,247.73 | 2,558.63 | | | | | |
| GTA | 11/06/13 | 11/16/10 | | 184 | Ins 307 | 17 | | .00 | .00 | | | 1,288.00 | | |
| GTA | 11/06/13 | 11/16/10 | | 184 | Late | 17 | | .00 | .00 | | 54.56 | | | |
| GTA | 11/06/13 | 11/16/10 | .00 | OVR | Payoff Overage | | | | | | | | | .00 |

*Source: 'G'=History on the Green Tree servicing System, 'C'=Acquired History from other servicer. 'N'=Note."
**The Displayed Prin Bal is an estimate based on history trans.     Account: 62319296

# ATTACHMENT #6

**ALFA GENERAL INSURANCE CORPORATION**    Policy Number: H0972929

2108 EAST SOUTH BLVD.
P.O. BOX 11000    **FILE COPY**
MONTGOMERY, ALABAMA 36191-0001

**I N N S U R E D**

**HOMEOWNER DECLARATIONS**

RENEWAL

KENNETH D ISHEE
PORTIA I ISHEE
PO BOX 162
MCLAIN MS  39456

**SPECIAL NOTICE REGARDING FLOOD AND
EARTHQUAKE EXCLUSIONS (REVERSE SIDE)**

Policy Number  : H0972929
Agent # / SC # : 031 / 590
Member Number  : C356909
Accounting Date: 04/05/10
Agent's Name   : Ricky Bridges
Service Center : 3140 Main St
                 Leaksville MS  39451
Phone Number   : 601-394-5000

**M O R T G A G E E**

GMAC MORTGAGE LLC
ITS SUCC AND/OR ASSIGNS ATIMA
PO BOX 4025
CORAOPOLIS PA  15108-6925

**POLICY PERIOD:**

The policy period begins and ends at 12:01 a.m. Standard Time at the residence premises.  Insurance
is provided by this policy for the policy period shown and for successive policy periods for which the
premium is paid and accepted.  If only a six month's renewal premium is paid then the policy period
shall be only six months.  If we elect to continue this insurance, we will renew this policy for each
successive policy period, subject to payment of the renewal premium, policy rules and policy forms then
in effect. The policy will expire at the end of the then current policy period if the renewal premium
is not paid prior to that time.

The effective date of your policy is  03/29/10, 12:01 AM Standard Time.
The expiration date of your policy is  09/29/10, 12:01 AM Standard Time.

The residence premises covered by this policy is located:
    36 MUSCIO ROAD MCLAIN MS

**COVERAGES:**    FORM AGHO-3G    CLASS: 3110422

| SECTION I (Property) | LIMITS | SECTION II (Liability) | LIMITS |
|---|---|---|---|
| A. Dwelling | $ 205,400 | E. Personal Liability | |
| B. Other Structures | $ 20,500 | (Each Occurrence) | $ 100,000 |
| C. Personal Property | $ 113,000 | F. Medical Payments | |
| D. Loss of Use | $ 61,600 | (Each Person) | $ 1,000 |
| | | (Each Accident) | $ 25,000 |

Please refer to your policy for additional coverages that are provided, and the conditions
under which coverage limits apply.

A deductible (that portion of the loss you pay) of $1000 applies to property
losses (Section I).  No deductibles apply to liability losses (Section II).
Refer to endorsement section for other deductibles that may apply to this policy.
Your dwelling is located in ZONE 42, FIRE PROTECTION CLASS 10, RATED AS BRICK/VENEER AND BUILT IN 1978.

**MORTGAGEES**- Listed below are the mortgagees that have an interest in your property.
 1ST

    GMAC MORTGAGE LLC
    ITS SUCC AND/OR ASSIGNS ATIMA
    PO BOX 4025
    CORAOPOLIS PA  15108-6925
    Loan number: 0656318013

**PREMIUMS:**

| | |
|---|---|
| Basic Policy Premium | $ 1524 |
| Increased Liability/Medical Premium | $ 0 |
| Section I Endorsement Premiums | $ 0 |
| Section II Endorsement Premiums | $ 0 |
| **TOTAL POLICY PREMIUM  (SIX MONTH TERM POLICY)** | $ 1524 |

$ -            9 -

**THIS DECLARATION INDICATES COVERAGE AND/OR PREMIUM CHANGES, IT IS NOT A BILL.**
Continued on Reverse Side    Page 1 of 3

ALFA SDT 000206

ENDORSEMENTS: (Forming a part of your policy)                    **PREMIUM**

HO-1    REPLACEMENT COST LOSS SETTLEMENT - DWELLING              N/A
HO-17   SPECIFIC PROPERTY COVERAGE EXCLUSION                     N/A

---

**CREDITS:**

DISCOUNT INFORMATION

CLAIMS RATING:.................................................... +  5%
HOME SAFETY DEVICES: Fire or Smoke local alarm,
Dead bolt locks and Fire extinguisher:........................... -  5%
AUTO/HOME:........................................................ - 10%

**SPECIAL NOTICE ON FLOOD AND EARTHQUAKE EXCLUSIONS**

**FLOOD EXCLUSION:** Your policy excludes coverage for damage caused by flooding of all types. This exclusion may exclude any and all damages resulting from storm surge from a hurricane, surface water, flash floods, waves, tidal waves, wind driven rain or water, or any other overflow of water, and spray from any of these events. For further details, please see the language of your policy. The language of your policy will control the obligations of the parties.

You are further advised that to be covered for such loss, you will have to obtain a separate flood insurance policy through the National Flood Insurance Program (NFIP). Your Alfa agent can assist you with obtaining flood insurance from NFIP if it is available in your location. The NFIP can provide both structure and contents coverage.

**EARTHQUAKE EXCLUSION:** Your policy excludes coverage for any damages caused by or precipitated by an earthquake or earth movement. This exclusion generally excludes all damages caused or in any way resulting from an earthquake, earth movements, tremors and aftershocks, and also excludes earth movement, land shock waves, aftershocks or tremors before, during or after a volcanic eruption. For further details, please see the language in your policy. The language of the policy will control the obligation of the parties.

You are further advised that to be covered for such loss, you will have to obtain a separate earthquake endorsement or special earthquake policy. Not all insurance companies provide earthquake coverage. Your Alfa agent can provide you with information on coverage for damage due to earthquake.

**Consult your policy for further details about any other exclusions and policy conditions that apply.**

**00016**

HO-MS200-11 12-07 MISSISSIPPI HOMEOWNER                          **Page 2 of 3**

ALFA SDT 000207

# ATTACHMENT #7

# PERRY COUNTY
## FIRE INVESTIGATION REPORT

CASE NO. *2010 - 0355*  DATE: *9-23-10*  ALARM TIME: *08:52* AM (✓) PM ( )

FIRE INVESTIGATOR:  CAPTAIN, BARRY PITTS

### (NOTIFICATION)

NOTIFIED BY: *Perry co 50*

_____

TIME NOTIFIED: *0:8.5 :*  AM (✓) PM ( )

TIME OF ARRIVAL: *8:54*  AM (✓) PM ( )

### (RIGHT OF ENTRY)

CONSENT (✓) SEARCH WARRANT ( ) ENTRY SECURED BY REQUESTING AGENCY ( )

### (PROPERTY OWNERSHIP)

NAME OF OWNER: *POTILIA  ISHEE*  S.S.# *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*

ADDRESS: *36 MUSICO ROAD*  D.O.B. *02-21-1942*

CITY/STATE/ZIP CODE: *Beaumont*  PH # *601-394-3120*

PLACE OF EMPLOYMENT: *NONE*  PH #

ADDRESS: _____

### (OWNER INSURANCE INFORMATION)

COMPANY NAME: *AFLAC*

LOCAL AGENT: *Ricky Bridges*  PHONE # *601-394-5000*

POLICY # *H097292'5*

AMOUNT OF COVERAGE :  BUILDING $ *205,04*  CONTENTS $ *113,000*

1

10/25/10  13:12 FAX 601 784 3186  TRUSTMARK B'MONT.  ☒003

<u>(OCCUPANT INFORMATION / IF NOT OWNER)</u>
N/A ( ✓ )

NAME OF OCCUPANT: *POLTIA ISHEE*          S.S. #_____

ADDRESS:_____          D.O.B._____

CITY/STATE/ZIP CODE:_____          PH #_____

NAME OF OCCUPANT:_____          S.S. #_____

ADDRESS:_____          D.O.B._____

CITY/STATE/ZIP CODE:_____          PH #_____

<u>(OCCUPANT INSURANCE INFORMATION / IF NOT OWNER)</u>
N/A ( ✓ )

COMPANY NAME:_____

LOCAL AGENT:_____ PHONE #_____

POLICY #_____

<u>AMOUNT OF COVERAGE:</u>   BUILDING $_____   CONTENTS $_____

<u>( PROPERTY DESCRIPTION )</u>

ADDRESS OF FIRE: *36 MUSCIO RD Beaumont*  CITY ( )RURAL ( ✓ )

TYPE OF BUILDING: ( ✓ )DWELLING ( )MOBILE HOME ( )COMMERCIAL / OTHER:_____

CONSTRUCTION: ( ✓ )WOOD ( ✓ )MASONRY ( )METAL   OTHER_____

ROOFING: ( )SHINGLE ( )ASPHALT ( )WOOD ( ✓ )METAL ( )TAR/GRAVEL_____OTHER

NUMBER OF STORIES( 1 )  NUMBER OF ROOMS( 7 )  NUMBER OF BATHS( )

FOUNDATIONS: ( )BASEMENT ( )CONCRETE SLAB ( )PIER & BEAM ( ✓ )CRAWL SPACE

HEATING: ( )NATURAL GAS ( )PROPANE GAS ( ✓ )ELECTRIC   OTHER_____

AIR CONDITIONING: ( )NATURAL GAS ( )PROPANE GAS ( ✓ )ELECTRIC  OTHER_____

ELECTRICAL SERVICE CONNECTED DURING FIRE: ( ✓ )YES   ( )NO

ESTIMATED VALUE:   BUILDING $*200,000*        CONTENTS $*100,000*

ESTIMATED DAMAGED TO PROPERTY $*320,000*     TOTAL LOSS: ( ✓ )YES  ( )NO

2

DEATHS: ( )YES ( )NO   IF YES LIST NAME(S)_____

INJURIES: ( )YES ( )NO   IF YES LIST NAME(S)_____

SMOKE DETECTOR: (✓)YES   ( )NO   ( ) UNKNOWN

( ON SCENE FIRE INVESTIGATION)

DATE: _09 / 24 : 10_   TIME: _09:50_____ AM( )PM( )

PERSON(S) PRESENT _BARBARA EXTINE , PORTIA ISHEE_

_AND DAUSHTIR_

DESCRIBE CONDITION OF DOORS AND WINDOWS, DESCRIBE SECURITY OF BUILDING _DESTROYED_

DESCRIBE EXTERIOR CONDITIONS (WHERE DID FIRE VENT) _SOUTHEAST CORNER_

_OF HOME_

DESCRIBE WHERE FIRE STARTED (POINT OF ORIGIN) _MASTER BED ROOM_

DESCRIBE POINTS OF ORIGIN  ( PATTERNS,DEVICES,ELECTRICAL SHORTS,ETC.) _POSSIBLE_

_FROM A LAMP THAT WAS LEFT ON_

DESCRIBE ANY PHYSICAL EVIDENCE RECOVERED: ( WHAT,WHERE,WHEN,PHOTOS,ETC. )

WAS HYDROCARBON DETECTOR USED ? ( )YES ( )NO.   RESULTS_____

3

ALFA SDT 000139

FIRE DEPARTMENTS OBSERVATIONS: _House  Fully  Engulfed_

FIRE OFFICER IN CHARGE  ( NAME,ADDRESS,PHONE NO. )

WHO DISCOVERED FIRE ( NAME,ADDRESS,PHON NO. ) _Linda  Fax  Muscio_

OBSERVATIONS:

## (SUMMARY)

4

Ø 006                    TRUSTMARK D.MONT.        3186 784 601 FAX 13:13 10/25/10

(DISPOSITION)

(check one)

ACCIDENTAL        (  )

UNDETERMINED    (  )

INCENDIARY        (  )

closed:  (check one)

YES (  )  NO (  )

IF YES,

DATE: ____ / ____ / ____

any arrests ?

YES (  )  NO (  )

IF YES,

DATE: ___ / ___ / ___

( SUPPLEMENTS )

DIAGRAM(  )  PHOTO LOG(  )  LAB REPORT(  )  STATEMENT(S)(  )  VEHICLE FIRE(  )

SIGNATURE OF INVESTIGATOR:_____  DATE:_____

5

ALFA SDT 000141

# ATTACHMENT #8

**10/17/2013 2:31:46 PM - Martin, Martha W (mamart1)**
**CLMS - H0972929-092310-1**

Mailed requested info to attorney.

---

**7/3/2013 2:32:14 PM - Martin, Martha W (mamart1)**
**CLMS - H0972929-092310-1**

Mailed insured copy of cleared draft to P O Box 162, McLain, MS 39456

---

**12/13/2011 8:41:48 AM - Martin, Martha W (mamart1)**
**CLMS - H0972929-092310-1**

Faxed copy of evaluation to GMAC attn: Len @ 480-755-5908

---

**7/18/2011 10:47:17 AM - Grace, Barry E (bagrac)**
**CLMS - H0972929-092310-1**

Kevin,

Per you request authority to $105,153.47 for personal property.

---

**6/13/2011 1:56:04 PM - Grace, Barry E (bagrac)**
**CLMS - H0972929-092310-1**

PPS are now in hand and being concluded.

---

**6/8/2011 10:11:33 AM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

PPS received, working on them now.

---

**4/12/2011 4:16:24 PM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

Sent letter to ins

---

**4/12/2011 1:30:39 PM - Grace, Barry E (bagrac)**
**CLMS - H0972929-092310-1**

Kevin,

Write insured requesting schedules so to move forward with claim.

---

**4/4/2011 9:08:19 AM - Downing, Jane (t21075)**
**CLMS - H0972929-092310-1**

CURRENT RESERVES: 03/111,500 AND 04/7,500

---

**3/22/2011 2:22:13 PM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

Left VM on cell for PPS update

---

**2/16/2011 8:24:14 AM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

I spoke with Ms. Ishee 2/14. She was to return PS this week.

---

**2/8/2011 12:34:11 PM - Grace, Barry E (bagrac)**
**CLMS - H0972929-092310-1**

Reviewed claim. Personal Property pending.

---

**1/4/2011 7:46:30 AM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

I spoke with insured today and she is still working on PPS.

---

**12/7/2010 8:24:13 AM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

I spoke with insured's daughter today and she advised that her mother has almost completed the PPS and will submit in the very near future.

---

**11/4/2010 9:26:00 AM - Martin, Martha W (mamart1)**
**CLMS - H0972929-092310-1**

Voided draft #7306558 as it was made payable to insured and mortgagee in error. Reissued draft #7306563 to mortgagee only.

---

**11/4/2010 8:32:00 AM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

ALFA SDT 000004

Issued Coverage A as follows:

GMAC 99,623.48

Insured 112,076.52

---

**11/3/2010 3:49:29 PM – Grace, Barry E (bagrac)**
**CLMS – H0972929-092310-1**

Kevin,


Authority as requested. Proceed with payment.

---

**11/2/2010 11:28:13 AM - haoake (haoake)**
**CLMS – H0972929-092310-1**

Authorized

---

**11/1/2010 1:04:01 PM – Grace, Barry E (bagrac)**
**CLMS – H0972929-092310-1**

Harold,


Authority request for $211,700.00-Coverage A.

---

**10/27/2010 12:12:37 PM - Holbrook, Kevin H (keholb)**
**CLMS – H0972929-092310-1**

Barry


Proof of Loss received and PLSR is in the file. Requesting authority for Coverage A of 211,600 (includes payoff with GMAC and Inflation Guard). Waiting on PPS and rental receipt to conclude fire.

---

**10/21/2010 11:40:23 AM - Holbrook, Kevin H (keholb)**
**CLMS – H0972929-092310-1**

**Proof Of Loss received today.**

---

**10/19/2010 4:03:44 PM - Holbrook, Kevin H (keholb)**

CLMS - H0972929-092310-1

I spoke with Ms. Ishee today and she is to fax Proof of Loss tomorrow.

---

**10/13/2010 4:33:11 PM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

Please open an ALE reserve of 7500 and issue payment for 3 months rent for @2100 (3 months @ 700/mo)

---

**10/6/2010 12:32:21 PM - Martin, Martha W (mamart1)**
**CLMS - H0972929-092310-1**

Increased CovA to $211,600.00.

---

**10/4/2010 2:19:46 PM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

Please increase CovA reserve to 211,628 to reflect inflation guard

---

**10/4/2010 2:15:21 PM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

Inflation Guard Calculation

| | Coverages | I/G on Last Renewal | I/G on Loss Date | Inflation Rate | Adjusted Coverage |
|---|---|---|---|---|---|
| Dwelling | $ 205.400 | 17.15 | 17.67 | 1.0303207 | $ 211,628 |
| Outbuilding | | | | #DIV/0! | #DIV/0! |
| Contents | | | | #DIV/0! | #DIV/0! |
| Lou | | | | #DIV/0! | #DIV/0! |

---

**10/4/2010 12:21:49 PM - Grace, Barry E (bagrac)**
**CLMS - H0972929-092310-1**

Kevin,


Looks like total fire loss underwriting memo needs to be send to UW.

---

**9/30/2010 3:28:16 PM - Martin, Martha W (mamart1)**

ALFA SDT 000006

CLMS - H0972929-092310-1

Requested payoff quote to be faxed to us.

---

**9/30/2010 8:34:08 AM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

Please request payoff from GMAC Mtg

---

**9/27/2010 9:10:03 PM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

Per insured and her daughters, Mr. Ishee passed away in February 2009

---

**9/27/2010 9:06:31 AM - Holbrook, Kevin H (keholb)**
**CLMS - H0972929-092310-1**

I met with insured Friday and can not advance payment as CP is still down.

---

**9/24/2010 8:49:44 AM - Mobley, Abby L (abmobl)**
**CLMS - H0972929-092310-1**

**Sent open paperwork to PIB.**

---

ALFA SDT 000007

# ATTACHMENT #9

## REVISED PAYOFF STATEMENT

**GMAC Mortgage, LLC**                                     10/08/10
PO Box 780
Waterloo IA 50704-0780

Loan No:  0656318013

Borrower:   PORTIA B ISHEE                    Property:
            KENNETH DYREL ISHEE               36 MUSCIO ROAD
            PO BOX 162

            MC LAIN       MS 39456            MC LAIN       MS
                                              39456

Statement Sent to Name:  PORTIA B ISHEE
Statement Sent to Fax Number: 866-588-1691

As of 10/08/10, the status of this loan is as follows:

| | | | |
|---|---|---|---|
| Next Payment Due: | 08/01/10 | Loan Type: | CONVENTIONAL |
| Matures: | 12/2036 | Note Rate: | 7.25000% |
| Escrow Balance: | $-2626.00 | Escrow Retained (**pg. 2): | $0.00 |
| | | Mortgage Insurance: | $0.00 |

### * * * THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC * * *

| ITEMS | AMOUNT DUE | |
|---|---|---|
| Principal | $94247.73 | |
| Interest Calculated to but not including 10/29/10 | $2232.40 | |
| Escrow/Impound Funds Due | $2626.00 | |
| Late Charges Outstanding | $136.40 | |
| Unapplied Funds | $0.00 | |
| Statement Fee | $0.00 | |
| Recording Fee | $13.00 | |
| Reconveyance/Trust | $0.00 | |
| Release Fee | $0.00 | |
| Fax Fee | $ | |
| Other Fees and Costs | $31.25 | **Payoff funds must be |
| Deferred Amount | $.00 | remitted in US dollars |
| Prepayment Penalty Fee | $0.00 | by cashier's check, |
| Optional Products | $74.70 | certified funds or bank |
| Uncollected P&I | $.00 | wire.** |
| **TOTAL DUE** | **$99361.48** | |
| | | |
| Per Diem Interest | $18.7204 | |

### ***YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT***

**For Escrowed Loans:  We require written authorization from our borrower(s) to use any amount of escrow funds towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff of the loan, please sign below and fax to 1-888-395-6626.**

**Please use escrow towards my payoff.**

_____                    _____
Signature                                  Signature

Page 2
0656318013

**\*\*ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**

If any tax or insurance amounts are due within 45 days of the date interest is calculated to, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

Items          Next due       Amount

### PAYOFF FUNDS REMITTANCE INSTRUCTIONS

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below.  Please include $7.50 in addition to the total figures above for the incoming wire fee.

> JPMorgan Chase Bank, N.A.
> For GMAC Mortgage, LLC
> ABA #021000021
> Account #662631175
> GMAC Mortgage, LLC Loan Number 0656318013
> Name: PORTIA B ISHEE
> Remitter Name:
> Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time.  All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day.  Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check:  Customer's name, loan number, remitter's name and remitter's phone number.  Please forward to the following address:

> GMAC Mortgage, LLC
> Payoff Processing Unit
> 6716 Grade Lane
> Building 9, Suite 910C
> Louisville KY 40213-1407

\* \* \* You are responsible for the compliance of this document. \* \* \*

Important information regarding the loan payoff:

A)  Add daily per diem interest from the interest through date to the date payoff funds are processed in the  GMAC Mortgage, LLC office.  Interest is calculated on a 365-day year on a partial-month basis.  If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days).  You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

**GREEN TREE/Ishee - 000374**

Page 3
0656318013

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-614-417- 5768. The prepayment penalty will not be removed until receipt of the funds. If you are presently on active duty in the military service please contact us to review any prepayment penalty that is reflected on this statement.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-888-395-6626. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: If this loan contains funds in escrow not being retained for possible tax or insurance disbursement, please be advised these funds are automatically credited toward the payoff amount required. The total payoff amount quoted reflects this credit. Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:12

GREEN TREE/Ishee - 000375

# ATTACHMENT #10

Regions Bank Treasury Management - ALFA MUTUAL INSURANCE     (200999997)   Paid Date: 11/16/2010   Serial Number: 73065

0656318013                                    486

**Alfa Insurance Corporation**
P.O. Box 11000 Montgomery, AL 36191-0101

Regions Bank                  **7306563**

6MC3|80|3                     11/04/2010

**NOV 0 8 2010**

| Upon Acceptance Will Pay | Ninety-Nine Thousand Six Hundred Twenty-Three and 48/100ths Dollars | **$99,623.48** |

To the Order of     GMAC Mortgage LLC     LN#0656318013

0644941

**Void After 1 Year**

Adjuster Name: Kevin Holbrook          **RG**

Adjuster Signature

Claim Number H    0972929          DOL: 09/23/2010

⑈7306563⑈ ⑆062005690⑆ 0200999997⑈

110300010481000001

ENDORSE HERE

X

FOR DEPOSIT ONLY
TO THE NAMED PAYEE

FOR DEPOSIT ONLY
TO THE NAMED PAYEE

By:

GMAC Mortgage, LLC
Without Recourse
Payments of these funds are for mortgage property repairs.
Endorsement is your agreement that all funds shall be
promptly used and mortgage property will be completely
restored and lien free from all claims including labor,
material and contractors.

