**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**PORTIA B. ISHEE** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 2:13-cv-00234-KS-MTP**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION (A/K/A "FANNIE MAE") and GREEN TREE SERVICING LLC** **DEFENDANTS**

---

# MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. GREGORY GORDON

---

COMES NOW the Plaintiff, Portia Ishee ("Portia"), by and through undersigned counsel of record, and files this Memorandum Brief in Support of Plaintiff's Motion to Exclude Expert Testimony of Dr. Gregory Gordon, and, in support thereof, states as follows:

## Introduction/Background

This lawsuit arises out of the egregious misconduct of Federal National Mortgage Association ("Fannie Mae") and Green Tree Servicing, LLC ("Green Tree") whereby the Defendants wrongfully held in escrow for over three (3) years the fire insurance proceeds paid to Defendants after Portia's home was completely destroyed by fire in 2011. Despite the fact that the insurance proceeds represented the full payoff amount of the mortgage held by Fannie Mae, for over three (3) years, the Defendants failed to apply the balance to the loan and failed to cancel the relevant Deed of Trust. Instead, the Defendants held the funds in escrow in degradation to their own policies and procedures and embarked on an unscrupulous mission to wrongfully harass the now 72 year old Portia by sending numerous unlawful foreclosure notices, increasing collection efforts, and submitting false and damning reports to credit bureaus.

Stunningly, this conduct continued for three (3) years despite letters and pleas from Portia as well as her attorney Lee Turner of Leakesville, Mississippi.

Naturally, being threatened for three (3) years with the loss of her family land and home[1] while concurrently not understanding why her fire insurance proceeds had not been properly applied, Portia experienced emotional distress which was verified by constant bouts of crying, weight loss, depression, difficulty sleeping, and daily anxiety. These symptoms and other obvious signs of mental anguish were further verified by Dorothy Harvison, a Trustmark branch manager who faxed multiple transmittals of Portia's pleas to Fannie Mae's and Green Tree's deaf ears. Harvison testified as follows in her deposition:

Q. Okay. And then it says, "And adverse effect on Ms. Ishee's physical, mental and emotional health."

A. Yes.

Q. And that's, again, just because of what she told you?

A. Um-hum.

Q. Is that a yes?

A. She would break down and start crying and --

Q. And that's what she'd tell you about the adverse effect on her physical, mental and emotional health?

A. Yes.

(*See* Deposition of Dorothy Harvison, p. 53, l. 13 – p. 54, l. 1.)

***

[1] After her home burned to the ground, Portia placed a trailer on her land to use as her residence. The Defendants also claimed that this trailer was somehow included in their Deed of Trust and also subject to foreclosure.

Q. Now, you had also testified that you had assisted Ms. Ishee with faxes to GMAC and Green Tree. In general, what was her disposition and mental state as you could observe it when she would come in and see you?

A. I know at sometimes that she would be very upset, and then she would cry. And I would try to, you know, tell her that things are going to get worked out. She had her insurance and all. But she did come in several times upset over it. She has had a lot of physical problems also.

Q. And so you say she came in several times in which she was visibly upset?

A. Um-hum (affirmative response).

Q. And did she ever tell you that the reason for her being upset was because of her dealings with her loan servicer and her loan on her home?

A. Yeah. She couldn't get her house paid off.

MR. ROUSE: Object to the form.

THE WITNESS: And I couldn't understand that because they had paid her her part of it.

BY MR. ANDERSON:

Q. If you can recall, about how long of a period of time was Ms. Ishee coming in was she visibly upset over the dealing regarding her home loan?

A. I don't remember. A lot – just about every time she came in. But I was just looking through some of this, and it says "One unpaid foreclosure," the last, it's on there.

(*See* Deposition of Dorothy Harvison, p. 64, l. 2 – p. 65, l. 12.)

Despite the evidence clearly showing emotional distress incurred on behalf of Portia as a result of the Defendants' wrongdoings, Green Tree and Fannie Mae hired Dr. Gregory Gordon to

perform a Defense Mental Examination ("DME") on Portia. This Court further issued an Order [Doc. 64] granting protective measures governing the DME as well as limiting the DME and placing restrictions on contact with Dr. Gordon by counsel for the parties.

