Portia B. Ishee CLAIMANTS

**VS.** **Civil ActionNo.2:13-cv-00234-KS-MTP**

Federal National Mortgage
Association (A/K/A "Fannie Mae") and
Green Tree Servicing, LLC Defendants

Report of Governing Mental Examination: June 24, 2014
Portia B. Ishee

A. IDENTITY OF EXPERT

Dr. Gregory Gordon, M.D., Assistant Professor, Department of Psychiatry and Human Behavior, University of Mississippi Medical Center, 2500 North State Street, Jackson, Mississippi 39216.

B. QUALIFICATIONS AND PUBLICATIONS OF EXPERT

My qualifications are set forth in my curriculum vitae, a copy of which is attached. I have not authored any publications in the past 10 years.

C. EXPERT'S OPINIONS

Mrs. Portia B. Ishee is a 72 year-old lady seen for this GME on June 24th, 2014. Her date of birth is 02-21-1942. Mrs. Ishee reports she has been having emotional difficulties after a house fire on September 23, 2010. She reports the cause of her emotional problems comes from her bank trying to take her land and property after the fire. She reports she arranged for her insurance company to pay off the remaining mortgage after the house fire but that the



EXHIBIT A

money was never applied to her mortgage resulting in her bank putting the house into foreclosure proceedings.

My findings, conclusions and opinions in this report are based on the review of documents provided in her case, my 96-minute examination of Mrs. Ishee on Tuesday June 24, 2014 and my knowledge, experience and education as a practicing board certified psychiatrist and internist. These provided documents included the medical records of: New Augusta Family Health Center and Hattiesburg Clinic. Mrs. Ishee was never referred for psychiatric assessment until she was seen by me.

Since 2006, I have been the main psychiatrist providing inpatient Psychiatric Consultations at the University of Mississippi Medical Center. I also have a clinical outpatient practice which includes patients with mood disorders such as Acute Stress Disorder, Post-Traumatic Stress Disorder, Adjustment Disorders, Depression, Anxiety and Panic disorders. I provide care for patients with emotional, mental and behavioral problems associated with anxiety, depression and trauma-related disorders on a regular basis. I am familiar with current standards of diagnosis, care practice, therapies and medication management for patients like Mrs. Portia B. Ishee. I am familiar with the older DSM-IV-TR and new DSM-V diagnostic criteria.

Briefly, Mrs. Portia B. Ishee, now 72 years old; but was 68 years old on September 23, 2010 when she reports her home was involved in a fire with a complete loss of everything she owned and the death of her pet poodle. Mrs. Ishee reports that she and her daughter were both at a doctor's visit when the fire occurred. She typically sleeps late and if not for the doctor's appointment, Mrs. Ishee would have likely been killed in the fire. She received a call from her neighbor about the fire and returned home. Mrs. Ishee reported the fire destroyed everything and there was nothing left of her home.

Mrs. Ishee reports the fire was investigated by local fire officials, State of Mississippi fire investigator and her insurance company without finding a cause but determined that the fire started in her bedroom. Mrs. Ishee reports her insurance company paid $99,000 for her loss. She had the insurance company contact for mortgage provider GMAC, to obtain a final payment amount. Mrs. Ishee reports her pay off amount was less than the $99,000 that insurance company paid. She reports

her insurance company issued payment of $99,000 to GMAC on November 4, 2010. She was told by her insurance agent that it would take 30+ days for the paper work to be finished. She thought all was taken care of until a letter from GMAC, arrived in January 2011, requesting insurance on the vacant lot.

Mrs. Ishee reports she tried to contact GMAC with telephone calls to work out the situation. She believed the mortgage had been paid off and that she did not think the vacant land needed to have insurance; nor did she know a reason for GMAC's requests she obtain insurance. She contacted her insurance agent to help but there was no resolution. Eventually her daughter, Dana became involved, making phone calls every 2-3 days trying to work out the issues with GMAC. Dana felt the company was too big and that she could not talk to the right person to work out these issues. Finally, they obtained an attorney, Lee Turner, to help by sending letters to GMAC but to no avail.