The security features listed below, as well as those not listed,
exceed industry guidelines.

Security Features:
Microprinted Border

Artificial Watermark

Invisible Fibers

Bleach Reactive

"Void" Paragraph Feature

Colored Background

Results of document alteration:
• Small type in the border appears as dotted
  line when photocopied
• Indicates document originality, can not be
  photocopied
• Fibers will glow when exposed to UV light
• Paper will permanently discolor if alteration
  attempts are made using bleach
• The word void appears when photocopied
• Pattern protects against alterations

*FEDERAL RESERVE BOARD OF GOVERNORS REG CC
© Patrick Graph's a new cashier part of Check Payment System Association

110000010481000001

# ATTACHMENT #11

Unapplied bucket codes

| Code | Description |
|------|-------------|
| 1 | Sweeping |
| 2 | Bankruptcy |
| 3 | Research - post or refund |
| 4 | Miscellaneous |
| 5 | Loss Draft |

| Code | Sweeps | Main Bucket | 2nd Priority | 3rd Priority | Description |
|------|--------|-------------|--------------|--------------|-------------|
| A | N | 4 | 3 | --- | Loan Audit |
| B | Y | 1 | --- | --- | Borrow funds for 235 |
| C | N | 4 | --- | --- | Postpone rollover |
| D | N | 5 | --- | --- | Optional Insurance Suspense |
| E | N | | | | Foreclosure |
| F | Y | 2 | 3 | --- | Forbearance |
| G | Y | 1 | --- | --- | Government funds for 235 |
| H | N | 4 | 3 | --- | Assumption Funds |
| I | N | 4 | --- | --- | Insurance Refunds |
| J | N | 4 | 3 | --- | Balloon Reset |
| K | N | 4 | 3 | --- | Payoff MI Refunds |
| L | N | 5 | 4 | 3 | Loss Draft |
| M | N | 3 | 4 | --- | Miscellaneous Funds |
| N | N | 4 | --- | --- | Loss Mitigation Funds |
| O | N | 4 | 3 | --- | FHA Overpaid Assistance |
| P | N | 4 | 3 | --- | Paid in Full Suspense |
| Q | N | 3 | 4 | 1 | Matured Loan Suspense |
| R | --- | --- | --- | --- | Replacement Reserve |
| S | N | 4 | --- | --- | SSCRA |
| T | N | 4 | 3 | --- | Government claim funds |
| U | Y | 1 | --- | --- | Auto application for monies that are dumping, which do not meet tolerances.

Bisaver/Payroll Drafts |

# ATTACHMENT #12



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000009

# ATTACHMENT #13

First American Equity Loan Services, Inc
1100 Superior Avenue Suite 200
Cleveland, Ohio 44114
Voice: 216/241-1278

# RECORDINGS SCAN SHEET

2306.5579 First American- F - SLD CA 2

ORDER:   10935123     SEQ: 001     DOCUMENT:   DT      SIDES: 16

PORTIA ISHEE / KENNETH ISHEE
36 MUSCIO ROAD
MC LAIN MS 39456

**10935123$001$DT$16$O**





GREEN TREE/Ishee - 000274

When recorded mail to:
First American Title Insurance
Lenders Advantage
1100 Superior Avenue, Suite 200
Cleveland, Ohio 44114
Att: NRP Team

STATE OF MISSISSIPPI
COUNTY OF PERRY
I certify that this instrument was filed for record at 4:40
____ M. on the ___ day of _February_ , 20 07
at my office in New Augusta, Mississippi and was recorded in Book
of _February_ Page 704 this 5th day
____ A.D. 2007
By: _Marsha_ CHANCERY CLERK
D.C.

Prepared By:
Penny Perusse
3200 Park Center Dr. Ste. 150
Costa Mesa Ca 92626
714-800-0560

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 100037506563180133

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated 11/12/2006
together with all Riders to this document.
(B) "Borrower" is Kenneth Dyrel Ishee and Portia B Ishee, as an estate by the entireties with full rights of survivorship and not as tenants in common

Borrower is the trustor under this Security Instrument.
(C) "Lender" is GMAC Mortgage, LLC dba ditech.com

Lender is a Residential Mortgage Lender
organized and existing under the laws of Commonwealth of Pennsylvania
Lender's address is 3200 Park Center Dr. Suite 150, Costa Mesa, CA 92626

000656318013
MISSISSIPPI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3025  1/01
-6A(MS) (0005).02
Page 1 of 15       Initials: PBI KDI
VMP Mortgage Forms, Inc.

704

GREEN TREE/Ishee - 000275

(D) "Trustee" is Barbara Zirilli

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated 11/12/2006
The Note states that Borrower owes Lender One Hundred Thousand

Dollars
(U.S. $100,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 1, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

000656318013

VMP -6A(MS) (0005).02                    Page 2 of 15                    Initials: *PBI* *F.D.I*                    Form 3025  1/01

705

GREEN TREE/Ishee - 000276

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                    [Type of Recording Jurisdiction]
of GREENE Perry  PM                    [Name of Recording Jurisdiction]:
The Assessor's Parcel Number (Property Tax ID#) for the Real Property is 116-24-048.000. see exhibit A

Parcel ID Number:116-24-048.000                    which currently has the address of
36 Muscio Road                                                                [Street]
Mc Lain                                        [City] , Mississippi 39456        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

000656318013

VMP -6A(MS) (0005).02                    Page 3 of 15                    Form 3025   1/01

Initials: *P.B.I.* *S.D.I.*

706

GREEN TREE/Ishee - 000277

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

000656318013

VMP®  -6A(MS) (0005).02               Page 4 of 15          Initials: *K B I* *K D I*          Form 3025   1/01

707

GREEN TREE/lshee - 000278

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

000656318013

VMP® -6A(MS) (0005).02                    Page 5 of 15        Initials: *P.B.I.* / *F.O.I.*        Form 3025   1/01

-708

GREEN TREE/Ishee - 000279

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.,

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

000656318013

VMP®-6A(MS) (0005).02          Page 6 of 15          Form 3025   1/01

Initials: *P. B. J.*

709

GREEN TREE/Ishee - 000280

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

000656318013

-6A(MS) (0005).02          Page 7 of 15          Form 3025   1/01

Initials *P.B.I.*

GREEN TREE/Ishee - 000281

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

000656318013

Initials: _PBI_  _KOI._

-6A(MS) (0005).02                    Page 8 of 15                    Form 3025  1/01

GREEN TREE/Ishee - 000282

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

000656318013

VMP® -6A(MS) (0005).02

Page 9 of 15

Initials: _____

Form 3025   1/01

712

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

000656318013

Initials: *P.B.L.*
*K.D.T*

713

GREEN TREE/Ishee - 000284

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

000656318013

-6A(MS) (0005).02                              Page 11 of 15                              Form 3025   1/01

714

GREEN TREE/Ishee - 000285

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

000656318013

VMP ®-6A(MS) (0005).02

Page 12 of 15

Initials: *Q.B.I.*
*K.D.I.*

Form 3025   1/01

715

GREEN TREE/Ishee - 000286

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 15, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in Greene                              County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

000656318013

VMP® -6A(MS) (0005).02                    Page 13 of 15          Initials: *QBI* *ISDI*        Form 3025   1/01

716

GREEN TREE/Ishee - 000287

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     *Portia B. Ishee*
                                    Portia B. Ishee
                                                          -Borrower

_____     *Kenneth Dugel Ishee*
                                    Kenneth Dugel Ishee
                                                          -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                             -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                             -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                             -Borrower

000656318013

 -6A(MS) (0005).02          Page 14 of 15          Form 3025  1/01

717

GREEN TREE/Ishee - 000288

STATE OF MISSISSIPPI,                                         County ss: *Perry*

On this *12* day of *November, 2006*, personally appeared before me, the undersigned authority in and for said County and State, the within named *Portia B. Ishee And spouse Kenneth Dupel Ishee*

who acknowledged that he/she/<u>they</u> signed and delivered the foregoing instrument on the day and year therein mentioned.

Given under my hand and seal of office.

My Commission Expires: *7/31/2008*

(Seal)



*Amy D. Eckhart*
Notary Public

718

GREEN TREE/Ishee - 000289

Form No. 3301 (6/00)
Short Form Commitment, EAGLE
ASP

ORDER NO: 4411681
FILE NO: 30524393
LENDER REF: 000656318013

Exhibit "A"

The land referred to in this policy is situated in the **STATE OF MISSISSIPPI, COUNTY OF PERRY, CITY OF MC LAIN**, and described as follows:

BEGINNING AT THE NORTHEAST CORNER OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER (NE-1/4 OF SW -1/4) , SECTION 24, TOWNSHIP 2 NORTH, RANGE 9 WEST, PERRY COUNTY, MISSISSIPPI, THENCE RUN SOUTH 660 FEET, THENCE RUN WEST 660 FEET, THENCE RUN NORTH 660 FEET, THENCE RUN EAST 660 FEET, TO THE POINT OF BEGINNING.

APN:116-24-048.000

ISHEE
10935123                    MS
FIRST AMERICAN LENDERS ADVANTAGE
DEED OF TRUST

PAGE 4

719

GREEN TREE/Ishee - 000290

# NOTE

November 12, 2006          Costa Mesa                          California
**[Date]**                                    [City]                              [State]

36 Muscio Road, Mc Lain, MS     39456

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 100,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GMAC Mortgage, LLC dba ditech.com

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250        %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First       day of each month beginning on January 1 , 2007        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2036       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 9001719, Louisville, KY 40290-0001
                                    or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 682.18        .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

000656318013

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Wolters Kluwer Financial Services    Form 3200 1/01
VMP ®-5N (0207).01
Page 1 of 3                           Initials:

GREEN TREE/Ishee - 000267

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

000656318013

VMP ®-5N (0207).01                                    Page 2 of 3

*P.B.I*
Form 3200 1/01
Initials: *A.D.T.*

GREEN TREE/Ishee - 000268

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Portia B. Ishee                -Borrower

_____ (Seal)
Kenneth Dyrel Ishee            -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

_____
J. GRAY
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC f/k/a
GMAC MORTGAGE CORPORATION
d/b/a DITECH.COM

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

*[Sign Original Only]*

000656318013

**GREEN TREE/Ishee - 000269**







GREEN TREE/Ishee - 000270

# ATTACHMENT #14

Fannie Mae Single Family / 2011 Servicing Guide / Part II: Mortgage and Property Insurance / II,
Chapter 5: Insurance Losses (08/24/05) / II, 501: Insurance Claim Settlements (08/24/05) / II, 501.01:
Disposition of Insurance Proceeds Other Than for Natural Disasters (08/24/05)

## II, 501.01: Disposition of Insurance Proceeds Other Than for Natural Disasters (08/24/05)

Fannie Mae expects a servicer to employ procedures for handling insurance loss drafts that
will not only protect Fannie Mae's interest in the mortgage loans, but will also consider the
effect that any delays in restoring the property or in repairing damages will have on
individual borrowers. Generally, hazard and flood insurance proceeds should be applied to
the restoration and repair of the damaged property—unless the borrower and the servicer
enter into a written agreement to apply them in a different manner or Fannie Mae directs
that they should be applied differently.

The servicer is responsible for making the decision on the disposition of hazard and flood
insurance proceeds for both current and delinquent mortgage loans for losses not related to
a natural disaster—as long as the property is occupied and the insured improvements have
not suffered a significant loss that makes restoration infeasible or that lessens Fannie Mae's
security. (Disbursement of insurance proceeds for disasters is discussed in *Part III, Section
1103, Insurance Claim Settlements (08/24/05).*) However, the servicer must recommend to
Fannie Mae an appropriate action if the mortgage loan is in foreclosure, the property has
been abandoned, or the property has suffered a significant loss. The servicer also must
recommend to Fannie Mae appropriate action related to flood insurance loss proceeds for
any acquired property.

In most instances, the servicer should disburse the insurance proceeds to the borrower or
the repair contractor when the restoration or repairs have been completed, although
progress payments can be made as portions of the work have been completed and
inspected. However, if the property has suffered a total or near-total loss, it may not be
possible to complete the reconstruction within 90 days. When that is the case for a current
mortgage loan—and the borrower has never been more than 30 days delinquent in the
preceding 12 months—the servicer must first determine whether the insurance proceeds
exceed the sum of the UPB, accrued interest, and any advances. If the insurance proceeds
exceed the sum of the UPB, accrued interest, and any advances, the servicer must issue the
borrower a check for the amount by which the insurance loss draft exceeds the UPB of the
mortgage loan.

If the insurance proceeds do not exceed the sum of the UPB, accrued interest, and any
advances, the servicer should:

- release up to 20% of the total claim proceeds to the borrower and contractor,
- review the contractor's estimate, and
- make a determination on how to disburse the remaining funds.

In all instances, the servicer must deposit the funds not disbursed in an interest-bearing
account for the borrower's benefit. The account must yield an amount of interest that is
equivalent to the interest that the borrower could expect to obtain from a passbook savings
account or a money market account. The servicer does not have to pay the accumulated
interest to the borrower until the end of the reconstruction period, unless he or she requests
an earlier disbursement.

The servicer may use its T&I custodial account for the deposit of the remaining loss draft
proceeds (if that account is interest-bearing) or it may establish a separate account in a
federally insured institution that meets Fannie Mae's requirements for custodial depositories
(as long as the account reflects the interests of both the borrower and Fannie Mae). If the
servicer does not use its T&I custodial account, it must nevertheless include adequate

Case 2:13-cv-00234-KS-MTP   Document 191-1   Filed 08/08/14   Page 119 of 233

documentation for the account it uses—such as bank statements that show the Fannie Mae loan number and amount of proceeds deposited for each mortgage loan covered by the account—with its reconciliation of its T&I custodial account so that Fannie Mae can be assured that the proceeds are being adequately controlled.

**Fannie Mae Single Family / 2011 Servicing Guide / Part III: General Servicing Functions / III, Chapter 1: Mortgage Loan Payments (10/31/08) / III, 101: Scheduled Mortgage Loan Payments (03/01/06) / III, 101.03: Payment Shortages (01/31/03)**

## III, 101.03: Payment Shortages (01/31/03)

Sometimes payments received from the borrower are less than the total amount due. The servicer should not automatically return these payments to the borrower. Instead, the servicer should base its decision to process partial payments on the amount of the shortage and on any special circumstances that might justify the lesser amount. If the servicer decides to accept the payment, any portion of it that equals one or more full installments should be applied. Any remaining portion should be held as unapplied funds until enough money to make a full installment is received.

The total amount due for a conventional mortgage loan includes any late charges or prepayment charges. Therefore, if a servicer chooses to do so, it may hold as unapplied a payment that does not include late charges (or any allowable prepayment premiums) that are due. The servicer may then use a portion of the subsequent payment to make up the shortage so that the payment can be applied. However, the servicer may not impose any late fee or delinquency charge in connection with that payment or any subsequent payment held as unapplied from which funds are drawn to make a full payment. Payments that cover the full mortgage obligation without the late charge may not be returned to the borrower to the extent that acceptance would not jeopardize the servicer's position in legal proceedings (e.g., foreclosure). The borrower should be fully informed of the actions taken, the reasons for the specific action, and the total amount that he or she owes and is expected to pay.

A servicer must follow HUD or VA requirements related to the acceptance of payments for FHA, VA, or HUD mortgage loans that do not include late charges and the treatment of partial payments in general.

Regardless of the specific action the servicer takes when it receives a payment for less than the full amount due, it is still responsible for including the scheduled amount due in its next remittance to Fannie Mae if the mortgage loan is a scheduled/actual or scheduled/scheduled remittance type. If the mortgage loan is an actual/actual remittance type, the servicer is required to remit only the funds that were actually applied.

AllRegs Online Document Print

---

Fannie Mae Single Family / 2012 Servicing Guide / Part I: Lender Relationships / I, Chapter 2: Contractual Relationship (01/31/03) / I, 205: Post-Delivery Transfers of Servicing (09/30/06) / I, 205: Post-Delivery Transfers of Servicing (09/30/06)

## I, 205: Post-Delivery Transfers of Servicing (09/30/06)

Subsequent to the delivery of mortgage loans to Fannie Mae, a servicer cannot transfer its responsibility for servicing any such mortgage loans unless Fannie Mae approves the transfer. Fannie Mae will not recognize unauthorized transfers of servicing. In fact, any such action may be the basis for terminating the contractual relationships Fannie Mae has with both the transferor and transferee servicers. Instead of terminating the contractual relationship(s), Fannie Mae may choose to impose sanctions, compensatory fees, or other available remedies when a servicer fails to give Fannie Mae adequate notice of a proposed transfer, obtain its approval for a transfer, or fulfill any conditions of Fannie Mae's approval of a given transfer of servicing. (The amount of any compensatory fee Fannie Mae imposes can vary depending on the circumstances; however, it will not be greater than 1% of Fannie Mae's share of the aggregate UPB of the mortgage loans being transferred.) Fannie Mae will hold any transferor or transferee servicer that enters into an unauthorized transfer of servicing liable for any losses, liabilities, or other expenses Fannie Mae incurs as the result of the unauthorized transfer.

The servicer must obtain Fannie Mae's prior written consent for any transfer of servicing involving Fannie Mae–owned or Fannie Mae–securitized mortgage loans. Fannie Mae generally will consider requests for transfers of either all or a portion of the mortgage loans that a lender services for it. However, if the transfer involves mortgage loans in a regular servicing option MBS pool or a shared-risk special servicing option MBS pool for which the servicer's shared-risk liability is still in effect, individual loan-level servicing transfers are not permitted; rather, the servicing of all of the mortgage loans in the pool must be transferred. The transferor servicer may use a CPU-to-CPU electronic file transfer or any other electronic means that Fannie Mae specifies to notify Fannie Mae about a full transfer of its servicing portfolio or to provide it with a list of mortgage loans that will be included in a partial transfer of servicing (see *Part X, Section 206, Transaction Type 80 (Subservicer Arrangement Record) (01/31/03)*). The servicer's electronic notification may be submitted as early as six months and as late as fifteen days before the proposed effective date for the transfer of servicing.

The proposed transferee servicer must be an approved servicer that is in good standing with Fannie Mae. The servicer also must have in place appropriate controls and adequate procedures relating to the boarding of new loans (subsequent either to origination or acquisition of servicing pursuant to a servicing transfer) to avoid any delayed application of borrower payments of principal, interest, taxes, or insurance (when applicable). In particular, servicing errors and disputes may occur as a result of servicing transfers. Accordingly, before Fannie Mae approves a transfer, it will evaluate the transferee servicer's performance in the following areas (although it may consider additional factors if it chooses to do so):

- overall servicing performance, including the servicing of special mortgage loan products, accounting, and remitting;
- capacity to service the number and types of mortgage loans that are to be included in the proposed transfer;
- overall performance of other contractual duties and obligations;
- delinquency ratios;
- foreclosure and acquired property activity;
- status of unresolved issues related to repurchase requests, claim denials or curtailments, or other outstanding claims; and

- financial condition.

Fannie Mae's contractual requirements related to transfers of servicing and the servicers' obligations to perform under them apply in all cases (unless Fannie Mae expressly waives them in writing); therefore, Fannie Mae encourages a servicer that is contemplating the purchase of another servicer's portfolio to contact its Portfolio Manager, Servicing Consultant, or the National Servicing Organization's Servicer Solutions Center early in the negotiation process. This will ensure that the servicer is aware of any objections Fannie Mae might have to its becoming a transferee servicer for the servicing portfolio it is considering purchasing, can determine whether the proposed transfer involves unusual circumstances or conditions that might require additional time for Fannie Mae to review, and ascertain whether the proposed transfer has terms that might not be readily acceptable to Fannie Mae.

Fannie Mae will make no representations or warranties about the value, condition, or any other aspects of the mortgage loans for which servicing will be transferred. Because the transferee servicer will be liable to Fannie Mae for all obligations of the transferor servicer, Fannie Mae expects that the transferee servicer will perform a due diligence review of the servicing portfolio that it is acquiring. However, the transferee servicer's obligations to Fannie Mae are not contingent on the performance of such a due diligence review. To assist the two servicers in processing and reconciling the transfer of servicing, Fannie Mae has designed a series of reports that should significantly reduce the likelihood of errors or delays in the transfer process. The information in these reports can be used to reconcile and correct loan-level information related to the mortgage loans for which servicing is to be transferred. Any information in the reports Fannie Mae provides will be compiled from data in its records (including information it received from third parties, but did not independently verify). However, Fannie Mae does not attest to the accuracy, completeness, or suitability of the information for the servicers' use for any particular purpose(s). For any given transfer of servicing, Fannie Mae will use appropriate business practices to permit both the transferor servicer and the transferee servicer (but no other parties) to have access to the data on which the reports are based. Fannie Mae does not represent or warrant that any unauthorized party will not be able to gain access to the data (particularly when it is transmitted electronically), nor will Fannie Mae be responsible for any damages arising out of, or related to, such parties gaining access to the data and using the information it provides.

To ensure that Fannie Mae has sufficient time to review a proposed transaction and to give the two servicers time to receive Fannie Mae's consent before the proposed effective date for the transfer (and before notices of the transfer are given to borrowers), the transferor servicer must submit a *Request for Approval of Servicing Transfer* (Form 629) in an electronic format to the appropriate Fannie Mae regional office at least 30 days (and no more than 180 days) before the proposed effective date. At the same time, the transferor servicer should submit a check for a nonrefundable $500 processing fee (which should note the names of both servicers and the proposed effective date of the transfer). (The proposed effective date of the transfer must be the last business day of the last month for which the transferor servicer will be responsible for reporting loan-level detail activity to Fannie Mae.)

If any of the mortgage loans for which servicing is to be transferred are in MBS pools that are part of a Fannie Majors® multiple pool and the transferee servicer is already servicing mortgage loans in the same Majors pool, it may report the transferred mortgage loans under the same nine-digit Fannie Mae lender identification number that it currently uses, as long as the mortgage loans have the same remittance type and date as the mortgage loans that it is already reporting under that number. If the transferred mortgage loans have a different remittance type or date, the transferee servicer must contact its Portfolio Manager, Servicing Consultant, or the National Servicing Organization's Servicer Solutions Center to request a new branch lender identification number for reporting on the transferred mortgage loans.