On June 24, 2014, Dr. Gordon examined Portia. He issued his report on July 7, 2014 **(Exhibit A, Gordon Report)** and was subsequently disclosed as an expert witness by Green Tree and Fannie Mae the next day. **(Exhibit B, Defendants' Expert Disclosures).** Gordon's report and disclosed opinions, however, failed to confirm to the standards set forth in F.R.E. 702 and *Daubert* and failed to comply with the applicable provisions of Rule 26(d). Specifically, Dr. Gordon's purported expert opinions are inconsistent, make impermissible credibility determinations which are solely within the province of the jury, utilize unreliable methods, violate The Principles of Medical Ethics, fail to disclose all data relied upon, and violate this Court's Order [Doc.64]. For these reasons, this Court should exclude Dr. Gordon's opinions and prevent him from testifying at trial.

**<u>Gordon's Opinions</u>**

**Opinion (1).** "The first scenario is that Mrs. Ishee and her daughter were accurate in their reports to me on June 24, 2014…In that case; (sic) I find that Mrs. Portia Ishee has an Adjustment Disorder with mixed anxiety and depressed mood."[2]

**Opinion (2).** "The second scenario is that Mrs. Ishee and her daughter were not accurate in their reports…In this scenario the patient and family presenting symptoms to me which are out of proportion to those documented in her medical records…The purposeful reporting of exaggerated symptoms in the setting of a secondary gain such as financial would be considered Malingering."[3]

---

[2] Exhibit A, Report, p. 7
[3] *Id.* p. 8

**Opinion (3).** "To a reasonable medical certainty, I find Mrs. Ishee either has an Adjustment Disorder with mixed anxiety and depressed mood based on her and daughter's (sic) report or there is an exaggeration of symptoms for financial gain. I am limited by a lack of records…"[4]

## Argument/Analysis

### I. GORDON'S PURPORTED EXPERT OPINIONS ARE INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 702.

Gordon's opinions as well as his other thoughts on Portia's medical condition are inadmissible under Federal Rule of Evidence 702. Rule 702 states as follows:

> A witness who is qualified as an expert by knowledge, skills, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **a)** the expert's scientific, technical, or other specialized knowledge would help the trier of fact to understand the evidence or to determine a fact in issue;
> **b)** the testimony is based on sufficient facts or data;
> **c)** the testimony is the product of reliable principles and methods; and
> **d)** the expert has reliably applied the principles and methods to the facts of the case

The party offering an expert's testimony bears the burden of showing that the expert's opinions are reliable and relevant. *Moore v Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1989). Defendants cannot meet their burden in this case. Gordon's proposed testimony will not "help the trier of act to understand the evidence or to determine a fact in issue." Further Gordon's opinions are unreliable in that they are not "based upon sufficient facts or data," are not "the product of reliable principles and methods, " and Gordon has not "applied the principles and methods reliability to the facts of the case."

---

[4] *Id.* p. 8-9

### A. Gordon Cannot Opine as to Any Purported "Malingering" Because Gordon Performed No Malingering Tests. Thus, Gordon's Opinions are Not Based Upon Reliable Principles or Methods.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113, S. Ct. 2786 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999) as codified by F.R.E. 702, the District Court has the role of the gatekeeper in excluding expert testimony that is based on unreliable methodologies, date and/or opinions that the based on the ipse dixit of expert. *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512 (1997)(recognizing the problem of "opinion evidence which is connected to existing data only by the ipse dixit of an expert.") As opposed to mere ipse dixit, the expert's rationale or methodology must be grounded in fact and the "proposed testimony must be supported by appropriate validation – i.e., 'good grounds' based on what is known." *Daubert*, 509 U.S. 590-591. Testimony is to be excluded when it is based on subjective belief or unsupported speculation. *Id.* at 589-590. The District Court is charged with making "sure than an expert…employs in the courtroom the same level of intellectual rigor that characterize the practice of an expert in the relevant field." *Kumho,* 526 U.S. at 152.