Mrs. Ishee reports she and her daughter had tried many, many times to work out an agreement with GMAC. Her mortgage was later sold to Green Leaf and the whole thing started all over again. She was told that GMAC did have her insurance company payment, as well as Green Leaf, but that for some reason the payment had not been applied to her account. She and her daughter spoke with several mortgage company representatives but none could explain why the mortgage had not been paid off and the loan released as paid in full. Mrs. Ishee and Dana reported Green Leaf/GMAC foreclosed on the property in 2013. Mrs. Ishee received several letters about the foreclosure; their property was listed several times in the newspaper and proceeding went through the county court. As a last resort, they contacted a new attorney Samuel McHard. Mr. McHard was able to stop the foreclosure sale on the county court steps on the day of the posted sale. If not for the actions of Mr. McHard, their family home and land would have been foreclosed upon.

Mrs. Ishee reports the fire was a huge set back. She "lost everything" and had to start over with nothing. She had lost her husband from cancer in 2009. She reports she had a good life and was happy before all of this. Her husband was found to have cancer but it was too late.

He died a couple of weeks after being diagnosed. She felt his loss and went through normal bereavement. She reports she had been feeling better and going on with her life when the fire happened. She reports that she did not start to have anxiety and depression problems immediately following the fire. She did not have recurring, intrusive memories of the fire or recurring nightmares of the fire. She has no flashbacks of the fire, intense distress or guilt after being exposed to reminders of the fire. She eventually placed a trailer home close to the remains of her former home.

Mrs. Ishee reports the stress of the foreclosure caused her to have feelings of being lost, nothing to look forward to, went all to pieces, knocked for a loop, upset, crying, wore me down, difficulties sleep, ruminating about her loss, loss of appetite with 50+ pound weight loss, hard to concentrated, no thoughts of suicide or homicide, no hallucinations, no bad dreams and did not feel regret. She reports her symptoms cause near daily distress and significant impairment of functioning. She reports she eventually went in late 2011 to see her primary care doctor at New August Family Health Center and was prescribe Celexa for depression and anxiety. She still takes Celexa today.

Mrs. Ishee reports she was born in Leaf, MS, had a good childhood, graduated from high school and started college but stopped college when her father became ill, worked as mill wright, married for 46 years, had three children-all daughters, never smoked or drank alcohol, never took illicit drugs, no family history of mental problems, currently lives by self but all three daughters very supportive. She has allergies to codeine and pains meds which cause her to itch. She has several major medical issues: liver transplant in 2004, diverticulosis, abnormal blood work, hernia, degenerative disk disease, chronic pain, hypothyroidism, Gout, hyperlipidemia, dizziness and renal problems. She has been diagnosed with Depressive Disorder not otherwise specified by her family doctor. She reported she has never been referred or treated by a psychiatrist. She would have been evaluated by a psychiatrist at least one time as part of her liver transplant work up in 2004.

I met with Mrs. Ishee on Tuesday June 24, 2014 for an independent medical examination. She was brought to my office by her oldest daughter, Dana. I confirmed Mrs. Portia B. Ishee's identity by name and date of birth. At the beginning of the exam I explained my role as a doctor to provide an independent medical examination. I explained that no formal doctor-patient relationship would exist as

a result of the exam. I explained she has the right to request the examination be stopped at any point and that she could take a break at any time if needed. I explained that I would provide a summary of my exam to the office of United States Magistrate Judge Michael T. Parker. His office would provide a copy of this report to her attorney Samuel S. McHard, Esq. and attorney John T. Rouse, Esq. of McGlinchey Stafford PLLC. Mrs. Ishee acknowledged my explanations and was a willing participant. She made a sincere effort to complete my examination and her daughter remained in the office for the entire exam. Her daughter, Dana, was a source of collateral information.