Case 2:13-cv-00224-KS-MTP   Document 191-1   Filed 08/08/14   Page 123 of 233

If Fannie Mae consents to a proposed transfer of servicing, it will deliver its consent to the two servicers using the same format in which it received the Form 629. Fannie Mae's consent will state that, by implementing the related transfer of servicing, both the transferor servicer and the transferee servicer agree to the provisions of the MSSC, this Guide (and any amendments made to this Guide with respect to servicing transfers or to the servicing of the transferred mortgage loans), and any other provisions set forth in the consent and acknowledge that all such obligations become effective as of the effective date of the transfer of servicing (although some of the obligations, such as those for notifying borrowers, will have begun or will have been completed prior to the effective date). As a condition of approving the transfer of servicing, Fannie Mae reserves its right to request and obtain (at any time) a copy of the servicing transfer agreement between the transferor servicer and the transferee servicer.

The following *Sections* discuss Fannie Mae's standard conditions for approval of a servicing transfer. Fannie Mae also may impose additional terms and conditions on its consent to a servicing transfer if it deems it to be appropriate under the particular circumstances. If it does, it will describe those conditions in its consent statement.

## II, 501.02: Report of Hazard Insurance Loss (08/24/05)

The servicer—including the servicer of a second mortgage loan that is relying on the first
mortgage loan servicer to handle the insurance loss settlement—should submit a *Report of
Hazard Insurance Loss* (Form 176) to Fannie Mae, with its recommendation for disposition of
the insurance loss proceeds, if:

- the mortgage loan is in foreclosure (or, if the proceeds relate to flood damage, the
  property has been acquired through foreclosure or the acceptance of a deed-in-lieu of
  foreclosure),
- the insured improvements have suffered a significant loss and the servicer believes that
  the repair or restoration is not economically feasible or that Fannie Mae's security would be
  lessened because the fair market value of the property after restoration to its original
  condition would be less than the total indebtedness,
- the property is vacant and the servicer has filed a proof of loss with the insurance carrier
  on Fannie Mae's behalf under the terms of the standard mortgage clause, or
- the property has sustained damage caused by a disaster. Refer to *Part III, Section 1103,
  Insurance Claim Settlements (08/24/05)*.

Each Form 176 that the servicer submits to Fannie Mae must provide the following
information:

- the status of the mortgage loan (or the status of both the first and second mortgage loans
  when the servicer is servicing a second mortgage loan for Fannie Mae)—current,
  delinquent, in foreclosure, property acquired;
- Fannie Mae's interest in the mortgage loan—whole mortgage loan or participation pool
  mortgage loan that Fannie Mae holds in its portfolio (including its percentage interest); or
  MBS mortgage loan serviced under the special servicing option or the shared-risk special
  servicing option, if Fannie Mae is responsible for disposing of the acquired property
  (including Fannie Mae's percentage interest if it securitized only a participation interest in
  the mortgage loan);
- the nature of the loss—partial, near-total, total;
- photographs of the damaged property;
- complete accounting of outstanding monies—UPB, advances, total delinquent installments,
  etc.;
- cost of repairs or restoration;
- any effect that a total loss would have on conveyance of the property to the insurer or
  guarantor or on the claim settlement;
- a recommendation on the disposition of the loss proceeds; and
- a recommendation on whether Fannie Mae should consider accepting a payoff of less than
  the total indebtedness in order to minimize its losses.

The Form 176 must be submitted electronically to Fannie Mae using its dedicated mailbox,
hazard_loss@fanniemae.com.

## I, 205.03: Assumption of Warranties and Other Obligations (01/31/03)

The transferee servicer must assume all of the responsibilities, duties, and selling warranties that were agreed to whether made when the mortgage loan was originally sold to Fannie Mae or subsequent to that date. This includes responsibility for the performance of obligations that predate the transfer, including "special obligations" (as that term is used in *Section 201.02, Representation and Warranty Requirements for the Servicing of All Mortgage Loans (06/10/11)*). However, the transferee servicer's assumption of these responsibilities, duties, and warranties will in no way release the transferor servicer from its contractual obligations related to the transferred mortgage loans. The two servicers will be jointly and severally liable to Fannie Mae for all warranties and for repurchase, all special obligations under agreements previously made by the transferor servicer or any previous seller or servicer (including actions that arose prior to the transfer).

Fannie Mae requires a servicer to provide special notification to the new servicer when it includes eMortgages in a transfer of servicing. Specifically, the transferor servicer must advise the transferee servicer that eMortgages are part of the portfolio being transferred and must confirm that the transferee servicer is not only aware of the special requirements for eMortgages required by Fannie Mae's *Guide to Delivering eMortgage Loans to Fannie Mae*, but also agrees to assume the additional responsibilities associated with servicing eMortgages.

Fannie Mae requires the servicer to provide special notification to the new servicer when mortgage loans subject to resale restrictions (whether or not the restrictions survive foreclosure or acceptance of a deed-in-lieu) are included in the portfolio being transferred. The servicer must identify each mortgage loan subject to resale restrictions on the *Request for Approval of Servicing Transfer* (Form 629). The transferee servicer must be aware of its duties and obligations related to the servicing of mortgage loans subject to resale restrictions.

The transferee servicer agrees to assume all obligations related to the servicing of MBS pools—including all duties and responsibilities under the regular servicing option or a negotiated shared-risk servicing option, bearing all costs and risks previously borne by the transferor servicer (or any earlier seller or servicer), as well as any additional costs and risks that arise subsequent to, or as the result of conditions imposed on, the transfer.

Fannie Mae's consent to a transfer of servicing does not release either the transferor servicer or the transferee servicer from any obligation it would otherwise have to Fannie Mae. As of the effective date for an approved transfer of servicing, the transferor servicer and the transferee servicer acknowledge their joint and several liability with respect to the transferred mortgage loans (and for any special obligations outstanding as of the effective date of the transfer, unless Fannie Mae has agreed to release one of the servicers from a specific responsibility). For the most part, Fannie Mae will look first to the transferee servicer for fulfilling any financial or other obligations related to the warranties, repurchase, and special obligations, but Fannie Mae does reserve the right to hold the transferor servicer to these obligations. In fact, both servicers also acknowledge their obligation to ensure that Fannie Mae is paid directly any proceeds of the servicing transfer that may be required to offset any claims Fannie Mae may have against the transferor servicer and agree to indemnify Fannie Mae for any loss or damage arising out of a failure to fully transfer all documents, records, and funds required by the servicing transfer agreement.

# ATTACHMENT #15

**PAYOFF STATEMENT**

**GMAC Mortgage, LLC**                                    09/30/10
PO Box 780
Waterloo IA 50704-0780

Loan No:  0656318013

Borrower:  PORTIA B ISHEE                   Property:
           KENNETH DYREL ISHEE             36 MUSCIO ROAD
           PO BOX 162

           MC LAIN        MS 39456          MC LAIN        MS
                                            39456

Statement Sent to Name:  PORTIA B ISHEE
Statement Sent to Fax Number:  866-588-1691

As of 09/30/10, the status of this loan is as follows:

| | | | |
|---|---|---|---|
| Next Payment Due: | 08/01/10 | Loan Type: | CONVENTIONAL |
| Matures: | 12/2036 | Note Rate: | 7.25000% |
| Escrow Balance: | $-2626.00 | Escrow Retained (**pg. 2): | $0.00 |
| | | Mortgage Insurance: | $0.00 |

**\* \* \* THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON
THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC \* \* \***

| ITEMS | AMOUNT DUE | |
|---|---|---|
| Principal | $94247.73 | |
| Interest Calculated to but not including 10/29/10 | $2232.40 | |
| Escrow/Impound Funds Due | $2626.00 | |
| Late Charges Outstanding | $136.40 | |
| Unapplied Funds | $0.00 | |
| Statement Fee | $20.00 | |
| Recording Fee | $13.00 | |
| Reconveyance/Trust | $0.00 | |
| Release Fee | $0.00 | |
| Fax Fee | $0.00 | |
| Other Fees and Costs | $0.00 | |
| Deferred Amount | $.00 | **\*\*Payoff funds must be** |
| Prepayment Penalty Fee | $0.00 | **remitted in US dollars** |
| Optional Products | $0.00 | **by cashier's check,** |
| Uncollected P&I | $.00 | **certified check or bank** |
| **TOTAL DUE** | **$99275.53** | **wire.\*\*** |
| | | |
| Per Diem Interest | $18.7204 | |

**\*\*\*YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT\*\*\***

For Escrowed Loans:  We require written authorization from our borrower(s) to use any amount of escrow funds
towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff
of the loan, please sign below and fax to 1-614-417-5768.

_____          _____
Signature                                 Signature

GREEN TREE/Ishee - 000370

Page 2
0656318013

**ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**

Items            Next due        Amount

If any tax or insurance amounts are due within 45 days of the date of this statement, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

### PAYOFF FUNDS REMITTANCE INSTRUCTIONS

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below.  Please include $7.50 in addition to the total figures above for the incoming wire fee.

> JPMorgan Chase Bank, N.A.
> For GMAC Mortgage, LLC
> ABA #071000013
> Account #662631175
> GMAC Mortgage, LLC Account #0656318013
> Name: PORTIA B ISHEE
> Remitter Name:
> Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time.  All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day.  Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check:  Customer's name, account number, remitter's name and remitter's phone number.  Please forward to the following address:

> GMAC Mortgage, LLC
> Payoff Processing Unit
> 6716 Grade Lane
> Building 9, Suite 910C
> Louisville KY  40213-1407

* * * You are responsible for the compliance of this document. * * *

Important information regarding the loan payoff:

A) Add daily per diem interest from the interest through date to the date payoff funds are processed in the GMAC Mortgage, LLC office.  Interest is calculated on a 365-day year on a partial-month basis.  If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days).  You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

**GREEN TREE/Ishee - 000371**

Page 3
0656318013

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-614-417-5768. The prepayment penalty will not be removed until receipt of the funds.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-614-417-5768. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Payment of a deficit is required before the loan can be paid in full. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:70

GREEN TREE/Ishee - 000372

## REVISED PAYOFF STATEMENT

**GMAC Mortgage, LLC**                                        10/08/10
PO Box 780
Waterloo IA 50704-0780

Loan No:  0656318013

Borrower:  PORTIA B ISHEE                    Property:
           KENNETH DYREL ISHEE               36 MUSCIO ROAD
           PO BOX 162

           MC LAIN        MS 39456           MC LAIN        MS
                                             39456

Statement Sent to Name:  PORTIA B ISHEE
Statement Sent to Fax Number:  866-588-1691

As of 10/08/10, the status of this loan is as follows:
| | | | |
|---|---|---|---|
| Next Payment Due: | 08/01/10 | Loan Type: | CONVENTIONAL |
| Matures: | 12/2036 | Note Rate: | 7.25000% |
| Escrow Balance: | $-2626.00 | Escrow Retained (**pg. 2): | $0.00 |
| | | Mortgage Insurance: | $0.00 |

### * * * THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC * * *

| ITEMS | AMOUNT DUE |
|---|---|
| Principal | $94247.73 |
| Interest Calculated to but not including 10/29/10 | $2232.40 |
| Escrow/Impound Funds Due | $2626.00 |
| Late Charges Outstanding | $136.40 |
| Unapplied Funds | $0.00 |
| Statement Fee | $0.00 |
| Recording Fee | $13.00 |
| Reconveyance/Trust | $0.00 |
| Release Fee | $0.00 |
| Fax Fee | $ |
| Other Fees and Costs | $31.25 |
| Deferred Amount | $.00 |
| Prepayment Penalty Fee | $0.00 |
| Optional Products | $74.70 |
| Uncollected P&I | $.00 |
| **TOTAL DUE** | **$99361.48** |
| | |
| Per Diem Interest | $18.7204 |

**\*\*Payoff funds must be remitted in US dollars by cashier's check, certified funds or bank wire.\*\***

### ***YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT***

**For Escrowed Loans:  We require written authorization from our borrower(s) to use any amount of escrow funds towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff of the loan, please sign below and fax to 1-888-395-6626.**

**Please use escrow towards my payoff.**

_____                    _____
Signature                                   Signature

GREEN TREE/Ishee - 000373

Page 2
0656318013

**\*\*ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**

If any tax or insurance amounts are due within 45 days of the date interest is calculated to, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

Items            Next due        Amount

## PAYOFF FUNDS REMITTANCE INSTRUCTIONS

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below.  Please include $7.50 in addition to the total figures above for the incoming wire fee.

> JPMorgan Chase Bank, N.A.
> For GMAC Mortgage, LLC
> ABA #021000021
> Account #662631175
> GMAC Mortgage, LLC Loan Number 0656318013
> Name: PORTIA B ISHEE
> Remitter Name:
> Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time.  All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day.  Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check:  Customer's name, loan number, remitter's name and remitter's phone number.  Please forward to the following address:

> GMAC Mortgage, LLC
> Payoff Processing Unit
> 6716 Grade Lane
> Building 9, Suite 910C
> Louisville KY 40213-1407

\* \* \* You are responsible for the compliance of this document. \* \* \*

Important information regarding the loan payoff:

A)   Add daily per diem interest from the interest through date to the date payoff funds are processed in the  GMAC Mortgage, LLC office.  Interest is calculated on a 365-day year on a partial-month basis.  If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days).  You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

**GREEN TREE/Ishee - 000374**

Page 3
0656318013

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-614-417- 5768. The prepayment penalty will not be removed until receipt of the funds. If you are presently on active duty in the military service please contact us to review any prepayment penalty that is reflected on this statement.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-888-395-6626. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: If this loan contains funds in escrow not being retained for possible tax or insurance disbursement, please be advised these funds are automatically credited toward the payoff amount required. The total payoff amount quoted reflects this credit. Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:12

GREEN TREE/Ishee - 000375

CoreLogic

**Inspection Invoice Detail**

CoreLogic Field Services
1 First American Way
DFW5-5
Westlake, TX 76262
1-800-873-4532

**Client Name**    Ocwen Loan Servicing, LLC

**Address**    3451 Hammond Ave
Waterloo IA 50702

**Reference Number**    07102775

**Invoice Date**    10/25/2010

| Work Order Number | Assigned Date | Compliance Date | Loan Number | Mortgagor | Order Type | Department | Loan Type | Cancel Date | Termination Date | Property State | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 223944597 | 10/16/2010 | 10/22/2010 | 0656318013 | PORTIA B ISHEE | Borrower Interview | Collection | UNIN | | 10/25/2010 | MS | 13.00 |

**Total:**    13.00

**Count:**    1

GREEN TREE/Ishee - 000376

GREEN TREE/Ishee - 000377

◆ CoreLogic

CoreLogic Field Services
1 First American Way
DFW5-5
Westlake, TX 76262
1-800-873-4532

## Inspection Invoice Detail

**Client Name**   Ocwen Loan Servicing, LLC

**Address**   3451 Hammond Ave
Waterloo IA 50702

**Reference Number**   07063136

**Invoice Date**   10/7/2010

| Work Order Number | Assigned Date | Completed Date | Loan Number | Mortgagor | Order Type | Department | Loan Type | Cancel Date | Transmission Date | State | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 223390295 | 9/16/2010 | 9/18/2010 | 0656318013 | PORTIA B ISHEE | Borrower Interview | Collection | UNIN | | 10/7/2010 | MS | 11.25 |

**Total:** 11.25

**Count:** 1



CoreLogic Field Services
1 First American Way
DFW5-5
Westlake, TX 76262
1-800-873-4532

### Inspection Work Order Completion Form

| ACCOUNT NUMBER | GUARANTOR | WORK ORDER NUMBER | ORDER CATEGORY | VENDOR ID |
|---|---|---|---|---|
| 0656316013 | UNIN | 223390295 | Borrower Interview | 32997 |

**MORTGAGOR**

PORTIA B ISHEE
36 MUSCIO RD
MC LAIN, MS 39456

| 01. INSPECTION DATE | 07. NEIGHBORHOOD CONDITION | 12. UTILITIES ON | 18. INTERVIEW INFORMATION |
|---|---|---|---|
| Date (MM/DD/YY): 09/25/2010 | Not Applicable | Not Applicable | |
| 02. INVALID ADDRESS | 08. PROPERTY CONDITION | 13. DAMAGE | 19. REASON FOR DELINQUENCY |
| +01: Yes +50: Other | Not Applicable | Not Applicable | Not Applicable |
| 03. HAS ADDRESS CHANGED? | 09. CONSTRUCTION | 14. GARAGE | 20. ACTIVE MILITARY |
| Not Applicable | Not Applicable | Not Applicable | Not Applicable |
| 04. VIOLATION | 10. FOR SALE | 15. PERSONAL PROPERTY | 21. CALL BACK CARD LEFT |
| Not Applicable | Not Applicable | Not Applicable | Not Applicable |
| 05. OCCUPANCY | 11. STRUCTURE TYPE | 16. POOL/HOT TUB | |
| +10: Area Of Limits | Not Applicable | Not Applicable | |
| 06. OCCUP.DETERMINED BY | | 17. PRESERVATION NEEDED | |
| Not Applicable | | Not Applicable | |

### 25. GENERAL COMMENTS

COMMENTS:
BAD ADDRESS,BAD ADDRESS PER TAX ACCESSOR,BAD ADDRESS-HOUSE NUMBER NOT FOUND ON STREET-

### 26. CALL BACK CARD

| Name: | PORTIA B ISHEE | Account: | | Date: | / / |
| Place Call: | | Contact: | | At: # | |

Notice:   Our Representative called on you today while you were out. There is an important matter we would like to discuss with you.

Work Order: 223390295

Page: 1 of 1

GREEN TREE/Ishee - 000378

# **GMAC Mortgage**

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

11/02/10

PORTIA B ISHEE
KENNETH DYREL ISHEE
PO BOX 162

MC LAIN          MS 39456

RE:  Account Number  0656318013
     Property Address  36 MUSCIO ROAD

              MC LAIN          MS 39456

Dear    PORTIA B ISHEE
        KENNETH DYREL ISHEE

Thank you for your inquiry regarding the above-referenced account. For your protection,
GMAC Mortgage, LLC is only authorized to release account information to those names listed
on the loan documents. If you would like another individual (or individuals) to obtain
information concerning your account(s), please complete the enclosed form and fax it to our
office at 866-501-1610.

Upon receipt of this information, GMAC Mortgage, LLC will properly document your account
and those parties listed will then be authorized to obtain information. For security purposes, an
authorized individual must confirm the last four digits of one of the borrower's Social Security
numbers when contacting our office.

If you have any questions, please contact Customer Care at 800-766-4622 between the hours of
6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosure

2:68

GREEN TREE/Ishee - 000379

11/02/10

PORTIA B ISHEE
KENNETH DYREL ISHEE
PO BOX 162
MC LAIN        MS 39456

**Third Party Authorization and Agreement to Release**

Account Number          0656318013
PORTIA B ISHEE
KENNETH DYREL ISHEE

Property Address:  36 MUSCIO ROAD

MC LAIN        MS 39456

I do hereby authorize GMAC Mortgage, LLC (my lender/mortgage servicer) to release or otherwise provide to

_____ of _____ in his/her capacity as
**Name**                                        **Company (if applicable)**

_____    _____
**Relationship (if applicable )**        **Phone #**

public and non-public personal financial information contained in my loan account which may include, but is not limited to, loan balances, final payoff statement, loan status, payment history, payment activity, and/or property information.

We, the lender/mortgage servicer, will take reasonable steps to verify the identity of the 3rd party authorized above, but will have no responsibility or liability to verify the true identity of the requestor when he/she asks to discuss my account or seeks information about my account. Nor shall we, the lender/mortgage servicer, have any responsibility or liability for what the requestor may do with the information he/she obtains concerning my account.

I do hereby indemnify and forever hold harmless the lender/mortgage servicer, from all actions and causes of actions, suits, claims, attorney fees, or demands against the lender/mortgage servicer which I and/or my heirs may have resulting from the lender/mortgage servicer discussing my loan account and/or providing any information concerning my loan account to the above named requestor or person identifying themselves to be that requestor.

If you agree to this Authorization and the terms of the Release as stated above, please sign, date, and fax this form to 866-501-1610.

NOTE: No information concerning your account will be provided until we have received this executed document. The authorization needs to be in the name of an individual (not a company) and a form needs to be completed for each authorized individual. All parties on the Mortgage must sign.

_____     _____     _____
Printed Customer Name                                Printed Customer Name                               Date

_____     _____     _____
Customer Signature                                      Customer Signature                                     Date

**GREEN TREE/Ishee - 000380**

**PAYOFF STATEMENT**

**GMAC Mortgage, LLC**                                   02/11/11
PO Box 780
Waterloo IA 50704-0780

Loan No:   0656318013

Borrower:   PORTIA B ISHEE                    Property:
            KENNETH DYREL ISHEE               36 MUSCIO ROAD
            BPO $0, PIR $15 & $825 FOR ATTYS

                                             MC LAIN          MS
            MC LAIN        MS 39456          39456

Statement Sent to Name:  ADDL F/C ARE $840 G/T 02/11/11
Statement Sent to Fax Number: 601-784-3186

As of 02/11/11, the status of this loan is as follows:
Next Payment Due:                08/01/10    Loan Type:          CONVENTIONAL
Matures:                         12/2036     Note Rate:              7.25000%
Escrow Balance:                 $-2626.00    Escrow Retained (**pg. 2):     $0.00
                                             Mortgage Insurance:            $0.00

**\* \* \* THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON
THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC \* \* \***

| ITEMS | AMOUNT DUE | |
|---|---|---|
| Principal | $94247.73 | |
| Interest Calculated to but not including 02/11/11 | $4173.07 | |
| Escrow/Impound Funds Due | $2626.00 | |
| Late Charges Outstanding | $218.24 | |
| Unapplied Funds | $0.00 | |
| Statement Fee | $0.00 | |
| Recording Fee | $13.00 | |
| Reconveyance/Trust | $0.00 | |
| Release Fee | $0.00 | |
| Fax Fee | $0.00 | |
| Other Fees and Costs | $918.00 | |
| Deferred Amount | $.00 | **\*\*Payoff funds must be** |
| Prepayment Penalty Fee | $0.00 | **remitted in US dollars** |
| Optional Products | $0.00 | **by cashier's check,** |
| Uncollected P&I | $.00 | **certified check or bank** |
| **TOTAL DUE** | **$102196.04** | **wire.\*\*** |
| Per Diem Interest | $18.7204 | |

**\*\*\*YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT\*\*\***

For Escrowed Loans:  We require written authorization from our borrower(s) to use any amount of escrow funds
towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff
of the loan, please sign below and fax to 1-888-395-6626.