Here, Gordon's Opinions (2) and (3) which make reference to purported "malingering" is unreliable and inadmissible because the opinions are not based upon *any* methodologies and are only ipse dixit. Despite the availability of many so-called "Malingering Tests"[5], Dr. Gordon listed no such tests and admittedly failed to conduct any tests. Accordingly, Dr. Gordon's opinion has no credible basis and is unable to be tested or verified. Therefore, by definition, Dr. Gordon's opinions regarding malingering are impermissible ipse dixit and are unsupported by the requisite reliable methodologies. Accordingly, Dr. Gordon's opinions must be excluded.

[5] Such tests have been developed by David A. Pritchard, C.K. Hiscock, and Richard Frederick. See Feuerstein, Coric, Fortunati, Southwick, Temporini, and Morgan; <u>Malingering and Forensic Psychiatry</u>; Psychiatry (Edgmont) Dec 2005; Vol 2(12): p. 25–28. Published online Dec 2005.

**B. Gordon's Opinions are Impermissible and Will Not Help the Trier of Fact Because He Assumes the Role of the Fact Finder by Making Credibility Determinations Thus Usurping the Role of the Jury.**

An expert is not allowed to judge the "truthfulness" or weigh the credibility of a party because that role is exclusively within the province of the jury. Rule 702 of the Federal Rules of Evidence limits the admissibility of expert testimony to that testimony which" will assist the trier of fact to understand the evidence or to determine a fact in issue." Opinions which invade the purview of the jury obviously do not assist the trier of fact. For instance, the Advisory Committee Notes are clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Here, Gordon's opinions regarding purported "exaggeration" or "untruthfulness" undisputedly weighs evidence and determines credibility. Such conclusory and one-side testimony cannot stand. *See Jones v. Halliburton*, 2011 WL 1841148, *5 (S.D. Tex. 2011)(excluding expert opinion as to credibility of plaintiff because it is not useful to the trier of fact) In *re Diet Drugs Products Liability Litig.*, 2000 WL 962545 (E.D. Pa. 2000)(Testimony of an expert that constitutes mere personal belief as to weight of the evidence invades the province of the jury); *Nichols v. American Nat. Ins. Co.*, 154 F.3d 875, 883-84 (8th Cir. 1998)(Weighing evidence and determining credibility are tasks exclusive to jury and holding that expert's testimony impugning the "psychiatric credibility" of plaintiff was inadmissible under Rules 403 and 702 because it was "thinly veiled comment on a witness' credibility".) In fact, Gordon's opinions amount to little more than choosing sides and telling the jury Defendants' version of events is "true" or "more credible." Such opinions are neither allowed nor helpful under Rule 702. *United States v. Wertis*, 505 F.2d 683, 685 (5th Cir. 1974)

The District Court in *Kidd v. Walmart Stores, Inc*, 2009 WL 3805584 (E.D. Va. 2009) squarely addressed the issues as to whether a mental health professional could opine as to the

credibility of a plaintiff or opine that a plaintiff was "malingering." In *Kidd*, Defendant Walmart's experts opined that the Plaintiff exhibited "symptom magnification" and "malingering." *Id.* at *1. The Plaintiff argued that such proposed testimony of the doctors "goes beyond the scope of proper expert testimony and allows the expert to comment on the plaintiff's reliability in the guise of a medical opinion." *Id.* at *2. In a well-reasoned analysis, the District Court agreed with the Plaintiff and held:

> Where expert testimony seeks to comment on the credibility of a witness, such testimony answers "the very question at the heart of the jury's task." Thus, an expert may not testify as to a witness's veracity because such testimony improperly invades the province of the jury to determine the reliability of the witness.
>
> …
>
> Even if they possess the requisite expertise, the Court will not permit these doctors to opine as to whether Kidd has such disorders. Such testimony far too easily invades the province of the jury or comments on the credibility of the Plaintiff.
>
> …
>
> Neither doctor… may opine as to whether or not Kidd herself has somatoform disorder [malingering] because such testimony could comment on Kidd's veracity and such testimony extends beyond the area of expertise identified for these doctors.
>
> *Id.* at *2-3(internal citations and quotations omitted)

As stated in *Kidd*, the notion of "malingering" or secondary gain is clearly a credibility matter that impermissibly attempts to invade the province of the jury as to whether a witness' testimony is credible or not credible. Accordingly, Dr. Gordon's opinions should be excluded.