Dana reported the foreclosure has greatly impacted her mother. She reports her mother often sits at home wringing her hands, has fear of losing the family's land and its heritage, is nervous often, visits the doctors much more often, has weight loss of at least 50 pounds and loss of appetite, and that every letter that comes is very upsetting. Dana is mad at the mortgage company for putting her mother through all this stress. Dana reports the mortgage company has been sending people to take pictures of the house and property. Mrs. Ishee and Dana report they do not know what amount in damages their attorney has asked for in the lawsuit. They have agreed to a 40% of settlement or award fee with Mr. McHard. Mrs. Ishee and Dana report they feel $200,000 in damages plus apply insurance check to mortgage, receive interest on insurance check held by mortgage company for 3 years, obtain deed to family property and to stop having people taking pictures of their house would be an acceptable resolution,

My examination showed a 72y/o lady who appeared her stated age. She had no obvious physical problems as she walked into my office. She was calm and in no distress. Mrs. Ishee reports the onset of emotional problems shortly after receiving notice from GMAC in January 2011; requesting her to obtain insurance coverage, on her vacant land, after the September 23, 2010 fire destroyed her home.

Mrs. Ishee was cooperative and made a sincere effort during my examination. She reported "feels lost" mood. She had a full range of affect. She briefly cried when she talked about stress of having family home and property go through foreclosure. She had logical and

linear thoughts. She had good concentration and sustained attention. She had normal speech. She had appropriate behavior with normal social cues and answering questions. She was fully oriented. I did not ask her all the questions of a Mini-Mental Status Exam because she was completely normal cognitively during the course of the first hour of my examination. She had intact judgment and intact insight. She has a fairly good fund of general knowledge and current events. I estimate her IQ to be in the 80-90 range which indicates a normal IQ. My estimate of her IQ was based on my direct exam.

I did not receive any records prior to my examination on June 24, 2014. My secretary was able to obtain the medical records via email attachment before I finished my exam but I was not able to read these records before Mrs. Ishee left my office. I was surprised as soon as I started reading her medical records as the documented history was not consistent with Mrs. Ishee or her daughter's reports. I was provided records from September 27, 2010 to January 24, 2014. She had reported to me that she did not have emotional problems until after she received her first letter from the insurance company in January 2011 and that she was eventually started on the antidepressant Celexa later in 2011. She had discussed normal bereavement with death of husband in 2009 but according to her September 27, 2010 visit indicates she was already prescribed the anti-depressant medication Lexapro 10mg daily for 1 year. The same note presented with complaint of anxiety and noted with depression following the house fire. The note also indicated her symptoms have increased since the fire.

In review of her medical records there is no mention at all about her being anxious, depressed or worried about her home being foreclosure upon or problems with her mortgage company. Her primary care doctor repeatedly document that her spirits are good and that she denied depressive symptoms. She did start Lexapro in 2011 after she had received a letter in January requesting she obtain insurance, but in the record on February 7, 2011 documents "states Lexapro has become too expensive, will start Celexa" as reason for starting Celexa. Mrs. Ishee and her daughter had reported ongoing symptoms but on November 20, 2013 the records documents "in good spirits, denies depressive symptoms. Decrease celexa 10mg/day to every other day, then 2-3x/week" which is a tapering of her medication. A tapering of a medication is done when symptoms have been resolved for many months or if a serious reaction has occurred.

Mrs. Ishee's daughter, Dana, has reported she has lost weight as a result of all the stress from their mortgage company. She reports her mother lost at least 50 pounds. In review of the records she weighed 186 pounds on September 27, 2010. Her weight waxed and waned during the three and a half years of records but her lowest weight recorded was 161 pounds on September 30, 2013. She had been admitted to Forrest General Hospital earlier that month for severe diarrhea, dehydration, abdominal pain and melena. Her weight was 173 pounds on July 15, 2013 before her GI problems. The daughter's report of 50 pound weight loss was inconsistent with the medical records.

I have reviewed all provided records. I attempted to review on-line resources to confirm the reports of Mrs. Ishee that her property was listed as a foreclosure, went through her local county court and that Mr.McHard intervened on the county court steps to save their home and property. I used the Greene County weekly newspaper website to read the legal noticed from 2011 to present. I did not find a single legal listing for Mrs. Ishee's property. The Greene County court records are not readily available on line or if they are, I was unable to find the records. There are two possible scenarios.