_____            _____
Signature                                  Signature

GREEN TREE/Ishee - 000381

Page 2
0656318013

**ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**

Items            Next due        Amount

If any tax or insurance amounts are due within 45 days of the date of this statement, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

**PAYOFF FUNDS REMITTANCE INSTRUCTIONS**

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below.  Please include $7.50 in addition to the total figures above for the incoming wire fee.

> JPMorgan Chase Bank, N.A.
> For GMAC Mortgage, LLC
> ABA #021000021
> Account #662631175
> GMAC Mortgage, LLC  Loan # 0656318013
> Name: PORTIA B ISHEE
> Remitter Name:
> Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time.  All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day.  Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check:  Customer's name, loan number, remitter's name and remitter's phone number.  Please forward to the following address:

> GMAC Mortgage, LLC
> Payoff Processing Unit
> 6716 Grade Lane
> Building 9, Suite 910C
> Louisville KY  40213-1407

* * * You are responsible for the compliance of this document. * * *

Important information regarding the loan payoff:

A) Add daily per diem interest from the interest through date to the date payoff funds are processed in the GMAC Mortgage, LLC office.  Interest is calculated on a 365-day year on a partial-month basis.  If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days).  You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

GREEN TREE/Ishee - 000382

Page 3
0656318013

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-888-395-6626. The prepayment penalty will not be removed until receipt of the funds. If you are presently on active duty in military service please contact us to review any prepayment penalty that is reflected in this statement.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-888-395-6626. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Payment of a deficit is required before the loan can be paid in full. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:70

GREEN TREE/Ishee - 000383

**PAYOFF STATEMENT**

**GMAC Mortgage, LLC**                                                          02/22/11
PO Box 780
Waterloo IA 50704-0780

Loan No:  0656318013

Borrower:   PORTIA B ISHEE                          Property:
            KENNETH DYREL ISHEE                     36 MUSCIO ROAD
            PO BOX 162
                                                    MC LAIN            MS
            MC LAIN       MS 39456                   39456

Statement Sent to Name:  PORTIA B ISHEE
Statement Sent to Fax Number: 601-784-3186

As of 02/22/11, the status of this loan is as follows:

| | | | |
|---|---|---|---|
| Next Payment Due: | 08/01/10 | Loan Type: | CONVENTIONAL |
| Matures: | 12/2036 | Note Rate: | 7.25000% |
| Escrow Balance: | $-2626.00 | Escrow Retained (**pg. 2): | $0.00 |
| | | Mortgage Insurance: | $0.00 |

**\* \* \* THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON
THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC \* \* \***

| ITEMS | AMOUNT DUE | |
|---|---|---|
| Principal | $94247.73 | |
| Interest Calculated to but not including 03/04/11 | $4611.44 | |
| Escrow/Impound Funds Due | $2626.00 | |
| Late Charges Outstanding | $245.52 | |
| Unapplied Funds | $0.00 | |
| Statement Fee | $0.00 | |
| Recording Fee | $13.00 | |
| Reconveyance/Trust | $0.00 | |
| Release Fee | $0.00 | |
| Fax Fee | $0.00 | |
| Other Fees and Costs | $929.25 | |
| Deferred Amount | $.00 | **\*\*Payoff funds must be** |
| Prepayment Penalty Fee | $0.00 | **remitted in US dollars** |
| Optional Products | $0.00 | **by cashier's check,** |
| Uncollected P&I | $.00 | **certified check or bank** |
| **TOTAL DUE** | **$102672.94** | **wire.\*\*** |
| Per Diem Interest | $18.7204 | |

**\*\*\*YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT\*\*\***

For Escrowed Loans:  We require written authorization from our borrower(s) to use any amount of escrow funds
towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff
of the loan, please sign below and fax to 1-888-395-6626.

_____                    _____
Signature                                           Signature

**GREEN TREE/Ishee - 000384**

Page 2
0656318013

**ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**

Items            Next due      Amount

If any tax or insurance amounts are due within 45 days of the date of this statement, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

### PAYOFF FUNDS REMITTANCE INSTRUCTIONS

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below.  Please include $7.50 in addition to the total figures above for the incoming wire fee.

> JPMorgan Chase Bank, N.A.
> For GMAC Mortgage, LLC
> ABA #021000021
> Account #662631175
> GMAC Mortgage, LLC  Loan # 0656318013
> Name: PORTIA B ISHEE
> Remitter Name:
> Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time.  All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day.  Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check:  Customer's name, loan number, remitter's name and remitter's phone number.  Please forward to the following address:

> GMAC Mortgage, LLC
> Payoff Processing Unit
> 6716 Grade Lane
> Building 9, Suite 910C
> Louisville KY  40213-1407

* * * You are responsible for the compliance of this document. * * *

Important information regarding the loan payoff:

A)  Add daily per diem interest from the interest through date to the date payoff funds are processed in the GMAC Mortgage, LLC office.  Interest is calculated on a 365-day year on a partial-month basis.  If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days).  You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

**GREEN TREE/Ishee - 000385**

Page 3
0656318013

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-888-395-6626. The prepayment penalty will not be removed until receipt of the funds. If you are presently on active duty in military service please contact us to review any prepayment penalty that is reflected in this statement.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-888-395-6626. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Payment of a deficit is required before the loan can be paid in full. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:70

GREEN TREE/Ishee - 000386

**PAYOFF STATEMENT**

**GMAC Mortgage, LLC**                                    02/23/11
PO Box 780
Waterloo IA 50704-0780

Loan No:  0656318013

Borrower:   PORTIA B ISHEE                      Property:
            KENNETH DYREL ISHEE                 36 MUSCIO ROAD
            PO BOX 162

            MC LAIN       MS 39456              MC LAIN        MS
                                                39456

Statement Sent to Name:  PORTIA B ISHEE
Statement Sent to Fax Number: 601-784-3186

As of 02/23/11, the status of this loan is as follows:

| | | | |
|---|---|---|---|
| Next Payment Due: | 08/01/10 | Loan Type: | CONVENTIONAL |
| Matures: | 12/2036 | Note Rate: | 7.25000% |
| Escrow Balance: | $-2626.00 | Escrow Retained (**pg. 2): | $0.00 |
| | | Mortgage Insurance: | $0.00 |

**\* \* \* THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC \* \* \***

| ITEMS | AMOUNT DUE | |
|---|---|---|
| Principal | $94247.73 | |
| Interest Calculated to but not including 03/04/11 | $4611.44 | |
| Escrow/Impound Funds Due | $2626.00 | |
| Late Charges Outstanding | $245.52 | |
| Unapplied Funds | $0.00 | |
| Statement Fee | $0.00 | |
| Recording Fee | $13.00 | |
| Reconveyance/Trust | $0.00 | |
| Release Fee | $0.00 | |
| Fax Fee | $0.00 | |
| Other Fees and Costs | $929.25 | |
| Deferred Amount | $.00 | **\*\*Payoff funds must be** |
| Prepayment Penalty Fee | $0.00 | **remitted in US dollars** |
| Optional Products | $0.00 | **by cashier's check,** |
| Uncollected P&I | $.00 | **certified check or bank** |
| **TOTAL DUE** | **$102672.94** | **wire.\*\*** |
| Per Diem Interest | $18.7204 | |

**\*\*\*YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT\*\*\***

For Escrowed Loans:  We require written authorization from our borrower(s) to use any amount of escrow funds towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff of the loan, please sign below and fax to 1-888-395-6626.

_____          _____
Signature                                 Signature

GREEN TREE/Ishee - 000387

Page 2
0656318013

**ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**
Items            Next due      Amount

If any tax or insurance amounts are due within 45 days of the date of this statement, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

**PAYOFF FUNDS REMITTANCE INSTRUCTIONS**

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below.  Please include $7.50 in addition to the total figures above for the incoming wire fee.

> JPMorgan Chase Bank, N.A.
> For GMAC Mortgage, LLC
> ABA #021000021
> Account #662631175
> GMAC Mortgage, LLC  Loan # 0656318013
> Name: PORTIA B ISHEE
> Remitter Name:
> Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time.  All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day.  Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check:  Customer's name, loan number, remitter's name and remitter's phone number.  Please forward to the following address:

> GMAC Mortgage, LLC
> Payoff Processing Unit
> 6716 Grade Lane
> Building 9, Suite 910C
> Louisville KY  40213-1407

* * * You are responsible for the compliance of this document. * * *

Important information regarding the loan payoff:

A)  Add daily per diem interest from the interest through date to the date payoff funds are processed in the GMAC Mortgage, LLC office.  Interest is calculated on a 365-day year on a partial-month basis.  If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days).  You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

GREEN TREE/Ishee - 000388

Page 3
0656318013

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-888-395-6626. The prepayment penalty will not be removed until receipt of the funds. If you are presently on active duty in military service please contact us to review any prepayment penalty that is reflected in this statement.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-888-395-6626. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Payment of a deficit is required before the loan can be paid in full. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:70

**GREEN TREE/Ishee - 000389**

**PAYOFF STATEMENT**

**GMAC Mortgage, LLC**                              03/25/11
PO Box 780
Waterloo IA 50704-0780

Loan No:  0656318013

Borrower:   PORTIA B ISHEE                    Property:
            KENNETH DYREL ISHEE              36 MUSCIO ROAD
            PO BOX 162
                                             MC LAIN          MS
            MC LAIN        MS 39456          39456

Statement Sent to Name:  PORTIA B ISHEE
Statement Sent to Fax Number: 866-336-3811

As of 03/25/11, the status of this loan is as follows:

| | | | |
|---|---|---|---|
| Next Payment Due: | 08/01/10 | Loan Type: | CONVENTIONAL |
| Matures: | 12/2036 | Note Rate: | 7.25000% |
| Escrow Balance: | $-2626.00 | Escrow Retained (**pg. 2): | $0.00 |
| | | Mortgage Insurance: | $0.00 |

**\* \* \* THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON
THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC \* \* \***

| ITEMS | AMOUNT DUE | |
|---|---|---|
| Principal | $94247.73 | |
| Interest Calculated to but not including 04/19/11 | $5461.66 | |
| Escrow/Impound Funds Due | $2626.00 | |
| Late Charges Outstanding | $300.08 | |
| Unapplied Funds | $0.00 | |
| Statement Fee | $0.00 | |
| Recording Fee | $13.00 | |
| Reconveyance/Trust | $0.00 | |
| Release Fee | $0.00 | |
| Fax Fee | $0.00 | |
| Other Fees and Costs | $1214.50 | |
| Deferred Amount | $.00 | **\*\*Payoff funds must be** |
| Prepayment Penalty Fee | $0.00 | **remitted in US dollars** |
| Optional Products | $0.00 | **by cashier's check,** |
| Uncollected P&I | $.00 | **certified check or bank** |
| **TOTAL DUE** | **$103862.97** | **wire.\*\*** |
| Per Diem Interest | $18.7204 | |

**\*\*\*YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT\*\*\***

For Escrowed Loans: We require written authorization from our borrower(s) to use any amount of escrow funds
towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff
of the loan, please sign below and fax to 1-888-395-6626.

_____          _____
Signature                                Signature

Page 2
0656318013

**ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**
Items              Next due       Amount

If any tax or insurance amounts are due within 45 days of the date of this statement, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

### PAYOFF FUNDS REMITTANCE INSTRUCTIONS

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below. Please include $7.50 in addition to the total figures above for the incoming wire fee.

> JPMorgan Chase Bank, N.A.
> For GMAC Mortgage, LLC
> ABA #021000021
> Account #662631175
> GMAC Mortgage, LLC  Loan # 0656318013
> Name: PORTIA B ISHEE
> Remitter Name:
> Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time. All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day. Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check: Customer's name, loan number, remitter's name and remitter's phone number. Please forward to the following address:

> GMAC Mortgage, LLC
> Payoff Processing Unit
> 6716 Grade Lane
> Building 9, Suite 910C
> Louisville KY  40213-1407

* * * You are responsible for the compliance of this document. * * *

Important information regarding the loan payoff:

A) Add daily per diem interest from the interest through date to the date payoff funds are processed in the GMAC Mortgage, LLC office. Interest is calculated on a 365-day year on a partial-month basis. If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days). You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

**GREEN TREE/Ishee - 000391**

Page 3
0656318013

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-888-395-6626. The prepayment penalty will not be removed until receipt of the funds. If you are presently on active duty in military service please contact us to review any prepayment penalty that is reflected in this statement.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-888-395-6626. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Payment of a deficit is required before the loan can be paid in full. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:70

GREEN TREE/Ishee - 000392

**PAYOFF STATEMENT**

**GMAC Mortgage, LLC**                                    04/01/11
PO Box 780
Waterloo IA 50704-0780

Loan No:  0656318013

Borrower:  PORTIA B ISHEE                    Property:
           KENNETH DYREL ISHEE               36 MUSCIO ROAD
           PO BOX 162

           MC LAIN       MS 39456            MC LAIN       MS
                                             39456

Statement Sent to Name:  PORTIA B ISHEE
Statement Sent to Fax Number:  866-336-3811

As of 04/01/11, the status of this loan is as follows:
| | | | |
|---|---|---|---|
| Next Payment Due: | 08/01/10 | Loan Type: | CONVENTIONAL |
| Matures: | 12/2036 | Note Rate: | 7.25000% |
| Escrow Balance: | $-6533.00 | Escrow Retained (**pg. 2): | $0.00 |
| | | Mortgage Insurance: | $0.00 |

**\* \* \* THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC \* \* \***

| ITEMS | AMOUNT DUE |
|---|---|
| Principal | $94247.73 |
| Interest Calculated to but not including 04/19/11 | $5461.66 |
| Escrow/Impound Funds Due | $6533.00 |
| Late Charges Outstanding | $300.08 |
| Unapplied Funds | $0.00 |
| Statement Fee | $0.00 |
| Recording Fee | $13.00 |
| Reconveyance/Trust | $0.00 |
| Release Fee | $0.00 |
| Fax Fee | $0.00 |
| Other Fees and Costs | $1214.50 |
| Deferred Amount | $.00 |
| Prepayment Penalty Fee | $0.00 |
| Optional Products | $0.00 |
| Uncollected P&I | $.00 |
| **TOTAL DUE** | **$107769.97** |
| | |
| Per Diem Interest | $18.7204 |

**\*\*Payoff funds must be remitted in US dollars by cashier's check, certified check or bank wire.\*\***

**\*\*\*YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT\*\*\***

For Escrowed Loans: We require written authorization from our borrower(s) to use any amount of escrow funds towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff of the loan, please sign below and fax to 1-888-395-6626.

_____          _____
Signature                                 Signature

**GREEN TREE/Ishee - 000393**

Page 2
0656318013

**ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**

Items          Next due      Amount

If any tax or insurance amounts are due within 45 days of the date of this statement, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

**PAYOFF FUNDS REMITTANCE INSTRUCTIONS**

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below.  Please include $7.50 in addition to the total figures above for the incoming wire fee.

> JPMorgan Chase Bank, N.A.
> For GMAC Mortgage, LLC
> ABA #021000021
> Account #662631175
> GMAC Mortgage, LLC  Loan # 0656318013
> Name: PORTIA B ISHEE
> Remitter Name:
> Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time.  All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day.  Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check:  Customer's name, loan number, remitter's name and remitter's phone number.  Please forward to the following address:

> GMAC Mortgage, LLC
> Payoff Processing Unit
> 6716 Grade Lane
> Building 9, Suite 910C
> Louisville KY  40213-1407

* * * You are responsible for the compliance of this document. * * *

Important information regarding the loan payoff:

A)  Add daily per diem interest from the interest through date to the date payoff funds are processed in the GMAC Mortgage, LLC office.  Interest is calculated on a 365-day year on a partial-month basis.  If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days).  You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

GREEN TREE/Ishee - 000394

Page 3
0656318013

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-888-395-6626. The prepayment penalty will not be removed until receipt of the funds. If you are presently on active duty in military service please contact us to review any prepayment penalty that is reflected in this statement.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-888-395-6626. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Payment of a deficit is required before the loan can be paid in full. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:70

GREEN TREE/Ishee - 000395

# ATTACHMENT #16

*[handwritten: Call today]*   *[handwritten: 2-16-2011]*   *[handwritten: 601-784-3412]*

# GMAC Mortgage

*[handwritten: Marls]*

5901
0656318013

PO Box 4025
Coraopolis, PA 15108-6942

Notification Date: 01/29/2011

*[handwritten: Christen Brendor]*   *[handwritten: 800 764-4622]*

0002434 - 0002778  L

PORTIA ISHEE
KENNETH ISHEE
PO BOX 162
MC LAIN, MS
39456-0162

*[handwritten: 866-354-7281 for My Money]*

*[handwritten: 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]*

RE: Account Number:    5901-0000-0656318013
Property Address:   36 MUSCIO ROAD
MC LAIN MS   *[handwritten: 39456]*

Insurance Company:
Policy Number:
Policy Effective:

*[handwritten: 992    1 6    11-8    10-8/99]*

Dear PORTIA ISHEE

We received information in our office that the above referenced property is vacant as of 01/29/2011.

If we do not receive verification of occupancy, or a policy/endorsement covering vacancy, within 30 days from the date of this letter, GMAC Mortgage will acquire insurance for you effective 01/29/2011. This insurance covers vacancy to protect your property interest and the interest of GMAC Mortgage.

Under the terms of your policy, we are required to advise your agent/insurance company of any change in occupancy that comes to our attention for the property securing the above referenced loan. A letter reflecting the above information has been forwarded to your agent/insurance company.

If you have any questions or if you feel our records are incorrect, please call our Customer Service Department at (800) 256-9962.

Thank you for your assistance in this matter.

Insurance Department
Mortgage Loan Servicing

*[handwritten: All Data In get a reciept for House & right Bill CMAC OLC P.O. Box 4622 Walpoe La 58704]*

*[handwritten: Lori Cole Insurance ti for House &]*

# ATTACHMENT #17

# **GMAC** Mortgage

P.O. Box 52052
Phoenix, AZ 85072-2052

February 26, 2011

1 - 1
PORTIA B ISHEE
PO BOX 162
MC LAIN, MS 39456

RE:     Borrower:            PORTIA B ISHEE
        Property Address:    36 MUSCIO ROAD
                             MC LAIN, MS 39456
        Tracking #:          121286
        Loan Number:         0656318013

Dear PORTIA B ISHEE and KENNETH DYREL ISHEE:

Recent communication from you indicated your intent to use your insurance claim funds to pay-off your existing loan balance. In order to expedite your request, please send the following to us as soon as possible:

- Current Payoff Statement (if available, otherwise we will obtain)
- Written, signed request to use your insurance claim funds in support of a payoff
- All drafts pertaining to this loss
- Certified check for any balance due not covered by your insurance claim funds

We look forward to receipt of the above. If you have any questions, please contact our office at 866-354-7281.

Sincerely,

Insurance Claims Center
Phone: 866-354-7281
Fax:    866-336-3811

Encl.:   Return Envelope

*March 11, 2011*

*insurance from Alfa*
*99,623.48*
*94,247.73*
*owe GMAC 94,247.73*
*Balance to Portia 5,375.75*

# ATTACHMENT #18

March 11, 2011

GMAC Mortgage
P O Box 5052
Phoenix, Az 85072-2052

Fax Number:  866-336-3811

Tracking #121286

TO WHOM IT MAY CONCERN;

I hereby request you to use the Alfa Insurance check in the amount of $99,623.48 to pay
off my loan in the name of Kenneth Dyrel Ishee and Portia B Ishee, loan number
0656318013 in the amount of $94,247.73 and send the balance to me in the amount of
$5,375.75.

Your immediate attention will be greatly appreciated.

Sincerely,

Portia B Ishee

# ATTACHMENT #19



**LEE TURNER, PLLC**
Attorney-at-Law

Phone – ᴬᴮ394.5008
Fax – ᴬᴮ394.2986

401 Capitol Ave. - P.O. Box 1492
Leakesville, MS 39451

leeturner@leeturnerlaw.com
www.leeturnerlaw.com

April 11, 2011

GMAC Mortgage
P.O. Box 4025
Coraopolis, PA 15108

*RE: Account No:   5901-0000-0656318013- Portia Ishee*
*Property Address:  36 Muscio Road*
*McLain, MS 39456*

To Whom It May Concern:

I have been retained by Ms. Portia Ishee, regarding the above referenced account, in particular the various notice letters received from GMAC Mortgage (hereinafter referred to as "GMAC"). Specifically, I am writing regarding the status of the check remitted by Alfa Insurance in the amount of $99,623.48, to GMAC, representing a pay-off of the mortgage on the home that was destroyed by fire. Per instructions in a letter dated February 26, 2011, from GMAC, my client sent a request to use those funds to pay-off the mortgage, with the remainder being remitted to her. However, she has yet to receive confirmation that the funds have been applied, and still continues to receive notices from GMAC concerning the same, nor has she received the balance due her.

Further, my client's efforts to resolve this matter amicably have been hampered by GMAC's repeated shuffling of service representatives, addresses, and confusing instructions. Accordingly, if this matter is not promptly resolved my client will be left with no recourse, but to seek redress in the Mississippi Court system. While not desirous of litigation, if my client's grievances are not addressed within thirty days, legal action will ensue.

Lastly, this letter is not intended to set forth all of the facts related to this matter or all the rights and remedies available to Portia Ishee, under the present circumstances, or the bases thereof, all of which are expressly reserved. Please give this important matter your prompt attention. Likewise, please direct all future correspondence to my office.

Sincerely Yours,

Lee Turner

cc: file/Ishee

# ATTACHMENT #20



## LEE TURNER, PLLC
### Attorney-at-Law

Phone - ⁽⁶⁰¹⁾394.5008
Fax - ⁽⁶⁰¹⁾394.2986

**401 Capitol Ave.   -   P.O. Box 1492**
**Leakesville, MS 39451**

leeturner@leeturnerlaw.com
www.leeturnerlaw.com

September 12, 2011

VIA FACSIMILE  866-336-3811

GMAC Mortgage
P.O. Box 52052
Phoenix, AZ  85072

     RE:  Portia Ishee
         Loan Number 0656318013
         Reference No. 121286

Dear Ms. Saline:

     Please allow this letter to confirm our recent conversation, concerning the above named individual, and the loan incident thereto.  Moreover, please allow this letter to serve as my client's request for an exception for the balance owed on the loan.  As per our conversation, you informed me that GMAC is holding $99,623.48 in insurance proceeds in escrow, which would leave a deficiency balance of approximately $11,240.06, remaining on the original loan.