### C. Gordon's Opinions are Unreliable Because They are Based upon Hearsay and Because Gordon Fails to Distinguish Whether His Purported "Facts" Come from Either Dana Dixon or Portia.

In his report, Gordon states that all "data and other information I reviewed and relied on are set forth above."[6] Gordon further explained that Portia "made a sincere effort to complete my examination and her daughter remained in the office for the entire exam. Her daughter,

[6] Exhibit A, p. 9

Dana, was a source of collateral information."[7] Dr. Gordon then proceeded to narrate the purported facts as told to him by either Dana or Portia. For the most part, Gordon declined to distinguish which alleged facts came from which individual. Further, Gordon wholly failed to specify whose information he relied upon in making his Opinions. The distinction between "who said what" and what facts Gordon relied upon is critical because an expert report may not be based upon hearsay, and clearly, any "facts" from Dana would be impermissible hearsay. Further, whatever purported "facts" garnered from Dana's statements to Gordon could not be utilized either for or against Portia.

"[E]xperts are generally precluded from disclosing inadmissible evidence to a jury." *Williams v. Illinois*, 132 S. Ct. 2221, 2241, 183 L. Ed. 2d 89 (2012)(Citing FRE 703 and *People v. Pasch*, 152 Ill.2d 133, 175–176, 178 Ill.Dec. 38, 604 N.E.2d 294, 310–311 (1992)) Additionally, the "trial judge is responsible for ensuring that the proposed [expert] testimony is supported by "good grounds." *Daubert* at 590. Further, Courts have excluded experts who rendered opinions without identifying the individual upon whose testimony they relied. *See Watts v. Ford Motor Company*, 2009 WL 3334847, *2 (N.D. Miss. 2009).

Here, because Gordon failed to distinguish which individual's statements he considered, his opinions are unreliable and unsupported by "good grounds." Moreover, if Gordon is allowed to consider third party opinions as to what the "facts" of this case are, Pandora's Box will have been opened. Conceivably, Gordon could even rely upon defense counsel's recitation of the facts as the basis of his opinion. Clearly, this result is unfair, absurd, and should be avoided. Similarly, it would be unfair for Gordon to consider third party statements relative to the events which transpired to Portia. Therefore, because Gordon did not distinguish upon whose

[7] *Id.* p. 5 (Emphasis Added)

statements he was relying, his opinions are unreliable and not supported by good grounds. Accordingly, his opinions should be excluded.

**D. Gordon's Questioning and Comments Regarding Attorney Compensation and Settlement Value of this Case are Not Based Upon Reliable Principles and Methods Because They Violate Relevant Ethical Standards and Indicate Gordon's Bias for the Defendants and Against Portia.**

During his examination of Portia, Dr. Gordon unabashedly asked Portia questions regarding her attorney-client contract, attorney-client communications, and the settlement value of the case. Such questioning clearly invades Portia's sacred attorney-client privilege, is unethical under the American Psychiatric Associations' Ethical Principles, and establishes Gordon as nothing more than a hired gun/advocate for the Defendants' cause.[8]

The American Psychiatric Association's *Principles of Medical Ethics*[9] provides the standards psychiatrists such as Gordon must follow:

- A physician shall…safeguard patient confidences and privacy within the constraints of the law[10]
- A physician shall, while caring for a patient, regard responsibility to the patient as paramount[11]
- A psychiatrist shall now gratify his or her own needs by exploiting the patient[12]
- The psychiatrist should diligently guard against exploiting information furnished by the patient and should not use the unique position of power afforded him/her by the

[8] Further, Mississippi Rule of Evidence 502 provides: "General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative…" Miss. R. Evid. 502(b) (2014).
[9] Excerpts are attached as **Exhibit C**
[10] *Id.* p. 2
[11] *Id.* p. 3
[12] *Id.*

psychotherapeutic situation to influence the patient in any way not directly relevant to the treatment goals[13]

- A psychiatrist who regularly practices outside his or her area of professional competence should be considered unethical. [14]
- Ethically, the psychiatrist may disclose only that information which is relevant to a given situation.[15]
- In legal settings, the psychiatrist must fully describe the nature and purpose and lack of confidentiality of the examination to the examinee at the beginning of the examination.[16]
- A clinician who routinely assumes information that cannot be verified as fact and directs treatment based on such information may be at risk for practicing incompetently. It is prudent to identify the source of information that is entered into a medical record.[17]