The first scenario is that Mrs. Ishee and her daughter were accurate in their reports to me on June 24, 2014. Perhaps, Mrs. Ishee had failed to mention her foreclosure trouble to her primary care providers or they did not feel it was significant to documents as a stress. I may have searched an incomplete website for the Greene County newspaper or the foreclosure listing may have placed in another newspaper. In that case; I find that Mrs. Portia Ishee has an Adjustment Disorder with mixed anxiety and depressed mood. An adjustment disorder diagnosis is made when a person develops emotional or behavioral symptoms in response to an identified stressor, occurs within 3 months of the onset of the stressor, symptoms are clinically significant as evidenced by either marked distress that is out of proportion to the severity or intensity of the stressors and/or causes significant impairment in social, occupational or other important areas of functioning. The stress related disturbances does not meet the criteria for another mental disorder and is not merely an exacerbation of a preexisting

mental disorder. She has mild ongoing psychiatric and psychological symptoms with significant functional impairments in her life that directly followed her house fire of September 23, 2010. I used the AMA's Guides to the Evaluation of Permanent Impairment 6th edition and Diagnostic and Statistical Manual of Mental Disorders 5th edition as references. Mrs. Ishee has ongoing psychiatric symptoms which cause or contribute to impairment of daily function. Mrs. Ishee does experience mild near daily stress and rare moderate, transient distress after she receives new letters about foreclosure. My Global Assessment of Function rating of Mrs. Ishee is 61-70/100 which indicates mild symptoms, some difficulty in functioning but generally functioning pretty well, has some meaningful relationships.

The second scenario is that Mrs. Ishee and her daughter were not accurate in their reports. Mrs. Ishee's medical records are accurate in that she was being treated for depression prior to the events of the house fire on September 23, 2010, that she was taking the anti-depressant Lexapro for at least one year and she was not started on the anti-depressant medication Celexa because of emotional distress solely from difficulties from her mortgage company but because her previously prescribed Lexapro was too expensive. She did not lose 50+ pounds as a result of her worry about foreclosure and is documented to have lost 25 pounds in the setting of hospitalization for melena, diarrhea and dehydration. Her anxiety and depression have not been consistently present since January 2011 as many of her medical visits documented no depressive symptoms and her primary care providers felt she was ready to taper off her anti-depressant medication in November 2013. In this scenario the patient and family presenting symptoms to me which are out of proportion to those documented in her medical records. Mrs. Ishee is seeking $200,000 in damages, payment of her mortgage with release of deed and 3 years of interest on her insurance payment. The purposeful reporting of exaggerated symptoms in the setting of a secondary gain such as financial would be considered Malingering. Malingering is not considered a mental disorder and would not be assessed for impairments of daily functioning.

To a reasonable medical certainty, I find Mrs. Ishee either has an Adjustment Disorder with mixed anxiety and depressed mood based on her and daughter's report or there is an exaggeration of

symptoms for financial gain. I am limited by a lack of records but the final diagnosis can be made with the following evidence: that she received many foreclosure letters, her property was repeatedly listed in some local paper as a foreclosure, that her property went through foreclosure proceeding in Greene County court and that Mr. McHard literally stopped the foreclosure sale on the steps of the Greene County courthouse. If these reported events are true as reported to me by Mrs. Ishee and her daughter Dana on Tuesday June 24, 2014 and for some unknown reason her doctors and providers did not document this as a stress in over 3 years of medical records, then I would diagnose her with an Adjustment Disorder.

All opinions expressed in this report are to a reasonable degree of medical certainty.

D. DATA OR OTHER INFORMATION CONSIDERED BY THE EXPERT

The data and other information I reviewed and relied on are set forth above.

E. LISTING OF CASES IN WHICH THE EXPERT HAS TESTIFIED AT TRIAL OR DEPOSITION IN THE LAST FOUR YEARS

1. Latisha Head VS. The City of Jackson, et al. Cause No. 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 CIV for Plaintiff

2. Louis Taylor VS. Johnson & Johnson, Inc., Janssen Pharmaceutical, Inc., Dr. Richard Rhoden, and John Does 1-5. Cause No. 2002-0389 for defendant Johnson & Johnson

3. Ava R. Coleman VS. Department of Marine Resource And MS state Agencies Worker's Compensation Trust MWCC No. 08 05269-K-2653-C at request of plaintiff

4. State of Connecticut VS. Dr. Tory Westbrook for defendant

F. COMPENSATION TO BE PAID TO THE EXPERT

I have been partially compensated in this case. The University Medical Center charges $500 per hour. A deposit of $1,000 was made payable to the University of Mississippi Medical Center at the time this appointment was made.