     In light of my client's tragic losses from the fire, and her advanced age, I would respectfully request an exception for any remaining monies owed.  In order to comply with your request, I am having my client countersign this letter to evidence her approval of the same.  Should you have any questions or need additional information, please do not hesitate to contact me.  I look forward to hearing from you soon.

               Sincerely Yours,

               Lee Turner


               _____
               Portia Ishee


cc: file/Ishee

# ATTACHMENT #21



**LEE TURNER, PLLC**
Attorney-at-Law

Phone - (601) 394.5008
Fax - (601) 394.2986

**401 Capitol Ave.  -  P.O. Box 1492**
**Leakesville, MS 39451**

leeturner@leeturnerlaw.com
www.leeturnerlaw.com

October 25, 2011

VIA FACSIMILE 866-336-3811

GMAC Mortgage
P.O. Box 52052
Phoenix, AZ  85072

Re:  Portia Ishee
Loan Number 0656318013
Reference No. 121286

Dear Ms. Saline:

Please allow this letter to confirm our recent conversation, concerning the above named individual, and the loan incident thereto.  Moreover, please allow this letter to serve as my client's request for an exception for the balance owed on the loan.  As per our conversation, you informed me that GMAC is holding $99,623.48 in insurance proceeds in escrow, which would leave a deficiency balance of approximately $11,240.06 remaining on the original loan.

In light of my client's tragic losses from the fire, and her advanced age, I would respectfully request that all insurance proceeds be applied to the outstanding balance for any monies owed.  In order to comply with you request, I am having my client countersign this letter to evidence her approval of the same.  Should you have any questions or need additional information, please do not hesitate to contact me.  I look forward to hearing from you soon.

Sincerely,

Lee Turner

Portia Ishee

cc:  file/Ishee

# ATTACHMENT #22

GMAC Mortgage, LLC
P.O. Box 4622
Waterloo, IA  50704-4622

July 08, 2011

396

PORTIA B ISHEE
KENNETH DYREL ISHEE
PO BOX 162
MC LAIN MS  39456

RE:  Account Number:    0656318013
       Property Address:    36 MUSCIO ROAD
                                       MC LAIN MS  39456

Dear PORTIA B ISHEE and KENNETH DYREL ISHEE

As your loan servicer, we are committed to working with you to help make your payment more affordable.

**While you have qualified for this Trial Workout Plan it is important to understand all of the qualifications for the Permanent Modification have not yet been met.**  First, you must comply with the terms of this Trial Workout Plan and submit any outstanding required documentation in addition to making all required Trial Plan Payments.  We will then be required to re-evaluate your eligibility for a Permanent Modification.  If you do not make the specified trial period payments in full in the month when due, you will not qualify for a permanent modification and will not be allowed to enter into a permanent Loan Modification agreement. If you successfully complete the trial and enter into a Loan Modification Agreement, you will no longer be eligible for the modified payment terms if you are 60 days late within the first 12 months of the permanent modification.

The following documents were designed to help you understand and take advantage of this offer.

- **Workout Plan Payment Coupons** – Use these coupons in place of your normal payment method while making your Trial Plan Payments.
- **What You Must Do Now** – This provides instructions for payment and submission of required documentation.
- **Home Affordable Modification Program Loan Workout Plan** – This includes the terms of your Workout Plan.
- **Frequently Asked Questions and Notifications**

Receipt of payment matching the terms of this Workout Plan constitute acceptance of this offer.  If you have any questions, please contact us at 1-800-850-4622.

Loan Servicing

Enclosures

# ATTACHMENT #23

# **GMAC** Mortgage

P.O. Box 52052
Phoenix, AZ 85072

Lee Turner, PLLC
Attorney-at-Law

401 Capital Ave. – P.O. Box 1492
Leakesville, MS 39451

In Regards to: Portia and Kenneth Ishee
Loan: 0656318013
Reference: 121286

To whom it may concern:

Documents required for an exception to be submitted to payoff loan with current funds in RE:

- Letter from or signed by the borrower requesting an exception.
- Current payoff statement

Please fax or mail the above document to GMAC Mortgage at Fax: 866-339-3811 or

GMAC Mortgage
ATTN: Insurance Claims Center
2505 West Chandler Blvd.
Building D
Chandler, AZ 85224

Best Regards,

Lindsey Saline

# ATTACHMENT #24

GMAC Mortgage
3451 Hammond Ave
PO Box 780
Waterloo, IA 50704-0780



9/14/2011

07/26/11 14:00 3  000044S 20110914 Gi2YB101 GMACDUPL 1 OZ DOM Gi2YB10000* 160275  DM

PORTIA B ISHEE
KENNETH DYREL ISHEE
PO BOX 162
MC LAIN MS  39456-0162



RE:   Account Number       0656318013
      Property Address      36 MUSCIO ROAD
                            MC LAIN MS 39456

Dear PORTIA B ISHEE and KENNETH DYREL ISHEE:

We recently received your request for a loan modification.  We are not able to fulfill your request at this time for the following reason(s):

The first trial payment was not received within the first month it was due, therefore we were not able to continue with the modification review.

At this time, you may want to seek advice regarding your next steps.  We suggest you call 1.800.CALL.FHA (1.800.225.5342) to locate a HUD-certified housing counseling agency.  You may also want to call 1.888.995.HOPE (1.888.995.4673) to request assistance from a HUD-approved housing counselor.

You have until 10/14/2011 to contact GMAC Mortgage, LLC to discuss this denial of your request for a loan modification. Your loan may be referred to or remain in foreclosure during this time. However, **a foreclosure sale will not be conducted and you will not lose your home due to foreclosure** during this 30-day period.

You can send any additional material to:

      GMAC Mortgage, LLC
      ATTN: Modification Non-Approvals
      PO Box 780
      Waterloo, Iowa 50704

We will continue to work with you to explore options that may be available. If you have any questions, please contact us at 1-877-928-4622 between the hours of 8:00 a.m. and 9:00 p.m. Monday through Friday central standard time.

Modification Department
Loan Servicing



9/14/2011
Account Number 0656318013
Page Two

Please Note: This is an attempt to collect on a debt and any information obtained will be used for that purpose.

**Notice Regarding Bankruptcy:** If you are currently involved in an open bankruptcy case or if you have been discharged of your personal liability for repayment of this debt; this notice is being provided for informational purposes only and is not an attempt to collect a pre-petition or discharged debt. Furthermore, any action that we may take is for the sole purpose of protecting our lien interest in your property and is not to recover amounts from you personally.

**Note:** If you are currently in bankruptcy under Chapter 13, you should continue to make payments in accordance to your Chapter 13 plan.

Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

Name: Equifax Information Services LLC,
Address: P.O. Box 740241, Atlanta, GA 30374-0241
[Toll-free] Telephone number: 800-685-1111     http://www.equifax.com/

*If you have any questions regarding this notice, you should contact:*
Creditor's name: GMAC Mortgage, LLC
Creditor's address: PO Box 780, Waterloo IA 50704-0780
Creditor's telephone number: 1-877-928-4622

Notice: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

M020

| Account Number | Date Payment Due | Total Amount Due |
|---|---|---|
| 0656318013 | 08/01/2011 | $875.07 |

PORTIA B ISHEE
KENNETH DYREL ISHEE

Mail to:

GMAC Mortgage, LLC
Attn: Loss Mitigation
PO Box 9001719
Louisville, KY 40290-1719

Mail This Portion With Your Payment

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| Account Number | Date Payment Due | Total Amount Due |
|---|---|---|
| 0656318013 | 09/01/2011 | $875.07 |

PORTIA B ISHEE
KENNETH DYREL ISHEE

Mail to:

GMAC Mortgage, LLC
Attn: Loss Mitigation
PO Box 9001719
Louisville, KY 40290-1719

Mail This Portion With Your Payment

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| Account Number | Date Payment Due | Total Amount Due |
|---|---|---|
| 0656318013 | 10/01/2011 | $875.07 |

PORTIA B ISHEE
KENNETH DYREL ISHEE

Mail to:

GMAC Mortgage, LLC
Attn: Loss Mitigation
PO Box 9001719
Louisville, KY 40290-1719

Mail This Portion With Your Payment

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## What You Must Do Now

To accept this offer, please provide the following items to us:

**Workout Plan Payments**

Utilize the payment coupons provided on page 2, which detail the amount and due date specified in the Workout Plan.

- o If you were previously required to remit payments by certified funds, this requirement extends through the Workout Plan.
- o These payments should be sent instead of, not in addition to, your normal monthly mortgage payment.
- o You must send the exact amount stated on each coupon. Please do not send more or less than what is noted to ensure eligibility.
- o Workout Plan payments must be received on or within 10 days following the due date noted on each coupon.

Because this is a temporary reduction to your monthly payment you will not be able to remit payment through the services provided on our website or other electronic payment services such as automatic deductions from your bank account until the Workout Plan is complete.

**Outstanding Required Documentation**

Return the following documents within 7 days.  **Please contact us immediately if you cannot meet this timeframe.**  Please only send us copies and not originals of these documents.

### Thank you!  No additional documentation is required at this time.

**Important Workout Plan Information**

- If you comply with the Loan Workout Plan, we may not conduct a foreclosure sale.

- If you cannot afford the Workout Plan payments but want to avoid foreclosure please call us at 1-800-850-4622.  We may be able to help you.

- If your loan is modified after the Workout Plan, we will waive all unpaid late charges.

- Your credit score may be affected by accepting this Workout Plan or modification.  For more information about your credit score please go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

Investor Loan #      0656318013

# TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Loan Workout Plan Effective Date: 08/01/2011
Borrower ("I")[1]: PORTIA B ISHEE and KENNETH DYREL ISHEE
Lender ("Lender"): GMAC Mortgage, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 11/12/2006
Loan Number: 0656318013
Property Address ("Property"): 36 MUSCIO ROAD   MC LAIN MS  39456

If I am in compliance with this Trial Workout Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender and/or Servicer may provide me with a Loan Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I am approved for a permanent modification, I understand I will be sent a permanent modification document detailing the terms of the modification.

1.   **My Representations**.  I certify, represent to Lender and agree:

    A.   I am in default under the Loan Documents, and I do not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.   There has been no change in the ownership of the Property since I signed the Loan Documents;

    C.   Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

    D.   If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Plan.

2.   **The Trial Workout Plan**.  On each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items (where not prohibited by law), including real estate taxes, insurance premiums, mortgage insurance premiums and other fees, if any, of **$326.95**.

| | | |
|---|---|---|
| 1. | 08/01/2011 | $875.07 |
| 2. | 09/01/2011 | $875.07 |
| 3. | 10/01/2011 | $875.07 |

The Trial Period Payment is an **estimate** of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

During the period (the "Trial Period") commencing on the date of this Plan and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan;

B. Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived unless prohibited by law; However, I may continue to receive foreclosure/eviction notices-delivered by mail or in person – or I may see steps being taken to proceed with the foreclosure of my home. While I may not lose my home during the evaluation, to protect my rights under applicable foreclosure law, I may need to respond to these foreclosure notices or take other actions. If I do not understand the legal consequences of the foreclosure, I understand that I am encouraged to speak to an attorney or a housing counselor for assistance.

C. If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Lender may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D. The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents and are not prohibited by law;

F. If prior to the Modification Effective Date, I have not made the Trial Period payments required under Section 2 of this Plan; or if the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until I meet all of the conditions required for modification, and the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3. **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender may send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new estimated payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

4. **Additional Agreements.** I agree to the following:

A. That, unless a borrower or co-borrower is deceased, all persons who signed the Loan Documents have agreed to this Plan.

B. To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, mortgage insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan (unless prohibited by law).

C. That this Plan constitutes notice that the Lender waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account, unless prohibited by law.

D.  That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.  The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.  For loans with mortgage insurance, the mortgage insurance premium may be subject to change following permanent modification.  Any change would be proportionate to the modified loan amount, including any deferred balanced, and will be reflected in your next escrow analysis following the permanent modification.

**Receipt of payment matching the terms of this agreement constitutes acceptance of this offer.**

**Frequently Asked Questions**

**Could my Trial Workout Plan payment be more than my current payment?**
Possibly.  For example, if your current payment does not include an escrow payment and you are now required to make monthly escrow payments, your Workout Plan payment could be higher than your current payment.  However, the increase in your payment will be offset by no longer having to pay taxes and insurance bills yourself, as we will pay them on your behalf from your new escrow account.

**What happens to my Trial Workout Plan payments if I do not comply with the terms of the Trial Workout Plan?**
Your Workout Plan payments will be applied to your existing loan according to the terms of your current loan documents.

**Will a foreclosure occur if I participate in the Trial Workout Plan?**
As long as you comply with the terms of the Trial Workout Plan, we will not continue with foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started.  If you do not qualify, or if you fail to comply with the terms of the Trial Workout Plan, you will be sent a Non-Approval Notice.  In most cases, you will have 30 days to review the reason for non-approval and contact us in writing to discuss any concerns you may have.  During this 30-day review period, we may continue with the pending foreclosure action, but no foreclosure sale will be conducted and you may not lose your home.

**How will this affect my credit?**
We are required to report factual information to the credit agencies; therefore, if your account is past due at the time you enter into the Workout Plan, we will report that your account is past due to the credit bureaus.
If your account is current at the time you enter into this Trial Workout Plan and you successfully complete the plan which leads to a permanent modification, there will be no negative impact to your credit report.  However, if you do not successfully complete the plan, or be permanently modified, normal credit reporting will continue.

**How long will it take to process my modification request and determine if I qualify for the program?**
Based on the information you have provided we have successfully qualified you for this Trial Workout Plan.  If you provide all documentation requested on page three of this letter, if applicable, and make payments as required we will re-evaluate your qualifications after we receive your final Trial Workout Plan payment.  You will be notified of our final decision within 20 days of receipt of your final Trial Workout Plan payment.

**Will my interest rate and principal and interest payment be fixed after my loan is permanently modified?**

If your loan is permanently modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage unless your initial modified interest rate is below current market interest rates.  In that case, the below market interest rate will be fixed for five years.  At the end of the fifth year, your interest rate may increase by 1% per year until it reaches the cap.  The cap will equal the market rate of interest being charged by mortgage lenders on the day your modification agreement is prepared (the Freddie Mac Primary Mortgage Market Survey Rate for 30-year, fixed rate conforming mortgages).  Once your interest rate reaches the cap, it will be fixed for the remaining life of your loan.

**Will the escrow portion of my payment change?**

If the cost of your homeowner's insurance, property tax assessment or other escrow expenses increases, your monthly payment will increase as well.

During the establishment of the escrow account, any outstanding premiums due for property taxes or insurance were advanced and paid on your behalf.  This would create an escrow shortage.  If a shortage exists on the account, it will be factored into your payment after the Trial Workout Plan is complete.  The terms of your Trial Workout Plan require us to create an escrow account (where not prohibited by law) for payment of your property taxes, insurance premiums and other permissible escrow.  Your current loan may already have an escrow account.  If there is not an escrow account, the previous Waiver of Escrow is cancelled under this new Trial Workout Plan.

**The Trial Period Plan notice will be rescinded if an error is detected**

You agree that if an error in the terms of the Trial Period Plan or your eligibility is detected after issuance of the Trial Period Plan notice, the Trial Period Plan will be void and of no legal effect upon notice to you of such error.  You understand that a corrected Trial Period Plan will be provided to you if it is determined that you remain eligible for a loan modification after correction of the error.



### Beware of Foreclosure Rescue Scams. Help is free!

- There is never a fee to get assistance or information about the Making Home Affordable program from your lender and/or Servicer or a HUD-approved housing counselor.

  o For a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/

  o Or, select a counseling agency by phone through the HOPE Hotline by calling 1-888-995-HOPE. This is an on-demand counseling service that is available 24-hours a day/7- days a week. The HOPE Hotline is available in Spanish or English (other languages are available upon request).

- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.

- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.

- Never make your mortgage payments to anyone other than your mortgage company without their approval.

FAX COVER SHEET  *(This page should be returned to us with your **completed** financial analysis form)*
**PLEASE INCLUDE THE ACCOUNT NUMBER ON *EVERY PAGE* OF YOUR RETURNED PACKAGE**

| To: Loss Mitigation | |
|---|---|
| From: _____ | Account Number(s) _____ 0656318013 |
| Fax to: **1-866-709-4744** | or mail to: **Loss Mitigation** |
| | **233 Gibraltar Road Suite 600** |
| | **Horsham PA  19044** |

ALL of the following information must be completed and returned to determine eligibility:

☐ Financial Analysis Form/Information for Government Monitoring Purposes
☐ Dodd-Frank Certification
☐ A signed and dated copy of the Acknowledgement and Agreement
☐ A signed and dated copy of IRS Form 4506T-EZ (Request for Transcript of Tax Return).  Borrowers who filed their tax returns jointly may send in one IRS Form 4506T-EZ signed and dated by both the joint filers.  This form is required even if you have not filed or are not required to file tax returns.
☐ Documentation confirming occupancy – for example, a recent utility bill in your name at the property address.
☐ Documentation verifying expenses for Homeowners or Condominium Association Dues for condominiums and Co Ops. (if applicable)
☐ Documentation to verify all of the income of each borrower.  Please see the chart below for the type of documentation required for each type of income.

| TYPE OF INCOME | DOCUMENTATION REQUIRED | |
|---|---|---|
| Paid by an employer or short term disability | ☐ | Copy of two most recent pay stubs from your employer including year to date information.  Pay stubs cannot be more than 90 days old. |
| Self employed or receive a 1099 form | ☐ | Copy of most recent quarterly or year-to-date Profit and Loss statement
See Exhibit A for a sample of a 3 Month Self Employment Income Statement (Profit and Loss Form) |
| Child support or alimony* | ☐ | Copy of divorce decree, separation agreement, or other legal written agreement filed with the court that shows the amount of the award and period of time over which it will be received
**AND** |
| | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of child support or alimony.  Bank statements cannot be over 90 days old. |
| Social Security, disability, death benefits, or pension | ☐ | Copy of benefits statement or letter from the provider that states the amount and frequency of the benefit.
**AND** |
| | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of benefit income.  Bank statements cannot be over 90 days old. |
| Other earned income (i.e. bonus, commission, housing allowance, and/or tips) | ☐ | Copy of third party documentation describing the nature of the income (i.e. an employment contract and/or printouts documenting tips) and indicating the income is not a one time payout. |
| Rental income from an investment property | ☐ | Copy of the most recent federal tax return with all schedules, including Schedule E-Supplemental Income and Loss.
**AND**
Current lease agreement for the subject property.
**AND** |
| | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of income.  Bank statements cannot be over 90 days old.
See Exhibit B for a sample of an Investment Property Schedule. |
| Rental income from room rental of the primary residence | ☐ | Copy of current lease agreement.
**AND** |
| | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of income.  Bank statements cannot be over 90 days old. |
| Unemployment | ☐ | Copy of a benefits statement or letter from the provider that states the amount, frequency, and duration of the benefit.  Benefit must continue for at least 9 months to be considered.
**AND** |
| | ☐ | Documentation must show receipt unemployment benefits have begun or will begin within 60 days. |
| Other income (investment, interest, dividends, etc.) | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of income.  Bank statements cannot be over 90 days old. |
| Income not specified above | ☐ | Signed letter from the person(s) that contributes the income showing the amount and frequency of the income.
**AND** |
| | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of income.  Bank statements cannot be over 90 days old. |

*You are not required to disclose Child Support, Alimony, or Separation Maintenance income, unless you choose to have it considered.