Each of Gordon's opinions as well as his questioning into the intricate, private, and privileged details of Portia's attorney-client communication violates his ethical obligations under the American Psychiatric Association's Ethical Principles. In his report, Gordon stated "[t]hey have agreed to a 40% of settlement or award fee with Mr. McHard. Mrs. Ishee and Dana report they feel $200,000 in damages plus apply (sic) insurance check to mortgage, receive interest on insurance check held by mortgage company (sic) for 3 years, obtain deed to family property and

[13] *Id.* p. 5
[14] *Id.*
[15] *Id.* p. 6
[16] *Id.* p. 7
[17] The American Psychiatric Association's Opinions of the Ethics Committee on the Principles of Medical Ethics, **Exhibit D,** p. 8

to stop having people taking pictures of their house would be an acceptable resolution."[18] This solicitation of privileged attorney-client communications violates the psychiatric ethical principles which mandate that Gordon "shall… safeguard patient confidences and privacy within the constraints of the law"[19] and "disclose only that information which is relevant to a given situation." [20] Here, Gordon blatantly and improperly requested settlement information and attorney contract information from Portia utilizing his unique position of power undoubtedly to aid the parties which retained his services – Green Tree and Fannie Mae.

Dr. Gordon's report demonstrates that the clear intent of the evaluation is not only purely prejudicial and without proper foundation or objectivity but is merely a blatant attempt to invade the attorney-client privilege. No questions should be properly asked by any physician regarding discussions between a patient and a patient's attorney. However, Dr. Gordon unabashedly requested information regarding what was stated between attorney and client and even delved into settlement plans and postures. Moreover, Dr. Gordon shamelessly included this information in his report! The Fifth Circuit has warned that when "an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Betts v. Gen. Motors Corp.*, 2008 WL 2789524 (N.D. Miss. 2008)(quoting *Viterbo v. Dow Chemical Company*, 646 F.Supp. 1420, 1425) Dr. Gordon's actions were clearly improper questioning by any witness hired by the defense. Accordingly, Dr. Gordon's opinions and report should be stricken.

---

[18] **Exhibit A**, p. 5
[19] **Exhibit C**. p. 2
[20] *Id.* p. 6

**E. Gordon's Report Will Not Help the Jury and is Not Based Upon Reliable Principles or Methods Because Gordon Purports to Have Conducted Legal Research and Reached Legal Conclusions.**

In his report, Dr. Gordon claims to have independently reviewed "on-line resources", "county court" documents, and "legal notices" to aid in his purported unbiased assessment of Portia.[21] Such "research" obviously oversteps the bounds of any mental examination and undoubtedly places Gordon as an impermissible advocate for the Defense. This curious investigation is obviously not within Gordon's disclosed expertise and not documented to be within the purview of a psychiatrist.

Additionally, Dr. Gordon is not qualified as a lawyer. Despite this, Dr. Gordon's report references a legal investigation in *Greene County*, Mississippi. However, nothing in Green County has anything to with any of the matters in issue. Portia's home is and was for more than forty (40) years on the Ishee property located in Perry County, Mississippi. Obviously, Gordon's methodologies are unreliable because Portia or her daughter would not mention Greene County because they are keenly aware that their home was and has always been located in Perry County. In fact, the only reference to Greene County in this case is set forth in a Deed of Trust **(Exhibit E)** excluded in discovery. This document was prepared on a Fannie Mae form pursuant to a Fannie Mae pre-approved loan. Despite the deed being clearly erroneous, the doctor took it upon himself to do investigation and legal research in Greene County. Curiously, and although Gordon only spent 9.4 hours on this case at the time he produced his report[22], Gordon claims to have used his legal expertise to interpret the legal notices in the weekly Greene County newspaper "from 2011 to present."[23] By the undersigned's calculation, Gordon claims to have reviewed over one hundred seventy (170) newspapers within 9.4 hours. Of course, Gordon also

[21] **Exhibit A**, p. 7
[22] See Gordon correspondence to Rouse, **Exhibit 1**.
[23] **Exhibit A, p. 7.**

spent ninety-six (96) minutes examining Portia[24] and presumably spent a considerable amount of time reviewing the two hundred (200) pages of medical records submitted to him preparing his ten (10) page expert report. See:

http://www.greenecountyheraldonline.com/4439/1535/archivesgreene-county-herald.