I reserve the right to amend this report as further information, if any, becomes available.

DATED, this the 7th day of July, 2014.

GREGORY GORDON, M.D.

County of Rankin
Donna Hubbard Emidy 7-7-14

STATE OF MISSISSIPPI NOTARY PUBLIC ID # 33712 DONNA HUBBARD EMIDY Commission Expires Nov. 2, 2015 RANKIN COUNTY

# GREGORY A GORDON, M.D.

## Curriculum Vitae

122 Shenandoah Estates Circle
Brandon, MS 39047
Telephone (601) 214-3539
ggordonchc@hotmail.com

University of Mississippi Medical Center
Department of Psychiatry
2500 North State Street
Jackson, MS 39216

| | |
|---|---|
| Date of Birth: | June 12, 1967: Syracuse NY |
| Citizenship: | United States |

### Education

| | |
|---|---|
| 1996 – 99 | University of Rochester, Medicine/Psychiatry Residency |
| 1994 – 96 | University of Virginia, Medicine/Psychiatry Residency |
| 1990 – 94 | Wayne State University, MD |

### Licensure

| | |
|---|---|
| June 1999 | Mississippi License, #16391, Active since 1999 |
| June 1996 | New York License, #207233, expired June 20, 1999 |
| June 1994 | Commonwealth of Virginia, #0101054368, expired June 96 |

### Specialty Certification

| | |
|---|---|
| 2010 | Board Re-Certification in Psychiatry |
| 2004 | Board Certification in Internal Medicine |
| 2000 | Board Certification in Psychiatry |

### Professional Experience

**2005 – Present**

University of Mississippi Medical Center
Assistant Professor of Psychiatry
Psychiatric Emergency/Consultation/Liaison Services, psychotherapy supervisor, Multi-cultural affairs mentor, supervision of Pain Fellowship resident, and lecturer for students and residents.

**2002 – 05**

Mississippi Band of Choctaw Indians Health Center
Staff Physician
Provided coverage on inpatient medical wards, outpatient medical clinic, outpatient Behavioral Health Clinic, Emergency Room and psychiatric consultations.

| | |
|---|---|
| 1999-02 | University of Mississippi Medical Center<br>Assistant Professor of Psychiatry, Assistant Professor of Internal Medicine, Co-Medical Director Med/Psych Unit, Interim Medical Director Adult Inpatient Unit, Tele-Psychiatry with Parchman prison, Psychotherapy supervisor and outreach with Choctaw Behavioral Health outpatient clinic. |
| 1998-99 | The Health Associate Main Quest Treatment Center: Psychiatrist on multi-discipline team for Drug Abuse |
| 1997-99 | Rochester General Hospital: Emergency Department Medicine provider. |
| 1997-98 | Canadiugua Veteran's Hospital: Medical Officer of the Day. |
| 1997-98 | University of Rochester: Strong Memorial Hospital Psychiatry Emergency Department |

## Awards

| | |
|---|---|
| June 2007-11 | University of Mississippi Medical Center<br>Department of Psychiatry Best On-Call Attending<br>Five consecutive years |
| June 2007 | University of Mississippi School of Medicine<br>Department of Psychiatry Teacher of the Year |
| June 2002 | University of Mississippi School of Medicine<br>Department of Psychiatry Teacher of the Year |
| June 1994 | Wayne State University School Medicine<br>Department of Psychiatry Distinguished Medical Student |

## Other

| | |
|---|---|
| Jan 08-June 11 | Mississippi Public Broadcast<br>Radio: Weekly call in talk show "Relatively Speaking"<br>Television Specials: "Depression: Out of the Shadows" and "Caring for your Elderly Parent" |

## References Available