**If you want to sell this property, please also include:**
☐ Copy of the listing agreement
☐ Copy of the sales contract, if available
☐ Copy of the estimated Settlement Statement (HUD1), if available
☐ Signed Third Party Authorization Form

 **Please be aware we will not be able to process your request until all parts of the application have been completed including signatures and all necessary supporting documentation has been supplied.**

9

v042611

**FINANCIAL ANALYSIS FORM**

Account Number _____ 0656318013

| BORROWER | CO-BORROWER |
|---|---|
| Borrower's Name | Co-Borrower's Name |

| Social Security Number | Date of Birth | Social Security Number | Date of Birth |
|---|---|---|---|
| | | | |

| Home Phone Number With Area Code | Home Phone Number With Area Code |
|---|---|
| Cell or Work Number With Area Code | Cell or Work Number With Area Code |
| Email Address | Email Address |

Mailing Address

Property Address (If Same As Mailing Address, Write Same)

| I want to: ☐ Keep the Property    ☐ Sell the Property | The property is my: ☐ Primary Residence  ☐ Second Home ☐ Investment |
|---|---|

The property is:    ☐ Owner Occupied   ☐ Renter occupied  ☐ Vacant   If Owner Occupied, include a recent utility bill in your name at the property address.
If Renter Occupied, include a copy of the current lease agreement.

| Is the property listed for sale?     ☐ Yes ☐ No<br>For Sale by Owner? ☐ Yes ☐ No<br>Agent's Name:<br>Agent's Phone Number:<br>Have you received an offer on the property?  ☐ Yes ☐ No<br>Date of offer _____ Amount of Offer $ _____ | Have you contacted a credit-counseling agency for help?<br>☐ Yes ☐ No<br>If yes, please complete counselor contact information below.<br>Counselor's Name:<br>Counselor's Phone Number:<br>Counselor's Email: |
|---|---|
| Who pays the Real Estate Tax bill on your property?<br>Are the taxes current?         ☐ Yes ☐ No<br>Condominium or HOA Fee ☐ Yes   $ _____     ☐ No<br>Paid to: | Who pays the hazard insurance policy for your property?<br>Is the policy current?    ☐ Yes ☐ No |

Number of People in the Household _____

Have you filed for bankruptcy?        ☐Yes ☐No      If yes: ☐ Chapter 7  ☐ Chapter 13      Filing Date:_____
Has your bankruptcy been discharged? ☐Yes ☐No      Bankruptcy Case Number _____

If there are additional Liens/Mortgages or Judgments on this property, please name the person(s), company or firm and their telephone numbers.
Lien Holder's Name/Servicer          Balance          Contact Number          Loan Number

| INFORMATION FOR GOVERNMENT MONITORING PURPOSES |
|---|

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. **You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it.** If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. **If you do not wish to furnish the information, please check the box below.**

| BORROWER | | | CO-BORROWER | | |
|---|---|---|---|---|---|
| | ☐ | I do not wish to furnish this information | | ☐ | I do not wish to furnish this information |
| Ethnicity: | ☐<br>☐ | Hispanic or Latino<br>Not Hispanic or Latino | Ethnicity: | ☐<br>☐ | Hispanic or Latino<br>Not Hispanic or Latino |
| Race: | ☐<br>☐<br>☐<br>☐<br>☐ | American Indian or Alaska Native<br>Asian<br>Black or African American<br>Native Hawaiian or Other Pacific Islander<br>White | Race: | ☐<br>☐<br>☐<br>☐<br>☐ | American Indian or Alaska Native<br>Asian<br>Black or African American<br>Native Hawaiian or Other Pacific Islander<br>White |
| Sex: | ☐<br>☐ | Female<br>Male | Sex: | ☐<br>☐ | Female<br>Male |

| INFORMATION REGARDING MILITARY SERVICE MEMBERS |
|---|

| Please check here if you or a family member is on active duty with our military. You may be eligible for benefits and protection under the Service members Civil Relief Act "SCRA". | ☐ |
|---|---|

v042611

**FINANCIAL ANALYSIS FORM (Continued)**          Account Number _____ 0656318013

### INCOME/EXPENSES FOR HOUSEHOLD

| 1. Monthly Household Income | Borrower 1 | Borrower 2 | 2. Household Assets | $ | 3. Monthly Household Expenses/Debt | $ |
|---|---|---|---|---|---|---|
| | | | Estimated Value of this property | $ | First Mortgage Payment | $ |
| Gross Salary/Wages | ☐ Employed<br>☐ Unemployed | ☐ Employed<br>☐ Unemployed | Estimated Value of Other Real Estate Owned | $ | Alimony Payment | $ |
| | Income Frequency:<br>☐ Annually | Income Frequency:<br>☐ Annually | Checking Account(s) Balance | $ | Child Support Payment | $ |
| | ☐ Semi-Annually<br>☐ Monthly | ☐ Semi-Annually<br>☐ Monthly | Saving Account(s)/Money Market Balance | $ | Dependent Care Payment | $ |
| | ☐ Bi-weekly<br>☐ Weekly | ☐ Bi-weekly<br>☐ Weekly | Life Insurance Cash Value | $ | Liens/Rents | $ |
| Gross salary/wages = total monthly income before any | ☐ 1st & 15th/15th & 30th<br>☐ Other | ☐ 1st & 15th/15th & 30th<br>☐ Other | IRA/Keogh Account(s) Balance | $ | Other Mortgages | $ |
| tax withholding or employer deductions. | | | 401K/ESOP Account(s) Balance | $ | Personal Loans/Student Loans | $ |
| | Employment Start Date: _____<br>$ | Employment Start Date: _____<br>$ | Stocks/Bonds/CDs Balance | $ | Auto Loans | $ |
| Self employed | $ | $ | Other Investments | $ | Auto Expenses | $ |
| Overtime | $ | $ | | | Auto Insurance | $ |
| Child Support Income/Alimony Income* | $ | $ | | | Medical Expenses | $ |
| Social Security/SSDI | $ | $ | | | Medical Insurance | $ |
| Other monthly income from pensions, annuities or retirement plans | $ | $ | | | HOA/Condo Fees | $ |
| Tips, commissions, and/or bonus income | $ | $ | | | Credit Card(s) / Installment Loans | $ |
| Rental income from investment property | $ | $ | | | Food/Household Supplies | $ |
| Rental income from room rent of primary residence | $ | $ | | | Spending Money | $ |
| Unemployment Income | | | | | Utilities/Water/Sewer/Phone(s)/Cable | $ |
| Food Stamps/Welfare | $ | $ | | | Donations | $ |
| | | | | | Property Taxes (If not escrowed and included in your current mortgage payment) | $ |
| Other (investment, income, royalties, interest, dividends, etc.) | $ | $ | | | Insurance – Hazard, wind, flood etc (If not escrowed and included in your current mortgage payment) | $ |
| | | | | | Other _____ | $ |
| Total Income (Gross) | $ | $ | Total Assets | $ | Total Debt/Expenses | $ |

ALL INCOME MUST BE DOCUMENTED

### HARDSHIP AFFIDAVIT

I am having difficulty in making my monthly payment because of financial difficulties created by (Please check all that apply):

| | | | |
|---|---|---|---|
| ☐ Borrower Death | ☐ Reduction of Income | ☐ Military Service | ☐ Payment Adjustment |
| ☐ Illness of Borrower | ☐ Excessive Financial Obligations (Examples may be large medical bills, credit card debt, or college tuition payments) | ☐ Unemployment | ☐ Ownership Transfer is Pending (If the home is in the process of being sold) |
| ☐ Illness of Family Member | ☐ Property Problem (Anything that may be defective about the property such as a costly repair that needs to be made) | ☐ Business Failure (Examples would be loss of business income) | ☐ Tenant not Paying |
| ☐ Death of Family Member | ☐ Inability to Sell Property | ☐ Bankruptcy Filed | ☐ Incarceration (Sentenced to a city, county, state, or federal jail) |
| ☐ Marital Difficulties (Examples include going through a legal separation or filing for divorce) | ☐ Inability to Rent Property | ☐ Casualty Loss (Unexpected event such as hurricane, flood, or earthquake that damages the property) | |

☐ Other
Explanation (Required): _____

If additional space is needed for Explanation, please include an additional page.

v042611

Account Number _____ 0656318013 _____

| Dodd-Frank Certification |
|---|

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program, authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 *et seq.*), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/we certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:
(a) felony larceny, theft, fraud, or forgery,
(b) money laundering or
(c) tax evasion.

I/we understand that the servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/we also understand that knowingly submitting false information may violate Federal law.

This Certificate is effective on the earlier of the date listed below or the date received by your servicer.

_____          _____
PORTIA B ISHEE                Date          KENNETH DYREL ISHEE             Date

12

v042611

## ACKNOWLEDGEMENT AND AGREEMENT

Account Number _____0656318013_____

In making this request for consideration to review my loan terms I/We certify under penalty of perjury:

1   That all of the information in this document is truthful and the event(s) identified is/are the reason that I/we need to request a modification of the terms of my/our mortgage loan, short sale or deed-in-lieu of foreclosure.
2   I/we understand that the Servicer, the U.S. Department of the Treasury, or its agents may investigate the accuracy of my/our statements and/or may require me/us to provide supporting documentation. I/we also understand that knowingly submitting false information may violate Federal law.
3   I/we understand the Servicer will obtain a current credit report on all borrowers obligated on the Note.
4   I/we understand that if I/we have intentionally defaulted on my/our existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any Agreement under Making Home Affordable and may pursue foreclosure on my/our home.
5   I/we understand any fee to validate the value of the property will be assessed to the account.
6   I/we have not received a condemnation notice; and there has been no change in the ownership of the Property since I/we signed the documents for the mortgage that I/we want to modify.
7   I/we certify that I/we will obtain credit counseling if it is determined that my/our financial hardship is related to excessive debt. For purposes of the Making Home Affordable program, "excessive debt" means that my/our debt-to-income ration after the modification would be greater than or equal to 55%.
8   I/we am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.
9   I/we understand that the Servicer will use the information in this document to evaluate my/our eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me/us assistance based solely on the statements in this document.
10   I/we agree that any prior waiver as to payment of escrow items in connection with my/our loan has been revoked.
11   I/we agree to the establishment of an escrow account and the payment of escrow items if an escrow account never existed on the loan.
12   I/we understand that the Servicer will collect and record personal information, including, but not limited to, my/our name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I/we understand and consent to the disclosure of my/our personal information and the terms of any Making Home Affordable Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my/our first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services in conjunction with Making Home Affordable; and (e) any HUD certified housing counselor.
13   I/we agree that to be considered for the Making Home Affordable program, or any other program, all required documentation must be received no later than 7 business days prior to the scheduled foreclosure sale date. If the property is in the state of Florida, a complete package must be received 30 days prior to the scheduled foreclosure sale date.
14   **NOTICE TO TEXAS BORROWERS: If the loan you are requesting to modify is a Texas Home Equity Loan or Line of Credit, your loan does not qualify to be modified. However, please proceed with submitting your financial information so that we can examine your financial situation and determine if there is a repayment program available to you in order to prevent foreclosure.**
15   I/we understand the Servicer will not refer the account to foreclosure or conduct the foreclosure sale if already referred, while it is being reviewed for the Making Home Affordable program unless required by your investor. The review will not begin until all required documentation is received.
16   ☐ My/Our property is owner occupied; I/we intend to reside in this property for the next twelve months.
     ☐ My/Our property is not owner occupied.

_____      _____          _____      _____
Borrower Signature                                   Date                         Co-Borrower Signature                               Date

 **Please be aware we will not be able to process your request until all parts of the application have been completed including signatures and all necessary supporting documentation has been supplied.**

If you have questions about this document or the modification process, please call us at the phone number listed on your monthly account statement. If you need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.



### NOTICE TO BORROWERS

Be advised that you are signing the following documents under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution.

By signing the enclosed documents you certify, represent and agree that:
"Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling **1-877-SIG-2009** (toll-free), 202-622-4559 (fax), or www.sigtarp.gov. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.



v042611

| Form **4506T-EZ** | **Short Form Request for Individual Tax Return Transcript** | |
|---|---|---|
| (October 2009) | | OMB No. 1545-2154 |
| Department of the Treasury Internal Revenue Service | Request may not be processed if the form is incomplete or illegible. | |

Tip: Use Form 4506T-EZ to order a 1040 series tax return transcript free of charge.

| 1a Name shown on tax return. If a joint return, enter the name shown first. | 1b First social security number on tax return |
|---|---|

| 2a If a joint return, enter spouse's name shown on tax return. | 2b Second social security number if joint tax return |
|---|---|

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code

**4** Previous address shown on the last return filed if different from line 3

**5** If the transcript is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

| Third party name | Telephone number |
|---|---|
| GMAC Mortgage, LLC | 1-800-850-4622 |

Address (including apt., room, or suite no.), city, state, and ZIP code

Attn: Loss Mitigation, 233 Gibralter RD, Horsham, PA  19044

**6**   Year(s) requested. Enter the year(s) of the return transcript you are requesting (for example, "2009"). Most requests will be processed within 10 business days.

2010         2009

**Caution.** If the transcript is being mailed to a third party, ensure that you have filled in line 6 before signing. Sign and date the form once you have filled in line 6. Completing these steps helps to protect your privacy.

**Note.** If the IRS is unable to locate a return that matches the taxpayer identity information provided above, or if IRS records indicate that the return has not been filed, the IRS may notify you or the third party that it was unable to locate a return, or that a return was not filed, whichever is applicable.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a. If the request applies to a joint return, either husband or wife must sign.

**Note.** This form must be received within 60 days of signature date.

| | | | Telephone number of taxpayer on line 1a or 2a |
|---|---|---|---|
| **Sign Here** | Signature (see instructions) | Date | |
| | Spouse's signature | Date | |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 54185S          Form **4506T-EZ** (10-2009)

Form 4506T-EZ (10-2009)                                                                                             Page **2**

**Purpose of form.** Individuals can use Form 4506T-EZ to request a tax return transcript that includes most lines of the original tax return. The tax return transcript will not show payments, penalty assessments, or adjustments made to the originally filed return. You can also designate a third party (such as a mortgage company) to receive a transcript on line 5. Form 4506T-EZ cannot be used by taxpayers who file Form 1040 based on a fiscal tax year (that is, a tax year beginning in one calendar year and ending in the following year). Taxpayers using a fiscal tax year must file Form 4506-T, Request for Transcript of Tax Return, to request a return transcript.

Use Form 4506-T to request the following.

● A transcript of a business return (including estate and trust returns).
● An account transcript (contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed).
● A record of account, which is a combination of line item information and later adjustments to the account.
● A verification of nonfiling, which is proof from the IRS that you did not file a return for the year.
● A Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.

Form 4506-T can also be used for requesting tax return transcripts.

**Automated transcript request.** You can call 1-800-829-1040 to order a tax return transcript through the automated self-help system. You cannot have a transcript sent to a third party through the automated system.

**Where to file.** Mail or fax Form 4506T-EZ to the address below for the state you lived in when that return was filed.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the team based on the address of your most recent return.

# Where to mail . . .

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
| --- | --- |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362 770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301 512-460-2272 |
| Alaska, Arizona, California, Colorado, District of Columbia, Hawaii, Idaho, Iowa, Kansas, Maine, Maryland, Massachusetts, Minnesota, Montana, New Hampshire, New Mexico, New York, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Vermont, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888 559-456-5876 |
| Arkansas, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, West Virginia | RAIVS Team Stop 6705-B41 Kansas City, MO 64999 816-292-6102 |

**Signature and date.** Form 4506T-EZ must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506T-EZ within 60 days of the date signed by the taxpayer or it will be rejected.

Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506T-EZ exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506T-EZ will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 9 min.; **Preparing the form,** 18 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506T-EZ simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see Where to file on this page.

**Exhibit A - 3 Month Self Employment Income Statement (Profit and Loss Form)**

This form may be used if you are self-employed or a 1099 wage earner only.

**BORROWER'S NAME** _____     **Account Number** ___0656318013___

For each borrower who is self employed a Profit and Loss Statement is required for each business. If borrower has more than one business, we require a Profit and Loss Form for each business. The example document may be used to supply the required information.

| Month and Year must be indicated. Use most recent consecutive months. | Month 1 Month _____ Year _____ | Month 2 Month _____ Year _____ | Month 3 Month _____ Year _____ | Total |
|---|---|---|---|---|
| Sales | | $ | $ | $ |
| Cost of Goods Sold | | $ | $ | $ |
| Gross Profit | | $ | $ | $ |
| Operating Expenses | | | | |
| Advertising | $ | $ | $ | $ |
| Amortization | $ | $ | $ | $ |
| Auto Expenses | $ | $ | $ | $ |
| Bank Charges | $ | $ | $ | $ |
| Depreciation | $ | $ | $ | $ |
| Dues & Subscriptions | $ | $ | $ | $ |
| Employee Benefits | $ | $ | $ | $ |
| Insurance | $ | $ | $ | $ |
| Interest | $ | $ | $ | $ |
| Office Expenses | $ | $ | $ | $ |
| Payroll Taxes | $ | $ | $ | $ |
| Rent | $ | $ | $ | $ |
| Repairs & Maintenance | $ | $ | $ | $ |
| Salaries & Wages | $ | $ | $ | $ |
| Supplies | $ | $ | $ | $ |
| Taxes & Licenses | $ | $ | $ | $ |
| Telephone | $ | $ | $ | $ |
| Utilities | $ | $ | $ | $ |
| Other | $ | $ | $ | $ |
| **Total Operating Expenses** | $ | $ | $ | $ |
| Net Profit Before Taxes | $ | $ | $ | $ |
| Income Taxes | $ | $ | $ | $ |
| Net Profit After Taxes | $ | $ | $ | $ |

**Exhibit B – Investment Property Schedule**

**BORROWER'S NAME** _____     **Account Number** _____

For each borrower who receives rental income from an investment property an Investment Property Schedule is required. If additional space is needed, please include an additional page.

| Property Number | Property Street Address | Property City, State, and Zip Code | Number of Units (1, 2, 3, 4, or 5+) | Status Circle All That Apply R – Rented V– Vacant PS – Pending Sale F – In Foreclosure | Gross Monthly Rental Income | Monthly Mortgage Payment (excluding taxes and insurance) | Monthly Insurance and Taxes | Monthly HOA/Condo Dues (if applicable) |
|---|---|---|---|---|---|---|---|---|
| Primary Residence | | | | R  V  PS  F | $ | $ | $ | $ |
| 2 | | | | R  V  PS  F | $ | $ | $ | $ |
| 3 | | | | R  V  PS  F | $ | $ | $ | $ |
| 4 | | | | R  V  PS  F | $ | $ | $ | $ |
| 5 | | | | R  V  PS  F | $ | $ | $ | $ |
| 6 | | | | R  V  PS  F | $ | $ | $ | $ |
| | | | | | $ | $ | $ | $ |

16

v042611

**THIRD PARTY AUTHORIZATION and AGREEMENT TO RELEASE**

**Please complete and return if you want us to speak with your Real Estate Agent, or any other designated third party on your behalf.**

Account Number: _____  Name: _____

Property Address: _____

---

**STOP**    **Before you sign this authorization, please be aware that...**

- There is never a fee to get assistance or information about the Making Home Affordable program from your lender or a HUD-approved housing counselor.
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house.
- Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- ONLY use HUD certified counseling agencies: Call **1.800.CALL.FHA** to find a HUD-certified housing counseling agency.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

---

I/we do hereby authorize (my lender/mortgage servicer) to release or otherwise provide to:

_____ of _____ in his/her capacity as
Name                              Company Name

_____    _____    _____
Relationship (if applicable)             Phone Number                 Email Address

public and non-public personal financial information contained in my loan account which may include, but is not limited to, loan balances, final payoff statement, loan payment history, payment activity, and/or property information.

We, the lender/mortgage servicer, will take reasonable steps to verify the identity of the 3rd party authorized above, but will have no responsibility or liability to verify the true identity of the requestor when he/she asks to discuss my account or seeks information about my account. Nor shall we, the lender/mortgage servicer, have any responsibility or liability for what the requestor may do with the information he/she obtains concerning my account.

I/we do hereby indemnify and forever hold harmless the lender/mortgage servicer, from all actions and causes of actions, suits, claims, attorney fees, or demands against the lender/servicer which I/we and/or my heirs may have resulting from the lender/mortgage servicer discussing my loan account and/or providing any information concerning the loan account to the above named requestor or person identifying themselves to be that requestor

If you agree to this Authorization and the terms of the Release as stated above, please sign, date, and return with the Financial Analysis form

NOTE: No information concerning your account will be provided until we have received this executed document. The **authorization needs to be in the name of an individual (not a company)** and a form needs to be completed for each authorized individual. All parties on the Mortgage must sign.

_____    _____    _____
Borrower Printed Name           Borrower Signature           Date        **SIGN HERE**

_____    _____    _____
Co-Borrower Printed Name       Co-Borrower Signature       Date

v042611

**Important Tips/Reminders**

- The enclosed package encompasses requirements for all available programs, including the Government's Making Home Affordable program. For information and eligibility requirements under the Making Home Affordable program, visit www.makinghomeaffordable.gov website. **Please be aware we will not be able to process your request until all parts of the application have been completed including signatures and all necessary supporting documentation has been supplied.**

- **Please continue to make your monthly payment.** If assistance is needed, it is recommended that you contact a credit counselor who is trained to guide you through your current financial situation. You can access www.hud.gov or call 800-225-5342 for more information regarding credit counselors.

- You may receive phone calls or letters from our office asking for a payment while we consider any options that might be available.

- All modifications require an escrow account for the payment of taxes and insurance. If your loan does not currently include an escrow account for the payment of taxes and insurance, one will be added.

- While being reviewed for a workout (other than the Making Home Affordable program), a fee to validate the value of the property may be assessed at your expense (approximate cost $100 - $150).

- As a condition of the modification, you may be required to enroll in an electronic payment program.

**Frequently Asked Questions**

**How long will it take to process my modification request and determine if I qualify for the program?**

- We will review your request as quickly as possible. Once the package is returned to our office, Loss Mitigation will contact you within **10** business days advising the package was received and notifying you if additional information is required.
- Within **30** days from the date a complete package is received, you will be notified whether the modification option is available to you.
- If you aren't eligible for a modification, the reason for denial will be provided.
- Please note, however, that your modification will not be effective unless you meet all of the applicable conditions.

**I pay my car insurance on a semi-annually or annual basis. How should I list that?**

Please make sure that the amount of the expense is broken down to a monthly premium amount.

**Example:** If the car insurance is $500 for 6 months to determine the monthly premium divide $500 by 6 months ($83.33).

**What information is needed on the form 4506T-EZ?**

Please complete the following:

Line(s)    **1a – 4:** List information as shown on your tax return
          **5:** Write the name, address, and telephone number shown on your monthly mortgage statement
          **6:** Write the year of the most-recent tax return you filed (Should be 2008 in most cases)

*Be sure to sign the form where indicated.*

**The 4506T-EZ form states, "Caution: If the transcript is being mailed to a third party, ensure that you have filled in line 6 before signing. Sign and date the form once you have filed in line 6. Completing these steps helps to protect your privacy." What do I enter for those items?**

All applicable blanks on the form need to be completed. This disclaimer is provided as a warning that line 6 must be completed prior to signing the form.

 **Please be aware we will not be able to process your request until all parts of the application have been completed including signatures and all necessary supporting documentation has been supplied.**

v042611

# ATTACHMENT #25

# **GMAC** Mortgage

P.O. Box 52052
Phoenix, AZ 85072-2052

January 17, 2012

33 - 194
PORTIA B ISHEE
PO BOX 162
MC LAIN, MS 39456

RE:   Borrower:        PORTIA B ISHEE
      Property Address: 36 MUSCIO ROAD
                       MC LAIN, MS 39456
      Tracking #:      121286
      Loan Number:     0656318013

Dear PORTIA B ISHEE and KENNETH DYREL ISHEE:

Thank you for contacting GMAC Mortgage, LLC regarding the insurance claim process. Since we realize that dealing with damage to your home can be very stressful, we will work hard to process your claim as quickly and efficiently as possible.

To assist in expediting the release of insurance funds for the repair of your home, we have enclosed the following documentation that you'll need to fill out and return to us as quickly as possible in order for us to process your claim. (Please refer to the enclosed Claim Procedures - What to Submit to GMAC Mortgage, LLC document for further details):

- Homeowner's Statement
- Affidavit of Bills Paid and Release of Liens by Contractor
- W-9 Form

Please note that checks will not be automatically endorsed if your loan is delinquent (please refer to the Claim Procedures - Frequently Asked Questions document for more information).

GMAC Mortgage, LLC appreciates having you as a customer and we value your business. If you have any questions or concerns, please feel free to contact us directly at 866-354-7281 between 7 AM - 10 PM (EST), Monday - Friday.

Sincerely,

Insurance Claims Center
Phone: 866-354-7281
Fax:    866-336-3811

Enclosures:  Claim Packet Cover Letter
             GMAC Claim Procedures
             Homeowner's Statement
             Affidavit of Bills Paid and Release of Liens by Contractor
             W-9 Form

*For your information, in compliance with the Security Instrument, GMAC Mortgage is to be named on all insurance claim checks issued in conjunction with damage to the mortgaged premises. This procedure is designed to ensure that proper repairs are made to the property to restore it to the pre-damaged condition.*

# CLAIM PROCEDURES
## <u>WHAT TO SUBMIT TO GMAC Mortgage:</u>

Please be advised that at some point during the claims process, you will need to provide us with the following completed documents.  Details and sequence for submission for each document are as follows.

*Note: Failure to provide the required documents timely and accurately completed may delay the disbursement of your insurance loss draft funds.*

## 1) SUBMIT TO US UPON RECEIPT OF THIS LETTER:

- **Insurance Adjuster's Damage Estimate (Insurance Estimate)** - An itemization of property damages that your insurance company used to base the settlement of your claim.    If you do not have this document, please contact your insurance company to obtain a copy.