Averaging fifteen (15) pages, Gordon speciously claims he reviewed one hundred seventy (170) of these newspapers in less than nine (9) hours, thereby proving he is nothing more than an advocate for the defense, rather than an unbiased physician. Such a non-objective witness must be excluded. *See Viterbo*, *supra*, at 1425.

Accordingly because Gordon's legal research and opinions would not help the jury and are not based upon reliable methods, Gordon's opinions must be excluded.

## II. GORDON'S REPORT DOES NOT COMPLY WITH THE REQUIREMENTS OF RULE 26. THEREFORE, IT MUST BE STRICKEN.

Fed. R. Civ. P. 26(a)(2)(b) requires that an expert's report contain, among other things:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them.

Fed. R. Civ. P. 26(a)(2)(b)(i) and (ii) (2014).

Here, Gordon clearly did not provide all of "the facts and data considered" in rendering his opinions. First, Gordon states that he utilized "on-line resource to confirm the reports of Mrs. Ishee."[25] However, outside of the Greene County newspaper, a <u>single</u> resource, Gordon provides no other online documents, despite stating he reviewed multiple resources. Secondly, Gordon's "Greene County" statement makes it clear that Gordon reviewed the erroneous Deed of Trust, as no other document or parties have any connection whatsoever to Greene County. Despite his

[24] **Exhibit A, p. 2.**
[25] **Exhibit A, p. 7.**

review of the document and reliance upon it in rendering his opinion and performing his "legal research," Gordon failed to disclose the document in his report. Therefore, Gordon's opinions should be excluded due to his failure to disclose all "facts and data considered" as required by Rule 26.

## III. GORDON FAILED TO FOLLOW THIS COURT'S PREVIOUS ORDERS. THEREFORE, HIS OPINIONS MUST BE EXCLUDED.

The Agreed Order Granting Protective Measures Governing Mental Examination [Doc. 64] provides, in pertinent part:

> … the following measures shall govern the Fed. R. Civ. P. 35 Mental Examination in this matter as follows:
>
> a. No party to the litigation shall provide the examining physician with any information absent request from the physician and approval by this Court.
>
> b. The parties shall have no contact with the physician in an attempt to influence or in a manner giving the appearance to influence the independence of the examination.

Nonetheless, in his report, Gordon continuously referenced Greene County, which was only in the erroneous Deed of Trust. Clearly, Gordon had this document in his possession prior to his report being issue. However, review of the Deed of Trust or receipt of that information was specifically prohibited by the Court's Order. [Doc. 64].[26]

Therefore, and because Gordon violated the Court's Order, his opinions must be excluded.

---

[26] Also, Dr. Gordon never requested this information, nor was approval acquired from the Court.

## Conclusion

For these reasons, Plaintiff, Portia Ishee respectfully requests that this Court exclude the opinions of Dr. Gregory Gordon.

Respectfully submitted this the, 22nd day of August, 2014.

Respectfully submitted,

**PORTIA ISHEE, Plaintiff**

By: */s/ Samuel S. McHard*
SAMUEL S. McHARD, MSB#100295

SAMUEL S. McHARD
P. MANION ANDERSON
MCHARD & ASSOCIATES, PLLC
15 Milbranch Road
HATTIESBURG, MS 39402
Phone: 601-450-1715
Fax: 601-450-1719
smchard@mchardlaw.com
manderson@mchardlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned counsel, do hereby certify that on August 22, 2014, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Samuel S. McHard*
SAMUEL S. McHARD, MSB#100295

SAMUEL S. McHARD
P. MANION ANDERSON
MCHARD & ASSOCIATES, PLLC
15 Milbranch Road
HATTIESBURG, MS 39402
Phone: 601-450-1715
Fax: 601-450-1719
smchard@mchardlaw.com
manderson@mchardlaw.com