- **Homeowner's Statement** - Statement by you verifying property location, damage and intent to repair/rebuild. (Enclosed)

- The insurance **claim check** (endorsed by all required payees, not including your mortgagee)

## 2) SUBMIT TO US UPON HIRING OF ANY CONTRACTOR:

- **Work Contract** - This is a legal agreement signed by you and the construction firm(s) doing the repair/rebuild. It must include detailed scope of work and agreed upon cost of repairs.

- **W-9 Form** - If your loan reflects a delinquent status, Form W-9 is required and must be completed by your contractor.  This is in accordance with IRS regulations.  Failure to return the completed form will cause significant delays in the claim process.  (Enclosed)

## 3) SUBMIT TO US UPON COMPLETION OF WORK BY ANY CONTRACTOR:

- **Affidavit of Bills Paid and Release of Liens by Contractor - Notarized** document completed by each contractor stating repairs have been undertaken and completed and that upon full payment the contractor will waive and release any and all liens against the subject property associated with this work. (Enclosed).

**To submit any of the above, please ensure the following information is included:**

- Borrower's Name
- Loan number
- Property address

Please send via first class mail to:          or          via Overnight mail to:
    GMAC Mortgage, LLC                                  GMAC Mortgage, LLC
    P.O. Box 52052                                      Loss Draft Services,
    Phoenix, AZ  85072-2052                             Mail Stop AZ1-805-01-55
                                                        2505 W. Chandler Blvd.
    Or **fax** to 866-336-3811                          Chandler, AZ 85224

## CLAIM PROCEDURES
## FREQUENTLY ASKED QUESTIONS:

**What if I want to act as my own general contractor?** This is permitted if your loan is considered current and requires that you ensure all contractors hired to perform repairs are paid in full and that no mechanics liens have been or will be placed on the property as a result of failure to pay any contractor or bills related to the repairs. Please contact us if you are unsure of the status of your account.

**What if I wish to satisfy my loan using the proceeds of the insurance claims funds?** Please contact Customer Care at 800-766-4622 for a current payoff quote. If the insurance claim funds are adequate to pay your loan in full, please forward a copy of a current payoff statement and a signed written request for payoff (**and the fully endorsed check**, if you are in possession), including your account number, in the enclosed envelope. If the insurance claim funds are not sufficient to pay your loan in full, you may still payoff your loan; however, any remainder due must also be submitted in the form of certified funds.

Note: If excess funds exist after the mortgage is paid in full, the balance will be refunded to you.

**How will the insurance proceeds be disbursed if my claim is less than $10,000?** For claims totaling less than $10,000 **and** if your loan is current forward your unendorsed insurance claim check in the envelope provided. If the above is confirmed, we will endorse your check.

If your insurance claim is between $10,000 and $20,000 and your loan is current, you may qualify for an endorsement exception. Please contact us at 866-354-7281 for consideration.

**What if my claim is greater than $10,000 or I do not meet the criteria described in the above question?** **GMAC Mortgage, LLC** will place the funds in a restricted escrow account and release funds (in the form of draw checks) based on certain criteria.

GMAC Mortgage, LLC will release draws in increments. The first draw to initiate repairs will be released once the required documents have been received. A certified inspector will inspect the property and the percentage of completion will be based upon your insurance estimate. GMAC Mortgage, LLC will release subsequent draws based on the property inspection results. Please contact GMAC Mortgage, LLC at 866-354-7281 between 7:00 AM and 10:00 PM Eastern Time to request an inspection. Please allow 72 business hours for the inspector to contact you to make an appointment and another 5 to 7 business days after the inspection has been completed for the results to be submitted and reviewed.

Please remember to timely submit all requested documents previously described or the processing of your claim and the release of your first payment (draw) from your restricted escrow account will be delayed.

# IMPORTANT:

**If your loan is in foreclosure,** alternate disbursement guidelines will apply and inspection results must indicate repairs are 100% complete to release the final draw.

**If you are considering replacing your home with a modular, manufactured or mobile home**, prior approval from GMAC Mortgage, LLC will be required. In addition, alternate disbursement guidelines may apply.

**If your loan reflects a delinquent status,** your contractor must complete the W-9 Form. Failure to return the completed form will cause significant delays in the claim process.

## HOMEOWNER'S STATEMENT

Homeowner:   PORTIA B ISHEE          Property Address:   36 MUSCIO ROAD
             KENNETH DYREL ISHEE                         MC LAIN, MS, 39456

Loan Number: 0656318013          Tracking Number: 121286          Date of Loss: 09/23/2010

I/we, the undersigned mortgagor(s), hereby state the damage to our property, located at the above address, has been or will be repaired in a good and workmanlike manner. The loss was as follows:

### (PLEASE COMPLETE THE FOLLOWING AND SIGN BELOW)

Type of Loss:_____ Date of Loss:_____ Total Amount of Loss/Damages: _____

Actual/Estimated Repair Completion Date:_____

Amount Insurance Company Paid or Will Pay:_____ Amount of Insurance Deductible: _____

Amount of Recoverable OR Non-Recoverable Depreciation: _____

Name of Insurance Company:_____

Policy Number:_____ Claim Number:_____

Name of Insurance Adjuster:_____ Phone Number:_____

**Please identify current property condition:**

( ) All Walls Standing          ( ) Some Walls Standing          ( ) No Walls Standing

**Please select from the two repair options below:**

( )  I have done or will be doing the repairs myself  -OR-  I will be acting as my own GENERAL CONTRACTOR
    *(Loan must be current to select the above option)*

( )  I have hired or will hire a GENERAL CONTRACTOR to do the repairs (only 1 contractor will be hired)

I/we, the undersigned mortgagor(s), do hereby acknowledge and agree that GMAC Mortgage does not guarantee the quality of workmanship of any contractor or guarantee that the work will be accomplished within any specific time frame. The undersigned mortgagor(s) acknowledge and agree that the **the contractor is hired by us, the mortgagor, and they work for us, the mortgagor.**  The undersigned mortgagor(s) do further acknowledge and agree that, in reliance on the truthfulness and accuracy of the aforementioned assurances to GMAC Mortgage by the undersigned mortgagors, GMAC Mortgage has agreed to release insurance funds to the undersigned mortgagors in increments for the sole express purpose of completing repairs to the mortgaged property. The undersigned mortgagors promise and expressly warrant all repairs as set forth in the adjuster's report/contractor's estimate will be completed in a reasonable time and in a manner satisfactory to GMAC Mortgage, and all contractor invoices for labor and materials will likewise be timely paid in full. The undersigned mortgagors agree and understand that we are personally liable for any debts, dues, fees, costs, liens, judgments, etc. ("claims"), which might be filed by any contractor or subcontractor whose legitimate work is not properly compensated, and that we will defend and indemnify GMAC Mortgage against any and all loss or damages arising out of any such claims.

X_____     X_____
Mortgagor's (Borrower) Signature          Date   Mortgagor's (Borrower) Signature          Date

Home Phone: _____     Work Phone: _____     Fax Number: _____



121286 - HOST

Tracking No: 121286                                Date of Loss: 09/23/2010

## Affidavit of Bills Paid and Release of Liens by Contractor
### Conditional upon Final Payment

The undersigned ("Contractor"), having furnished materials and/or performed labor in connection with the construction (the "Project") of certain improvements located at 36 MUSCIO ROAD, MC LAIN, MS, 39456 in _____ County, (the "Property"), for and in consideration of the payment to the Contractor of the sum hereinafter specified, does hereby acknowledge and release as follows:

Upon receipt of the sum of _____ Dollars ($_____), being full and final payment for all materials furnished and/or labor performed by Contractor for the Project (the "Work");

1. Contractor will waive and release any and all liens, rights and interests (whether choate or inchoate, and including, without limitation, all mechanics and materialmen's liens under the Constitution and statutes of the "Property" state) which are or may be owed, claimed or held by Contractor in and to the Property and the improvements constructed thereon by reason of the Work or otherwise, and Contractor will thereby RELEASE AND FOREVER DISCHARGE any and all claims, debts, demands or causes of action that Contractor has or may have as a result of the same including, without limitation, any liens of Contractor for the Work now or hereafter filed for record in said County.

2. Contractor represents, warrants and certifies that all bills owed by Contractor for materials furnished and labor performed in connection with the Work have been or will be fully paid and satisfied. If for any reason a lien or liens are filed for materials or labor against the Property by virtue of Contractor's participation in the Project by any person claiming by, through or under the Contractor, then Contractor will immediately obtain a settlement of such lien or liens and obtain and furnish to the owners of the Property a release thereof. Contractor shall indemnify such owners and their respective heirs, successors and assigns from any such bill or liens and from all costs and expenses, including attorney's fees, incurred in discharging any such bill or removing any such liens.

| | | |
|---|---|---|
| Date | Signature | Print your Name |
| Your Title | Name of Company | Address of Company |
| Telephone Number | Fax Number | Federal Tax ID |

## Please Complete Notarization of this document

Sworn to and subscribed before me this _____ day of _____, 20_____.

_____
Notary Signature

Notary Public in and for the State of_____

My Commission Expires:_____



121286 - BPAF

Form **W-9**
(Rev. January 2011)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

Print or type

See Specific Instructions on page 2

Name (as shown on your income tax return)

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification (requierd): ☐ Individual /sole proprietor ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ⇨ ................................................

☐ Other (see instructions) ⇨

☐ Exempt payee

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see 'How to get a TIN' on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer Identification number

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here**   Signature of U.S. person    Date



121286 - W9

Cat. No. 10231X    Form **W-9** (Rev. 1-2011)

# ATTACHMENT #26

relationships that work
## green tree

Insurance Center
Miami, FL 33197

04/30/2013

PORTIA ISHEE
PO BOX 162
MC LAIN MS  39456

Re:  **NOTICE OF PLACEMENT OF INSURANCE**
Account Number: 62319296

Dear Valued Customer,

Your credit agreement with us requires you to maintain acceptable insurance on the collateral until you pay off the account secured by the collateral.  Our records show that we do not currently have evidence of property insurance on the collateral.  Therefore, we have exercised our right under the terms of your credit agreement to purchase property insurance coverage to protect our interests in the collateral.

You are responsible for the cost of the insurance we have purchased and any finance charges that are assessed.  Enclosed is a copy of the declarations page and policy evidencing coverage we purchased.  The coverage will start on the date shown in the policy or certificate, which may go back to the date of the account or the date your prior coverage stopped.  Coverage of $  94,201  results in an insurance premium in the amount of $ 1,470.00 that will be charged to your account. You will be charged interest on the premium at your contract rate, amortized over the remaining term of the insurance.  You will be billed for the premium, and related interest in 9  equal installments; provided, that if an escrow account for payment of insurance has been established, or if your credit agreement allows us to establish an escrow account and one is established, the premium for the insurance may be charged to the escrow account and repayment will be governed by the Real Estate Settlement Procedures Act.

**Please note that the insurance coverage we purchased on the collateral was obtained through an affiliated insurance agency that will earn a commission on the insurance policy. The insurance we purchased:**

- **May be more expensive and provide less protection than insurance you obtain from an insurance agent or company you choose;**
- **Will pay claims made by us as the creditor for physical damage to the collateral;**
- **May not pay any claims made by you or against you in connection with the collateral;**
- **Will not give you any liability insurance coverage and will not give you any personal property contents coverage;**
- **Will not meet the requirements of your state's mandatory financial responsibility laws, if any.**

CONTINUED ON BACK OF PAGE

HENP3000

**As a result you may be underinsured. We urge you to contact an insurance agent to assist you in evaluating your insurance needs.**

We strongly encourage you to obtain insurance of your own choosing on the collateral and you may do so at any time. If you provide us with evidence that you have obtained the required insurance, we will then cancel the insurance that we purchased and will refund or credit any unearned premiums to you. You are obligated to pay for any costs we have incurred when buying coverage. Please note that you are responsible to pay for any costs if you actually have the required insurance but do not provide us with timely evidence that it is in effect. Please note that if the effective date of the insurance you purchase is not the same as or prior to the effective date of the policy we have obtained, you will be responsible to pay for the earned premium, interest and related charges assessed for lapse in coverage.

We will cancel any insurance we buy without charging you any premium, interest or related charges if you provide evidence of insurance that meets the following requirements:

1. Evidence must show that acceptable insurance on your collateral was in force as of the effective date of the insurance we purchased for you, and that the insurance you purchased has been continuous since that date.

2. Evidence must show us as lienholder/loss payee as follows:

   Green Tree Servicing, LLC
   It affiliates and/or assigns
   P.O. Box 979282
   Miami, FL 33197-9282.

3. We must receive evidence of the insurance you buy, no later than thirty (30) days from the date on this letter.

If you have any questions, please contact our Insurance Services Department toll free Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Standard Time, at 1-800-643-0202 to speak with a customer service representative.

Sincerely,

GREEN TREE SERVICING LLC

For condominiums that are part of an association, the required coverage for the structure or building is often provided by a Group Master Policy that lists the condominium association as the named insured. If this is applicable to you, your condominium association and/or the insurance agent who provided the Group Master Policy should be able to provide you with proof of coverage to send to us.

# AMERICAN SECURITY INSURANCE COMPANY
### P.O. BOX 50355, ATLANTA, GA 30302

A STOCK INSURANCE COMPANY
HEREIN CALLED THIS COMPANY
INCORPORATED UNDER
THE LAWS OF DELAWARE

## READ YOUR POLICY CAREFULLY

## Residential Policy

**This policy only covers buildings and structures.  Please read your policy and all endorsements carefully.**

THIS POLICY JACKET TOGETHER WITH THE DWELLING FORM AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

# YOUR RESIDENTIAL DWELLING POLICY
## QUICK REFERENCE

**ADDITIONAL INSURED ENDORSEMENT**
Your Name
Location of Your Residence
Policy Period
Coverages
Amounts of Insurance
Deductible

| | Beginning On Page | | | Beginning On Page |
|---|---|---|---|---|
| AGREEMENT | 1 | | Our Option | 6 |
| DEFINITIONS | 1 | | Reinstatement | 6 |
| COVERAGES | 1 | | Loss to a Pair or Set | 6 |
| PERILS INSURED AGAINST | 1 | | Glass Replacement | 6 |
| Other Coverages | 3 | | Loss Payment | 6 |
| Other Structures | 3 | | Appraisal | 6 |
| Debris Removal | 3 | | Our Rights of Recovery | 6 |
| Reasonable Repairs | 3 | | Suit Against Us | 7 |
| Property Removed | 4 | | Abandonment of Property | 7 |
| Collapse | 4 | | No Benefit to Bailee | 7 |
| CONDITIONS | 4 | | Cancellation | 7 |
| Policy Period | 4 | | Return of Premium | 7 |
| Other Insurance | 4 | | Liberalization Clause | 7 |
| Insurance Interests & Limits of Liability | 4 | | Waiver or Change of Policy Provisions | 7 |
| Concealment or Fraud | 5 | | Assignment | 7 |
| Your Duties After Loss | 5 | | | |
| Loss Settlement | 5 | | | |
| Salvage and Recoveries | 6 | | | |

| AGENCY | | | |
|--------|-----|-------|-------|
| Major | Sub | Minor | State |
| | 023 | 000 | |

LOAN NUMBER: 62319296

04/30/2013
POLICY NUMBER:
MSP 6071530 00

**American Security Insurance Company**
PO BOX 50355, ATLANTA, GA 30302

**RESIDENTIAL PROPERTY**
**ADDITIONAL INSURED ENDORSEMENT**

ADDITIONAL INSURED-Name and Address (Street No., City, State, Zip)
PORTIA ISHEE
PO BOX 162
MC LAIN MS  39456

NAMED INSURED/MORTGAGEE-Name and Address
GREEN TREE SERVICING LLC,
345 ST PETER STREET 11 FLOOR
ST PAUL MN  55102

1-800-643-0202

Coverage is provided where a premium or limit of liability is shown for the coverage, subject to all conditions of this policy.

| POLICY PERIOD ONE YEAR | COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|
| EFFECTIVE DATE:  02/01/2013 | DWELLING | $      94,201 | $ 1,470.00 |
| EXPIRATION DATE: 02/01/2014 | | | |
| EFFECTIVE TIME: 12:01 A.M. | | | |
| DESCRIBED LOCATION (if different from mailing address above) 36 MUSCIO RD MC LAIN, MS 39456 | | | |
| | | | |
| | | | |
| SECURITY INTEREST: | | | |
| | | | |
| | | | |
| | | | .00 |
| | ANNUAL PREMIUM AMOUNT | | $   1,470.00 |
| | ANNUAL TOTAL CHARGED | | $   1,470.00 |

Forms and endorsements which are made a part of this policy at time of issue:

**SEE BACK FOR LIST OF FORMS ATTACHED**

Subject to the terms and provisions of the Mortgage Service Program, Residential Property Mortgagee's Policy, including but not limited to the Residential Property coverage form attached hereto, it is agreed that the insurance applies to the property described above and to any person shown as an Additional Insured with respect to such property, subject to the following additional provisions:

a.   The above Named Insured Mortgagee is authorized to act for such Additional Insureds in all matters pertaining to this insurance including receipt of Notice of Cancellation, and return premium, if any.

b.   The above Named Insured Mortgagee is authorized to advance all funds to be recovered from the Additional Insured for the insurance afforded.

c.   Loss, if any, shall be adjusted with and payable to the above Named Insured Mortgagee, and the Additional Insureds as their interests may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Additional Insured, at our option.

**Deductibles** - apply separately to each building or structure, per loss:

   **a.   All Other Perils** - $ 250  Occupied  $ 500  Vacant or Unoccupied

   **b.   Windstorm, Hail or Hurricane** - A deductible of 1 % of the Coverage Amount or $  1,000 , whichever is greater, applies for loss caused by the perils of Windstorm, Hail or Hurricane.

CLAIMS INFORMATION ONLY
1-800-358-0600

ALL OTHER INQUIRIES
1-800-643-0202

PMS-A (10-07)

MS1499-1112

## FORMS ATTACHED WITH THIS POLICY PACKAGE:

MSP-RES-END-MS-0107
MSP-RES-CONDO-CCA-END-0410
MSP-RES-0888
MSP-WHH-END-MS-1007
N8223-0107
N8224-0107
MSP-RES-J-1107

## FIRST MORTGAGEE:

GREEN TREE SERVICING LLC
ITS AFFILIATES AND/OR ASSIGNS
P. O. BOX 979282
MIAMI   FL 33197

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

# AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

# DEFINITIONS

Throughout this policy "you" and "your" refer to the "Named Insured," (Mortgagee) and the "Additional Insured" (Mortgagor) shown in the Declarations. "We," "our," and "us" refer to the Company providing this insurance.

# COVERAGES

This insurance applies to the Dwelling Property described in the Additional Insured Endorsement which has been issued and is Eligible Real Estate within the description of property covered below, and which is not otherwise excluded.

1. Property Covered

   We cover:

   a. of any kind the dwelling on the Described Location, used principally for dwelling purposes not to exceed four (4) living units including, but not limited to, individually owned townhouses or permanently situated mobile homes;

   b. structures attached to the dwelling;

   c. materials and supplies on or adjacent to the Described location for use in the construction, alteration, or repair of the dwelling or other structures on this location; and

   d. if not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

2. Property Not Covered

   a. Personal Property of any kind.
   b. Outdoor trees, shrubs, plants, and lawns.
   c. Outdoor swimming pools; fences, piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls not constituting a part of buildings; walks; roadways; and other paved surfaces.
   d. Cost of excavations, grading or filling.
   e. Foundations of buildings, machinery, boilers or engines which foundations are below the surface of the ground.
   f. Pilings, piers, pipes, flues, and drains which are underground.
   g. Pilings which are below the low water mark.
   h. Land (including land on which the property is located).

# PERILS INSURED AGAINST

We insure against risks of direct loss to covered property only if that loss is a physical loss to property. However, we do not insure losses which are excluded below:

1. We do not insure for loss involving collapse, other than as provided in Other Coverages

   a. However, any ensuing loss not excluded or excepted is covered.

2. We do not insure for loss caused by:

   a. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) fence; pavement, patio or swimming pool;
      (2) foundation, retaining wall or bulkhead; or
      (3) pier, wharf or dock;

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

    b. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

    c. constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or from within a household appliance;

    d. (1) wear and tear, marring, deterioration;

       (2) inherent vice, latent defect, mechanical breakdown;

       (3) smog-rust, mold, wet or dry rot;

       (4) smoke from agricultural smudging or industrial operations;

       (5) release, discharge or dispersal of contaminants or pollutants;

       (6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings; or

       (7) birds, vermin, rodents, insects or domestic animals.

       If any of these cause water damage not otherwise excluded, to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this escaped.

However, under this Paragraph 2., any ensuing loss not excluded or excepted is covered.

3.     We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

    a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy.

    b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mudflow; earth sinking, sinkhole, mine subsidence, rising or shifting; unless direct loss by:

       (1) fire;

       (2) explosion; or

       (3) breakage of glass or safety glazing material which is part of a building, storm door or storm window;

       ensues and then we will pay only for the ensuing loss.

       This exclusion does not apply to loss by theft.

       One or more volcanic eruptions that occur within an hour period will be considered as one volcanic eruption.

    c. Water Damage, meaning:

       (1) flood, surface water, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

       (2) water which backs up through sewers or drains. This includes water emanating from a sump pump, sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water; or

       (3) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

       Direct loss by fire, explosion or theft resulting from water damage is covered.

    d. Power Failure, meaning the failure of power or other utility service if the failure takes place off the described premises. But, if a Covered Cause of Loss ensues on the described premises, we will pay only for that ensuing loss.

       Loss ensues on the described premises, we will pay only for that ensuing loss.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

e. Neglect, meaning your neglect to use all reasonable means to save and preserve property at and after the time of loss.

f. War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. Nuclear Hazard, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

This coverage does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from nuclear hazard is covered.

h. Intentional Loss, meaning any loss arising out of any act committed
   (1) by you or at your direction; and
   (2) with the intent to cause a loss.

4. We do not insure for loss caused by any of the following. However, any ensuing loss not excluded or excepted is covered.

   a. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 3. above to produce the loss;

   b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

   c. Faulty, inadequate or defective:
      (1) planning, zoning, development, surveying, siting;
      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      (3) materials used in repair, construction, renovation or remodeling; or
      (4) maintenance;
      of part or all of any property whether on or off the described premises.

---

# OTHER COVERAGES

1. **Other Structures**

   Subject to the provisions of this article, we cover other structures on the Described Location, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be other structures.

   We do not cover other structures:

   a. used in whole or in part for commercial, manufacturing or farming purposes; or

   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

   The amount of insurance on other structures shall be limited to 10% of the dwelling coverage as an additional amount of insurance.

2. **Debris Removal**

   We will pay the reasonable expense incurred by you for the removal of debris from a property loss covered by this policy. Debris removal expense is included in the limit of liability applying to the damaged property.

3. **Reasonable Repairs**

   We will pay the reasonable cost incurred by you for necessary repairs made solely to protect the property covered by this policy from further damage if there is coverage for the peril causing the loss. Use of this coverage is included in the limit of liability that applies to the property being repaired.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

4.    Property Removed
      Covered property while being removed from a premises endangered by a Peril Insured Against and for not more than 30 days while removed, is covered for direct loss from any cause. This coverage does not change the limit of liability that applies to the property being removed.

5.    Collapse
      We insure for risk of direct physical loss to Property Covered involving collapse of a building or any part of a building caused only by one or more of the following:

      a.  Fire or lightning, windstorm or hail, explosion, riot or civil commotion, aircraft, vehicles, smoke, vandalism, or malicious mischief, breakage of glass or safety glazing material, burglars, falling objects, weight of ice, snow or sleet, accidental discharge or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a household appliance, sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning system or an appliance for heating water, freezing of plumbing, heating or air conditioning system or of a household appliance.

      b.  Hidden decay,
      c.  Hidden insect or vermin damage,
      d.  Weight of content, equipment, animals or people,
      e.  Weight of rain which collects on a roof,
      f.  Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

      Collapse does not include settling, cracking, shrinking, bulging or expansion.

      Collapse does not apply to loss to the following unless damage is caused directly by collapse of a building:

           Awnings, fences, pavements, patios, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations, retaining walls, bulkheads, piers, wharves, or docks.

      Coverage for collapse is included in the limit of liability applying to the damaged Covered Property.

# CONDITIONS

1.    Policy Period. This Policy applies only to loss which occurs during the policy period.

2.    Other insurance. If there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted.

3.    Insurance Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

      a.  for an amount greater than the interest of the persons insured under this policy;
          or
      b.  for more than the limit of liability that applies, whichever is less.

      If the Described Property is vacant and the mortgage on the property has been declared in default by the mortgagee at the time of a loss, we shall be liable for no more than the Named Insured's interest in the property at the time of the loss.

      The Named Insured's interest is represented by the mortgagor's unpaid balance, less unearned interest and finance charges, less unearned insurance premiums, less collection and foreclosure expenses, and less late charges and penalties added to the mortgagor's unpaid balance after the inception date of this policy.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

4. Concealment or Fraud. We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance. We do not provide coverage if you have acted fraudulently or made false statements relating to this insurance whether before or after loss.

5. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent;

   b. protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

   c. exhibit the damaged property as often as we reasonably require;

   d. submit to signed statements and examinations under oath; and

   e. submit to us, within 60 days after we request, your signed, sworn statement of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) the interest of you and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of the policy; and

      (5) specifications of any damaged building and detailed estimates for repair of the damage.

6. Loss Settlement. Covered property losses are settled as follows:

   A. Buildings at replacement cost without deduction for depreciation, subject to the following:

      (1) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

         (a) the limit of liability under this policy applying to the building;

         (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

         (c) the amount actually and necessarily spent to repair or replace the damaged building.

      If the full cost to repair or replace the damaged property is more than $1,000 or 5% of the limit of liability for the Dwelling, we will pay no more than the actual cash value until actual repair or replacement is completed.

      You may disregard these replacement cost loss settlement provisions when making a claim. You may claim loss to buildings on actual cash value basis. If you do, you may make further claim within 180 days after the loss based upon and for any specific additional cost to you actually incurred within that period in replacing the damaged property on a replacement cost basis.

   B. Loss to the following types of property will be settled at the actual cash value of the damaged property at the time of loss. Actual cash value includes deduction for depreciation.

      (1) Structures that are not buildings.

      (2) Antennas, carpeting, awnings, domestic appliances and outdoor equipment, all whether or not attached to buildings.

      We will not pay more than the smallest of:

      (1) the cost to repair or replace the damaged property with property of like kind and quality;

      (2) the actual cash value of the damaged property; or

      (3) the limits of liability of this policy applying to the property.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

7.   Salvage and Recoveries: When, in connection with any loss covered by this policy, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be refigured on the basis of what it would have been settled for had the amount of salvage or recovery been known at the time the amount of loss was originally determined. Any amounts thus found to be due any party, including us, shall be promptly paid or reimbursed.

8.   Our option. If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

9.   Reinstatement: It is understood and agreed that any claim under this policy shall not reduce the amount of insurance stated on the Declarations page for any other loss occasion.

10.  Loss to a Pair or Set. In case of loss to a pair or set, we may elect to:
     (a) repair or replace any part to restore the pair or set to its value before the loss; or
     (b) pay the difference between actual cash value of the property before and after the loss.

11.  Glass Replacement. Covered loss to glass shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

12.  Loss Payment. We will adjust all losses with the Named Insured. Payment for loss will be made within 60 days after we reach agreement with the Named Insured, entry of a final court judgement, or the filing of an approved award with us. Loss will be made payable to the Named Insured and the Additional Insured as their interests appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured and the Additional Insured, at the Company's option. No coverage will be available to any mortgagee other than that sworn as the Named Insured on the Declarations page of this policy.

13.  Appraisal. If the Named Insured and we fail to agree on the actual cash value or amount of loss, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, the Named Insured or we can ask a judge of a court of record in the state of the Described Location to select an umpire.

     The appraisers will appraise the loss, based on the method of payments specified in the policy for each item. If the appraisers submit a written report of an agreement to us, that amount will be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by any two will determine the amount of loss.

     Each party will pay the appraiser it chooses and his expenses, and equally pay expenses for the umpire and all other expenses of the appraisal.

14.  Our Rights of Recovery (Subrogation). In the event of any claim under this policy, we are entitled to all your rights of recovery against another person. You must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights.

     When you have made a claim under this policy and also recover from another person, the amount recovered from the other person shall be held by you in trust for us and reimbursed to us to the extent of any damages paid by us under this policy.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

15. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

16. Abandonment of Property. You must take all reasonable steps to protect the property which a prudent interested party would take in the absence of this or other insurance. We need not accept any property abandoned by you.

17. No Benefit to Bailee. We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

18. Cancellation.

   a. Coverage under this policy shall automatically and without prior notice, cancel when the Named Insured no longer has an interest in the Described Property or when the Named Insured has been provided with another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement applicable to the Described Property.

   b. This policy may also be cancelled by the Named Insured by returning it to us or notifying us in writing of the date cancellation is to take effect.

   c. We may cancel this policy by mailing notice of cancellation to the Named Insured at the address shown on the Additional Insured Endorsement or by delivering the notice not less than 30 days prior to the effective date of cancellation.

   d. We will mail to the Named Insured at the address shown on the Additional Insured Endorsement notice of non renewal not less than 30 days before the end of the policy period, if we decide not to renew or continue this policy.

19. Return of Premium. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect. The return of premium is not a condition of the cancellation.

20. Liberalization Clause. If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

21. Waiver or change of Policy Provisions. A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights. No course of conduct nor any indulgences, waivers, extensions, forebearances, non-enforcement of policy conditions, or the like, extended at or over any time or from time to time by the Company to the Named Insured or anyone shall waive, nullify, or modify any policy provision as to any other occasion or waive, nullify, or modify any other policy provision.

22. Assignment. Assignment of this policy shall not be valid unless we give our written consent.

In Witness Whereof, we have caused this policy to be executed and attested, and , if required by state law, this policy shall not be valid unless countersigned by our authorized representative.


Secretary                                                    President


MSP-RES(8/88)                          7                          AMSBGI07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

It is hereby understood and agreed that form MSP-RES is amended as follows:

**CONDITIONS**

15.　**Suit Against Us** is deleted and replaced by the following:

15.　**Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within three years after the date of loss.

All other terms and conditions shall remain the same.

THIS FORM ONLY APPLIES WHEN THE INSURED LOCATION IS A CONDOMINIUM

Mortgage Service Program
Residential Property Coverage

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CONDOMINIUM COMMON AREA COVERAGE ENDORSEMENT

Policy MSP-RES is amended as follows:

A.  **COVERAGES,** 1.  Property Covered is deleted in its entirety and replaced by the following:
   1.  Property Covered
      We cover your proportionate share of property which is the insurance responsibility of the Condominium Association, as defined in the Condominium Association Agreement or other similar legal instrument, for the Described Location.
      a.  Condominium property which is other than the Individual Dwelling Unit or the Additional Insured's Proportionate Ownership Interest in those areas of the condominium complex which are directly necessary to the use and enjoyment of the Individual Dwelling Unit.
      b.  Access areas to or for condominium units in separate buildings, including entries, corridors, reception areas, lobbies, stairs, elevators, to or for individual dwelling units in buildings other than the building containing the Individual Dwelling Unit, regardless of any ownership or other interests of the Additional Insured or Named Insured in such areas.
      c.  Structural components of separate buildings containing other dwelling units or primarily applying or servicing other dwelling units.
      d.  Limited common elements of the condominium complex for the use and enjoyment of unit owners other than the Additional Insured.

B.  Under **COVERAGES,** 2.  Property Not Covered, the following items are added:
      i.   The listed Individual Dwelling Unit in the condominium complex situated at the Described Location, used principally for dwelling purposes; and
      j.   The Additional Insured's proportionate ownership interest in those common areas of the condominium complex which are directly necessary to the use and enjoyment of the Individual Dwelling Unit.  This policy does not cover interests of any person in common areas of the condominium complex which are primarily for the use or enjoyment of particular Individual Dwelling Units, or of groups of units, other than the Individual Dwelling Unit.
      k.   Items of real property which pertain exclusively to the residence premises; and
      l.   Property which is your insurance responsibility under the Condominium Association Agreement; and
      m.  Structures owned solely by you, other than the Individual Dwelling Unit, at the Described Location of the residence premises.

C.  Under **OTHER COVERAGES,** the following items are added:
   6.  **Loss Assessment**
      a.  We will pay up to the limit of liability shown in the Additional Insured Endorsement for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners.  The assessment must be made as a result of direct loss to the property, owned by all members collectively, that would be covered by this policy if owned by you, caused by a Peril Insured Against, other than:
         (1)  Earthquake; or
         (2)  Land shock waves or tremors, which occur before, during or after a volcanic eruption.
      b.  This coverage applies only to loss assessments charged against you as owner of the Described Location.
      c.  We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.
      d.  The limit shown in the Additional Insured Endorsement is the most we will pay with respect to any one loss, regardless of the number of assessments, arising out of one accident, including continuous or repeated exposure to substantially the same general harmful condition.

D.  Other Insurance and Service Agreement.
    If, at the time of loss, there is other insurance or a service agreement in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

All other terms and conditions of the policy remain the same.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM, HAIL, HURRICANE ENDORSEMENT-

# MISSISSIPPI

When loss occurs under the peril of **Windstorm, Hail or Hurricane**, the deductible will be the greater of  $ 1,000 or 1  % of the Amount of Insurance, per insured location.

"Hurricane Occurrence":

    a.  Begins at the time a hurricane watch or warning is issued for any part of Mississippi by the National Hurricane Center of the National Weather Service;

    b.  Continues for the time period during which the hurricane conditions exist anywhere in Mississippi; and

    c.  Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Mississippi by the National Hurricane Center of the National Weather Service.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of
Insurance Services Office with its permission

MS1494

# MISSISSIPPI FLOOD AND EARTHQUAKE EXCLUSIONS
# NOTICE TO POLICYHOLDERS

## FLOOD EXCLUSION

Your policy excludes coverage for damage caused by flooding of all types. This exclusion may exclude any and all damages resulting from storm surge from a hurricane, surface water, flash floods, waves, tidal water, tidal waves, wind driven rain or water, or any other overflow of water, and spray from any of these events. For further details, please see the language of your policy. The language of your policy will control the obligations of the parties.

You are further advised that to be covered for such a loss, you will have to obtain a separate flood insurance policy through the National Flood Insurance Program (NFIP). Your insurance agent or company representative can provide you with information regarding obtaining flood insurance from the NFIP and whether it is available in your location. The NFIP can provide both structure and contents coverage.

## EARTHQUAKE EXCLUSION

Your policy excludes coverage for any damages caused or precipitated by an earthquake or earth movement. This exclusion generally excludes all damages caused or in any way resulting from an earthquake, earth movements, tremors and aftershocks, and also excludes earth movement, land shock waves, aftershocks or tremors before, during or after a volcanic eruption. For further details, please see the language of your policy. The language of the policy will control the obligations of the parties.

You are further advised that to be covered for such a loss, you will have to obtain a separate earthquake endorsement or special earthquake policy. Not all insurance companies provide earthquake coverage. Your insurance agent or company representative can provide you with information on coverage for damage due to an earthquake.

## IMPORTANT FLOOD AND EARTHQUAKE NOTICE

## MISSISSIPPI

This policy contains a flood exclusion.  Flood coverage may be purchased separately from the National Flood Insurance Program, if available in your area.

This policy contains an earthquake exclusion.  Contact your agent for information concerning the availability of earthquake coverage.

# ATTACHMENT #27

 **FannieMae**

# Report of Hazard Insurance Loss

| Fannie Mae Loan Number 1702577706 | Servicer's Loan Number 62319296 | Date 05/28/2013 |
|---|---|---|

| Mortgagor's Name Portia B Ishee | Property Address 36 Muscio Rd Mc Lain. MS 39456 |
|---|---|

| | | Status of Mortgage is: |
|---|---|---|
| Date Loss Occurred | 01/01/2012 | ☐ Current      ☐ Delinquent _____ installments |
| LPI Date | | ☐ Under Relief      Total Delinquency $ 23,248.68 |
| Estimated "as is" value | $ 100,000.00 | |
| Estimated "as repaired" value | $ 100,000.00 | ☑ In Foreclosure |
| Estimated Cost to Repair (If loan is in liquidation, attach copy of bids) | $ 99,623.48 | ☐ Acquired Property |
| Amount of Deductible | $ 0.00 | Loan Type      ☐ FHA  ☐ VA  ☑ Conv.     If FHA, is coinsurance involved?     Lien Type ☑ 1st Mortgage  ☐ 2nd Mortgage     Property Type ☑ 1-4 Family  ☐ Multifamily |

Loss drafts in the amount of $ 99,623.48 _____ have been received in connection with the settlement of the loss sustained by the property securing the above mortgage. (Attach copy of insurance company's breakdown of the settlement amount between personal and real property, if any).

We recommend the following action:

☐ Accept a payoff of less than total indebtedness to minimize losses.

☑ Apply insurance proceeds to the mortgage debt whether or not then due, with the excess paid to mortgagor. The repair or restoration of the property is not economically feasible or Fannie Mae's security would be lessened.

☐ Mortgagor failed to answer within 30 days notice that insurance carrier has offered to settle claim. Collect insurance proceeds from insurance carrier and apply to:

☐ repair or restoration of property,

☐ mortgage debt, or

☐ as payoff of less than total indebtedness.

| Servicer's Name and Address | | |
|---|---|---|
| Green Tree Servicing, LLC Claims Department PO Box 6158 Rapid City, SD 57709-6158 | By | Cathleen Melendez |
| Servicer's Fannie Mae Number (9 digits) 261840111 | Title | Claims Supervisor |

Your recommendation has been approved, subject to:

By _____     Date _____

FANNIE MAE/Ishee - 000017

# ATTACHMENT #28

| Date: | Tuesday, May 28, 2013 5:26:47 PM |
|---|---|
| From: | Vicky.Turner@greentreecreditsolutions.com |
| To: | hazard_loss@fanniemae.com; |
| CC: | Candace.Novak@greentreecreditsolutions.com; Cathleen.Melendez@greentreecreditsolutions.com; Heidi.Schmidt@greentreecreditsolutions.com; |
| Subject: | Form 176 Fannie Mae Ln # 1702577706-Ishee |

Green Tree received $99,623.48 in claim funds from a previous servicer.
Per the site inspection of 04/22/2013, the home was tenant occupied. Green
Tree would like to hold the claim funds until the foreclosure has been
completed.

Thank you,

Vicky Turner
Claims Representative
Green Tree Servicing
Claims Department
1-800-544-8056 x 55302

FANNIE MAE/Ishee - 000018

05/29/2013 p2ucao                                                    General

Vicky, Thank you for contacting the Servicer Support Center regarding the loss drafts. Please continue with the foreclosure sale. Reduce the foreclosure bid by the amount of $99,623.48. After the foreclosure sale, remit the insurance proceeds to Fannie Mae as a special remittance (Code 332, Hazard insurance recovery) through the Cash remittance System (CRS). Should you require additional assistance please let us know. Servicer Support Center: Fannie Mae | National Servicing Organization Servicer Support Center 888-326-6435, servicing_solutions Technology Support, 888-326-6438, Option 2 Marketing 888-326-6438, Option 4 csc_marketing Underwriting Support 888-326-6438, Option 5 Website: www.efanniemae.com This e-mail and its attachments are confidential and solely for the intended addressee(s). Do not share or use them without Fannie Mae's approval. If received in error, contact the sender and delete them.


08/08/2012 p2ujwf                                                    General

GMAC, Thank you for contacting the Servicer Support Center regarding the loss draft claim on Fannie Mae loan# 1702577706. Recommended action to accept proceeds as a short payoff has been denied. Please proceed with foreclosure as instructed below. Continue with the foreclosure process and reduce the amount of the foreclosure bid by the insurance claim proceeds of, $99,623.48 and continue forward with the auction. Once the sale is complete, remit the funds to Fannie Mae via special remittance code 332. The as-is value of the property is $90,000.00 per the valuation report provided. Should you require additional assistance please let us know. Servicer Support Center: Fannie Mae | National Servicing Organization Servicer Support Center 888-326-6435, servicing_solutions Technology Support, 888-326-6438, Option 2 Marketing 888-326-6438, Option 4 csc_marketing Underwriting Support 888-326-6438, Option 5 Website: www.efanniemae.com This e-mail and its attachments are confidential and solely for the intended addressee(s). Do not share or use them without Fannie Mae's approval. If received in error, contact the sender and delete them.

Confidential - Internal Distribution

FANNIE MAE/Ishee - 000019

12/19/2011 p2umas                                    General

Katrece, Thank you for contacting the Servicer Support Center regarding the insurance proceeds. Please provide the current as-is value of the property. Based on your submission the property burned down, so this might be a land only value. The form 176 submitted reflects 99,623.48 as the current as-is value of the property. In order to approve a recommendation of charge off, we would need to have in writing that there is no value in the asset to be recovered through foreclosure. You current submission does not reflect that. Please resubmit your form 176 along with a BPO showing the current as-is value. Until the resubmission is receive please continue with the foreclosure and reduce the foreclosure bid amount by the insurance proceeds. Upon receipt of the resubmission we will re-review the file and determine is another course of action is appropriate. Should you require additional assistance please let us know. Servicer Support Center: Fannie Mae | National Servicing Organization General Servicing, Loss Mitigation & Real Estate Owned Inquires 888-326-6435 Underwriting Support 888-326-6438, Option 1 Servicer Support Center 888-326-6438, Option 2 servicing_solutions Marketing 888-326-6438, Option 3 csc_marketing Technology Support, 888-326-6438, Option 4 Lender Approval 888-326-6438, Option 5 lender_approval Website:www.efanniemae.com This e-mail and its attachments are confidential and solely for the intended addressee(s). Do not share or use them without Fannie Mae's approval. If received in error, contact the sender and delete them. --------------------------- From: katrece.turner@balboainsurance.com Sent: Thursday, December 15, 2011 2:39:00 PM To: hazard_loss@fanniemae.com CC: len.nicchia@balboainsurance.com; gmacplds@balboainsurance.com Subject: FNMA Form 176 Recommendation - Ishee - FNMA Acct. No. 1702577706 [WARNING : MSG ENCRYPTED COULD'T VIRUS SCAN] Good afternoon, Please find the attached recommendation to pay off the loan with the insurance funds and satisfy the mortgage. The FNMA Form 176 is attached as well as details in the recommendation template. GMAC Recommendation Template Issue: Borrower is requesting we settle the mortgage balance with the insurance proceeds that were received to repair the home. Insurance proceeds total $99,623.48 Risk to GMAC: GMAC could potentially suffer a loss of $14,417.17 based on the payoff quote expiring November 24, 2011. Recommendation: Apply the funds to the unpaid principal balance to satisfy the mortgage. No additional funds will be received by the carrier. Summary: This property suffered a fire loss on September 23, 2010. Loss Drafts received a letter from the borrower⊦s attorney requesting we settle the loan with the funds currently held in restricted escrow ($99,623.48). After application, they are requesting we forgive the remaining balance on the loan. We received a recent payoff statement from the borrower reflecting $114,040.65 due prior to November 24, 2011. Borrower Name PORTIA B ISHEE Account Number 0656318013 Tracking Number 121286 Property State Mississippi Original Appraised Amount 155,000.00 Unpaid Principal Balance 94,247.73 Homeowners Equity 60,572.27 Loan Status Foreclosure in Progress Investor FannieMae Property Type SFR Type of Loss Fire Date of Loss 09/23/2010 Date Reported 11/12/2010 Total Insurance Estimate 99,623.48 Insurance Funds Received 99,623.48 Insurance

Confidential - Internal Distribution

Funds Disbursed 0 Katrece Turner Operations Team Manager QBE FIRST Phone: 480.768.5174 Fax: 480.755.5908 Email: katrece.turner@balboainsurance.com Visit us on the Web at www.qbefirst.com -------------------------------------------------------- ---------------------- This communication may contain privileged and/or confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing or using any of this information. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy. This communication may contain nonpublic personal information about consumers subject to the restrictions of the Gramm-Leach-Bliley Act. You may not directly or indirectly reuse or re-disclose such information for any purpose other than to provide the services for which you are receiving the information. On [June 1, 2011], substantially all of the Balboa Insurance Group business, other than its life, credit and certain other businesses, was acquired by QBE Insurance Corporation and its affiliates (collectively,   QBE   ). If the sender of this email is an employee of QBE, please note that the sender is no longer affiliated with Balboa Insurance Company or its affiliates, and you should direct any questions related to this communication or the servicing of your account to the Office of the General Counsel, QBE FIRST, 210 Interstate North Parkway, Atlanta, Georgia 30339.

Confidential - Internal Distribution

FANNIE MAE/Ishee - 000021



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000001



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000002



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000003



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000004



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000005



Confidential - Internal Distribution



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000007



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000008



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000009



Confidential - Internal Distribution

FANNIE MAE/Ishee – 000010



Confidential - Internal Distribution

FANNIE MAE/Ishee - 000011